1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KURT A. BENSHOOF,
BRIANA D. GAGE,

                          Plaintiffs,

          v.

CITY OF SHORELINE,
KING COUNTY,
TOWN & COUNTRY MARKETS,
EVAN B. FAGAN,
WILLIAM C. AKERS,
MR. THOMPSON,

                          Defendants.

Case No.

COMPLAINT FOR DAMAGES

DEMAND FOR TRIAL BY JURY

## I.    INTRODUCTION

COMES NOW Plaintiffs Kurt Benshoof ("Benshoof") and Briana Gage ("Gage"), bringing suit against King County, City of Shoreline ("Shoreline"), Town & Country Markets (aka "Central Markets"), employees of Central Markets, and law enforcement officers contracted by Shoreline through the King County Sheriff's

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 1 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Office, all of whom were pervasively entwined in joint action under the policies, practices or widespread customs of King County, Shoreline, and Central Markets, to deny Plaintiffs the full enjoyment of public accommodations under the ruse that face covering policies were lawful conditions of entry to Central Markets. Shoreline police officers refused to protect Plaintiffs from segregationist discrimination, threats of violence, battery, and hate crimes, denying Plaintiffs equal protection under the law.

In response to the segregationist discrimination by democratic socialists, Congress passed the 1871 Civil Rights Act. In response to segregationist discrimination and coerced medical experimentation by national socialists, Washington Supreme Court Chief Justice Walter B. Beals took a leave of absence to sit as the presiding judge at the Nuremberg Military Tribunal No. 1, the Medical Case: *United States of America v. Karl Brandt, et al.* Despite these landmarks in the *corpus juris,* segregationist discrimination, coerced medical experimentation, and hate crimes were allowed, enabled, facilitated or perpetrated by Defendants for more than six months.

A half century ago, in *Norwood v. Harrison*, 413 U.S. 455, 465 (1973), the Supreme Court reaffirmed what the Justices called an "axiomatic" principle of constitutional law. The Court set forth this principle categorically, without qualification or dissent. The principle was this: government "***may not induce, encourage, or promote private persons to accomplish what it is constitutionally forbidden to accomplish***."

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 2 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The *Norwood* principle is "axiomatic" because, without it, government actors could evade nearly every prohibition in the Bill of Rights through the simple expedient of inducing private parties to do what the Constitution bars the government from doing directly. "Constitutional limitations on governmental action would be severely undercut if the government were allowed to actively encourage conduct by 'private' persons or entities that is prohibited to the government itself." *United States v. Davis*, 482 F.2d 893, 904 (9th Cir. 1973)

Defendants, or their agents, were repeatedly informed by Plaintiffs over the last three years that they were violating laws and Plaintiffs' rights. Yet, even if Plaintiffs had not so warned them, public officials cannot claim the laws they violated did not adequately provide them warning. *See Screws v. United States,* 325 U.S. 91, 102 (1945)

It is self-evident that every denial of rights detailed herein resulted from Benshoof's firmly held religious beliefs proscribing the coerced wearing of a face covering and from Gage's association with Benshoof. In other words, Defendants subjected Plaintiffs to pains and penalties because their beliefs contradicted those of Defendants, and for Plaintiffs seeking equal protection under the law and redress for such wrongdoing. Defendants further conspired to coerce, intimidate, threaten, and persecute Plaintiffs into forced submission to the ideological beliefs of Defendants.

Just as devout Muslim store employees could not demand that Christian shoppers wear a burqa to enter a Muslim owned public accommodation, so to were Defendants prohibited from denying Plaintiffs the full enjoyment of Central Markets.

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 3 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

## II.    JURISDICTION AND VENUE

1.      Pursuant to 28 U.S.C. §§ 1331; 1343(a); and 1367(a) this Court has jurisdiction.

2.      Pursuant to 28 U.S.C. § 1391(b)(1) venue is proper in the Western District of Washington because all claims arise out of King County, Washington.

3.      Pursuant to 28 U.S.C. § 1654 this Court has jurisdiction to hear Plaintiff's *pro se.*

4.      Pursuant to 42 USC §§1983 (civil action for deprivation of rights); 1985 (2)(3) (conspiracy to interfere with civil rights) this Court has jurisdiction.

5.      Pursuant to 42 USC § 1988(a)(b) this Court has jurisdiction.

6.      Pursuant to 42 USC §§ 2000bb-1; 2000bb-2(1) this Court has jurisdiction.

7.      Pursuant to the 1871 Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, Session I, Ch. 22, § 6, this Court has jurisdiction of all civil and criminal causes arising under § 2 of said act, including the empanelment of a grand jury.

8.      Pursuant to Title II of the Civil Rights Act of 1964 (Pub. L. 88-352, §§ 201-205) and Title 42 U.S.C. § 2000 (denial of service at places of public accommodation) this Court has subject matter jurisdiction.

## III.    PARTIES

9.      Plaintiff Kurt A. Benshoof ("Benshoof") is a citizen of Washington and at all times material to this lawsuit Plaintiff lived in Seattle, Washington.

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

10.    Plaintiff Briana D. Gage ("Ms. Gage") has lived in Seattle Washington at all times materials to her claims herein.

11.    Defendant CITY OF SHORELINE ("Shoreline") is a political subdivision of the State of Washington.  The City of Shoreline is a "person" for the purposes of liability under 42 U.S.C. § 1983, located at 17500 Midvale Avenue N, Shoreline, WA 98133.

12.    Defendant KING COUNTY is a political subdivision of the State of Washington.  King County is a "person" for the purposes of liability under 42 U.S.C. § 1983, located at 500 Fourth Avenue, Seattle, WA 98104.

13.    Defendant TOWN & COUNTRY MARKETS ("T&CM") UBI #189 002 735 is a for profit corporation licensed to operate in the State of Washington, including any stockholders of TOWN & COUNTRY MARKETS pursuant to Wash. Const. art XII § 4 LIABILITY OF STOCKHOLDERS.   TOWN & COUNTRY MARKETS is a "person" for the purpose of liability under 42 U.S.C. § 1983.  Principal office street address is 19302 Powder Hill Place NE, Suite 103, Poulsbo, WA 98370. The principal office mailing address is 130 Fifth Avenue South, Suite 126, Edmonds, WA 98020.  Governor Larry Nakata.  The registered Agent is Socius Law Group, PLLC, whose   mailing address is 600 University Street, Suite 2510, Seattle, WA 98101.

14.    Defendant Evan Burton Fagan ("Fagan"), manager for TOWN & COUNTRY MARKETS, a man sued in his individual capacity, currently residing at 23830 Edmonds Way, Unit 302, Edmonds, WA 98026.

