1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KURT A. BENSHOOF,

                    Plaintiff,

    v.

CITY OF SHORELINE; KING COUNTY;
TOWN & COUNTRY MARKETS; EVAN
B. FAGAN; WILLIAM C. AKERS; and
MR. THOMPSON,

                    Defendants.

CASE NO. 2:24-cv-00343-TL

ORDER ON MOTIONS TO DISMISS

This is a *pro se* civil rights action for damages stemming from a dispute over a grocery store's masking policy. This matter is before the Court on Defendants Town & Country Markets and Evan B. Fagan's Motion to Dismiss (Dkt. No. 43) and Defendants City of Shoreline, King County, William C. Akers, and Mr. Thompson's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c) (Dkt. No. 59). Plaintiff Kurt A. Benshoof did not file any responses, timely or otherwise. Having reviewed Defendants Town & Country Markets and Fagan's reply (Dkt. No. 55) and the relevant record, the Court GRANTS the motions with leave to amend.

# I.  BACKGROUND

The following facts are recited as alleged in the Complaint. *See* Dkt. No. 14.

## A.  The Masking Policy

On or around September 6, 2020, Defendant Town & Country Markets ("T&C") (at the time, named "Central Markets") implemented a "No Mask, No Entry" policy, based on "CDC and Washington state guidelines." *Id.* ¶ 31–32. When employees requested that Plaintiff wear a mask, Plaintiff cited religious belief and disability as reasons for exemption. *Id.* ¶¶ 33–36. Employees informed Plaintiff that a face shield was acceptable, but Plaintiff stated that a face shield "is currently viewed as serving no purpose or providing any protection from the transmission of COVID-19." *Id.* ¶ 37.

Following Defendant T&C's implementation of a masking policy, Plaintiff alleges that he was subject to a series of incidents when shopping at Defendant T&C over a period of several months, as outlined below.

## B.  October 7, 2020

A female shopper followed Plaintiff around the store, yelling insults because Plaintiff was not wearing a face mask. *Id.* ¶ 42. Multiple store employees followed the female shopper but did not intervene; they appeared to be "amused." *Id.* ¶ 43.

When Plaintiff left the store to return to his vehicle, the female shopper followed Plaintiff across the parking lot while a store employee stood watching approximately 40 feet away. *Id.* ¶ 44. Plaintiff stopped and turned to face her. *Id.* ¶ 45. The female shopper got within 24 inches of Plaintiff and said, "I want you to die with my hands around your throat." *Id.* ¶ 46. She then swung her right hand at Plaintiff's head, hitting him. *Id.* ¶ 47. Plaintiff asked, "Do you feel better now?" *Id.* ¶ 48. The female shopper then walked over to the store employee, who "consoled the visibly frustrated shopper" by saying, "I know. He's an asshole." *Id.* ¶ 49.

**C.    January 5, 2021**

Plaintiff was given a paper entitled "TRESPASS ADMONISHMENT" from a store employee. *Id.* ¶ 54.

**D.    February 14, 2021**

While shopping inside Defendant T&C, Plaintiff opened a cooler door to select salad greens from a shelf. *Id.* ¶ 55. Defendant Evan B. Fagan, a store manager, approached Plaintiff unannounced from behind and shoved the door against Plaintiff, squishing Plaintiff between the door and the door frame of the cooler, causing physical pain in Plaintiff's left arm. *Id.* ¶ 56. Plaintiff called the Shoreline Police Department and reported the incident. *Id.* ¶ 59. Defendant City of Shoreline did not take action to charge Defendant Fagan. *Id.* ¶ 60.

**E.    March 12, 2021**

Defendant Fagan followed Plaintiff around the store, telling him, "You have to leave." *Id.* ¶ 61. As Plaintiff was walking toward the exit, Defendant Fagan approached Plaintiff from behind and "forcefully shoved" Plaintiff in the back with both hands. *Id.* ¶ 62. Plaintiff called 911 to report the incident. *Id.* ¶ 64. Shoreline Police gave Plaintiff a card with a case number. *Id.* ¶ 65. King County Sheriff Deputy N.W. Demuse was one of the officers who responded. *Id.* ¶ 66. Plaintiff stated that he wanted Defendant Fagan to be charged with assault. *Id.* ¶ 67. Defendant Shoreline did not take action to charge Defendant Fagan. *Id.* ¶ 68.