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 5 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

15.     Defendant William C. Akers ("Akers"), a man employed by the King County Sheriff's Office, contracted by the City of Shoreline for law enforcement, is sued in his official and individual capacity.

16.     Defendant Mr. Thompson ("Thompson"), a man employed by the King County Sheriff's Office, contracted by the City of Shoreline for law enforcement, in sued his official and individual capacity.  The video in Plaintiffs' possession does not clearly show Officer Thompson's first and middle initials; therefore, he will be referred to as "Mr. Thompson" until such time that Plaintiffs verify with the Shoreline Police Department, or King County Sheriff's Office, what the full name of Officer Thompson is.

# IV.   VERIFIED STATEMENT OF FACTS

17.     Plaintiffs aver the following statements upon their information and belief and are prepared to testify to their veracity under oath in a court of law.

## A. Benshoof's Protected Class

18.     Benshoof's firmly held religious beliefs require him to speak the truth at all times.

19.     Benshoof's Creed requires him to honor the legacy of one of America's greatest civil rights heroes, Reverend Dr. Martin Luther King, Jr., by embodying his words: ""Cowardice asks the question, 'Is it safe?' Expediency asks the question, 'Is it politic?' Vanity asks the question, 'Is it popular?' But, conscience asks the question, 'Is it right?' And there comes a time when one must take a position that is neither

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 6 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

safe, nor politic, nor popular, but ***one must take it because one's conscience tells
one that it is right***."

20.     Benshoof's firmly held religious beliefs require him to confront, expose,
and seek redress against liars and their lies, particularly when those liars seek to
violate the First Amendment by denying others the free exercise of religion.

21.     Benshoof's firmly held religious beliefs require him to confront, expose,
and seek redress against liars and their lies, particularly when those liars seek to
violate the First Amendment by denying others their right to petition for redress of
their grievances against liars and criminals.

22.     Benshoof's firmly held religious beliefs require him to confront, expose,
and seek redress against liars and their lies, particularly when those liars seek to
violate the First Amendment by denying others their right to associate with their own
children.

23.     Benshoof's firmly held religious beliefs require him to confront, expose,
and seek redress against liars and their lies, particularly when those liars seek to
violate the Fourteenth Amendment by denying others the equal protection of the
laws.

24.     Benshoof's firmly held spiritual beliefs proscribed him being coerced to
wear a face covering as a condition of entrance to public accommodations and public
entities including, but not limited to, Central Markets.

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 7 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

25.     Benshoof's firmly held spiritual beliefs constitute a class of one for the purposes of Plaintiffs' claims.  *See Village of Willowbrook v. Olech*, 528 U.S. 562, at 566 (2000)

## B. Shoreline Police

26.     On or around September 7, 2020, Benshoof telephoned the Shoreline Police Department, requesting confirmation that Shoreline Police would not harass Plaintiffs for shopping sans face covering at Shoreline businesses.

27.     Shoreline Police acknowledged that a store face covering policy was not a "lawful condition" by which Plaintiffs could be accused of criminal trespass if Plaintiffs did not wear a face covering while shopping inside a Shoreline business open to the public.

28.     Shoreline Police assured Plaintiff that, so long as Plaintiffs were not violating a ***criminal law,*** such as loitering or shoplifting, Shoreline Police would not enforce Shoreline businesses' face covering policies.

29.     ."

## C. Town & Country Markets

30.     Town & Country Markets is located at 15505 Westminster Way N Shoreline, Washington 98133.

31.     Town & Country Markets was previously named "Central Markets" at all times relevant to the claims herein and will be hereinafter referred to as "Central Markets."

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 8 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

32.    On or around September 6, 2020, Central Markets implemented its "No Mask, No Entry" policy, asserting to Benshoof that Central Markets was "following CDC and Washington state guidelines."

33.    When Central Markets employees demanded that Benshoof wear a face mask to shop inside their stores.  Benshoof declined, stating that his creed proscribed him from being coerced to wear a face covering as a condition of entry to Central Markets.

34.    Benshoof also informed Central Markets employees that he has a disability which prevents him from restricting his breathing or covering his face.

35.    Benshoof reminded employees that the Americans with Disabilities Act and Washington Laws Against Discrimination prohibited Central Markets from denying equal access to Benshoof due to his disability.

36.    Benshoof reminded employees that Washington mask orders exempted Benshoof's disability.  However, all of Benshoof's citations of law were to no avail.

37.     Central Markets employees said that Benshoof could wear a face shield in lieu of a face mask.  Benshoof informed employees that the Department of Health—whose "guidelines" Central Markets was allegedly acting under to deny Benshoof full and equal access to the goods and services of Central Markets —explicitly informed the public that a face shield "is currently viewed as serving *no purpose* or providing any protection from the transmission of COVID-19

38.    Beginning in September 2020, Benshoof repeatedly informed Central Markets employees that: (1) Plaintiff's Creed proscribed being coerced to wear a face

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

covering; (2) under RCW 9.91.010 it was a crime to deny Plaintiff the full enjoyment and services of a public accommodation due to Plaintiff's Creed;  (3) Plaintiff had a disability precluding the wearing of a face covering; (4) RCW 49.60.030 and the Americans with Disabilities Act ("ADA") prohibited store employees from denying Plaintiff the full enjoyment and services of a public accommodation due to Plaintiff's disability.

39.    Central Markets permitted the wearing of a face shield in lieu of a face mask.

40.    Plaintiff had been regularly shopping at the store since 2006, used his credit card to purchase store merchandise, and thereby engaged in interstate commerce.

41.    The following incidents are just a fraction of the incidents which occurred between September 2020 and May 2021.  Plaintiffs video recorded dozens of shopping experiences at Central Markets.  These videos will substantiate all of Plaintiffs' claims at trial.

### 1) October 7, 2020

42.    On or around October 7, 2020, a female shopper followed Benshoof around inside the store, yelling insults at Benshoof because Benshoof was not wearing a face mask.

43.    Multiple store employees followed the female shopper, yet store employees did not intervene to stop the female shopper from following and verbally

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 10 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

harassing Benshoof. In fact, Central Markets employees appeared to be amused that the woman was harassing Benshoof.

44.     When Benshoof left the store to return to his vehicle, the female shopper followed Benshoof across the parking lot while a store employee stood watching approximately forty feet away in the parking lot.

45.     Benshoof stopped and turned to face the female shopper.

46.     The female shopper approached Benshoof within twenty-four inches and said, "I want you to die with my hands around your throat."

47.     The female shopper then swung her right hand at Benshoof's head, hitting Plaintiff.

48.     Benshoof asked the female shopper, "Do you feel better now?"

49.     The female shopper then walked over to the Central Markets employee, who consoled the visibly frustrated shopper by saying, "I know. He's an asshole."