**F.    March 23, 2021**

When Plaintiff put his groceries on the checkout stand conveyor belt, the male cashier "absconded" with all of Plaintiff's groceries, refusing to provide checkout service and denying Plaintiff's ability to pay for his groceries. *Id.* ¶ 69. Plaintiff asked, "So, you're taking my stuff?" *Id.* ¶ 70. The cashier responded, "You know can't [*sic*] shop here." *Id.* ¶ 71. Plaintiff called 911 to report the incident. *Id.* ¶ 72.

**G.    April 5, 2021**

Defendants William C. Akers and Mr. Thompson, wearing Shoreline Police uniforms, responded to Defendant T&C. *Id.* ¶ 73. Plaintiff said to Defendants Akers and Thompson, "In previous encounters at the store [King County Sheriff Deputies] have acknowledged that I'm not break [*sic*] any laws, and according to trespass laws, if we read the RCW, I have to be breaking a law for there to be criminal trespass." *Id.* ¶ 74 (alterations in original). Defendant Akers responded, "No. Nope. [Defendant T&C] can trespass you from their property if you're not following their ***store rules***." *Id.* ¶ 75 (boldface and emphasis in original).

Defendant Akers stated that he was criminally trespassing Plaintiff from Defendant T&C for one year and threatened Plaintiff with arrest if Plaintiff came back to shop at Defendant T&C within the following year. *Id.* ¶ 77. Plaintiff contested the actions of the officers, claiming false imprisonment and no unlawful presence in the store. *Id.* ¶¶ 78–79. Defendant Akers replied, "You can fight that out in court. I welcome that." *Id.* ¶ 80. He gave Plaintiff a pink piece of paper and said, "If you come back to the store within a year, you're gonna be arrested." *Id.* ¶ 82. The paper stated that Plaintiff would be arrested for criminal trespass if he returned to the store prior to April 6, 2022. *Id.* ¶ 83. Plaintiff left the store "under threat, duress and coercion" from the officers, who were armed. *Id.* ¶ 81.

**H.    May 9, 2023**

Plaintiff drove with Briana Gage[1] to Defendant T&C to buy groceries. *Id.* ¶ 84. Gage wore a face mask. *Id.* ¶ 85. When they left the store, they found their vehicle surrounded by approximately 40 carts on their sides. *Id.* ¶ 86. Plaintiff "have reason to believe" that one or more store employees so arranged the carts. *Id.* ¶ 88.

---

[1] Gage was dismissed as a co-plaintiff after failing to respond to the Court's Order to Show Cause. Dkt. No. 63.

## II.    PRELIMINARY NOTE

The Court will occasionally refer to Defendants T&C and Fagan as the "Private Defendants" and all other Defendants as the "Government Defendants" (sometimes further described as "Government Entity Defendants" and "Government Individual Defendants" to separate municipalities and individual human beings). The Court also notes that it dismissed without prejudice the claims of Plaintiff Briana Gage on September 16, 2024. Dkt. No. 63.

## III.    LEGAL STANDARD

Private Defendants move to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 43 at 8. Government Defendants move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(c). Dkt. No. 59 at 9.

**A.    Rule 12(b)(1)**

A motion to dismiss may be brought where subject matter jurisdiction is lacking. *See* Fed. R. Civ. P. 12(b)(1). The Court must dismiss a case if it determines that it lacks subject-matter jurisdiction "at any time." Fed. R. Civ. P. 12(h)(3). A motion to dismiss for lack of subject-matter jurisdiction may be either a facial attack (challenging the sufficiency of the pleadings) or a factual attack (presenting evidence contesting the truth of the allegations in the pleadings). *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "When reviewing a [facial] dismissal pursuant to Rule 12(b)(1) . . . , 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (second alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

**B.    Rule 12(b)(2)**

A defendant may seek also dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss,

the Court takes all well-pleaded factual allegations as true and considers whether the complaint

"state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements" are

insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 672. As under Rule 12(b)(1), "[w]hen reviewing a

dismissal pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and

construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci

Aircraft*, 926 F.3d at 1122 (alteration in original) (quoting *Snyder & Assocs.*, 859 F.3d at 1156–

57 (9th Cir. 2017)).