50.     The female shopper assaulted Benshoof because of Benshoof's firmly held spiritual beliefs, which forbade the coerced wearing of a face mask.

51.     The female shopper assaulted Benshoof because of Benshoof's disability, which prevented Plaintiff from being coerced to wear a face mask.

52.     Physical pain, no matter how temporary, constitutes "bodily injury" pursuant to 18 U.S.C. § 1365 (h)(4).

53.     18 U.S.C. § 249(A)(2)(a) Hate Crimes states, "Whoever, whether or not acting under color of law…attempts to cause bodily injury to any person, because of the actual or perceived religion…or disability of any person—"

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 11 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

*2) January 5, 2021*

54.    On or around January 5, 2021, Benshoof was given a paper entitled "TRESPASS ADMONISHMENT" from a store employee.

*3) February 14, 2021*

55.    On, or around, February 14, 2021, while shopping inside the store, Benshoof opened a cooler door to select pre-cut salad greens from a shelf.

56.    Store manager Evan B. Fagan ("Fagan") approached Benshoof unannounced from behind Benshoof and shoved the door against Benshoof, squishing Benshoof between the door and the door frame of the cooler, causing Benshoof physical pain in his left arm.

57.    Fagan assaulted Benshoof because of Benshoof's firmly held spiritual beliefs, which forbade the coerced wearing of a face mask.

58.    Fagan assaulted Benshoof because of Benshoof's disability, which prevented Benshoof from being coerced to wear a face mask.

59.    Benshoof called the Shoreline Police Department and reported the incident to an officer.

60.    City of Shoreline did not take action to charge Fagan with his violation of RCW 9A.36.041.

*4) March 12, 2021*

61.    On, or around March 12, 2021, Fagan followed Benshoof around the store, telling Benshoof f, "You have to leave."

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 12 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

62.    As Benshoof was walking with his groceries toward the exit, Fagan approached Benshoof from behind and forcefully shoved Benshoof in the back with both hands.

63.    If Benshoof had not seen Fagan approaching and braced himself against Fagan's assault, Benshoof would have been shoved face first onto the cement floor.

64.    Benshoof called 911 to report the assault by Fagan.

65.    Shoreline police gave Benshoof a card with case #C2100-7949.

66.    King County Sheriff Deputy N.W. Demuse was one of officers who responded to the scene.

67.    Benshoof stated that he wanted Fagan to be charged with assault.

68.    City of Shoreline did not take action to charge Fagan with his violation of RCW 9A.36.041.

### 5)  March 23, 2021

69.    On, or around, March 23, 2021, when Benshoof put his groceries on the checkout stand conveyor belt, the male cashier absconded with all of Benshoof's groceries, refusing to provide checkout service and denying Benshoof the ability to pay for his groceries with his credit card and thereby engage in interstate commerce.

70.    Benshoof asked, "So, you're taking my stuff?"

71.    The cashier told Benshoof, "You know can't shop here."

72.    Benshoof called 911 and reported violation of RCW 9.91.010 to dispatch.

### 6)  April 5, 2021

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 13 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

73. On, or around, April 5, 2021, William C. Akers ("Akers") and Mr. Thompson ("Thompson"), wearing uniforms marked "SHORELINE POLICE", responded to Central Markets in a patrol car marked "SHORELINE POLICE."

74. Benshoof informed Akers and Thompson that "In previous encounters at the store [King County Sheriff Deputies] have acknowledged that I'm not break any laws, and according to trespass laws, if we read the RCW, I have to be breaking a law for there to be a [criminal] trespass.

75. Akers asserted, "No. Nope. [Central Markets] can trespass you from their property if you're not following their **store rules**."

76. RCW 9A.52.070(1) states, "A person is guilty of criminal trespass in the first degree if he or she knowingly enters or remains **unlawfully** in a building."

77. Akers declared that Akers was criminally trespassing Benshoof from Central Markets for one year and threatened Benshoof with arrest if Benshoof came back to shop at Central Markets within the following year.

78. Benshoof told Akers and Thompson, "I'm going to notify you guys that you just committed a gross misdemeanor. The gross misdemeanor is you threatened me with unlawful imprisonment: I have it on video. Your qualified immunity does not work, and you will be held personally accountable. So, if you wanna start violating the law, then that's the way we're gonna go."

79. Benshoof continued, "If you read RCW 9A.52.070…it says that I have to be in the store **unlawfully**. You can't cite a law that I have violated for me to be in

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 14 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

the store **unlawfully.** All you can do is cite a civil matter, which you have no authority to get your nose involved in."

80.    Akers replied, "You can fight that out in court.  I welcome that."

81.    Benshoof left the store under threat, duress and coercion from the three police officers, who carried loaded weapons.

82.    Akers handed Benshoof a pink City of Shoreline piece of paper and said, "If you come back to the store within a year, you're gonna be arrested."

83.    The pink piece of paper stated that Benshoof would be subject to arrest for criminal trespass if Benshoof returned to the store prior to April 6, 2022.

*7) May 9, 2023*

84.    On or around May 9, 2023, Plaintiffs drove in a rental vehicle to Central Markets to buy groceries.

85.    Gage wore a face mask so that she would not be subjected to harassment by store employees.

86.    When Plaintiffs exited the store to return to their rental vehicle, they discovered that someone had surrounded the vehicle with approximately forty (40) shopping carts, which were laid on their sides.

87.    Gage stated to Benshoof that, despite being an African American woman who had traveled to the majority of states in America, she had never in her life encountered such targeted discrimination, harassment, and intimidation.

88.    Plaintiffs have reason to believe, and do believe, that one or more store employees surrounded the rental vehicle with the shopping carts.

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 15 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

89.     Plaintiffs have reason to believe, and do believe, that Gage was targeted with harassment and intimidation by one or more store employees because of her association with Benshoof.

# V.    CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### BATTERY
### RCW 9A.36.041 Assault in the fourth degree

90.     Benshoof realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

91.     In this first cause of action, Evan Fagan is named as Defendant.

92.     On or around February 14, 2021, Fagan intentionally assaulted Plaintiff inside Town & Country Markets with the door of a cooler.

93.     On or around March 12, 2021, Fagan intentionally assaulted Plaintiff inside Town & Country Markets by shoving Plaintiff with both arms.