## C.    Rule 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move

for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly

granted when[, accepting all factual allegations in the complaint as true,] there is no issue of

material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez

v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Fleming v. Pickard*, 581 F.3d 922,

925 (9th Cir. 2009)). "Analysis under Rule 12(c) is 'substantially identical' to analysis under

Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the

complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Id.* (quoting *Brooks v. Dunlop

Mfg. Inc.*, No. C10-4341, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011)).

## D.    *Pro Se* Filings

A *pro se* complaint must be "liberally construed" and held "to less stringent standards

than formal pleadings drafted by lawyers." *E.g.*, *Florer v. Congregation Pidyon Shevuyim, N.A.*,

1    639 F.3d 916, 923 n.4 (9th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

2    curiam)). Even so, a court should "not supply essential elements of the claim that were not

3    initially pled." *E.g.*, *Henderson v. Anderson*, No. C19-789, 2019 WL 3996859, at *1 (W.D.

4    Wash. Aug. 23, 2019) (quotation marks omitted) (quoting *Bruns v. Nat'l Credit Union Admin.*,

5    122 F.3d 1251, 1257 (9th Cir. 1997)); *see also Khalid v. Microsoft Corp.*, 409 F. Supp. 3d 1023,

6    1031 (W.D. Wash. 2019) ("[C]ourts should not have to serve as advocates for pro se litigants."

7    (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987))).

8        "[I]t is axiomatic that pro se litigants, whatever their ability level, are subject to the same

9    procedural requirements as other litigants." *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir.

10   2022) (internal citations omitted). Still, "[a] district court should not dismiss a *pro se* complaint

11   without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could

12   not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting

13   *Schucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988) (per curiam)) (district court

14   erred by failing to explain deficiencies of a *pro se* prisoner civil rights complaint and dismissing

15   without leave to amend).

## IV.    DISCUSSION

16

17       The Court will first address Plaintiff's federal causes of action before addressing the state

18   causes of action as appropriate.

19   **A.    18 U.S.C. § 249**

20       Plaintiff's Second Cause of Action asserts a violation of 18 U.S.C. § 249 against

21   Defendant Fagan only. *See* Dkt. No. 14 ¶¶ 100–116 (Second Cause). Defendants argue that there

22   is no private right of action under the statute, which is a criminal statute. *See* Dkt. No. 43 at 12–

23   13. The Court agrees and joins its sister courts in this Circuit that have reached the same

24   conclusion. *See, e.g.*, *Karriem v. Cnty. of Los Angeles*, Nos. C20-5909, C20-7734, 2020 WL

8474703, at *11 (C.D. Cal. Dec. 2, 2020) (finding no private right of action under 18 U.S.C.

§ 249); *Peden v. Rogers*, No. C18-2681, 2020 WL 3642341, at *2 (E.D. Cal. July 6, 2020) (same).

Therefore, Plaintiff's Second Cause of Action is DISMISSED without leave to amend, to

the extent that it asserts a claim under 18 U.S.C. § 249.

**B.    42 U.S.C. § 1983**

Plaintiff asserts several violations of Section 1983 against all Defendants. *See* Dkt.

No. 14 ¶¶ 132–49 (Fourth Cause of Action: freedom of religion), 150–78 (Fifth Cause of Action:

free speech and expression retaliation), 193–97 (Seventh Cause of Action: freedom of

association retaliation), 212–29 (Ninth Cause of Action: "Equal Protection Clause"), 230–35

(Tenth Cause of Action: "Equal Protection"),[2] 236–42 (Eleventh Cause of Action: deprivation of

rights or privileges).