94.     On both occasions, Fagan used unlawful force which was offensive and potentially dangerous to Benshoof.

95.     On both occasions, Fagan caused Benshoof bodily injury.

96.     On both occasions, Fagan did not have Benshoof's consent.

97.     On both occasions, Fagan assaulted Benshoof when Benshoof was unaware that Fagan had approached from behind.

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

98.     On both occasions, Fagan's offensive contact would offend any ordinary person.

99.     As a direct, proximate, and foreseeable result of Fagan's assaults, Plaintiff suffered harm and damages for which he is entitled to recover.

## SECOND CAUSE OF ACTION
MISCONDUCT

### 18 U.S.C. § 249 Hate Crimes
### RCW 9A.36.080(1)(a)

_____

100.    Benshoof realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

101.    In this second cause of action, Evan Fagan is named as Defendant.

102.    Fagan intentionally assaulted Plaintiff inside Town & Country Markets on multiple occasions due to Fagan's invidious discriminatory animus toward Plaintiff's religious beliefs.

103.    Fagan attempted to cause bodily injury to Plaintiff pursuant to 18 U.S.C. § 249 (a)(2)(A).

104.    Fagan caused bodily injury to Plaintiff pursuant to 18 U.S.C. § 1365 (h)(4).

105.    Fagan maliciously and intentionally assaulted Plaintiff in violation of RCW 9A.36.080(1)(a); 9A.36.041.

106.    RCW 9A.36.083 provides for a civil cause of action for the hate crime offense against the person who committed the offense.

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

107.    Fagan had a duty to refrain from physically assaulting Plaintiff due to Fagan's invidious discriminatory animus toward Plaintiff's religious beliefs, and Fagan thereby violated 18 U.S.C. § 249 and RCW 9A.36.080(1)(a).

108.    18 U.S.C. § 249 and RCW 9A.36.080(1)(a) were enacted to protect people, such as Benshoof, from the peril of people, such as Fagan, from causing, or attempting to cause, bodily injury to Benshoof because of Benshoof's religious beliefs.

109.    The conduct of Fagan was so shockingly careless, and with such reckless disregard of Plaintiff's rights and state and federal laws, that no reasonable person would fail to act differently under the circumstances.

110.    As a direct, proximate, and foreseeable result of the acts by Fagan, Plaintiff suffered irreparable harm and damages for which he is entitled to recover.

111.    Fagan had a duty not to cause bodily injury to Benshoof.

112.    Fagan had a duty not to violate the First Amendment prohibitions against retaliating against Benshoof for his free exercise of his religious beliefs and expression.

113.    Fagan acted with reckless indifference as to whether assaulting Benshoof would cause Benshoof bodily injury in retaliation for Benshoof's free exercise of his religious beliefs and expression.

114.    Fagan knew, or had reason to know, that assaulting Benshoof would inform a reasonable person of the dangerous character of Fagan's conduct.

115.    As there is a prima facie causal connection between Fagan's violations of 18 U.S.C. § 249 and RCW 9A.36.080(1)(a) and the irreparable harm caused to

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Benshoof for the free exercise of his religious beliefs and his expression, and the requirements of Restatement (Second) of torts section 286 (1965) are met, the proximate cause question is for the jury to decide at trial. *See Kness v. Truck Trailer Equip. Co.,* 81 Wn.2d 251, 501 P.2d 285 (1972)

116.    By reason of the foregoing, and as a direct, proximate, and foreseeable result of Fagan's misconduct, Benshoof suffered irreparable harm and damages; therefore, Benshoof is entitled to recover compensatory and punitive damages, equitable relief, court costs, and reasonable fees.

## THIRD CAUSE OF ACTION
NEGLIGENCE

### RCW 9.91.010

117.    Benshoof realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

118.    In this second cause of action, Evan Fagan is named as Defendant.

119.    Town & Country Markets is a "place of public accommodation" under RCW 9.91.010(1)(d).

120.    Fagan's violations of RCW 9.91.010 included acts intended to result, in whole or in part, in discrimination, restriction, or unequal treatment of Benshoof in Town & Country Markets.

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 19 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

121.    Fagan's violations of RCW 9.91.010 included acts intended to deny Benshoof the full enjoyment of Benshoof's right to purchase commodities sold inside Town & Country Markets.

122.    Fagan denied Benshoof the full enjoyment of the goods and services of Town & Country Markets because of Benshoof's creed.

123.    Fagan's acts, and failures to act, constituted negligence as a matter of law, and such negligence had the same effect as any other act of negligence.

124.    RCW 9.91.010 is admissible on the issue of negligence pursuant to the test set forth in Restatement (Second) of Torts section 286 (1965). *See Schooley v. Pinch's Deli Mkt., Inc.,* 134 Wn.2d 468, 474–75, 951 P.2d 749 (1998), as the purpose of the legislative enactment of RCW 9.91.010 was exclusively or in part to protect shoppers at public accommodations, including Benshoof, from denial of civil rights because of one's creed.

125.    RCW 9.91.010 was enacted to protect the right to full and equal access at public accommodations.

126.    Fagan's negligence was not due to some cause beyond the control of Fagan that ordinary care could not have guarded against.

127.    RCW 9.91.010 was enacted to protect shoppers, including Benshoof, and their interest involved in free and equal access to the good and services of public accommodations, including Town & Country Markets. *See In Estate of Kelly v. Falin,* 127 Wn.2d 31, 896 P.2d 1245 (1995)

128.    *See Elrod v. Burns,* 427 U.S. 347 (1976)

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

129.    Fagan's violations of RCW 9.91.010 was the proximate cause of irreparable harm to Benshoof, as the violations retaliated against Benshoof for freely exercising his religious beliefs and expression. *See Ward v. Zeugner,* 64 Wn.2d 570, 392 P.2d 811 (1964)

130.    As there is a prima facie causal connection between the violations of RCW 9.91.010 and the irreparable harm to Benshoof, and the requirements of Restatement (Second) of torts section 286 (1965) are met, the proximate cause question is for the jury to decide at trial. *See Kness v. Truck Trailer Equip. Co.,* 81 Wn.2d 251, 501 P.2d 285 (1972)

131.    By reason of the foregoing, and as a direct, proximate, and foreseeable result of Fagan's negligence, Benshoof suffered irreparable harm and damages; therefore, Benshoof is entitled to recover compensatory and punitive damages, equitable relief, court costs, and reasonable fees.

# FOURTH CAUSE OF ACTION
## VIOLATION OF FIRST AMENDMENT

### Freedom of Religion
42 U.S.C. § 1983

_____

132.    Benshoof realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

133.    In this fourth cause of action, Defendants named herein include King County, City of Shoreline, Town & Country Markets, William Akers, Mr. Thompson, and Evan Fagan ("Defendants").

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

134.    King County, City of Shoreline, and Town & Country Markets, are "persons" for the purposes of liability under 42 U.S.C. § 1983.