**1.    Private Defendants**

Defendants Town & Country and Fagan argue that Plaintiff does not sufficiently allege

that their alleged actions are "fairly attributable to the government." Dkt. No. 43 at 16–19

(quoting *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999)).

Under Section 1983, "a defendant may be liable for violating a plaintiff's constitutional

rights only if the defendant committed the alleged deprivation while acting under color of state

law." *Rawson v. Recovery Innovations*, 975 F.3d 742, 747 (9th Cir. 2020). The Ninth Circuit has

"recognized at least four different general tests that may aid us in identifying state action:

'(1) public function; (2) joint action; (3) governmental compulsion or coercion; and

(4) governmental nexus.'" *Id.* (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)).

---

[2] The Tenth Cause of Action alleges a conspiracy by all Defendants to deny Plaintiff his equal protection rights.

1    Plaintiff plainly alleges the second test of joint action. *See, e.g.*, Dkt. No. 14 ¶ 136

2  (alleging that "Defendants were state actors, or individuals pervasively entwined as integral

3  participants in joint action with state actors"). "The joint action test asks 'whether state officials

4  and private parties have acted in concert in effecting a particular deprivation of constitutional

5  rights.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (quoting *Franklin v.*

6  *Fox*, 312 F.3d 423, 445 (9th Cir. 2002)). "This requirement can be satisfied either 'by proving

7  the existence of a conspiracy or by showing that the private party was a willful participant in

8  joint action with the State or its agents.'" *Id.* (quoting *Franklin*, 312 F.3d at 445). "Ultimately,

9  joint action exists when the state has "so far insinuated itself into a position of interdependent

10 with [the private entity] that it must be recognized as a joint participant in the challenged

11 activity." *Id.* (quoting *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d

12 503, 507 (9th Cir. 1989)).

13    The Court finds Plaintiff's allegations insufficient. Put simply, "[c]onclusory

14 allegations . . . are not enough to state a claim of conspiracy." *Benshoof v. Admon*,

15 No. C23-1392, 2024 WL 664012, at *3 (W.D. Wash. Feb. 16, 2024); *see also Simmons v.*

16 *Sacramento Cnty. Superior Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) ("Plaintiff's conclusory

17 allegations that the lawyer was conspiring with state officers to deprive him of due process are

18 insufficient."); *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1182 (N.D. Cal. 2022)

19 ("Generalized statements about working together do not demonstrate joint action."); *Kiss v. Best*

20 *Buy Stores*, No. C22-281, 2022 WL 17480936, at *4 (D. Or. Dec. 6, 2022), *aff'd*, No. 23-35004,

21 2023 WL 8621972 (9th Cir. Dec. 13, 2023) (holding that neither a request to comply with state

22 law, nor a request for police to arrest, are sufficient to establish joint action). Plaintiff provides

23 only bare legal conclusions that Defendants Fagan and T&C acted in concert with government

24 actors, which will not suffice to allege Section 1983 claims against non-governmental parties.

1

2.      **Government Entity Defendants**

2

Defendants City of Shoreline and King County (and Defendants Akers and Thompson in

3

their official capacities) argue that Plaintiff has failed to sufficiently allege *Monell* claims. *See*

4

Dkt. No. 59 at 9–11. They argue that Plaintiff does not allege any practices or customs that could

5

form the basis of such claims. *See id.*

6

"In order to sue a municipal entity—including employees acting within their official

7

capacities—a plaintiff must meet the oft-cited *Monell* standard, *i.e.*, the plaintiff must show that

8

the alleged injury was inflicted through the execution or implementation of the entity's 'official

9

policy.'" *Curtis v. City of Gooding*, 844 F. Supp. 2d 1101, 1109 (D. Idaho 2012) (citing *Monell*

10

*v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)). To plausibly assert a claim

11

against a municipality under *Monell*, "a plaintiff must allege (1) that a municipality employee

12

violated a constitutional right; (2) that the municipality has customs or policies that amount to