135.    King County, City of Shoreline, and Town & Country Markets, had a practice or widespread custom of treating Benshoof as if his class had no rights because Benshoof's religious beliefs proscribed him wearing a face covering.

136.    At all times relevant herein to this fourth cause of action Defendants were state actors, or individuals pervasively entwined as integral participants in joint action with state actors, acting under color of law of the practices or widespread custom of treating Benshoof as if he had no rights because Benshoof's religious beliefs proscribed him wearing a face covering, and their conduct was subject to 42 U.S.C. § 1983.

137.    The Civil Rights Act of 1866, and its 1870 and 1871 amendments, contain the triad of malfeasance, misfeasance, and non-feasance which directly pertains to offices that exceed the limitations set therein.   State actors, and individuals in joint action with state actors, are not immune from liability by claiming the sovereign state followed guidance, recommendations, or information from state or federal agencies.

138.    Through the Equal Protection Clause of the Fourteenth Amendment, Defendants were prohibited from violating First Amendment prohibitions against restricting or denying Benshoof the free exercising his religious beliefs.

139.    Because Shoreline Police had already informed Benshoof on, or around, September 7, 2020 that Benshoof could shop inside Shoreline businesses without a

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

face covering and without discrimination, the doctrine of entrapment by estoppel prevented Akers and Thompson from threatening Benshoof with arrest if Benshoof returned to shop at Central Markets. See *United States v. Tallmadge*, 829 F.2d 767 (9th Cir. 1987)

140.    The conduct of City of Shoreline and King County officials conformed to the polices or widespread customs and practices by City of Shoreline and King County to deny Benshoof's class the right of familial association.

141.    The practices and widespread customs of City of Shoreline and King County were no less discriminatory than if Defendants were all radical Muslims, and the Islamic extremists had acted in concert to demand that Benshoof wear a burqa in order to have full and equal access to the goods and services of Town & County Markets.

142.    Defendants did not have valid evidence, legal cause, nor lawfully delegated authority to restrict or deny Benshoof's free exercise of his religious beliefs.

143.    This persistently widespread custom or practice of King County, City of Shoreline, and Town & Country Markets, was the moving force behind the denial of Benshoof's free exercise of his religious beliefs. and was both causation-in-fact and proximate causation of the violations of Plaintiff's right to the free exercise of his religious beliefs.

144.    City of Shoreline and King County failed to properly train its officials regarding the free exercise of religious beliefs to prevent their officials from denying Benshoof the free exercise of his religious beliefs.

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

145.    Because of this failure to train, City of Shoreline and King County officials ignored evidence of crimes perpetrated by Town & Country Markets employees, by refusing to receive or act upon Benshoof's evidence and complaints as a victim witness.

146.    Defendants, because of their invidious discriminatory animus towards Benshoof's class [1] willfully, maliciously, recklessly, and with callous indifference, conspired for the purpose of depriving, either directly or indirectly, Benshoof's free exercise of his religious beliefs.

147.    Employees of Town & Country Markets, including Fagan, as well as Akers and Thompson, set in motion a series of acts by which they expected: (1) City of Shoreline police officers to remove Benshoof from Town & Country Markets; (2) City of Shoreline police officers to arrest Benshoof if he returned; and (3) City of Shoreline prosecutors to prosecute Benshoof for criminal trespass.  In *Reynaga Hernandez v. Skinner,* 969 F.3d 930, 941-42 (9th Cir. 2020), the Ninth Circuit discussed, for the first time, the minimum level of involvement needed for § 1983 liability under the integral-participant doctrine.  An actor may be deemed to have caused a constitutional violation under the "integral-participant doctrine" if the defendant "set in motion a series of acts by others which the defendant knew or

---

[1] *See Mayer v. Wedgewood Neighborhood Coal.,* 707 F.2d 1020, 1022 (9th Cir. 1983), quoting *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), at 102, 91 S.Ct. at 1798: the Court suggested that section 1985(3) could also reach conspiracies based on "otherwise class-based, invidiously discriminatory animus"

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

reasonably should have known would cause others to inflict the constitutional injury."

*Peck v. Montoya,* 51 F.4th 877, 891 (9th Cir. 2022)

148.    First Amendment violations of Plaintiffs' right of familial association, even for a brief period of time, constitute irreparable harm.  (*See Elrod v. Burns,* 427 U.S. 347 (1976))

149.    As a direct, proximate, and foreseeable result of Defendants' acts, the practices or widespread customs of City of Shoreline and King County, and the failure to train by City of Shoreline and King County, Benshoof suffered cruel and inhumane conditions and treatment, irreparable harm, and damages for which Benshoof is entitled to recover.

## FIFTH CAUSE OF ACTION
### VIOLATION OF FIRST AMENDMENT
#### Free Speech and Expression Retaliation
42 U.S.C. § 1983

_____

150.    Benshoof repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

151.    In this fifth cause of action, defendants named herein include King County, City of Shoreline, Town & Country Markets, William Akers, Mr. Thompson, and Evan Fagan ("Defendants").

152.    Through the equal protection clause of the Fourteenth Amendment, Defendants were prohibited from violating the First Amendment prohibitions against

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

restricting or denying Plaintiff's right to freedom of speech and expression without retaliation.

153.    King County, City of Shoreline, and Town & Country Markets, had a practice or widespread custom of treating Benshoof as if his class had no rights because of Benshoof exercising his right to free speech and expression.

154.    At all times relevant herein to this fifth cause of action Defendants were state actors, or individuals pervasively entwined as integral participants in joint action with state actors, acting under color of law of the practices or widespread custom of treating Benshoof as if he did not have the right to free speech and expression, and their conduct was subject to 42 U.S.C. § 1983.

155.    Because Shoreline Police had already informed Benshoof on, or around, September 7, 2020 that Benshoof could shop inside Shoreline businesses without a face covering and without discrimination, the doctrine of entrapment by estoppel prevented Akers and Thompson from threatening Benshoof with arrest if Benshoof returned to shop at Central Markets. See *United States v. Tallmadge*, 829 F.2d 767 (9th Cir. 1987)

156.    The practices and widespread customs of City of Shoreline and King County were no less discriminatory than if Defendants were all radical Muslims, and the Islamic extremists had acted in concert to demand that Benshoof wear a burqa in order to have full and equal access to the goods and services of Town & County Markets.

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

157.    Defendants did not have valid evidence, legal cause, nor lawfully delegated authority to restrict or deny Benshoof's free exercise of his religious beliefs.

158.    This persistently widespread custom or practice of King County, City of Shoreline, and Town & Country Markets, was the moving force behind the denial of Benshoof's right to free speech and expression, and was both causation-in-fact and proximate causation of the violations of Benshoof's right to free speech and expression.