13

deliberate indifference of that right; and (3) those customs or policies were the 'moving force'

14

behind the constitutional right violation." *Hofschneider v. City of Vancouver*, 182 F. Supp. 3d

15

1145, 1151 (W.D. Wash. 2016) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

16

The Court finds that Plaintiff has not sufficiently alleged any *Monell* claims against the

17

Government Entity Defendants. While Plaintiff repeatedly invokes "practices" or "customs," but

18

simply saying so does not make it so. Plaintiff does not make factual allegations but rather legal

19

conclusions. *See, e.g.*, Dkt. No. 14 ¶ 135 (alleging "a practice or widespread custom of treating

20

[Plaintiff] as if his class had no rights because [his] religious beliefs proscribed him wearing a

21

face covering"), 153 (alleging "a practice or widespread custom of treating [Plaintiff] as if his

22

class had no rights because of [Plaintiff] exercising his right to free speech and expression").

23

Nowhere does Plaintiff allege any facts that would support the existence of an official policy, or

24

repeated and widespread behavior that could demonstrate a policy or custom. See *Coming Up,*

1    *Inc. v. City & County of San Francisco*, 830 F. Supp. 1302, 1307 (N.D. Cal. 1993) (defining an

2    official policy for Section 1983 purposes as either "a policy statement, ordinance, regulation or

3    decision officially adopted and promulgated by that body's officers" or a "custom . . . so

4    permanent and well settled as to constitute a custom or usage with the force of law" (internal

5    quotation marks and citations omitted)); *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th

6    Cir. 2011) (holding plaintiff's *Monell* claims "lack any factual allegations that would separate

7    them from the 'formulaic recitation of a cause of action's elements'" (quoting *Twombly*, 550

8    U.S. at 555)).

9    **3.    Government Official Defendants**

10    Defendants Akers and Thompson (in their individual capacities) argue that they are

11    entitled to qualified immunity. *See* Dkt. No. 59 at 12–16. They primarily argue that Plaintiff does

12    not allege the violation of any constitutional rights, though they also state briefly that even if

13    they did, the right was not clearly established at the time. *See id.*

14    "Qualified immunity shields federal and state officials from money damages unless a

15    plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and

16    (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-*

17    *Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The

18    Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the

19    earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting

20    *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).[3]

21

22

23    ---

[3] "While courts may consider qualified immunity at the pleadings stage, the Ninth Circuit has noted that
'[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision
making.'" *NAACP of San Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d 382, 395 (N.D. Cal. 2021)
(quoting *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018)). "The Ninth Circuit has also observed that, by
24    considering qualified immunity at the pleadings, 'the courts may be called upon to decide far-reaching constitutional

1       The Court finds that Plaintiff does not plausibly allege that Defendants Akers or

2   Thompson violated his constitutional rights, thus entitling them to qualified immunity on the

3   facts currently alleged.

4       As to the free exercise of religion, Plaintiff alleges that his "firmly held religious beliefs

5   require him to speak the truth at all times" and "require him to confront, expose, and seek redress

6   against liars and their lies." Dkt. No. 14 ¶¶ 18, 20. Plaintiff also alleges that his "religious beliefs

7   proscribed him wearing a face covering." *Id.* ¶ 135. But these allegations "do not permit the

8   court to infer that the [masking policy] place[s] a substantial burden on the exercise of his

9   religion." *Denis v. Ige*, 538 F. Supp. 3d 1063, 1076 (D. Haw. 2021). "The Complaint does not

10  even identify his religion," and "[i]t certainly does not describe the tenets of that religion or

11  explain how the [masking policy] affect[s] any religious practice." *Id.* "Without more, this court

12  cannot determine whether the [masking policy] coerce[s] [Plaintiff] to act in a way that is

13  contrary to his beliefs." *Id.*; *see also, e.g.*, *Gardner v. Brown*, No. C21-1256, 2023 WL

14  11022871, at *5 (D. Or. Nov. 3, 2023) ("Neither does [Plaintiff] identify the tenets of his

15  religion, allege that his sincerely held religious beliefs reject the use of face masks, nor describe

16  how the mask mandate substantially burdens the practice of his religion.").