159.    Because of this failure to train, City of Shoreline and King County officials ignored evidence of crimes perpetrated by Town & Country Markets employees, by refusing to receive or act upon Benshoof's evidence and complaints as a victim witness.

160.    Defendants, because of their invidious discriminatory animus towards Benshoof's class [2] willfully, maliciously, recklessly, and with callous indifference, conspired for the purpose of depriving, either directly or indirectly, Benshoof's free exercise of his religious beliefs.

161.    Employees of Town & Country Markets, including Fagan, as well as Akers and Thompson, set in motion a series of acts by which they expected: (1) City of Shoreline police officers to remove Benshoof from Town & Country Markets; (2) City of Shoreline police officers to arrest Benshoof if he returned; and (3) City of Shoreline prosecutors to prosecute Benshoof for criminal trespass.

---

[2] *See Mayer v. Wedgewood Neighborhood Coal.,* 707 F.2d 1020, 1022 (9th Cir. 1983), quoting *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), at 102, 91 S.Ct. at 1798: the Court suggested that section 1985(3) could also reach conspiracies based on "otherwise class-based, invidiously discriminatory animus"

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

162.    In *Reynaga Hernandez v. Skinner,* 969 F.3d 930, 941-42 (9th Cir. 2020), the Ninth Circuit discussed, for the first time, the minimum level of involvement needed for § 1983 liability under the integral-participant doctrine.  An actor may be deemed to have caused a constitutional violation under the "integral-participant doctrine" if the defendant "set in motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury." *Peck v. Montoya,* 51 F.4th 877, 891 (9th Cir. 2022)

163.    By punishing or threatening to punish Plaintiff's class for expressing views regarding his beliefs, discrimination, disability, and civil rights, Defendants retaliated against Benshoof for exercising his First Amendment rights.

164.    When Benshoof expressed his views relating to his beliefs, discrimination, disability, and civil rights, he was speaking on a matter of public concern, engaging in speech related to public health, discrimination, diversity, equity, and inclusivity, and engaging in expression the First Amendment protects.

165.    Benshoof, in expressing matters of public concern in the context of face coverings, discrimination, disabilities, and civil rights, outweighed Defendants' interest in the administration and provision of services to the public.

166.    Benshoof's expression on matters of public concern in the context of face coverings, discrimination, disabilities, and civil rights, never prevented Defendants or their employees from the efficient administration or provision of services to the public.

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

167.    Defendants' practices or widespread customs, the enforcement of those policies, and their threatened future enforcement of those policies would deter a person of ordinary firmness from exercising his right to free speech and expression in the future.

168.    Defendants enforced practices, widespread customs, or orders against Benshoof at least in part because of the views he has expressed on matters of public concern in the context of public health, face coverings, discrimination, disabilities, and civil rights; expression that the First Amendment protects.

169.    The conduct of Defendants was not objectively reasonable.

170.    Defendants' policies and the enforcement of those policies under color of law violated Plaintiff's right to free speech and expression as guaranteed by the First Amendment to the United Constitution.

171.    Defendants, their officers, or individuals in joint action with state actors, did affirmative acts, participated in another's affirmative acts, or omitted to perform an act which he or she was legally required to do which caused, or set in motion, retaliation under color of law against Benshoof for the exercise of his free speech and expression.

172.    Covid policies and associated orders and actions by Defendants and their employees were not narrowly tailored to serve a compelling state interest, and they burdened Benshoof's fundamental rights.

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

173.    A municipality has no immunity from liability under 42 U.S.C. § 1983 flowing from its constitutional violations and may not assert the good faith of its officers as a defense to such liability.

174.    The conduct of Defendants and their employees conformed to the practices or widespread customs of City of Shoreline and King County regarding free speech and expression retaliation.

175.    King County and City of Shoreline failed to properly train its law enforcement officers regarding free speech and expression retaliation.

176.    When an individual, acting under the assumed authority of a State or a political subdivision of a State, as one of its officers, and under color of its laws, comes into conflict with the superior authority of a valid law of the United States, he is stripped of his representative character, and subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

177.    First Amendment violations of Benshoof's right to free expression, even for a brief period of time, constitute irreparable harm.  (*See Elrod v. Burns,* 427 U.S. 347 (1976))

178.    As a direct, proximate, and foreseeable result of Defendants' acts, the practices or widespread customs of City of Shoreline and King County, and the failure to train by City of Shoreline and King County, Benshoof suffered cruel and inhumane conditions and treatment, irreparable harm, and damages for which Benshoof is entitled to recover.

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

# SIXTH CAUSE OF ACTION
DENIAL OF SERVICE

## Public Accommodations Discrimination

Pub. L. § 202-205

179.    Plaintiffs reallege and incorporate by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

180.    In this sixth cause of action, defendants named herein include King County, City of Shoreline, Town & Country Markets, William Akers, Mr. Thompson, Evan Fagan.

181.    At all times relevant herein, Defendants were state actors, or individuals pervasively entwined as integral participants in joint action with state actors, acting under color of law, and their conduct was subject to 42 U.S.C. § 1983.

182.    As a shopper during normal business hours, Plaintiffs had an implied contract with Town & Country Markets to enter their establishments, to take goods from their shelves for purchase, to receive services, and to pay for said goods or services before leaving their establishments.

183.    All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the grounds of race, color, religion, or national origin.  (*See* Pub. L. No. 88-352 §§ 201-202).

184.    Plaintiffs were deprived equal access to Town & Country Markets.

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

185.    Plaintiff was arbitrarily, capriciously, and unreasonably denied service at Town & Country Markets.

186.    Town & Country Markets violated their implied contract with Plaintiffs by aiding and abetting King County and City Shoreline officials.

187.    Defendants' invidious discriminatory animus against the free exercise of Plaintiffs' religious beliefs was a proximate cause of denying Plaintiffs equal access and service.

188.    Defendants' invidious discriminatory animus against the free exercise of Plaintiffs' speech and expression was a proximate cause of denying Plaintiffs equal access and service.

189.    Defendants' invidious discriminatory animus against the free exercise of Plaintiffs' right to petition for redress of his grievances was a proximate cause of denying Plaintiffs equal access and service.

190.    Plaintiffs were classified by Defendants as a lower class of citizen than that of those who wore face coverings, and as a proximate result Plaintiffs were deprived of the equal access, enjoyment, and use of public accommodations and the secured rights of both the state and federal constitutions.

191.    Defendants' aim was to achieve an unlawful purpose, or lawful purpose by unlawful means, in violation of Pub. L. No. 88-352 §§ 201-202.