17      As to the freedom of speech, Plaintiff appears to allege simply that he was "exercising his

18  right to free speech and expression." Dkt. No. 14 ¶ 153. But "[his] refusal to wear a mask was

19  not constitutionally protected," *Falcone v. Dickstein*, 92 F.4th 193, 208 (3d Cir. 2024), a

20  conclusion shared by "[e]very court to address the issue," *id.* at 208 n.10. *See also Denis*, 538 F.

21  Supp. at 1079 (holding that mask mandate neither targets conduct with a significant expressive

22  element nor singles out those engaged in expressive activity); *Standley on behalf of B.M.S. v.*

23

24  ---

questions on a nonexistent factual record.'" *Id.* (quoting *Kwai Fun Wong v. United States*, 373 F.3d 952, 956–57 (9th Cir. 2004)). The Court will give Plaintiff an opportunity to amend his claims to overcome this defense.

*Nelms*, No. 22-35833, 2024 WL 1793667, at *3 (9th Cir. Apr. 25, 2024) ("[T]he fact that an individual may oppose a particular regulation of conduct does not transform the act of complying with it into expressive conduct."). Plaintiff's refusal to comply with Defendant T&C's masking policy was not expressive conduct protected by the First Amendment.

As to equal protection, Plaintiff simply alleges that Defendants "conspired for the purpose of depriving, either directly or indirectly, Plaintiffs of the equal protection of the laws." Dkt. No. 14 ¶ 216; *see also id.* ¶ 234. "To state a § 1983 claim for violation of the Equal Protection Clause, 'a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001)). "The first step in equal protection analysis is to identify the [defendants' asserted] classification of groups." *Id.* (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995)). But Plaintiff does not allege any classification of groups, let alone what the classification is. Nor does he allege membership in any protected class.

Finally, to the extent Plaintiff brings Section 1983 claims for violations of the right to familial association, the right of association, or other "rights or privileges," Plaintiff does not allege any facts to support those claims.

\* \* \*

Therefore, as to all Defendants, Plaintiff's Fourth, Fifth, Seventh, Ninth, Tenth, and Eleventh Causes of Action are DISMISSED with leave to amend, to the extent they allege Section 1983 claims.

## C.    42 U.S.C. § 1985

Plaintiff appears to assert two violations of 42 U.S.C. § 1985 that overlap with Section 1983 claims. *See* Dkt. No. 14 ¶¶ 230–35 (Section 1985(2), for conspiracy to obstruct justice / equal protection), 236–42 (Section 1985(3), for conspiracy to deprive rights / deprivation of

rights or privileges). The Government Defendants do not make any new arguments about 42 U.S.C. § 1985, while the Private Defendants do. *See* Dkt. No. 43 at 19–20.

**1.     42 U.S.C. § 1985(2)**

Section 1985(2) "makes unlawful a conspiracy to deter any party or witness from attending federal court or testifying in federal court *or* a conspiracy to obstruct justice in any state court with the intent of depriving any citizen of the equal protection of the laws." *Est. of Esquivel v. Chavez*¸ No. C06-1690, 2008 WL 4821714, at *24 (E.D. Cal. Nov. 4, 2008) (emphasis in original); *see also Portman v. County of Santa Clara*, 995 F.2d 898, 908–09 (9th Cir. 1993) (parsing the "two clauses that give rise to separate causes of action"). The Private Defendants argue that none of Plaintiff's allegations about them relate to pending court matters. *See* Dkt. No. 43 at 20. The Court agrees. Indeed, none of Plaintiff's allegations relate to access to any courts or court proceedings; thus, *no* Defendants could be liable under this statute, based on the current allegations.