192.    As a direct, proximate, and foreseeable result of the acts and failure to act by Defendants, the customs or widespread practices of King County and City of

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Shoreline, and the failure to train by King County and City of Shoreline, Plaintiffs suffered irreparable harm and damages for which they are entitled to recover.

## SEVENTH CAUSE OF ACTION
### VIOLATION OF FIRST AMENDMENT

**Freedom of Association Retaliation**
42 U.S.C. § 1983

_____

193.    Plaintiffs Benshoof and Gage reallege and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

194.    In this seventh cause of action, defendants named herein include King County, City of Shoreline, Town & Country Markets, William Akers, Mr. Thompson, and Evan Fagan ("Defendants").

195.    The First Amendment prohibited Defendants from infringing upon Plaintiffs' right as paying customers to associate with employees of Central Markets during business hours.

196.    Defendants' invidious discriminatory animus against the free exercise of Plaintiff Gage's right to freely associate with Plaintiff Benshoof was a proximate cause of Defendants retaliating against Plaintiff Gage.

197.    As a direct, proximate, and foreseeable result of Defendants' acts, the policy or widespread customs or practices of King County, City of Shoreline, and Central Markets, and the failure to train by King County and City of Shorelin, Plaintiffs suffered irreparable harm and damages for which they are entitled to recover.

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

# EIGHTH CAUSE OF ACTION
NEGLIGENCE

**Unlawful Imprisonment**
RCW 9A.40.040

198.    Benshoof realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

199.    In this eighth cause of action, Defendants named herein include King County, City of Shoreline, Town & Country Markets, William Akers, and Mr. Thompson, ("Defendants").

200.    The *ultra vires* acts, absent criminal jurisdiction, by Akers, Thompson, were not indemnified by the doctrines of official or qualified immunity.

201.    Akers and Thompson acted under color of law to force Benshoof from the Central Markets under threat of arrest.

202.    King County and City of Shoreline failed to train Akers and Thompson regarding negligent unlawful imprisonment of innocent people, including Benshoof.

203.    The practices and widespread customs of King County and City of Shoreline subjected Benshoof to unlawful imprisonment by Akers and Thompson.

204.    Akers and Thompson acted under color of law to restrain Plaintiff from returning to Central Markets for one year under threat of immediate arrest.

205.    RCW 9A.40.040 prohibited Akers and Thompson from knowingly restraining Benshoof from shopping at Central Markets, and RCW 9A.40.010(6) defines "restrain" to mean "restrict[ing] a person's movements without consent and

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

without legal authority in a manner which substantially interferes with his or her liberty."

206.    The acts, and failures to act, by Akers and Thompson constituted negligence as a matter of law, and such negligence had the same effect as any other act of negligence.

207.    RCW 9A.40.040 is admissible on the issue of negligence pursuant to the test set forth in Restatement (Second) of Torts section 286 (1965). *See Schooley v. Pinch's Deli Mkt., Inc.,* 134 Wn.2d 468, 474–75, 951 P.2d 749 (1998), as the purpose of the legislative enactment of RCW 9A.40.040 was exclusively or in part to protect innocent people, including Benshoof, from unlawful imprisonment.

208.    The negligence by Akers and Thompson was not due to some cause beyond their control that ordinary care could not have guarded against.

209.    The violations of RCW 9A.40.040 by Akers and Thompson was the proximate cause of irreparable harm to Benshoof, as the violations retaliated against Benshoof for freely exercising his religious beliefs and expression. *See Ward v. Zeugner,* 64 Wn.2d 570, 392 P.2d 811 (1964)

210.    As there is a prima facie causal connection between the violations of RCW 9A.40.040 by Akers and Thompson and the irreparable harm to Benshoof, and the requirements of Restatement (Second) of torts section 286 (1965) are met, the proximate cause question is for the jury to decide at trial. *See Kness v. Truck Trailer Equip. Co.,* 81 Wn.2d 251, 501 P.2d 285 (1972)

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 35 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

1

2

3

4

5

6

211.     As a direct, proximate, and foreseeable result of Defendants' acts, the

practices or widespread customs of City of Shoreline and King County, and the failure

to train by City of Shoreline and King County, Benshoof suffered cruel and inhumane

conditions and treatment, irreparable harm, and damages for which Benshoof is

entitled to recover.

## NINTH CAUSE OF ACTION
VIOLATION OF FOURTEENTH AMENDMENT

### Equal Protection Clause

42 U.S.C. § 1983

7

8

9

10

11

12

212.     Plaintiffs Benshoof and Gage reallege and incorporate by reference the

preceding paragraphs with the same force and effect as if fully set forth herein.

13

14

15

16

213.     In this ninth cause of action, Defendants named herein include King

County, City of Shoreline, Town & Country Markets, Mr. Thompson, William Akers,

and Evan Fagan ("Defendants").

17

18

214.     King County and City of Shoreline are "persons" for the purposes of

liability under 42 U.S.C. § 1983.

19

20

21

22

23

215.     At all times relevant herein to this ninth cause of action Defendants

were state actors, or individuals pervasively entwined as integral participants in joint

action with state actors, acting under color of law, and their conduct was subject to

42 U.S.C. § 1983.

24

25

26

216.     Defendants, because of their invidious discriminatory animus towards

Benshoof's beliefs and Gage exercising her right to associate with Benshoof,

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 36 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Defendants willfully, maliciously, recklessly, and with callous indifference, conspired for the purpose of depriving, either directly or indirectly, Plaintiffs of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of Washington from giving or securing to all persons within Washington the equal protection of the laws.

217.    The practices and widespread customs of King County, City of Shoreline, and Central Markets, to deny Plaintiffs the equal protection of the law were not rationally related to serving and legitimate and compelling government interest.

218.    King County, City of Shoreline, and their officials, were absent a compelling interest in demanding that Plaintiffs wear face masks to shop in Central Markets that was narrowly tailored to achieve that interest.

219.    Discrimination, whether overt or implicit, results in an equal protection violation.

220.    Defendants coordinated their acts under the widespread customs or practices of King County and City of Shoreline that discriminated against Plaintiffs.

221.    The *ultra vires* acts, absent criminal jurisdiction, of Akers and Thompson were not indemnified by the doctrine of qualified immunity.

222.    Defendants failed to exercise objective reasonableness, and in so doing, violated the constitution and clearly established state and federal laws, including 18 U.S.C. §§ 241; 242; 249.

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 37 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

223.     Acting under the color of state law of policies or orders, Defendants knowingly and willfully acted, or neglected to act, to deny Plaintiffs their rights, privileges, or immunities secured by the United States Constitution, or by Federal and State law, and guaranteed by the Fourteenth Amendment to the Constitution of the United States; to wit, Defendants effected compliance to their orders based on their misrepresentations.