**2.     42 U.S.C. § 1985(3)**

"The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges or immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (9th Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)). Section 1985(3) "does not 'apply to all tortious, conspiratorial interferences with the rights of others,' but rather, only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Id.* (quoting *Griffin*, 403 U.S. at 101–02). Moreover, it "covers only conspiracies 'aimed at interfering with rights that are protected against private, as well as official, encroachment.'" *Id.* (quoting *United Brotherhood of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983)). But as the Private Defendants argue (*see* Dkt.

No. 43 at 20) and as discussed above, *see supra* Section III.B.3, Plaintiff does not allege membership in a protected class or discriminatory based thereon. Nor does Plaintiff allege a conspiracy to violate any rights protected against both private and official encroachment (as opposed to, say, the freedom of speech, which is only protected against official encroachment).

\*   \*   \*

Therefore, Plaintiff's Tenth and Eleventh Causes of Action are DISMISSED with leave to amend, to the extent they allege Section 1985 claims.

**D.    42 U.S.C. § 2000a *et seq.* (Title II of Civil Rights Act)**

Both the Private Defendants and the Government Defendants argue that Plaintiff has not satisfied the notice provision of Title II. *Compare* Dkt. No. 43 at 21–22, *with* Dkt. No. 59 at 16–17. 42 U.S.C. § 2000a-3(c) states in relevant part that "no civil action may be brought under subsection (a) before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority."

The Washington Human Rights Commission is authorized to address discrimination in public accommodations. *See* RCW 49.60.030(1)(b) (prohibiting discrimination in public accommodations); RCW 49.60.120(4) (granting commission power to investigate complaints); RCW 49.60.215(1) (detailing unfair practices in public accommodations); RCW 49.60.230 (detailing who may file a complaint with commission). Because Plaintiff has not alleged that he provided the required written notice to the Commission, his claim fails. *See, e.g.*, *Carter v. Univ. of Wash. Sch. of Dentistry*, No. C22-551, 2022 WL 3586868, at \*2 (W.D. Wash. Aug. 22, 2022) (holding Title II claim barred where no allegation of written notice).

Moreover, both the Private Defendants and the Government Defendants point out that Title II authorizes only injunctive relief as a remedy, while Plaintiff seeks only damages. *Compare* Dkt. No. 43 at 22, *with* Dkt. No. 59 at 16–17 (both citing *Newman v. Piggie Park*

1    *Enters.*, 390 U.S. 400, 402 (1968)). Plaintiff indeed seeks only damages. *See* Dkt. No. 14 at 42.

2    For this reason, too, Plaintiff's claim fails. *See Carter*, 2022 WL 3586868, at *2 (same).

3           Therefore, Plaintiff's Sixth Cause of Action is DISMISSED with leave to amend.

4    **E.    Remaining State Law Claims**

5           "When a district court 'has dismissed all claims over which it has original jurisdiction,' it

6    'may decline to exercise supplemental jurisdiction' over remaining state law claims." *Pell v.*

7    *Nuñez*, 99 F.4th 1128, 1135 (9th Cir. 2024) (quoting 28 U.S.C. § 1367(c)(3)). The Court declines

8    to exercise supplemental jurisdiction over Plaintiff's remaining state law claims here.

9           Therefore, Plaintiff's First, Second, Third, and Eighth Causes of Action are DISMISSED, to

10   the extent they assert state law claims. Plaintiff may replead these claims.

## V.    CONCLUSION

12          Accordingly, it is hereby ORDERED:

13   (1)    Defendants Town & Country Markets and Evan B. Fagan's Motion to Dismiss

14          (Dkt. No. 43) and Defendants City of Shoreline and King County Defendants'

15          Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c) (Dkt. No. 59) are GRANTED

16          with leave to amend. Should Plaintiff choose to amend, the Amended Complaint

17          SHALL be filed **by January 21, 2025**.

18   (2)    Plaintiff's Motions to Stay (Dkt. Nos. 62, 67) are DENIED. Plaintiff may renew his

19          request for a stay, or otherwise request an extension of time, as appropriate.

20   (3)    Plaintiff's remaining motions (Dkt. Nos. 71–73, 79) are STRICKEN as moot.

21          Dated this 20th day of December 2024.

Tana Lin
United States District Judge