224.     The policies, orders, and proclamations, which were created, approved, enabled, implemented, or acted under, via the customs and widespread practices of King County and City of Shoreline, treated people who wore a face masks more favorably than people without face masks, by permitting masked shoppers entrance to public accommodations and providing masked shoppers service, while excluding people whose beliefs preclude them from wearing a face mask and denying them full services.

225.     The policies, orders, and proclamations, which were created, approved, enabled, implemented, or acted under, via the customs and widespread practices of King County and City of Shoreline to achieve an alleged government interest in promoting "public health," failed to consider Plaintiffs' individual health, well-being, and constitutionally protected rights.

226.     The policies, orders, and proclamations, which were created, approved, enabled, implemented, or acted under, via the customs and widespread practices of King County and City of Shoreline, were not rationally related to serving an alleged legitimate government interest of preventing the community spread of a disease.

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
    Page 38 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

227.    This persistently widespread custom or practice of King County and City of Shoreline officials was the moving force behind the denial of Plaintiffs' right to equal protection. and was both causation-in-fact and proximate causation of the violations of Plaintiffs' right to the equal protection of the law.

228.    King County and City of Shoreline failed to properly train its officials regarding the Plaintiffs' rights, and failed to properly train its officials regarding the denial of the equal protection of the law to Plaintiffs.

229.    As a direct, proximate, and foreseeable result of the acts and failure to act by Defendants, the customs or widespread practices of King County and City of Shoreline, and the failure to train by King County and City of Shoreline, Plaintiffs suffered irreparable harm and damages for which they are entitled to recover.

# TENTH CAUSE OF ACTION
## CONSPIRACY TO OBSTRUCT JUSTICE
### Equal Protection
42 U.S.C. § 1983; 1985(2)
_____

230.    Plaintiffs Benshoof and Gage reallege and incorporate by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

231.    In this tenth cause of action, Defendants named herein include King County, City of Shoreline, Town & Country Markets, Thompson, William Akers, and Evan Fagan ("Defendants").

232.    King County and City of Shoreline are each a "person" for the purposes of liability under 42 U.S.C. §§ 1983.; 1985(2).

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 39 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

233.    At all times relevant herein to this tenth cause of action Defendants were state actors, or individuals pervasively entwined as integral participants in joint action with state actors, acting under color of law, and their conduct was subject to 42 U.S.C. § 1985(2).

234.    Defendants conspired for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the laws of Washington and the due course of justice, with intent to deny Plaintiffs the equal protection of the laws, or to injure Plaintiffs or their property for lawfully enforcing, or attempting to enforce, the rights of Plaintiffs to the equal protection of the laws.

235.    As a direct, proximate, and foreseeable result of the conspiratorial acts and failure to act by Defendants, the policies, customs or widespread practices of King County and City of Shoreline, and the failure to train by King County and City of Shoreline, Plaintiffs suffered irreparable harm and damages for which they are entitled to recover.

## ELEVENTH CAUSE OF ACTION
### CONSPIRACY TO DEPRIVE RIGHTS
### Deprivation of Rights or Privileges
42 U.S.C. § 1983; 1985(3)

_____

236.    Plaintiffs Benshoof and Gage reallege and incorporate by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 40 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

237.    In this eleventh cause of action, Defendants named herein include King County, City of Shoreline, Town & Country Markets, Thompson, William Akers, and Evan Fagan ("Defendants").

238.    City of Shoreline and King County "persons" for the purposes of liability under 42 U.S.C. §§ 1983; 1985(3)

239.    At all times relevant herein to this eleventh cause of action Defendants were state actors, or individuals pervasively entwined as integral participants in joint action with state actors, acting under color of law, and their conduct was subject to 42 U.S.C. § 1985(3).

240.    Defendants, because of their invidious discriminatory animus towards Plaintiffs, willfully, maliciously, recklessly, and with callous indifference, conspired for the purpose of depriving, either directly or indirectly, Plaintiff's class of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of Washington from giving or securing to all persons within Washington the equal protection of the laws.

241.    Defendants thus conspired to deprive Plaintiffs of rights or privileges using the above misrepresentation, coercion, harassment, intimidation, threats, theft, extortion, robbery, unlawful arrest and imprisonment, malicious prosecution, and predicate acts.

242.    As a direct, proximate, and foreseeable result of the conspiratorial acts and failure to act by Defendants, the policies, customs or widespread practices of King

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

County and City of Shoreline, and the failure to train by King County and City of Shoreline, Plaintiffs suffered irreparable harm and damages for which they are entitled to recover.

# VI.     RELIEF REQUESTED

*WHEREFORE*, Plaintiffs demand judgment as follows:

A. An order declaring that all of Defendants' acts or omissions, described herein, violated the First and Fourteenth Amendments to the United States Constitution;

B. Compensatory damages against KING COUNTY, CITY OF SHORELINE and TOWN & COUNTRY MARKETS, in an amount to be determined at trial;

C. Compensatory damages against Evan B. Fagan, William C. Akers and Mr. Thompson in their individual capacities in an amount to be determined at trial;

D. Punitive damages against Evan B. Fagan, William C. Akers, and Mr. Thompson, in their individual capacities in an amount to be determined at trial;

E. Reasonable costs and fees, including fees in accordance with RCW 4.84; 42 U.S.C. § 2000a-3(b); 28 U.S.C. § 1927; 28 U.S.C. § 2412(d)(1)(A); Fed.R.Civ.P. 11(1); Fed.R.Civ.P. 54(d); and any other applicable law.

F. Reasonable legal costs and fees in accordance with Pub. L. 88-352 § 204(b).

G. Pre- and post-judgment interest as allowed by law;

H. Any other relief this Court deems just and proper.

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
Page 42 of 43

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

## VII.  DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury pursuant to the Seventh Amendment to the United States Constitution and pursuant to Federal Rule of Civil Procedure 38(b).

### VERIFICATION

Plaintiffs Kurt A. Benshoof and Briana D. Gage each do hereby declare that the foregoing is true and correct to the best of their knowledge under penalty of perjury in the State of Washington.  Executed this 11th day of March in the year 2024, in the city of Seattle, in the county of King, in the state of Washington.

By: *Kurt A. Benshoof*
Kurt A. Benshoof *Pro Se*

By: *Briana D. Gage*
Briana D. Gage, *Pro Se*

1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

1716 N 128th Street
Seattle, Washington 98133
(312) 000-0000
bgage025@gmail.com

Kurt Benshoof, Co-Plaintiff
1716 N 128th Street
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com