# Appendix  **A**

The "Honorable" Jamal Whitehead

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

*In re:*

Mr. Kurt A. Benshoof,

                              Petitioner,

   v.

WARDEN,
CITY OF SEATTLE,
KING COUNTY,

                              Respondents.

Case No.  2:24-cv-01110-JNW

AMENDED PETITION FOR
WRIT OF HABEAS CORPUS

28 U.S.C. §§ 2241; 2254

# INTRODUCTION

Petitioner Kurt Benshoof ("Benshoof") moves the Court to issue a Writ of habeas corpus **_forthwith_**[1] to arrest the unlawful imprisonment of Benshoof by City of Seattle ("City") and King County ("County") officials under color of law, in violation of his federally protected rights.  While Benshoof's ongoing imprisonment can be directly traced back to the perjury and fraud initiated in King County Superior Court

---

[1] https://www.law.cornell.edu/wex/forthwith  "immediately; promptly; without delay; within a reasonable amount of time under the circumstances."

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1
2
3
4
5
6

("KCSC") Family Court No. 21-5-00680-6 SEA by the mother of Benshoof's minor son, Jessica R. Owen ("Owen"), Benshoof's imprisonment is the predictable result of this Court's prior refusals to fairly and impartially adjudicate his repeated petitions for injunctive relief to prohibit the constitutional violations which have been perpetrated the previous five months.

7
8
9
10
11
12
13
14

Beyond the irreparable and ongoing harm to Benshoof and his minor son resultant from the widespread government corruption evidenced herein, the Court should take heed of additional implications relating to our federal judiciary. For twelve years, the Department of Justice and the Seattle City Attorney's office have squandered nearly a *quarter of a billion dollars* in a dog-and-pony show, litigation billed to the public as addressing widespread allegations of biased policing and excessive use of force by Seattle Police Department ("SPD") officers.

15
16
17
18
19
20
21
22
23
24
25
26

Coincidentally, on June 15, 2023, Benshoof filed motion for leave to file an amicus curiae brief (Ex. #0415-0419), hoping to alert Judge James L. Robart to the fact that the vast allocation of financial and human resources had only put lipstick on a pig. No one from the Seattle Office of Police Accountability, the City Attorney's Office, nor the U.S. District Attorney's Office responded to Benshoof's repeated offers to provide proof that biased policing and excessive use of force was widespread and ongoing. Instead, City attorneys and police continued to retaliate against Benshoof, which lead to thirty-five (35) SPD police and SWAT, along with a helicopter, executing a dawn assault on Benshoof's home church on July 3, 2024, predicated upon

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 2 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

a facially invalid search warrant, which was itself predicated upon Owen's collateral and extrinsic family court fraud.

Fortuitously, corrupt prosecutors and police were reckless enough to unlawfully arrest Benshoof and then prosecute him in September: Benshoof was finally afforded the opportunity to question Owen on the witness stand on September 24, 2024. Not only was Owen caught in her three years of perjury, but City prosecutor Katrina Outland ("Outland") was exposed suborning Owen's perjury.

The custom and practice of City and County officials of religious discrimination and retaliation against Benshoof for the lawful exercise of his religious beliefs was designed to intimidate and silence him for his attempts to expose widespread systemic corruption in our courts and his subsequent petitions for redress. To anyone reading this expose who might consider objecting to its length, that's a *you* problem, not Benshoof's.

More than three years of malfeasance, misfeasance, and nonfeasance by state and federal officials is the direct and proximate cause governing the length of this petition. In other words, if public officials had not allocated vast financial and personnel resources for more than three years by aiding and abetting the perjuring prostitutes who kidnapped Benshoof's son, this petition would not have been born into existence in the first place. Consider the exhaustive detailing of this petition to serve as constructive notice of Benshoof's forthcoming lawsuit. #FAFO

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

# LIST OF PROCEEDINGS

The order of the United States District Court for the Western District of Washington, dated June 28, 2024, denying Petitioner's sixth motion for temporary restraining order is attached hereto (Ex. #0522); docket number 2:23-cv-1392-JNW.

The order of the United States District Court for the Western District of Washington, dated October 31, 2023, denying Petitioner's second petition for preliminary injunction, is attached hereto (Ex. #0526); docket number 2:23-cv-1392-JNW.

The order of the United States District Court for the Western District of Washington, dated October 6, 2023, denying Petitioner's first motion for temporary restraining order, is attached hereto (Ex. #0542); docket number 2:23-cv-1392-JNW.

The order of the United States District Court for the Western District of Washington, dated June 12, 2023, dismissing Petitioner's petition for writ of habeas corpus, is attached hereto (Ex. #0552); docket number 2:23-cv-00751-RAJ.

The letter from the Washington Supreme Court Clerk, dated July 25, 2024, converting Benshoof's next friend Petition for Writ of Habeas Corpus to a Washington Personal Restraint Petition, is attached hereto (Ex. #0514) docket number 103392-3.

The order of the Washington Supreme Court, dated May 8, 2023, dismissing Benshoof's petition for writ of habeas corpus, is attached hereto (Ex. #0555); docket number 101964-5.

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

The order of King County Superior Court, dated March 4, 2024, denying Benshoof's request for leave to file petition for writ of habeas corpus, is attached hereto (Ex. #0559); docket number 22-2-15958-8 SEA.

The order of King County Superior Court, dated February 5, 2024, denying Benshoof's petition for writ of prohibition, is attached hereto (Ex. #0561); docket number 23-2-23752-8 SEA.

The order of King County Superior Court, dated March 24, 2023, denying Benshoof's motion to vacate, is attached hereto (Ex. #0563); docket number 21-5-00680-6 SEA.

The order of King County Superior Court, dated July 21, 2022, denying Petitioner's petition for writ of habeas corpus, is attached hereto (Ex. #0567); docket number 22-2-11112-7 SEA.

# JURISDICTION

Pursuant to the Habeas Corpus Act of February 5, 1867, Ch. 28, § 1, 14 Stat. 385, this Court has original jurisdiction to grant a writ of habeas corpus.

Pursuant to 28 U.S.C. § 1331 this Court has jurisdiction and is required to adjudicate federal questions involving constitutional violations of Petitioner's rights.

Pursuant to U.S.C. § 1651 this Court has original jurisdiction.

Pursuant to U.S.C. §§2241; 2254, this Court has jurisdiction to grant Petitioner's writ of habeas corpus.

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 5 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Pursuant to U.S.C. § 2283 this Court has jurisdiction to enjoin proceedings in Seattle Municipal Court and King County Superior Court pursuant to the express authorization of Congress under 42 U.S.C. § 1983.

## RELATED CASES

**U.S. Court of Appeals for the Ninth Circuit**

No. 24-4223
Benshoof, et al., *Appellants,* v. Admon, et al., *Appellees.*

No. 24-5188
Benshoof, et al., *Appellants,* Seattle School District No. 1, Appellees.

No. 24-7298
Benshoof, et al., *Appellants,* Ferguson, *Appellee.*

**U.S. District Court for the Western District of Washington**

WAWD No. 2:24-cv-00808-JHC
Benshoof, et al., *Plaintiffs,* v. Ferguson, et al., *Defendants.*

**Washington Supreme Court**

No. 103665-5
Kurt Benshoof, *Petitioner,* v. WARDEN, *Respondent.*

No. 103401-6
Kurt Benshoof, *Petitioner,* v. WARDEN, *Respondent.*

No. 103392-3
Kurt Benshoof, *Petitioner,* v. WARDEN, *Respondent.*

**Washington Court of Appeals, Division I**

No. 86468-8
Kurt Benshoof, *Appellant,* v. CITY OF SEATTLE, et al., *Appellee.*

No. 86467-0
Kurt Benshoof, *Appellant,* v. CITY OF SEATTLE, et al., *Appellee.*

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 6 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

No. 86465-8-I
Kurt Benshoof, *Appellant,* v. Jessica Owen, *Appellee.*

No. 85092-0-I
Kurt Benshoof, *Appellant,* v. Nathan Cliber, et al., *Appellees.*

## King County Superior Court

No. 24-1-02680-7 SEA
STATE OF WASHINGTON, *Plaintiff,* v. Kurt Benshoof, *Defendant.*

No. 24-2-06359-3 SEA
Kurt A. Benshoof, *Plaintiff,* v. Gregory C. Narver, *Defendant.*

No. 23-2-23752-8 SEA
Kurt Benshoof, *Plaintiff,* v. CITY OF SEATTLE, *Defendant.*

No. 21-5-00680-6 SEA
Jessica R. Owen, *Petitioner,* v. Kurt A. Benshoof, *Respondent.*

## Seattle Municipal Court

No. 671384
CITY OF SEATTLE, *Plaintiff,* v. Kurt Benshoof, *Defendant.*

No. 675405
CITY OF SEATTLE, *Plaintiff,* v. Kurt Benshoof, *Defendant.*

No. 676175
CITY OF SEATTLE, *Plaintiff,* v. Kurt Benshoof, *Defendant.*

No. 676207
CITY OF SEATTLE, *Plaintiff,* v. Kurt Benshoof, *Defendant.*

No. 676216
CITY OF SEATTLE, *Plaintiff,* v. Kurt Benshoof, *Defendant.*

No. 676463
CITY OF SEATTLE, *Plaintiff,* v. Kurt Benshoof, *Defendant.*

No. 676492
CITY OF SEATTLE, *Plaintiff,* v. Kurt Benshoof, *Defendant.*

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 7 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

# Table of Contents

LIST OF PROCEEDINGS.................................................................................. 4

JURISDICTION ............................................................................................... 5

RELATED CASES ............................................................................................ 6

I. STATEMENT OF FACTS.......................................................................... 13

  A. Benshoof's Religious Beliefs ................................................................ 13

  B. Family Background ............................................................................... 14

  C. KCSC No. 21-2-11149-8 SEA .............................................................. 16

    1)  Petition for Order of Protection ...................................................... 16

    2)  SPD Incident 2021-003578 ............................................................. 18

  D. KCSC No. 21-5-00680-6 SEA .............................................................. 19

    1)  SPD Incident 9/24/2021 ................................................................. 21

    2)  Temporary Restraining Order ......................................................... 22

    3)  Temporary Parenting Plan .............................................................. 22

    4)  Final Restraining Order .................................................................. 22

  E. Seattle Municipal Court – Charges Filed ........................................... 23

    1)  SMC No. 669329 ............................................................................ 23

    2)  SMC No 671384 ............................................................................. 25

    3)  SMC No. 675405 ............................................................................ 26

    4)  Additional Malicious Prosecutions ................................................. 26

    5)  Legal Challenges Unavailable ........................................................ 26

  F. Search Warrant ................................................................................... 27

    1)  Application for Search Warrant ...................................................... 27

    2)  Facially Invalid Warrant ................................................................ 34

  G. Raid of Benshoof's Home Church ........................................................ 36

  H. King County Jail .................................................................................. 36

    1)  Religious Discrimination – Hate Crimes ......................................... 36

    2)  Denied Supplies .............................................................................. 37

    3)  Denied Pro Se Equipment ............................................................... 38

    4)  ADA Violations ............................................................................... 39

    5)  Denied Telephone Access ................................................................ 41

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 8 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

*6)* ***Denied Ability to Mail Court Documents*** ........................................ 42

*7)* ***Bail Issues – EHD*** ................................................................................ 43

**I. Seattle Municipal Court - Constitutional Violations** ............................ 44

*1)* ***Bail Hearing*** ......................................................................................... 44

*2)* ***Motions to Dismiss not Heard*** ........................................................... 44

*3)* ***Denied Discovery*** ................................................................................. 46

*4)* ***Voi Doir*** ................................................................................................ 46

*5)* ***Pre-trial Motions*** ................................................................................. 47

*6)* ***Denied Frank's Hearing*** ..................................................................... 47

*7)* ***Denied Counsel*** ................................................................................... 48

*8)* ***Denied Witnesses*** ................................................................................ 48

*9)* ***Trial in absentia*** ................................................................................. 48

**J. SMC 671384 – Owen Perjury** ................................................................ 49

*1)* ***Parenting Covenant*** ............................................................................. 49

*2)* ***Withholding of A.R.W.*** ........................................................................ 50

*3)* ***Child Abuse*** .......................................................................................... 51

*4)* ***Biological Father*** ................................................................................. 51

*5)* ***Presumption of Fatherhood*** ................................................................ 52

*6)* ***Acknowledgement of Fatherhood*** ...................................................... 52

*7)* ***Father's Rights*** .................................................................................... 54

*8)* ***Prostitution*** ......................................................................................... 55

**K. SMC No. 671384 - Ellis Perjury** ........................................................... 55

*1)* ***Witness Interview*** ............................................................................... 56

*2)* ***Trial Testimony*** ................................................................................... 56

**L. Lerman Perjury and False Statements** ................................................... 57

*1)* ***911 Call – January 23, 2023*** ............................................................. 57

*2)* ***Ellis Interview – July 10, 2024*** .......................................................... 58

**M. KCSC No. 24-1-02680-6** ........................................................................ 59

*1)* ***Denied Franks Hearing*** ...................................................................... 59

**N. State Court Habeas Remedy Unavailable** ............................................... 60

*1)* ***King County Superior Court*** ............................................................... 60

*2)* ***Washington Supreme Court*** ................................................................ 62

**O. Federal Court Remedy Denied** ................................................................. 62

    *1) WAWD No. 2:23-cv-00751-RAJ* ........................................................... 63

    *2) WAWD No. 2:23-cv-01392-JNW* ......................................................... 63

**P. Prosecutorial Misconduct** ......................................................................... 65

**REASONS FOR GRANTING THE WRIT** ................................................... 66

**II. Federal Rights Violations** ........................................................................ 66

  **A. Case Summary Corollary** ..................................................................... 67

  **B. First Amendment Violations – Irreparable Harm** ............................ 71

    *1) Religious Retaliation – Family Court* .............................................. 72

    *2) Free Speech - Petitions For Redress Retaliation* ............................ 73

    *3) Religious Retaliation - SPD* ........................................................... 75

    *4) Religious Retaliation - KCCF* ......................................................... 75

    *5) Religious Retaliation - SMC* ........................................................... 76

  **C. Fourth Amendment Violations** ........................................................... 77

    *1) SMC Arrest Warrant Void* .............................................................. 77

    *2) Application for Search Warrant* ...................................................... 78

    *3) Search Warrant – Facially Invalid* ................................................ 84

    *4) Excessive Force* ............................................................................... 88

    *5) Trespass* ........................................................................................... 88

  **D. Fifth Amendment Violations** .............................................................. 90

    *1) Double Jeopardy Clause* .................................................................. 90

    *2) Exculpatory Evidence* ...................................................................... 93

  **E. Sixth Amendment Violations** .............................................................. 94

    *1) Right to Attorney Representation* ................................................... 94

    *2) Right to Self-Representation* ........................................................... 96

  **F. Eighth Amendment Violations** ............................................................ 96

    *1) Excessive Bail* .................................................................................. 96

    *2) Cruel Punishments* .......................................................................... 98

    *3) Detention In Communicado* ............................................................ 100

  **G. Fourteenth Amendment Due Process Violations** ........................... 101

    *1) Absence of Personal Jurisdiction* ................................................... 102

    *2) Absence of Subject Matter Jurisdiction* ......................................... 102

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 10 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

3) *Perjury and Fraud – Owen* ................................................. 102

4) *Denial of Frank's Hearing* ................................................ 104

5) *Motion to Dismiss not Heard* ......................................... 107

6) *Denied Discovery* .............................................................. 108

7) *Voi Doir* .............................................................................. 108

8) *Denied Pre-trial Motions* ................................................. 109

9) *Biased Tribunal* ................................................................ 109

10) *Denied Witnesses* ............................................................. 109

11) *Trial in absentia* ............................................................... 110

H. Fourteenth Amendment Equal Protection Violations ............... 111

III. AUTHORITY ................................................................................. 111

A. Prima Facia Case .......................................................................... 112

B. Legal Right – Supremacy Clause ................................................ 112

C. Res Judicata Proscribed .............................................................. 114

D. Federal Questions Mandate ....................................................... 115

E. Federal Habeas Authority .......................................................... 116

1) *Pre-trial Detention* ............................................................ 117

2) *Pre-sentencing Custody* ................................................... 118

F. Equitable Right – 42 U.S.C. § 1983 ........................................... 119

G. Prior District Court Abuses of Discretion ................................ 120

1) *Domestic Relations Exception Proscribed* ..................... 120

2) *Younger Abstention Proscribed* ...................................... 121

3) *State Court Exhaustion* .................................................... 124

H. Unlawful Restraints - Family Court .......................................... 126

1) *No Domestic Relations - No Jurisdiction* ....................... 126

2) *No Judicial Immunity* ...................................................... 126

3) *Perjury* ................................................................................ 127

4) *Collateral and Judicial Estoppel* ..................................... 127

5) *No Justiciable Issue* .......................................................... 128

6) *Orders Void ab initio* ........................................................ 128

7) *No Dissolution Decree* ..................................................... 130

8) *Vagueness Doctrine* .......................................................... 130

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 11 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

*9)*  *Collateral & Extrinsic Fraud* ................................................................. 131

**I.  Unlawful Imprisonment - Municipal Court** ................................................. 132

  *1)*  *No Personal Jurisdiction* ............................................................... 132

  *2)*  *No Subject Matter Jurisdiction* .................................................. 133

**J.  Prosecutorial Misconduct** ............................................................................ 134

  *1)*  *No Factual Investigation* .............................................................. 134

  *2)*  *Perjury and Fraud* ......................................................................... 134

  *3)*  *Retaliation – Malicious Prosecutions* ........................................ 135

**K.  State and Federal Conspiracy** ..................................................................... 140

  *1)*  *King County Actors* ........................................................................ 140

  *2)*  *Washington Supreme Court Actors* ............................................. 141

  *3)*  *U.S. District Court Actors* ............................................................ 143

**V.  The Equities Require Issuance of Writ** ....................................................... 144

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 12 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

# I.  STATEMENT OF FACTS

**A.  Benshoof's Religious Beliefs**

1.      Benshoof's firmly held religious beliefs are a spiritual Covenant with God.  ("spiritual Covenant").  Benshoof's spiritual Covenant requires him to speak the truth.

2.      Benshoof's spiritual Covenant requires him to confront, expose, and seek redress against liars and their lies, particularly when those liars seek to violate the First Amendment by denying others their right, endowed by their Creator, to: (1) free exercise of religion; (2) petition for redress of grievances; and (3) familial association.

3.      Benshoof's spiritual Covenant requires him to confront, expose, and seek redress against liars and their lies, particularly when those liars seek to violate the Fourteenth Amendment by denying others the right to due process and equal protection under the law.

4.      Benshoof's spiritual Covenant holds that "an individual who breaks a[n] [order] that conscience tells him is un[lawful], and who willingly accepts the penalty of imprisonment in order to arouse the conscience of the community over its injustice, *is in reality expressing the highest respect for law.*" —*Rev. Martin Luther King, Jr.*, Letter from Birmingham Jail, April 16, 1963.

5.      When corrupt public officials, corrupt attorneys, or corrupt private individuals, violate the foregoing tenets of Benshoof's beliefs, Benshoof is presented with a Faustian bargain, either: (1) violate his spiritual Covenant to comply with the

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

unlawful demands of criminals; or (2) uphold his spiritual Covenant and be subjected to threats of unlawful imprisonment and retaliatory financial sanctions. "In times of universal deceit, speaking the truth becomes a revolutionary act." —*George Orwell.*

6.    Benshoof's spiritual Covenant holds that the "U.S. Constitution and Washington Constitution are sacred documents embodying the teachings of Christ, enshrining the natural law of Creation as enforceable contracts binding upon all duly sworn thereto; both *malum in se* and *malum prohibitum*. A violation of a public official's oath constitutes a fraudulent violation of the contract between a public servant and every citizen, a contract to which Benshoof is a third-party beneficiary.

7.    Benshoof's firmly held spiritual beliefs constitute a class of one for the purposes of this petition. *Village of Willowbrook v. Olech*, 528 U.S. 562, at 566 (2000) Benshoof's firmly held beliefs constitute a protected class, prohibited from disparate treatment, discrimination, and invidious discriminatory retaliation by government officials or private individuals in joint action with state actors, regardless of whether Benshoof's beliefs are deemed orthodox. *Griffin v. Breckenridge,* 403 U.S. 88 (1971)

**B.  Family Background**

8.    Benshoof and Owen discovered she was pregnant with Benshoof's son, A.R.W., in August 2008; thereupon, Benshoof and Owen entered a verbal parenting contract at common law ("Covenant") after notice, consideration, and accord; thereby exercising their unlimited right to contract as private individuals.

9.    Under their Covenant, they would henceforth have full, equal and inalienable rights as parents of their son-to-be, sharing all significant decisions

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 14 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

regarding A.R.W.'s care and upbringing, such as education, family scheduling, medical care, and living arrangements.

10.     Though Benshoof and Owen never married, they raised A.R.W. amicably for the following twelve years, prioritizing their son's well-being and sharing equally in all significant decisions regarding their son.  Benshoof had good cause to believe that Owen would never violate their Covenant: doing so would harm A.R.W., and Benshoof did not believe Owen would ever be so selfish as to knowingly harm their son.

11.     Benshoof and Owen have never been parties to a marriage, domestic partnership, legal separation, or a declaration of invalidity.  Benshoof has never yelled at A.R.W., nor threatened corporal punishment, let alone spanked his son.

12.     In September 2020, Owen moved out of the family home to buy a house with her girlfriend, Magalie E. Lerman ("Lerman").

13.     In August 2021 relations between Benshoof and Owen deteriorated when Benshoof discovered that Owen had violated their Covenant by secretly making unilateral medical decisions, injecting A.R.W. with a Pfizer gene therapy treatment for a disease that A.R.W. did not have.

14.     Benshoof showed A.R.W. the Vaccine Adverse Event Reporting System data at cdc.gov and showed A.R.W. that the Pfizer treatment was still in Phase Three of its clinical trial. (*See* https://clinicaltrials.gov/ct2/show/NCT04368728)  To date, Pfizer has not completed Phase Three.  A.R.W. realized that Owen had lied that the gene therapy treatment was "safe" and "approved."  A.R.W. was shocked that Owen

*coerced* him with lies by telling A.R.W. that he would not be able to attend school, nor play with any of his friends, unless he received the "safe" and "approved" Pfizer BioNTech injection.

15.     A.R.W. chose not to go back over to Owen's house, stopped returning Owen's texts, and hung up the phone on Owen when she called him.  Owen, instead of accepting Benshoof's invitation to come over to Benshoof's house for a family discussion with their son, Owen threatened Benshoof that she would "bring a police escort to pick [A.R.W.] up, repossess the FJ and evict you.  Fucking put [A.R.W.] on the phone now.  All these things are within my power."  Benshoof texted Owen, "Did you just threaten me?" Owen responded, "Definitely." (Ex. #0390)  When Owen's threats didn't browbeat Benshoof, Owen attempted to cut off all contact between father and son by seeking an immediate restraining order against Benshoof five days later.

**C.  KCSC No. 21-2-11149-8 SEA**

### *1) Petition for Order of Protection*

16.     Owen truthfully declared on August 23, 2021, in her TRO petition that: (1) Owen and Benshoof are the parents of A.R.W. (Ex. #0021); (2) A.R.W. is related to Benshoof as his child (Ex. #0022); and (3) Benshoof had raised A.R.W. his entire life. (Ex. #0027) In her TRO petition, Owen also sought to unlawfully seize possession of Benshoof's 2011 Toyota FJ Cruiser (Ex. #0023).

17.     In her petition, Owen claimed that **six years prior** Benshoof grabbed her arm and left a tiny bruise on her right bicep and accused Benshoof of "**hitting**

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 16 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

our child's head on the wall."  (Ex. #0025) However, in her 2015 report to the police, Owen stated that Benshoof "**bumped** A.R.W. into a wall." (Ex. #0038)

18.     In Owen's accompanying declaration filed on August 21, 2021, she admitted that **she** had retaliated against Benshoof "by slapping [Benshoof] repeatedly on the arm" on November 10, 2015. (Ex. #0034; #0052)  Owen failed to mention that she first hit Benshoof in the face repeatedly, and then hit Benshoof in the arms when Benshoof covered his face in defense. (Ex. #0034; #0052; #0360 ¶1)

19.     As Benshoof's testimony recounted the events of December 7, 2015, Owen was screaming at Benshoof, trying to grab A.R.W. from Benshoof's arms, and blocking Benshoof's ability to leave the house.  When Benshoof sought to escape by running down the hallway, A.R.W.'s head accidentally bumped against the doorway to the hall.  Benshoof testified that he "had [AR.W. in his left arm, and with my right hand, I grabbed her---it would be her upper **left** arm simply to hold her at enough distance so she couldn't pull [A.R.W.] from my hands." (Ex. #0077 no. 5; #0357)  It wasn't until 2022 that Benshoof realized that Owen had claimed her **right** arm was bruised, not her **left.**

20.     A.R.W.'s sworn declaration confirmed Benshoof's testimony that Benshoof had: (1) grabbed Owen's "upper **left** bicep to keep her away"; (2) accidentally "bumped [A.R.W.'s] head against the wall or door frame because [Benshoof] was running from [Owen] to get out of the house"; and (3) Owen "lied to police that [Benshoof] grabbed [Owen] on her right arm and bruised it." (Ex. #0077 nos. 6-8)

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

21.     On September 3, 2021, at 10:32am a full denial order was issued after Benshoof testified that he had never hit nor threatened anyone, and that Owen had physically attacked Benshoof on multiple occasions. "The court found [Benshoof's] testimony to be credible regarding incidents alleged by [Owen] in 2015." (Ex. #0305) Benshoof obtained a copy of the denial order from the King County Superior Court several minutes later. (Ex. ##305-308)

### 2) SPD Incident 2021-003578

22.     Around 12:00pm on September 3, 2021, Lerman stated to SPD officers that: (1) Benshoof had no rights as the father of A.R.W.; (2) Benshoof's 2011 Toyota FJ Cruiser belonged to Owen; (3) Benshoof is mentally unstable; (4) Benshoof is a racist; (5); Benshoof is a misogynist abuser; (6) Benshoof is a criminal and danger to society because Benshoof does not wear a face mask.

23.     At approximately 330pm, SPD Officers Gabriel Ladd #8461 ("Ladd") and Trevor Willenberg #8661 arrested Benshoof for being in violation of the TRO, yet the TRO stated in bold lettering on the first page, **TERMS OF THIS ORDER EFFECTIVE UNTIL: End of the hearing, date noted above."** (Ex. #0389)

24.     Benshoof provided Ladd the denial order, explaining that Benshoof had testified that Owen had committed perjury to steal Benshoof's 2011 Toyota FJ Cruiser and seize custody of A.R.W. Benshoof informed Ladd that the denial order stated, "The court found [Benshoof's] testimony to be credible." (Ex. #0305)

25.     Benshoof offered to show Ladd text message evidence in Benshoof's cell phone that on August 16, 2021, Owen had attempted to extort Plaintiff of $19,000 by

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 18 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

explicitly threatening to: (1) steal Plaintiff's FJ Cruiser; (2) kidnap A.R.W.; (3) evict Benshoof from his home if Benshoof did not give Owen $19,000. (Ex. #0398)

26.     Ladd refused to look at Benshoof's evidence and physically restrained Benshoof while Lerman stole Benshoof's FJ Cruiser and kidnapped A.R.W. by carrying him away in Benshoof's 2011 Toyota FJ Cruiser. Ladd did not have a warrant to arrest Benshoof, nor was there a protection order authorizing Ladd to arrest Benshoof without a warrant, pursuant to RCW 10.31.100.

27.     SPD Policy Manual 5.001.12 states that every officer "must report any information they discover that may exonerate a person who is under investigation or has been charged with or convicted of a crime."

28.     Owen's and Lerman's conspiracy thereafter employed their friend, Defendant Owen Hermsen ("Hermsen"), in the furtherance of additional attempts to extort Benshoof for $19,000 via text messages, conditional for Benshoof regaining possession of his FJ Cruiser and Benshoof seeing A.R.W. (Ex. #0437)

29.     On September 14, 2021, Benshoof tried to speak with A.R.W. on the public street outside Owen's home. Owen called 911 and stated to Seattle police Department officers that Benshoof and Owen "share custody of [A.R.W.]…***their son.***" (Ex. 0039) Simultaneously, Owen claimed that she was the sole "legal guardian" of A.R.W. RCW 26.33.020(11) defines "legal guardian" as "a person *other than a parent.*"

**D. KCSC No. 21-5-00680-6 SEA**

30.     On September 20, 2021, Owen and her family law attorney, Defendant Nathan Cliber ("Cliber"), filed a Petition to Decide Parentage ("parentage petition"),

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

King County Superior Court Case No. 21-5-00680-6 SEA. Owen and Cliber did not provide family court evidence that Benshoof and Owen had ever been married, divorced, nor in a state domestic partnership pursuant to RCW Title 26 *Domestic Relations*.

31.    In her September 22, 2021, declaration, Owen acknowledged, "I know that [A.R.W.] loves his dad and that he'll be devastated if he never sees Kurt again." (Ex. #0053)

32.    Owen's parentage petition averred under penalty of perjury that Benshoof: (1) was ***not*** the biological father of A.R.W.; (2) had ***never*** lived with A.R.W., and (3) had ***never*** held out A.R.W. as his son. All three sworn statements evidenced Owen's inconsistent material statements of fact under penalty of perjury between her TRO and parentage petition in King County Superior Court a month apart. Among Owen's exhibits she included three Seattle Police Department incident reports spanning November 2015 to September 14, 2020, which all affirmed that A.R.W. is Benshoof's son. (Ex. #0037-0039)

33.    On September 22, 2021, Owen again reversed course, contradicting herself by declaring under penalty of perjury, "Kurt...acted as [A.R.W.'s] father for [A.R.W.'s] entire life." (Ex. #0041) Owen also stated, "We moved in together in July of 2008. [A.R.W.] was born nine months later..." (Ex. #0042) "[Benshoof] always insisted on being treated as A.R.W.'s father and that A.R.W. was his." (Ex. #0042) "[In September of 2020] I finally moved out of our shared residence..." (Ex. #0043)

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

34. Keenan repeatedly denied Benshoof's right to enter the courtroom in violation of Wash. Const. art I §§ 10, 22.

### 1) SPD Incident 9/24/2021

35. On the morning of Friday September 24, 2021, Benshoof drove to the street of Owen's house to take A.R.W. to school and speak with his son: Benshoof was unable to reach A.R.W. by phone or text.

36. Benshoof called 911 for a wellness check on A.R.W. and SPD Officers Kieran Barton #8747 ("Barton") and Adam Beatty #7453 ("Beatty") responded to Owen's home. Owen stated to Seattle Police Department officers that A.R.W. was related to Benshoof as his "child" yet Owen claimed she was sole "legal guardian" of A.R.W. Barton and Beatty claimed that Benshoof had no parental rights as the father of A.R.W. because Owen was the sole "legal guardian" of A.R.W., a legal impossibility under RCW 26.33.020(11), as only a person "other than a parent" may be appointed a "legal guardian" by court order.

37. Benshoof attempted to provide Barton and Beatty with verified documentation evidencing that: (1) Benshoof had full parental rights; (2) Owen and Lerman were unlawfully withholding A.R.W. from Benshoof; and (3) Owen had made false and misleading statements to Barton and Beatty. *See* RCW 9A.76.175)

38. Barton and Beatty refused to take, or even look at, the evidentiary documents presented by Benshoof. Beatty articulated a practice and widespread custom of the SPD regarding Benshoof, "We're not taking anything from you. We

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 21 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

know you're trying to set us up." Beatty and Barton threatened Benshoof with arrest if Benshoof returned to the public street bordering Owen's home.

### 2) Temporary Restraining Order

39.     Owen obtained a restraining order against Benshoof on September 28, 2021, by making inconsistent material statements of fact under oath.    Cliber suborned Owen's perjury in Owen's sworn Declaration and Petition to Decide Parentage. (Ex. #0062; #0069)

### 3) Temporary Parenting Plan

40.     Judge David Keenan ("Keenan") issued a temporary parenting plan, despite having no evidence of "dissolution of marriage or domestic partnership, declaration of invalidity, or legal separation."   RCW 26.09.004(3)(4) states that temporary and permanent parenting plans are for "an action for dissolution of marriage or domestic partnership, declaration of invalidity, or legal separation." Benshoof objected to family court's absence of jurisdiction, as Benshoof and Owen have never been party to "domestic relations."

### 4) Final Restraining Order

41.     On October 21, 2022, Owen and Cliber obtained a Final Restraining Order from Keenan, issued pursuant to RCW 26.09.060, which threatened Benshoof with arrest under RCW 7.105. (Ex. #0071)

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

42. Keenan did not have evidence of a "dissolution of marriage or domestic partnership, legal separation, or declaration of invalidity" between Benshoof and Owen to issue a restraining order pursuant to RCW 26.09.050(1); 26.09.060(1)(a)(b),

43. RCW 7.105.310 (5) states an "order *shall* specify the date the order expires." The Final Restraining Order stated that it ended on two dates: *either* October 21, 2023, or September 28, 2027. (Ex. #0071)

44. Benshoof was denied his right to enter the courtroom and testify on October 21, 2022, to expose that Cliber suborned Owen's perjury. Keenan denied Benshoof entrance to the courtroom in violation. of Wash. Const. art I §§ 10, 22. Keenan denied Benshoof's right to testify before a jury pursuant to Wash. Const. art I § 21.

45. Under the terms of the Final Restraining Order, Keenan subjected Benshoof to immediate arrest for effecting Fed.R.Civ.P. 4 service of process upon Owen, *unless* Benshoof hired Pegasus Process Servers or ABC Legal Services. (Ex. #0073) Both Pegasus Process Servers and ABC Legal Services then refused to do business with Benshoof.

## E. Seattle Municipal Court – Charges Filed

### 1) SMC No. 669329

46. On July 6, 2022, A.R.W. ran away from Owen's home to return to Benshoof. SPD forced A.R.W. to return to Owen's. In early August 2022, A.R.W. considered suicide because he didn't know if he would be forced to stay at Owen's until he turned eighteen years old. (Ex. #0078 ¶40)

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 23 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

47.    On November 15, 2022, Benshoof received a letter from the City in his mailbox alleging he was charged with violating RCW 7.105.450.  The letter stated a hearing was scheduled for November 16, 2022.  Prior to the hearing on November 16, 2022, Benshoof filed a motion to dismiss for lack of personal jurisdiction, citing the City's violation of RCW 35.20.270(1) and failure to serve legal process. (Ex. #0461-0466)  Benshoof filed a motion for change of venue on the grounds that municipal judges had repeatedly denied Benshoof's right to appear in person for the previous two years. (Ex. #0468-0471)

48.    On November 16, 2022, at 230pm, Benshoof appeared by Special Appearance via WebEx before Defendant Judge Willie Gregory ("Gregory").  Benshoof challenged personal jurisdiction, citing RCW 35.20.270(1).  The City failed to provide evidence that the City had legally served Benshoof pursuant to RCW 35.20.270(1).

49.    The City claimed that Benshoof had violated the Final Restraining Order in King County Superior Court case no. 21-5-00680-6.  RCW 7.105.050(1)(a) states that a protection order violation allegation "must be transferred" to superior court when a "superior court has exercised jurisdiction over a proceeding involving the parties" or (d) "when the victim [A.R.W.] to the petition is under 18 years of age."

50.    Gregory tautologically stated, "the court has jurisdiction" and set bail at $10,000 and issued a restraining order against Benshoof.

51.    On June 21, 2023, Benshoof appeared by WebEx before Defendant Judge Jerome Roache ("Roache").  City prosecutor, Defendant Katrina Outland ("Outland"), motion to issue a $100,000 warrant for Benshoof's arrest.  Roache issued

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 24 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

warrant #990437083 in the amount of $50,000 for Benshoof's "failure to appear." The worksheet stated that Benshoof **had** appeared. (Ex. #0476)

### 2) SMC No 671384

52. Between September 2022 and January 23, 2023, Benshoof and A.R.W. used the Discord messaging app to secretly communicate with each other. Benshoof sent his son funny memes to keep A.R.W. from killing himself due to the mental and emotional abuse of being estranged from his father.

53. On January 23, 2023, A.R.W. again ran away from Owen's house to return to Benshoof. When the police arrived at Benshoof's home, the police refused to look at Benshoof's evidence of Owen's perjury, fraud, threats, kidnapping, extortion, and theft. Police again forced A.R.W. to return to Owen's.

54. On March 14, 2023, the City filed eighty-nine (89) charges of "domestic violence" because Benshoof texted with A.R.W. Outland submitted *some* text messages between Benshoof and A.R.W. to obtain an arrest warrant. Outland did *not* submit as evidence texts from A.R.W. to Benshoof which evidenced that A.R.W.: (1) wants to escape Owen's house to return home to Benshoof; (2) believes Owen is suffering from mental illness and is a pathological liar; (3) heard Owen and Lerman state their intent to extort Benshoof for $100,000; (4) wants Benshoof to continue litigation against Owen and Lerman to facilitate A.R.W. returning home to Benshoof; and (5) considered killing Owen to stop Owen's abuse of A.R.W.

55. On March 14, 2021, Judge Faye Chess issued $250,000 warrant #990435958.

OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 25 of 145

22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

56.     On September 26, 2023, City attorneys were served with further proof of A.R.W.'s statements, all of which confirmed Benshoof's sworn statements.  A.R.W.'s declaration was signed before three adult witnesses on February 10, 2023.  (Ex. ##0077-0083)

### 3) SMC No. 675405

57.     On August 27, 2023, Seattle police saw Benshoof's car driving on the 12500 block of Aurora Avenue North. Multiple SPD cruisers pursued Benshoof's car on Interstate 5 nearly twenty (20) miles outside of Seattle city limits.  According to Incident Report #2023-246823, police "requested the assistance of King County's Guardian 1 helicopter, Snohomish County's helicopter, Washington State Patrol's helicopter, and any agency with Star Chase."  Benshoof was not served summons in case no. 675405 pursuant to RCW 35.20.270(1).

### 4) Additional Malicious Prosecutions

58.     The City subsequently filed more "domestic violence" charges against Benshoof in SMC Case Nos. 675317, 675405, 676175, 676207, 676216, 676463, nor 676492, including six additional warrants.  Benshoof was not served summons in these foregoing cases for the City to obtain personal jurisdiction over Benshoof, pursuant to the requirement of RCW 35.20.270(1)

### 5) Legal Challenges Unavailable

59.     For nearly two years, Benshoof could not bring motions before Seattle Municipal Court.  Benshoof tried repeatedly, and numerous Catch-22 barriers were erected: (1) Benshoof's public defender, Mr. Pirani, refused to file any motions raising

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 26 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

constitutional, statutory, or jurisdictional challenges; (2) Mr. Pirani refused to withdraw as counsel; (3) judges refused to hear Benshoof's *pro se* Marsden motion to dismiss Mr. Pirani so long as Mr. Pirani remained counsel of record; (4) judges refused to hear Benshoof's motion to dismiss **unless** Benshoof first subjected himself to indefinite unlawful imprisonment.

## F. Search Warrant

### 1) Application for Search Warrant

60.     The Application for Search Warrant ("Application") was completed by SPD Det. Ryan Ellis ("Ellis"), who stated: "I completed the basic law enforcement academy at the Washington State Criminal Justice Training Center. I have completed the basic Seattle Police Department Detective School. In doing so, I have written and executed *over two hundred search warrant affidavits.*" (Ex. #0293)

61.     Page 1 of the Application (Ex. #0292) stated:

"*On the basis of the following, I believe there is probable cause that Kurt A BENSHOOF, date of birth 7/18/1969, has committed the crime(s) of Stalking,* **RCW 9A.46.110,** *and Violation of a Court Order,* **RCW 26.50.110** *in King County, and that*:
☒ *Evidence of those crimes*;
☒ *Contraband, the fruits of a crime, or things otherwise criminally possessed.*
☒ *Weapons or other things by means of which a crime has been committed or reasonably appears about to be committed;*
☒ *A person for whose arrest there is probable cause, or who is unlawfully restrained.*
*is located in, on, at, or about the following described premises, vehicle or person:*
*1716 N 128th ST, Seattle, Washington 98133 occupied by BENSHOOF*"

62.     The application quoted verbatim from RCW 10.79.035(1)(a)(b)(c)(d):

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

**RCRCW 10.79 0.035 - Issuance of search warrants by magistrates.**
(1) Any magistrate as defined by RCW 2.20.010, when satisfied that there is probable cause, may[,] upon application supported by oath or affirmation, issue a search warrant to search for and seize any:
(a) Evidence of a crime;
(b) contraband, the fruits of crime, or things otherwise criminally possessed;
(c) weapons or other things by means of which a crime has been committed or reasonably appears about to be committed; or
(d) person for whose arrest there is probable cause or who is unlawfully restrained

63.     Page 2 of the Application (Ex. #0293) claimed: "Owen obtained a Seattle Municipal No Contact Order, OCA223037 which was served on Benshoof on 11/16/2022 and expires on 11/16/2027. In addition, Owen obtained a Restraining Order, OCA215006806, which was served on 11/15/2022 and expires on 9/28/2027."

64.     It was Ellis himself who allegedly served Restraining Order OCA215006806, including an Order to Surrender Weapons, on November 15, 2022. The Proof of Service (Ex. #0326) filed by Ellis on November 15, 2022, stated the following in boxed text:

> **Important!**  *Do not use electronic service if your case involves the surrender of firearms, transfer of child custody, removing the respondent from the parties shared residence... After two unsuccessful attempts at personal service, you can ask the court to authorize electronic service...*

65.     Page 2 of the Application (Ex. #0293) stated: *"Since that time, law enforcement officials have been unable to arrest Benshoof. See **Exhibit 1, attached.**"* The Application provided to Benshoof in Discovery did not contain "Exhibit 1" and record requests by Benshoof's "next friend(s)" and his "assistance of counsel(s)"[2]

---

[2] *Faretta v. California*, 422 U.S. 806, 812–13, 95 S. Ct. 2525, 2530, 45 L. Ed. 2d 562 (1975)

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

under Judiciary Act of 1789, 1 Stat. 73, 92, have not been provided the "Exhibit 1" referenced in the Application. SEC. 35 of The Judiciary Act, approved September 24, 1789, tates, "And be it further enacted, **That in all courts** of the United States**, the** parties may plead and manage their own causes personally *or by assistance of such counsel* or attorneys at law."

66.    Page 3 of the Application (Ex. #0294) stated: "When asked about the nature of the text messages, Owen stated that Benshoof has messaged about several different topics. Some of his messages tell her that she "is toast" and that he is coming for his son. Others tell her that "shit is going to hit the fan" and asks her what side of the fan she wants to be on. Other messages talk about random topics about Jesus and other non-relevant topics."

67.    Page 4 of the Application (Ex. #0295) stated: "When asked about the content of his emails, Owen stated that they *mainly concern lawsuits and other legal proceedings*. Owen went on to explain that the court system has marked Benshoof as a "vexatious litigant." Benshoof has apparently tried to sue too many people too many times over nothing lawsuits and now the court system has flagged him as an abuser of the legal system.  However, despite the court fining him for his overuse of the system, Benshoof continues to email her lawsuits. Some of these lawsuits' she is named in and others she was simply forwarded the information."

68.    Page 4 of the Application (Ex. #0295) stated: "Owen also informed officers that this week she received a manila envelope in the mail, from Benshoof, containing more court paperwork."

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

69.     Page 4 of the Application (Ex. #0295) stated: "The actual paperwork itself was more than a couple hundred pages so neither officer nor did Owen read through that. The front of the paperwork reads that it was a Petition for Writ of Habeas Corpus in which Benshoof is the petitioner and Owen is the respondent."

70.     The actual voice mails, emails, text messages sent by Benshoof to Owen repeatedly referred to the fact that Jessica R. Owen and Magalie E. Lerman had kidnapped Benshoof's son A.R.W. [on September 3, 2021], had committed perjury, had stolen Benshoof's 2011 Toyota FJ Cruiser, and were extorting Benshoof of $19,000 for the return of Benshoof's FJ Cruiser and to see his son A.R.W. again. Benshoof asked Owen Lerman to stop kidnapping and abusing A.R.W.

71.     Page 5 of the Application (Ex. #0296) stated: "Owen stated she avoids being at home and sometimes stays out of town in an attempt to keep herself and her son safe." Owen makes her living by receiving payment for sexual intercourse and other sexual acts. The legal definition of her chosen profession is prostitute. [3]

RCW 9A.88.030 Prostitution.
(1) A person age eighteen or older is guilty of prostitution if such person engages or agrees or offers to engage in sexual conduct with another person in return for a fee.

---

[3] Prostitute Law and Legal Definition: "Prostitute is a person who receives payment for sexual intercourse or other sexual acts. This is generally taken as a regular occupation. Although usually a prostitute refers to a woman offering sexual favors to men, there are male prostitutes who may perform homosexual acts for money or receive payment from women for sexual services.     Prostitution **is held illegal** in all states except Nevada, where it is strictly regulated. Some state statutes punish the act of prostitution, and other state statutes criminalize the acts of soliciting prostitution, arranging for prostitution, and operating a house of prostitution. Pursuant to **18 USCS § 2421**, on federal level **it is a crime to transport a person in interstate** or foreign commerce for the purpose of prostitution or for any other immoral purpose." https://definitions.uslegal.com/p/prostitute/

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 30 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

(2) For purposes of this section, "sexual conduct" means "sexual intercourse" or "sexual contact," both as defined in chapter 9A.44 RCW.
(3) Prostitution is a misdemeanor.

72.     Page 5 of the Application (Ex.#0296) stated that she "sometimes stays out of town" is reference to  "Fly Me to You" ("FMTY"), a service she is offers to out-of-state clients which Benshoof has reason to believe violates the Mann Act,[4] a federal law that criminalizes the transportation of "any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose."

73.     Owen's statement that she leaves town "in an attempt to keep herself and her son safe" is unsupported by any record before the court.  Owen has never made any accusations of actual violence by Benshoof against A.R.W. or herself.

74.     Page 5 of the Application (Ex. #0296) stated: "Owen said Benshoof never leaves the residence and she's too afraid to confront him about the residence. In addition, during their last hearing in Superior Court related to the ownership of the residence, Benshoof filed an appeal in Superior Court, which was denied." The statement that the appeal to the Washington Court of Appeals, Division I, was "denied" was false. The appeal in the lawsuit related to the ownership of Benshoof's home to the Washington Court of Appeals, Case No. 85465-8-I was ongoing during the submission for the search warrant.

75.     Page 5 of the Application (Ex. #0296) stated: "It should be noted to the Court, as referenced in Exhibit 1, Benshoof has a history of non-compliance with

---

[4] https://www.law.cornell.edu/wex/mann_act

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 31 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Court Orders and law enforcement officials. As noted in the January 23, 2023, incident, Benshoof convinced his son to leave Owen's residence and come to his house, which was a direct violation of the protection orders. Subsequently, officers responded and were able to obtain short-term custody of the child and return him to Owens from Benshoof's residence."

76.    January 23, 2023, was the last time that Benshoof's son A.R.W. tried running away from Owen to his father's [Kurt Benshoof] house.  When the officers showed up on Benshoof's front porch, Benshoof literally had in his hands documents which he attempted to hand to the officers as proof that Detective Ellis had never served the restraining order upon Benshoof.  The officers were there to arrest Benshoof for supposedly violating the restraining order which was never served upon Kurt Benshoof.   The body footage video supports Benshoof's statement and the fact that the officers declined to look at or take the documentary evidence offered by Benshoof.

77.    Page 6 of the Application (Ex. #0297) stated: "Benshoof has remained within the Target residence" and "attempts to conduct surveillance on Benshoof and/or his residence have been unsuccessful."  Benshoof saw police SWAT drive up his alleyway once in an unmarked van into Benshoof's driveway despite the multiple no trespassing signs on the property, including on the street, constituting trespass. This is not adequate basis for probable cause to say that Benshoof has been living in the house.  It is not possible to "observe" "Benshoof's Toyota FJ Cruiser" because it is

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

not visible from the street.  The police SWAT drove their van down Benshoof's private driveway, turned around and drove out, constituting trespass on private property.

78.    Page 6 of the Application (Ex. #0297) stated: "Based on all the foregoing information, I believe that evidence of the above-listed crime(s) exists at the above-described location, and that there is probable cause to search that location for evidence of the above-listed crimes, including:

> • *Handgun(s) within the residence and/or BENSHOOF persons.*
> • *Bills, receipts, mail and other items that evidence dominion and control of the premises, places, property, and/or person searched.*
> • *Electronic communication device(s), computers and cell phones device(s), computers and cell phones*
> • *KURT A BENSHOOF*"

### • *Handgun(s) within the residence and/or BENSHOOF persons*

79.    Nowhere in the Application did Detective Ellis explain why he had cause to believe that Benshoof possessed a handgun.  Upon Benshoof's information and belief, Ellis did not have cause to believe that Benshoof possessed any weapons.

80.    Between March 2021 and April 2022, Ellis had personally served multiple Orders to Surrender Weapons to Benshoof and Benshoof had repeatedly stated under penalty of perjury that Benshoof did not have any weapons to surrender. In March 2021, Ellis had asked about the Glock handgun that Benshoof had purchased circa 2005.  Benshoof had informed Ellis that he had surrendered that to the SPD in or around 2006 and had never retrieved it from SPD.  Benshoof suggested at the time that Ellis ask his fellow SPD officers where the handgun was.

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 33 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

81. The only other weapon associated with Benshoof was a shotgun. The shotgun was seized by SPD on September 15, 2020, in relation to SMC No. 656927. Although that case was dismissed with prejudice in February 2023, the shotgun is still held the SPD Evidence Unit located at 730 S Lacy ST, Seattle, WA 98134.

82. Ellis's Application did not articulate any nexus between an allegation of an alleged crime and possession and/or ownership of a handgun.

### • Bills, receipts, mail and other items that evidence dominion and control of the premises, places, property, and/or person searched.

83. Ellis's Application did not articulate any nexus between any allegation of a crime and bills, receipts, mail, or other items that evidenced dominion or control over the premises, places, property, and/or persons to be searched.

### • Electronic communication device(s), computers and cell phones, device(s), computers and cell phones

84. The Application listed: electronic communication device(s), computers and cell phones, device(s), computers and cell phones. (Ex. #0297)

### 2) Facially Invalid Warrant

85. Upon Benshoof's information and belief, the Search Warrant lacked particularity and was therefore facially invalid. The Search Warrant itself was less specific than the Application, failing to **identify any of the items that Ellis intended to seize.** In the portion of the form (Ex. #0322) that called for a description it stated:

> "YOU ARE COMMANDED to:
> 1. *Search, within 10 Days, the premises, vehicle or person described as follows:*
> *RESIDENCE*:

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 34 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

*1716 N 128th ST, Seattle, WA 98133 occupied by Kurt A BENSHOOF.*
*2. Seize, if located, evidence of the above-listed crimes, including:"* to be seized, petitioner typed:
"☒ *Evidence of those crimes; to include Kurt A BENSHOOF*
☒ *Contraband, the fruits of a crime, or things otherwise criminally possessed;*
☒ *Weapons or other things by means of which a crime has been committed or reasonably appears about to be committed;"*

86.     The Search Warrant quoted verbatim from RCW 10.79.035(1) (a), (b), (c):

**RCW 10.79.035  - Issuance of search warrants by magistrates.**
(1) Any magistrate as defined by RCW 2.20.010, when satisfied that there is probable cause, may[,] upon application supported by oath or affirmation, issue a search warrant to search for and seize any:
(a) Evidence of a crime;
(b) contraband, the fruits of crime, or things otherwise criminally possessed;
(c) weapons or other things by means of which a crime has been committed or reasonably appears about to be committed; or
(d) person for whose arrest there is probable cause or who is unlawfully restrained.

87.     **Evidence.**  The Search Warrant did not list: electronic communication device(s), computers and cell phones, device(s), computers and cell phones that Ellis intended to search for or seize. (Ex. #0322-0323)   The only "evidence" listed with particularity that Ellis intended to seize was "KURT BENSHOOF."  Benshoof is not "evidence of a crime" under RCW 10.79.035(1)(a).

88.     **Contraband, the Fruits of a Crime.**  The Search Warrant did not list with particularity and contraband or fruits of a crime that Ellis intended to search for or seize.

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

89. **Weapons.** The Search Warrant did not list with particularity any weapons or other things by which a crime has been committed, or appears about to be committed, that Ellis intended to search for or seize.

## G. Raid of Benshoof's Home Church

90. SPD had a key to open the front door of Benshoof's home church. (Ex. #0477-0478) Benshoof believes Owen gave this key to Ellis for SPD to enter Benshoof's home. SWAT did not knock on Benshoof's front door. Instead, SWAT announced themselves with flash-bang grenades and proceeded to shoot *Oleoresin Capsicum* ("OC") cannisters through windows on both floors of Benshoof's home.

91. After SWAT entered the home, they proceeded to throw additional OC cannisters into each room they entered. SWAT personnel stated that they were using OC to "get a response" from Benshoof. SWAT personnel also discussed head shots while they waited for a response. Benshoof did not respond. Fearing for his life, Benshoof simply waited six hours, sitting in a closet so that he would not present any pretext by which he would be executed by SWAT.

92. SWAT opened Benshoof's mail during their search. (Ex. #0479-0480) SWAT did not have a search warrant authorizing them to open Benshoof's mail. Pursuant to 18 U.S.C. §1702, "Whoever takes…package [and] opens… the same, shall be fined under this title or imprisoned not more than five years, or both."

## H. King County Jail

### 1) *Religious Discrimination – Hate Crimes*

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

93.     Benshoof was removed in handcuffs from his home church without his religious head covering or his reading glasses.  Once housed in King County Jail, Benshoof consecrated a towel to serve as his religious head covering.  However, jail personnel threatened Benshoof with punishment if he didn't remove his head covering.

94.     Personnel stated that Benshoof must submit a "kite" to request head covering approval from a jail pastor.  After more than a month of submitting numerous kites, requesting a religious head covering, Benshoof met with Classification personnel who gave Benshoof a Muslim Koufi—without consulting a jail pastor.

95.     Benshoof is not Muslim and had never worn a Koufi prior to August 2024.  As a Caucasian non-Muslim, other inmates subsequently accused Benshoof of mocking the Muslim faith by wearing a Koufi.  Inmates threatened physical violence against Benshoof and threatened to tear the Koufi from Benshoof's head. When Benshoof reported these hate crime violations of RCW 9A.36.080, jail personnel moved Benshoof to high security.

96.     When Benshoof called 911 to report the hate crimes, jail personnel punished Benshoof by relocating him to solitary confinement on November 8, 2024, where jail staff eventually denied Benshoof any access to the phone.

### 2)  Denied Supplies

97.     From July 3, 2024, to August 13, 2024, Benshoof was denied access to paper, envelopes, and postage.  On or about August 14, 2024, Department of Adult

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 37 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

and Juvenile Detention ("DAJD") provided Benshoof a one-time supply of 500 sheets of printing paper and several envelopes.

98. On September 6, 2024, inmates stole Benshoof's printing paper, pencils, eraser, reading glasses, and legal documents. Jail personnel refused to retrieve Benshoof's stolen property and moved Benshoof to a higher security unit. (Ex. #0483; #0488)

99. On September 14, inmates, including Cameron Buchanan, stole Benshoof's papers and effects, including phone numbers of Benshoof's assistants of counsel. Buchanan also stole the copy of Washington Pattern Jury Instructions which Benshoof had obtained from DAJD. Jail personnel refused to retrieve Benshoof's stolen property. (Ex. #0485)

### 3) Denied Pro Se Equipment

100. According to the County's Inmate Handbook, Benshoof could use the pro se computer and printer two days per week. Benshoof attempted to use the pro se computer and printer at the Regional Justice Center in Kent, Washington.

101. Between July 3, 2024, and August 13, 2024, Benshoof was denied access to the pro se workstations in the King County Jail. (Ex. #0491-0493; #0496)

102. On August 14, 2024, Benshoof was transferred from the King County Jail to the Regional Justice Center ("RJC") in Kent, Washington. The RJC had two pro se workstations. One pro se workstation was located in E-Unit and one was located in H-Unit. Both unit's computers froze every time Benshoof attempted to print copies of the Washington State Constitution. When Benshoof was finally

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 38 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

successful in printing the twelve pages of *Groh v. Ramirez,* 540 U.S. 551 (2004), the printer ran out of ink and jail personnel would not provide Benshoof with a replacement ink cartridge.

103. On September 4, 2024, Benshoof spoke directly to the woman in charge of pro se supplies at the RJC. Benshoof attempted to purchase more printer paper and envelopes to litigate more than twenty (20) ongoing state and federal court cases. The woman denied Benshoof's request, claiming that Benshoof's request was "unreasonable." (Ex. #0489)

104. After Benshoof was transferred back to King County Jail from the RJC on September 6, 2024, Benshoof again attempted to use the pro se workstations. Because had inmates stolen Benshoof's remaining pages of printer paper, and because DAJD personnel repeatedly denied Benshoof's attempts to purchase more printer paper (Ex. #0487), Benshoof could not print any document for any of his City, state, or federal court cases.

### 4) ADA Violations

105. Benshoof repeatedly requested ADA accommodations related to his bi-lateral carpal tunnel syndrome. Upon Benshoof's oral motion, SMC Judge Andrea Chin issued an Order ("ADA Order") on September 3, 2024, stated, "Defendant, who is representing himself, shall be granted a reasonable access to the RJC law room, a working computer and printer & paper (or a typewriter & paper), for research and brief writing. Defendant shall have reasonable access to all pro se materials including current WPIC. Defendant shall have access to digital discovery with regard to the

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 39 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

above cases. Defendant shall also be allowed to purchase envelopes with postage." Outland signed the Order, as well as Judge Andrea Chin. (Ex. #0497)

106. Pascal Herzer ("Herzer"), DAJD attorney, moved for a hearing before Judge Chin on September 9, 2024. At the hearing Herzer admitted that DAJD had previously granted an inmate's ADA request to provide a computer with word processing software so that an inmate could type and print their court pleadings. Despite this admission, Herzer claimed that it was unreasonable for DAJD to comply with Chin's order to provide Benshoof with the same.

107. Judge Chin then claimed that she did not have the legal authority to order DAJD to provide Benshoof with paper, envelopes, postage, a typewriter, or a computer with word processing software, nor a printer with an ink cartridge. To date, Judge Chin's ADA Order has not been rescinded or vacated.

108. On November 13, 2024, DAJD supervisor Gregg Curtis ("Curtis") stated in his sworn declaration that "Every KCCF resident is provided a copy of the Inmate Handbook, which provides information about jail rules and privileges." (Ex. #0511)

109. During nearly five months in jail, Benshoof only met one inmate who had been provided a copy of the Inmate Handbook. Benshoof was not provided an Inmate Handbook for the first three weeks of imprisonment and was only provided one after submitting a kite request for an Inmate Handbook.

110. Curtis also averred that "All KCCF residents have the ability to send and receive mail."

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 40 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

111.    Curtis also averred that "Indigent inmates are provided a packet that contains three postage-paid envelopes, three pencils, and three sheets of paper. Additional pre-stamped envelopes may be purchased." (Ex. #0512)

112.    Benshoof was an indigent inmate upon arriving at King County Jail on July 3, 2024.  Benshoof was not provided any sheets of paper or envelopes until August 13, 2024, and then only because he was a pro se defendant.  After arriving at KCCF on September 6, 2024, DAJD refused to provide Benshoof any envelopes or sheets of paper, despite Benshoof's repeated kite requests and sufficient inmate funds in his account.

113.    Curtis also averred that "Residents who are pro se…are provided a one-time provision of supplies free of charge.  If more supplies are needed, residents may purchase them through the commissary.  KCCF has placed no restrictions on Benshoof's right to be issued pro se supplies or his ability to purchase additional supplies" (Ex. #0513)

114.    Printer paper is not listed for sale from the commissary.  Between August and November 2024, Benshoof repeatedly called Curtis and Herzer, leaving voicemail messages to inform them that Benshoof was being denied access to envelopes, postage and printer paper.

### 5) Denied Telephone Access

115.    Curtis also averred that "All KCCF residents have access to telephones located in dayrooms during the hours they are out of their cells.  KCCF has placed no

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 41 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

restrictions on Benshoof's ability to use the telephone in the dayroom to make calls." (Ex. #0511)

116.    The reason DAJD transferred Benshoof to solitary confinement in the East Wing of the 11th floor was because Benshoof used the telephone to call 911 to report felony crimes as a victim witness to the SPD.

### 6) Denied Ability to Mail Court Documents

117.    By denying Benshoof's kite requests, denying his reasonable accommodation requests, denying his attempts to purchase printer paper and mailing supplies, and defying Chin's ADA Order, Benshoof was denied the ability to file documents in more than twenty (20) state and federal court cases for most of his five months of imprisonment.

118.    Curtis also averred that "KCCF has placed no restrictions on Benshoof's ability to send or receive mail." (Ex. #0512)

119.    Without envelopes or postage, Benshoof was unable to send any mail whatsoever for the majority of his nearly five months of imprisonment.

120.    Curtis made the foregoing statements under penalty of perjury under the laws of the State of Washington. (Ex. #0513)

121.    RCW 9A.72.080 states, "Every unqualified statement of that which one does not know to be true is equivalent to a statement of that which he or she knows to be false."  RCW 9A.72.020(1) states, "A person is guilty of perjury in the first degree if in any official proceeding he or she makes a materially false statement which he or she knows to be false under an oath required or authorized by law."

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 42 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

**RCW 9.72.090** states, "Whenever it shall appear probable to a judge, magistrate, or other officer lawfully authorized to conduct any hearing, proceeding or investigation, that a person who has testified before such judge, magistrate, or officer has committed perjury in any testimony so given, or offered any false evidence, he or she may, by order or process for that purpose, immediately commit such person to jail or take a recognizance for such person's appearance to answer such charge. In such case such judge, magistrate, or officer may detain any book, paper, document, record or other instrument produced before him or her or direct it to be delivered to the prosecuting attorney."

## 7) *Bail Issues – EHD*

122.    On November 10, 2024, a member of Benshoof's church paid the $420,000 bail amount related to the City and County criminal cases against Benshoof.

123.    When Benshoof sent a kite, requesting his release date to Electronic Home Detention ("EHD"), he received a response that it would take approximately *six weeks.* (Ex. #0494-0495)  Then, on November 22, 2024, jail personnel cut off all access for Benshoof to make phone calls to his legal counsel, rendering Benshoof imprisoned *in communicado.*

124.    18 U.S.C. §1512(b) states, "Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to (1) influence, delay, or prevent the testimony of any person in an official proceeding; (2) cause or induce any person to—(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding; (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

commission or possible commission of a Federal offense; shall be fined under this title or imprisoned not more than 20 years, or both."

125.    18 U.S.C. §1512(c) states, "Whoever corruptly alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both."

# I. Seattle Municipal Court - Constitutional Violations

## 1) Bail Hearing

126.    Benshoof was denied his right to summon witnesses to a constitutionally sufficient bail hearing.

127.    Without paper, envelopes, or stamps, Benshoof was denied the ability to file any motion seeking a constitutionally sufficient bail hearing to challenge the City's violations of Wash. Const. art I § 20.  "[a]ll persons charged with crimes shall be bailable by sufficient sureties, except for capital offenses when the proof is evident, or the presumption great."

## 2) Motions to Dismiss not Heard

128.    On or around August 5, 2024, Benshoof made oral motion before Judge Chin to set a hearing for Benshoof's two motions to dismiss, one for SMC Nos. 656748

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 44 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

and 656749, and one for all of the cases related to allegations of domestic violence: 669329, 671384, 675405, 676207, 676216, 676175, 676463, 676492.

129.    On August 5, 2024, Judge Chin initially set the following filing deadlines and hearing date: August 13, 2024, as the date that Benshoof's motions to dismiss were to be filed; the City's Responses were due August 26, 2024; and oral argument was set for hearing at Readiness on September 13, 2024. Outland signed the agreed order. (Ex. #0498)  Chin informed Benshoof that he could be imprisoned on eighty-one successive sentences, effectively a life sentence.

130.    Because Benshoof was denied sufficient envelopes and postage, he was unable to file his motions to dismiss.  In open court on September 3, 2024, Benshoof objected to the fact that, because DAJD had denied him access to envelopes and stamps, he had been unable to file his motions to dismiss.  Judge Chin reset the following filing deadlines and hearing date for Benshoof motions to Dismiss: September 13, 2024, for filing Benshoof's motions to dismiss, and September 17, 2024, for the City's Response briefs and for oral arguments.

131.    Benshoof filed his motions prior to September 13, 2024, handing them to Judge Chin's bailiff in open court on September 9, 2024.  Benshoof also left several voicemail messages to Katrina Outland and Dan Schilling, reminding them of the due date for the responses to Benshoof's motions to dismiss.

132.    Outland did not file any responsive brief to Benshoof's motion to dismiss SMC Nos. 669329, 671384, 675405, 676207, 676216, 676175, 676463, 676492. Schilling did not file any responsive brief to Benshoof's motion to dismiss SMC Nos.

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
  Page 45 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

656748, 656749. Upon Benshoof's information and belief, Outland and Schilling knew in advance of September 17, 2024, that Judge Chin would prevent Benshoof from having his motions to dismiss heard.

133. Upon arriving in SMC courtroom 1003 before Judge Chin on the morning of September 17, 2024, Benshoof demanded to have his motions to dismiss heard. Judge Chin stated that she would not hear Benshoof's motions to dismiss because September 17, 2024, was the start of the trial for SMC Nos. 669329, 671384, 675405, 676207, 676216, 676175, 676463, 676492.

### 3) Denied Discovery

134. Outland printed clearly legible color copies for the prosecution to use at trial (Ex. #0481), yet in providing Benshoof his discovery requests, Outland gave Benshoof copies that were impossible to read. (Ex. #0482)

### 4) Voi Doir

135. Prior to jury selection, Benshoof objected to the absence of evidence before the court showing that: (1) the City had obtained personal jurisdiction over Benshoof in compliance with RCW 35.20.270(1); and (2) Seattle Municipal Court, a court of limited jurisdiction, was legally empowered to ignore the statutory requirement of RCW 7.105.050(1)(a)(d) that prosecution of Benshoof for alleged violations of family court involving his minor son must be heard by King County Superior Court.

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 46 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

136.     When Benshoof asked Judge Chin whether Outland had provided evidence before the court of the City's compliance with RCW 35.20.270(1) and RCW 7.105.050(1)(a)(d), Judge Chin refused to answer and ordered the marshals to remove Benshoof the courtroom.

137.     While Benshoof was held *in communicado* in a cell in the basement of the Seattle Municipal Court, Outland selected the entire jury on the tenth floor.

### 5) Pre-trial Motions

138.     On or around September 18, 2024, Benshoof again demanded that Judge Chin hear oral argument regarding his Motion to Dismiss SMC Nos. 669329, 671384, 675405, 676207, 676216, 676175, 676463, 676492.  Judge Chin refused to hear Benshoof's Motion to Dismiss as a pre-trial motion.

139.     When Benshoof asked Judge Chin whether Outland had provided evidence before the court of the City's compliance with RCW 35.20.270(1) and RCW 7.105.050(1)(a)(d),, Judge Chin refused to answer and ordered the marshals to remove Benshoof from the courtroom.

140.     While Benshoof was held *in communicado* in a cell, Judge Chin heard and granted all of Outland's pre-trial motions.

### 6) Denied Frank's Hearing

141.     Between July and the end of September, Benshoof repeatedly made oral motion for a *Franks* hearing.  Judge Chin repeatedly ignored Benshoof's oral motions.

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 47 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

142.     Because Benshoof was denied sufficient envelopes and postage, Benshoof's assistance of counsel, Urve Maggitti ("Maggitti"), filed a *Frank's* motion as his next friend in SMC Nos. 669329, 671384, 675405, 676207, 676216, 676175, 676463, 676492. Judge Chin ignored the *Frank's* motion filed by Maggitt.

### 7) *Denied Counsel*

143.     Benshoof repeatedly moved for a continuance so that attorney Robert Barnes could appear as his counsel and have adequate time to prepare Benshoof's defense. Judge Chin denied Benshoof's requests for a continuance.

### 8) *Denied Witnesses*

144.     After Benshoof mailed Outland his discovery requests and list of witnesses Benshoof intended to call, Maggitti also filed Benshoof's discovery requests and list of defense witnesses being subpoenaed to testify.

145.     At trial Judge Chin prohibited Benshoof from calling any witnesses to testify. Judge Chin claimed that it was sufficient that she allowed Benshoof to cross-examine the prosecution's witnesses.

### 9) *Trial in absentia*

146.     When Benshoof asked Judge Chin whether Outland had provided evidence before the court of the City's compliance with RCW 35.20.270(1) and RCW 7.105.050(1)(a)(d), Judge Chin refused to answer and ordered the marshals to remove Benshoof from the courtroom.

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 48 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

147.    On or around September 18, 2024, while Benshoof was held *in communicado* in a cell, Judge Chin heard and granted all of Outland's pre-trial motions.

148.    On or around September 19, 2024, while Benshoof was held *in communicado* in a cell, Outland called Owen to testify for several hours during the afternoon.

149.    On or around September 20, 2024, Benshoof was allowed back into the courtroom.  When Benshoof asked Judge Chin to provide a transcript or summary of Owen's testimony from the previous afternoon, Judge Chin refused to do so.  To date, Benshoof still does not know what Owen testified to on the witness stand.

## J.  SMC 671384 – Owen Perjury

### 1)  *Parenting Covenant*

150.    Owen repeatedly admitted the existence of the 12-year parenting agreement at Common Law between Owen and Benshoof in multiple court proceedings, yet claimed she needed to file a petition to decide parentage in order to establish a parenting agreement.

151.    On August 21, 2021, Owen stated under penalty of perjury that "I have had a verbal agreement with Kurt that we split time with my son 50/50." (Ex. #0024).

152.    On March 13, 2024, Owen stated under penalty of perjury in her declaration in SMC Case No. 671384 that she and Benshoof had a "long-standing unwritten agreement to share custody of [A.R.W.] on an alternate-weeks basis." (Ex. #0222 ¶2).

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 49 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

### 2) Withholding of A.R.W.

153.    In her August 21, 2021, Petition for Order of Protection, Owen claimed that Benshoof was "preventing my son from talking to me or coming home." (Ex. 0024)

154.    In her March 13, 2023, declaration, Owen claimed that she "had not been able to have any contact at all with [A.R.W.] for almost three weeks" between August 15, 2021, and September 3, 2021, and that Benshoof violated the twelve-year parenting agreement by causing "a total absence of communication between A.R.W. and me during that nearly three-week period…" (Ex. #0225 ¶1),

155.    During the prosecution's questioning of Owen on September 24, 2024, in SMC Case No. 671384 Owen testified that after Benshoof picked A.R.W. up from Owen's house on August 15, 2021, that Owen "didn't hear from [A.R.W.] for…you know…nineteen days."

156.    Under cross examination by Benshoof on September 24, 2024, Owen admitted that she repeatedly communicated with A.R.W. between August 15, 2021, and September 3, 2021.  Owen testified that Benshoof "offered for me to come to [Benshoof's] house to…and explain…have a family meeting and explain why it was that I had been lying to our son and had chosen to harm him by getting him vaccinated.  And that's when I decided to go to the courts to get help."

157.    Under cross examination by Benshoof on September 24, 2024, Benshoof asked, "Earlier today, Ms. Owen, you acknowledged in testimony that you spoke to [A.R.W.] on or around August 21, [2021].  Do you recall that Ms. Owen?"  Owen replied, "I do."

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 50 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

### 3)  Child Abuse

158.     In her March 13, 2023, declaration, Owen claimed, "I do not hit my son or believe in corporal punishment." (Ex. 0228 ¶1)

159.     Under cross examination by Benshoof on September 24, 2024, in SMC Case No. 671384, Owen was asked, "Did you ever spank our son?"  Owen testified, "Yes."

160.     Under cross examination by Benshoof on September 24, 2024, Benshoof asked Owen, "Did I ever spank our son?"  Owen replied, "No."

161.     Under cross examination by Benshoof on September 24, 2024, Owen was asked, "Did I ever yell at our son?"  Owen replied, "Yes."  Benshoof followed up by asking, "What time?  Name once, please."  Owen testified, "I don't recall the specific dates that you have yelled at our son."  Benshoof then asked Owen, "When did I ever yell at our son?  Please give one example."  Owen testified, "I can't recall a specific time where you yelled at him."

### 4)  Biological Father

162.     Under cross examination by Benshoof on September 24, 2024, Owen was asked, "Have you ever had any doubt since you discovered that you were pregnant in August of 2008 that our son was conceived in your bedroom on my birthday, July 18, 2008?"  Owen replied, "Not really, no."  Benshoof asked for clarification, "What was that?"  Owen testified, "Unfortunately, no."

163.     Under cross examination by Benshoof on September 24, 2024, Owen was asked if after the first restraining order was denied on September 3, 2021, "Do you

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 51 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

recall that you sought a petition to decide parentage, case number 21-5-00680-6 on or around September twenty-third [2021] in which you claimed you didn't know who the father was?" Owen responded, "I don't recall that, no." Owen's petition listed Benshoof as a "***possible*** genetic parent." (Ex. #0058).

### 5) Presumption of Fatherhood

164.    In her September 2021 petition to decide parentage claimed that "To my knowledge, no one is already presumed to be a parent by...***holding out***." (Ex. #0059 ¶8) RCW 26.26A.115 states that a person is presumed to be the parent of a child if "the individual resided in the same household with the child the first four years of the life of the child, including any period of temporary absence, and openly held out the child as the individual's child."

165.    Owen has never disputed the fact that she lived with Benshoof during her entire pregnancy and that they lived together during the first four years of A.R.W.'s life.  On August 21, 2021, Owen's declaration stated that Benshoof "has been acting in the role of father for 12 years." (Ex. #0027) On September 2021, Owen's sworn declaration stated that Benshoof had "acted as [A.R.W.'s] father for [A.R.W.s] whole life" (Ex. #0041) and that Benshoof "has always insisted on being treated as [A.R.W.'s] father and that [A.R.W.] was his [son]." (Ex. #0042)

### 6) Acknowledgement of Fatherhood

166.    Under cross examination by Benshoof on September 24, 2024, Owen was asked, "Do you understand what a petition to decide parentage is?"  Owen testified,

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 52 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

"Yes, I do. We needed you to sign the birth certificate so that…it was as far as my lawyer understood it, it was a very ambiguous grey area where I acknowledged that you were the only person that I could have had a baby with at that time." Benshoof then asked, "How do you reconcile that with the fact that in your declaration in your petition to decide parentage you stated that you weren't sure if I was the father?" Owen testified, "I don't."

167.     In her September 2021 declaration and petition to decide parentage Owen stated under penalty of perjury that Benshoof "has, at all times, refused to sign an Acknowledgement of Parentage or otherwise agree to legal recognition as a parent of [A.R.W.]" (Ex. #0059) and that many times since A.R.W. was born "Kurt has refused my requests that he sign an acknowledgement of parentage." (Ex. #0042)

168.     Under cross examination by Benshoof on September 24, 2024, Owen was asked, "Did I text you on or about September 14, 2021, stating 'put me on [A.R.W.'s] birth certificate'?" Owen testified, "Yes, you did."

169.     On September 18, 2021, Benshoof texted Owen, "The fact that you refuse to amend [A.R.W.'s] birth certificate to reflect my legal name is prima facie evidence of your current and ongoing attempt to fraudulently assert sole legal custody of our child and deny me my parental rights to our son." Owen then blocked Benshoof's phone number.

170.     Under cross examination by Benshoof on September 24, 2024, Owen was asked, "You spoke of an acknowledgment of parentage, alleging that I refused to sign an acknowledgement of parentage. Can you tell me when you ever presented me with

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 53 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

an acknowledgement of parentage to sign---ever?" Owen replied, "Multiple times. I don't have the exact dates.

171. "Can you state a year that you presented an acknowledgement of parentage that I allegedly refused to sign?" Owen testified, "I know for sure that I presented it in the year our son was born [2009]." Benshoof then asked Owen, "Can you name a year after the year our son was born [2009] that you presented an acknowledgement of parentage to me that I refused to sign?" Owen testified, "No."

### 7) *Father's Rights*

172. Owen and Magalie Lerman ("Lerman") repeatedly claimed that Benshoof had no parental rights as the father of A.R.W. In her Facebook post on September 6, 2021, Lerman stated that Benshoof had no "rights to my stepson even though he isn't on the birth certificate or any other legal documents." (Ex. #0256 ¶1)

173. Lerman and Owen are not married or in a legal domestic partnership. Benshoof is listed as the father on the birth certificate of A.R.W. (Ex. #0264)

174. Under cross examination by Benshoof on September 24, 2024, Owen was asked, "Were you the only one who thought that I had no rights to my son? Did your partner, Magalie Lerman, also believe that I had no rights to my son?" Owen testified, "I never believed that you had no rights to our son. I still don't."

175. Benshoof then stated, "For the record, you just stated under that that you've never said that I didn't have rights to my son. Interestingly, you said exactly that---under oath---which I would like to present evidence [of] to the court." Benshoof then presented Owen's September 2021 sworn statements from KCSC No. 21-5-

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

00680-6 and asked Owen, "Can you read what it says?" Owen read aloud, "Kurt currently has no legal right to any tie with my son whatsoever…his parenting rights do not exist and cannot be affected by a restraining order."

### 8) Prostitution

176. On or around February 8, 2023, Owen stated under penalty of perjury during deposition by attorney Ann LoGerfo in KCSC No. 22-2-03826-8 that she quit prostituting in 2018. On September 24, 2024, Owen testified that she has worked as a prostitute for the previous twenty years.

177. Owen and Lerman claimed to Amy Franklin-Bihary ("Franklin-Bihary") that they were no longer prostitutes, as recounted in the GAL report, despite Benshoof providing Franklin-Bihary evidence of Owen's and Lerman's active prostitution advertising, Owen's 2021 interview as "Sacred Whore Isabella" on the prostitution podcast on *Heaux in the Kneaux*, social media posts, and their prostitution websites.

178. Instead of Franklin-Bihary acknowledging that Owen paid her thousands of dollars for her services as a GAL from the proceeds of prostitution, Franklin-Bihary claimed that Benshoof is a "transphobe" because Benshoof's religious beliefs hold that there are only two biological sexes. Upon Benshoof's information and belief, this had the intended effect of severely prejudicing Keean against Benshoof, as Keenan has a trans child.

### K. SMC No. 671384 - Ellis Perjury

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 55 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

### 1) *Witness Interview*

179.    On September 3, 2024, Benshoof conducted a witness interview with SPD Det. Ryan Ellis at the Regional Justice Center with Outland and King County prosecutor Stephanie Brennan ("Brennan") present.

180.    Benshoof asked Ellis to cite the statute or court order which authorized Ellis to ignore the requirement to personally serve Benshoof the Final Orders and Weapons Surrender.  Ellis stated that he could not recall that statute or court order.  When Benshoof asked Outland and Brennan to cite the authorizing statute or court order, they refused to answer.

### 2) *Trial Testimony*

181.    Under direct examination by Outland, Ellis claimed that on November 15, 2022, he legally served Benshoof the Final Restraining Order and Order to Surrender and Prohibit Weapons, and that he was authorized to ignore the explicit personal service requirement because the courts authorized him to serve Benshoof by email due to Covid.

182.    The Proof of Service filed by Ellis into KSCS No 21-5-00680-6 on November 15, 2022, stated: "***Important!  Do not use electronic service if your case involves the surrender of firearms…***" (Ex. #0244)  Ellis checked the box stating that he served an Order to Surrender and Prohibit Weapons. (Ex. #0245),

183.    On cross-examination, Benshoof asked Ellis to cite the court order which authorized Ellis to ignore the personal service requirement.  Ellis could not cite any court order.

OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 56 of 145

22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

184. Washington Supreme Court Order 25700-B-615 (4)(a) explicitly required personal service involving weapons surrender (Ex. #0157), nor did King County Superior Court Emergency Order #32 waive the requirement personal service. (Ex. #0250-0252).

## L. Lerman Perjury and False Statements

### 1) 911 Call – January 23, 2023

185. On January 23, 2023, Lerman called 911 and made numerous false claims about Benshoof. In reference to a front-page story in the Seattle Weekly from 2005 about Benshoof, his daughter, and the Reverend of the New Gnostic Church, James King, Lerman claimed, "Kurt tried to kill [James King]." Lerman stated, "I've seen [Benshoof] deal pounds—and I mean pounds—of cocaine, mushrooms, DMT, acid, you name it."

186. During this 911 call, Lerman claimed Benshoof is a racist cult leader. She stated that Benshoof "has a current cult, which he calls a church, and it is a white supremacist group. And, he has these white supremacist types going in and out of his house all day long doing drug transactions."

187. During this 911 call, Lerman claimed that Benshoof "is a white man who preys upon women of color. He tries to connect them with clients…and then he just takes and pockets all the money. I've seen him do that with three women." One of the women Lerman was referencing is Briana Gage, Benshoof's co-plaintiff in two federal lawsuits: WAWD Nos. 2:23-cv-1392-JNW; 2:24-cv-00343-TL.

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 57 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

188.    During this 911 call, Lerman claimed that Benshoof has "taken this strategy where he has been trying to call me and [Owen] prostitute—which we are not." Lerman is a prostitute. Her website is solanasparks.com. Her Twitter account is @solanasparks. Owen stated under oath on September 24, 2024, that she has been a prostitute for the previous twenty years. Owen's prostitution website is alwaysisobella.com (Ex. #0259)  Lerman then claimed that Benshoof "has emailed our lawyers saying that he has our [prostitution] client lists—which they—I—you know—we are not sex workers. We don't have client lists, but he has women's client lists because he's a trafficker."

## 2) Ellis Interview – July 10, 2024

189.    On July 10, 2024, Ellis interviewed Lerman. Lerman avowed her statements under penalty of perjury, also stating her willingness to testify at trial regarding her interview statements. The interview was recorded on audio and video with two cameras.

190.    During the interview, Lerman stated that Benshoof "is convinced of things that just aren't true." When Ellis asked for examples, Lerman responded, "This all goes back to…[clears throat]…the Summer of 2021, when Kurt kidnapped my stepson. Um, my stepson is his son. So, um, but at the time there was a, um, verbal parenting agreement between [Owen] and [Benshoof] that [Benshoof] never really upheld…um, that they were supposed to have a week on week off…"

191.    Lerman also claimed that Benshoof "loves to call me a lying, thieving prostitute, and you stole my son and you stole my car."

OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 58 of 145

22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

192.     Lerman then admitted that she has mental health issues, claiming that state and federal lawsuits in which she is a named defendant are "fake."  Lerman said, "I'm spending so much money fighting these fake lawsuits…I'm not able to get ahead in my mental health already as a survivor of trafficking.  I have immense amounts of PTSD.  I just don't do okay."

193.     Lerman stated in documents she provided to County prosecutor Stephanie Brennan that she has been in weekly therapy sessions for three years and couples counseling for two years, claiming that Benshoof "belongs in the mental health wing of prison."  Upon Benshoof's information and belief, Lerman is projecting her own criminal pathology and mental health problems narcissistic borderline onto Benshoof.  DARVO: deny, accuse, reverse, victim and offender.

194.     At the end of the interview, Ellis asked Lerman, "Do you declare under penalty of perjury under the laws of the State of Washington that what you have stated in these statements is true?"  Lerman replied, "Yes."

**M.  KCSC No. 24-1-02680-6**

*1)  Denied Franks Hearing*

195.     On August 6, 2024, before Judge Melinda Young, Benshoof moved to set a hearing date for Benshoof's *Frank's* motion.  Judge Young stated that Benshoof would need to move for a Frank's hearing at the next hearing on August 15, 2024, as the August 6, 2024, hearing was only a preliminary hearing to allow the withdrawal of public defender James Coatsworth and to grant Benshoof *pro se* status.

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 59 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

196.    On August 15, 2024, Judge Suzanne Parisien refused to set a hearing for Benshoof's *Franks* Motion, claiming that Judge Young had already denied his *Franks* Motion on August 6, 2024.

**N. State Court Habeas Remedy Unavailable**

### 1) *King County Superior Court*

197.    Benshoof filed a habeas petition in July 2022, King County Superior Court No. 22-2-11112-7 SEA.  It was summarily dismissed.

198.    Benshoof motioned to vacate family court case no. 21-5-00680-6.  Despite providing the Declaration of A.R.W., Chief Uniform Family Court Judge Sean O'Donnell ignored the content of the declaration with a straw man: O'Donnell claimed that Benshoof had either violated the terms of the Final Restraining Order to obtain the affidavit, or the three adult witnesses to the signing had committed perjury.

199.    Benshoof sought writs of prohibition to arrest the malicious prosecutions by City of Seattle (Ex. #0093-0153).  Dallas LePierre, civil attorney for the City, claimed that RCW 2.04.190 authorized the City to violate RCW 35.20.270(1).  That argument was meritless, as RCW 2.04.190 only applies to "the supreme court, superior courts, and district courts of the state."

200.    RCW states, "A person who knowingly makes a false or misleading material statement to a public servant is guilty of a gross misdemeanor. "Material statement" means a written or oral statement reasonably likely to be relied upon by a public servant in the discharge of his or her official powers or duties."

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

201.    Both writs were denied, and notice of appeal has been filed with the Washington State Court of Appeals under consolidated Case No. 86467-0-I.  Denied access to envelopes during his KCCF incarceration, Benshoof was unable to file his Appellant Briefs by the October 22, 2024, deadline.  However, because Benshoof obtained proof that Outland suborned Owen's perjury on September 24, 2024, evidencing extrinsic fraud by Owen and Outland, Benshoof filed a CR 6(b)(3)(4) Motion to Vacate before Judge Larranaga, set to be heard on January 16, 2024, in King County Superior Court.

202.    When Benshoof sought leave to file an amended habeas petition, including text messages from A.R.W. which evidenced the ongoing abuse to A.R.W. by Owen and Lerman, King County Superior Court Judge Marshall Ferguson denied Benshoof's motion, claiming that Benshoof's sworn statements and evidence were "frivolous and without merit." (Ex. #0560 ¶2) Judge Ferguson falsely claimed that Benshoof "clearly intends to use his proposed *habeas* petition as a substitute for appeal of those [family court proceedings]."

203.    Benshoof's friends filed multiple habeas petitions in July and August 2024 while Benshoof was incarcerated in King County Jail without access to envelopes or postage for six weeks.  The King County Superior Court Clerk refused to docket one petition.  On August 15, 2024, Judge Suzanne Parisien claimed in court that Benshoof's friends did not have the right to file a habeas petition on Benshoof's behalf.  Thereupon, Benshoof informed Judge Parisien that she was lying.  Wash. Const. art IV § 6 states that the Superior Courts "and their judges shall have power

OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 61 of 145

22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, on petition by *or on behalf of any person* in actual custody in their respective counties."

### 2) *Washington Supreme Court*

204.  In May 2023, Benshoof filed a habeas petition, Washington Supreme Court No. 101964-5. It was summarily dismissed.

205.  Benshoof's next friend assistant of counsel, Brett Fountain, filed a habeas petition on Benshoof's behalf in July 2024, Washington Supreme Court No. 103392-3. Despite clearly stating that the petition was under the court's *original* jurisdiction, the clerk transferred the petition to the Washington Court of Appeals, Division I, as a Personal Restraint Petition, No. 87100-5, under the court's appellate jurisdiction.

206.  Benshoof also filed a habeas petition from King County Jail in August 2024, Washington Supreme Court No. 103401-6. Despite clearly stating that the petition was under the court's *original* jurisdiction, the clerk claimed the habeas petition was filed under the court's *appellate* jurisdiction and transferred the petition to the Washington Court of Appeals, Division I, as a Personal Restraint Petition, No. 87112-9. Because DAJD denied Benshoof access to envelopes and postage, Benshoof could not subsequently respond to either the Washington Supreme Court or the Washington Court of Appeals.

## O. Federal Court Remedy Denied

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

207.    When Benshoof's state court habeas petitions were dismissed in July 2022 and May 2023, Benshoof turned to the federal courts to redress the unlawful restraints imposed upon himself and A.R.W.

### 1) WAWD No. 2:23-cv-00751-RAJ

208.    District court claimed "domestic relations exception" to deny Benshoof's petition for habeas corpus.  This was a blatant error of law.  First, Benshoof and Owen were never parties to "domestic relations" by which a "child custody" proceeding could have ever occurred.  Second, *Ankenbrandt v. Richards,* 504 U.S. 689 (1992) held "the Court of Appeals erred by affirming the district court's invocation of the domestic relations exception" in an action which "in no way seeks a divorce, alimony, or child custody decree." *Ankenbrandt* at 690.  Benshoof's habeas petition "in no way [sought] a divorce, alimony or child custody decree."   Rather, Benshoof's habeas petition sought a ***jurisdictional inquiry*** contesting the unlawful imprisonment of both Benshoof and A.R.W., perpetrated under color of law.  Third, district court claimed that *Ankenbrandt* precluded federal jurisdiction.  *Ankenbrandt* was a *diversity* case: Benshoof and Owen have lived in Seattle their son's entire life, and his habeas petition was not filed as a diversity case.

### 2) WAWD No. 2:23-cv-01392-JNW

209.    On September 27, 2023, Benshoof petitioned for a preliminary injunction (WAWD No. 2:23-cv-1392-JNW, Dkt. #14) to enjoin the City from falsely arresting and unlawfully imprisoning Benshoof pursuant to the terms of the Final

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Restraining Order (Ex. #0073 ¶5) for effecting service of process under Fed.R.Civ.P. 4 to Owen.

210.    In its denial order, district court once again cited *Ankenbrant, supra* to claim absence of federal jurisdiction to grant Benshoof injunctive relief. (*Id.,* Dkt. #38 pg. 14 ¶1) District court threatened to bar Benshoof from bringing suit for Benshoof's "unmeritorious litigation." (*Id.,* Dkt. #38 pg. 15 ¶1)

211.    In October 2023, Benshoof filed Motions for TRO to enjoin the City's malicious prosecutions of Benshoof in SMC No. 669329 (*Id.,* Dkt. #20) and No. 671384. (*Id.,* Dkt. #23) In its denial order district court claimed "Benshoof does not allege the municipal court prevented him from raising his constitutional and jurisdictional claims" (Ex. #0550 ¶2) and failed "to establish bad faith, harassment, or extraordinary circumstances that would justify the Court setting aside abstention under *Younger.*" (Ex. #0550 ¶3)  With these two parlor tricks, district court declared, "Because fails to show likelihood of success on the merits and therefore does not meet the requirements for a temporary restraining order." (Ex. #0550 ¶3)

212.    "[A]bstention doctrine is inappropriate for cases such as the present one, where…statutes are justifiably attacked on their face as abridging free expression, or *as applied* for the purpose of discouraging protected activities." *Dombrowski v. Pfister,* 380 U. S. 479, at 490 (1965).

213.    After district court's errors of law and fact in its previous denial orders, Benshoof filed a forty-page TRO on March 25, 2024, exhaustively documenting: (1) the bad faith, harassment, and extraordinary circumstances involving the City's

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

malicious "domestic violence" prosecutions; (2) the municipal court's absence of personal jurisdiction; (3) the municipal court's absence of subject-matter jurisdiction; (4) the municipal court's lack of statutory authority. (D.C. Dkt. #158)

214.    Without any way to refute Benshoof's forty-page exposé, district court simply refused to adjudicate Benshoof's TRO for months, despite LCR 65(b) requiring a response within forty-eight (48) hours, and 28 U.S.C. § 1657(a) stating that "the court **shall** expedite any consideration of any action…for temporary or preliminary injunctive relief." Eventually, district court claimed that the entire motion was frivolous. The case is now on appeal to the Ninth Circuit Court of Appeals, No. 24-4223, and is being litigated by attorney and political commentator Robert E. Barnes.

## P. Prosecutorial Misconduct

215.    Upon Benshoof's information and belief, neither Outland nor Brennan ensured that a thorough factual investigation was conducted before a decision to prosecute was made. Ellis did not conduct any interview of Benshoof, despite Benshoof repeatedly requesting that Ellis conduct an interview.

216.    While in jail between July 2024 and November 2024, Benshoof repeatedly left voicemail messages for Ellis, Brennan, and Outland. In these voicemail messages, Benshoof repeatedly discussed the information detailed in the foregoing paragraphs. Typical of the widespread custom and practices of the Seattle Police Department, Ellis ignored Benshoof's reminder that SPD Policy Manual 5.001.12 required Ellis to report Benshoof's exonerating evidence.

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 65 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

# REASONS FOR GRANTING THE WRIT

## II.  Federal Rights Violations

It's worth remembering how this all started:  Benshoof didn't wear a mask or want his son being injected with an unsafe Pfizer gene therapy **treatment** for a disease with A.R.W. did not have.  Keenan denied Benshoof's right to appear in the courtroom, and to testify before a jury of his peers.[5]  "[S]tate-compelled segregation in a court of justice is a manifest violation of the States duty to deny no one the equal protection of its laws."[6]  Then, family court proceeded to hold a trial *in absentia* on October 21, 2022, taking into consideration the Guardian ad Litem recommendations. The Guardian ad Litem report asserted that Applicant: (1) was an "extremist" for his religious beliefs regarding face masks and gene therapy treatments; (2) a "transphobe"[7] for watching the movie *"What is a Woman?"* with his son; and (3) needed to submit to a year of therapy with a PhD psychiatrist and **take all prescribed medications** before being allowed supervised visitations with A.R.W.  In this way, an "unbiased" psychiatrist, recommended by the "unbiased" GAL, and approved by an "unbiased" judge, could require that Benshoof be injected with a gene therapy  as a condition of seeing A.R.W. again.

---

[5] Wash. Const. Art I §§ 10; 21; 22
[6] *Johnson v. Virginia,* 373 US 61 (1963)
[7] Ironically, Benshoof owns more wigs and dresses than many transgender women. Benshoof is a heterosexual man with *xy* chromosomes who respects the rights of consenting adults to do whatever they want with their own bodies behind closed doors.

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 66 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

217.    Benshoof has been subjected to unprecedented retaliation for over two years for Benshoof telling the truth and trying to care for his son.  As a direct and proximate result of the City's malicious prosecutions and $310,000 in warrants, and the County's malicious prosecution and a $500,000 warrant (eventually reduced to $250,000), Benshoof has been unable to see his son, hold church, work, drive, travel, or enter grocery stores and courthouses. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *New York Times Co. v. United States,* 403 U. S. 713 (1971); *Elrod v. Burns,* 427 U.S. 347 (1976)

## A.  Case Summary Corollary

218.    What Jessica Owen ("Owen"), her attorney Nathan Cliber ("Cliber"), City officials, family court judge David Keenan ("Keenan"), City of Seattle prosecutor Katria Outland ("Outland"), and Seattle Police Department ("SPD") Detective Ryan Ellis ("Ellis") did to violate Benshoof's rights was no less ridiculous than if the following had occurred:

(1) Benshoof, who has never operated a tavern or possessed a liquor license, performed the Eucharist at home with his son, consecrating and consuming bread and wine;

(2) Owen called the Liquor Control Board alleging that Benshoof was serving alcohol to minors and that Benshoof had no parental rights;

(3) Cliber and Owen filed a complaint with the Liquor Control Board, alleging that Benshoof was serving alcohol without a liquor license;

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

(4) Benshoof informed the Liquor Control Board that it did not have jurisdiction over Benshoof's rights of religion and familial association with his son;

(5) a Liquor Control Board commissioner held a hearing without Benshoof present and declared that Benshoof was a "credible threat" to A.R.W., criminalizing all communication between father and son because Benshoof allegedly served alcohol without a license to a minor;

(6) Outland filed nearly one hundred criminal charges and issued eight warrants totaling $310,000 for Benshoof's arrest because Benshoof texted his son funny memes to keep A.R.W. from committing suicide; and

(7) Ellis obtained a facially invalid search warrant, and approximately thirty-three (33) Seattle SWAT, including a helicopter, assaulted Benshoof's home church in a dawn raid on July 3, 2024. In lieu of knocking on the front door, SWAT announced themselves by detonating flashbang grenades and then shot out windows on both floors of Benshoof's home with OC cannisters, rendering his home unlivable and causing an estimated $80,000-100,000 in damages.

(8) Seattle Municipal Court, without personal or subject matter jurisdiction, claimed the authority to imprison Benshoof for *eighty-one years* for texting his own son funny memes to keep A.R.W. from committing suicide.

219.    The primary role of parents in managing their family was presupposed by early Americans as being so fundamental that "it probably never occurred to the Framers of the Constitution that parental rights could, as a practical matter, ever be called into question or challenged on a comprehensive scale by state apparatus."

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Daniel E. Witte, *People v. Bennett: Analytic Approaches to Recognizing a Fundamental Parental Right Under the Ninth Amendment,* 1996 B.Y.U. L. REV. 183, 218-19.

220.    The U.S. Supreme Court has for over one hundred years jealously guarded a parent's liberty interests in raising children—affirming a constitutional custodial right protecting the right of parents to decide on the care and upbringing of their children. *See Troxel v. Granville,* 530 U.S. 57, 66 (2000) ("The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is <u>perhaps the oldest of the fundamental liberty interests recognized by this Court</u>."); *Santosky v. Kramer,* 455 U.S. 745, 753 (1982) (labeling the liberty interest of natural parents in the management of their child "fundamental"); *Parham v. J. R.,* 442 U.S. 584, 602 (1979) ("Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children; *Quilloin v. Walcott,* 434 U.S. 246, 255 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected") (emphasis added); *Moore v. City of E. Cleveland*, 431 U.S. 494, 503-05 (1977) (recognizing that "[d]ecisions concerning child rearing, which *Yoder*, *Meyer*, *Pierce* and other cases have recognized as entitled to constitutional protection" protect the sanctity of the family "because the institution of the family is deeply rooted in this Nation's history and tradition.") (emphasis added); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639-40 (1974) ("This Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

liberties protected by the Due Process Clause of the Fourteenth Amendment.") (emphasis added); *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition.") (emphasis added); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("The rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights of man,' and '[r]ights far more precious . . . than property rights'") (citations omitted); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.") (emphasis added); *Pierce v. Society of Sisters*, 268 U.S. 510, 535 (1925) ("The child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."); *Meyer v. Nebraska,* 262 U.S. 390, 399 (1923) ("While this Court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to. . . establish a home and bring up children.")

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

221.    King County Superior Court judges disregard the foundational familial rights of Benshoof and his son. "The family entity is the core element upon which modern civilization is founded." *In re Luscier,* 524 P.2d 906, 907 (Wash. 1974)

222.    The parallel acts by public officials and perjuring prostitutes detailed herein constitute a conspiracy.  "Well-pleaded, nonconclusory factual allegations of parallel behavior" gives "rise to a 'plausible suggestion of conspiracy." *Ashcroft v. Iqbal,* 556 U.S. 662, 680 (2009)  A conspiracy between the State and a private party to violate another's constitutional rights may satisfy the "joint action" test for finding the private party liable as a "state actor" under § 1983. 42 U.S.C.A. § 1983.  *Brunette v. Humane Soc'y of Ventura Cnty.,* 294 F.3d 1205 (9th Cir. 2002), as amended on denial of reh'g and reh'g en banc (Aug. 23, 2002)

## B.  First Amendment Violations – Irreparable Harm

223.    Owen and Judge Keenan had no compelling reason to abrogate Benshoof's right of familial association with A.R.W.  "[F]reedoms of speech and of press, of assembly, and of worship may not be infringed on such slender grounds. They are susceptible of restriction only to prevent grave and immediate danger to interests which the State may lawfully protect." *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 639 (1943) Owen and Keenan claimed Benshoof was a direct and imminent threat to other because Benshoof's beliefs proscribed him being coerced to wear a face covering.

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 71 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

224.    "Nor may the government 'act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices.'" *Fellowship of Christian Athletes,* 2023 WL 5946036, at *38 (quoting *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 138 S.Ct. 1719, 1731 (2018)). "[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Fulton* v. City of Philadelphia, 141 S.Ct. at 1876 (quoting *Thomas v. Review Bd. of Ind. Employment Security Div.*, 450 U.S. 707, 714 (1981)).

225.    Respondents' ongoing pretexts for discriminating against Benshoof are without lawful foundation, jurisdiction, or authority. Respondents' parallel and concerted acts, past and present, continue denying Petitioners' right of familial association.

## 1) Religious Retaliation – Family Court

226.    Keenan facilitated Cliber's subornation of Owen's perjury because they considered Benshoof's religious beliefs a "direct and imminent threat" to **their own** sadistic beliefs which advocate for mutilating  children and conducting medical experiments upon children to make geriatrics feels safe.  They targeted Benshoof for retaliation because their beliefs did not tolerate Benshoof exercising his own religious beliefs. *See First Pentecostal Church of Holly Springs v. City of Holly Springs*, 959 F.3d 669, 670-71 (5th Cir. 2020) (Willett, J., concurring in grant of injunction pending appeal) ("Singling out [Benshoof for his religious beliefs]—and *only* [Benshoof], it

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

seems—cannot possibly be squared with the First Amendment." (emphasis in original)); *see also S. Bay*, 140 S. Ct. at 1615.

227.    A determination that a parent is "unfit" is required to abrogate the right familial association between parent and child; declaring it "plain beyond the need for multiple citations" that a natural parent's "desire for, and right to, the companionship, care, custody, and management of his or her children'" is an interest far more precious than any property." [8]   Not only did Keenan never determine Benshoof an "unfit father", Keenan tautologically asserted that Applicant poses a "credible threat" to A.R.W. despite the fact Benshoof has never yelled at his son, let alone spanked him.  Not even Owen, among her many absurd lies, claimed Benshoof has ever yelled at or spanked *any child*, nor did Owen claim Benshoof ever threatened to hit an adult, nor did so.  "Credible threat" was nothing more than discriminatory innuendo, pejorative legalese employed to violate Benshoof's familial rights under color of law because of the invidious discriminatory animus held by Keenan, Owen, and the Guardian ad Litem, prejudicial toward Benshoof's beliefs.

### 2) Free Speech - Petitions For Redress Retaliation

228.    Benshoof first filed Complaint against the City in U.S. District Court on September 7, 2022. (WAWD No. 2:22-cv-01281-LK)  Four weeks later the City began filing what would become over one hundred fraudulent domestic violence charges, despite the complete absence of jurisdiction in Seattle Municipal Court.  Also named

---

[8] *Santosky v. Kramer,* 455 U.S. 745, 758-59 (1982)

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 73 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

in that federal lawsuit were Cliber, Keenan, and Franklin-Bihary: six weeks later they conspired to criminalize all contact between Benshoof and A.R.W.

229.    For more than three years, City and County officials have sent increasingly chilling and threatening messages to Benshoof and anyone else willing to criticize the misconduct of public officials.  "But I doubt that a country can live in freedom where its people can be made to suffer physically or financially for criticizing their government, its actions, or its officials. "For a representative democracy ceases to exist the moment that the public functionaries are by any means absolved from their responsibility to their constituents; and this happens whenever the constituent can be restrained in any manner from speaking, writing, or publishing his opinions upon any public measure, or upon the conduct of those who may advise or execute it." An unconditional right to say what one pleases about public affairs is what I consider to be the minimum guarantee of the First Amendment." *New York Times Co. v. Sullivan*, 376 U.S. 254, 297 (1964)

230.    It's Orwellian that Benshoof was put in solitary confinement for calling 911 to report religious hate crimes as a victim.   The "First and Fourteenth Amendments to the Constitution afford to the citizen…an absolute, unconditional privilege to criticize official conduct despite the harm which may flow from excesses and   abuses.   The   prized   American   right   "to   speak   one's   mind," cf. *Bridges* v. *California*, 314 U.S. 252, 270, about public officials and affairs needs "breathing space to survive," *N. A. A. C. P.* v. *Button*, 371 U.S. 415, 433." *New York Times Co. v. Sullivan*, 376 U.S. 254, 298 (1964)

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

231.    Reading Outland's hysterically hyperventilating lies, it is clear that she lives in a paranoid and delusional reality: one in which she justifies her abuse of others by blaming others for her delusions.  "Fear of serious injury cannot alone justify suppression of free speech and assembly. Men feared witches and burnt women." *Whitney v. California*, 274 U.S. 357, 376 (1927)

### 3)  *Religious Retaliation - SPD*

232.    SWAT violated 18 U.S.C. §247, as nearly three dozen officers did "intentionally obstruct, by force or threat of force, including by threat of force against [Benshoof's home church]," and Benshoof's "enjoyment of that person's free exercise of religious beliefs" when they raided Benshoof's home church on July 3, 2024.  As SPD did kidnap Benshoof under color of law of Ellis's facially invalid search warrant, such damage to real religious property is punishable by death pursuant to 18 U.S.C. §247(d)(1).

233.    "A police measure may be unconstitutional merely because the remedy, although effective as means of protection, is unduly harsh or oppressive. Thus, a State might, in the exercise of its police power, make any trespass upon the land of another a crime, regardless of the results or of the intent or purpose of the trespasser." *Whitney v. California*, 274 U.S. 357, 377-78 (1927)

### 4)  *Religious Retaliation - KCCF*

234.    Jail staff retaliated against Benshoof for wearing his consecrated religious head covering and stuck him in the psyche ward for stating his belief that wearing a face mask increases one's chance of contracting bacterial pneumonia.

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

"Those who won our independence by revolution were not cowards. They did not fear political change. They did not exalt order at the cost of liberty. To courageous, self-reliant men, with confidence in the power of free and fearless reasoning applied through the processes of popular government, no danger flowing from speech can be deemed clear and present, unless the incidence of the evil apprehended is so imminent that it may befall before there is opportunity for full discussion. If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence. Only an emergency can justify repression. Such must be the rule if authority is to be reconciled with freedom."
<u>Whitney v. California,</u> 274 U.S. 357, 377 (1927)

235.     DAJD did not afford Benshoof reasonable opportunities to exercise his religious beliefs, and his religious exercises posed no threat to anyone at any time. "Under the Constitution, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments." *Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) " *Pierce v. County of Orange*, 526 F.3d 1190, 1209 (9th Cir. 2008)

### 5) *Religious Retaliation - SMC*

236.     The religious retaliation against Benshoof began in November 2020 when Judge Mary Lynch prevented Benshoof from entering the courtroom and has continued to the present day under the fraudulent pretext of Outland's malicious "domestic violence" prosecutions.

"It is the function of speech to free men from the bondage of irrational fears. To justify suppression of free speech there must be reasonable ground to fear that serious evil will result if free speech is practiced. There must be reasonable ground to believe that the danger apprehended is imminent. There must be reasonable ground to believe that the evil to be prevented is a serious one."
<u>Whitney v. California,</u> 274 U.S. 357, 376 (1927)

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

## C. Fourth Amendment Violations

### 1) SMC Arrest Warrant Void

237.    Just as Judge Willie Gregory was without evidence of personal or subject matter jurisdiction on November 16, 2022, Judge Faye Chess was similarly without evidence of jurisdiction on March 14, 2023.  A magistrate "should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime." *Giordenello v. United States,* 357 U.S. 480, 486 (1958)

238.    RCW 7.105.050(1)(a)(d) proscribed Seattle Municipal Court from claiming jurisdiction to prosecute Benshoof for an alleged restraining order violation. Without jurisdiction, there can be no probable cause to prosecute.  "An arrest warrant issued without the magistrate being given such particular information is void. *Whiteley v. Warden, supra; Aguilar v. Texas, supra* at 112 n. 3; *Giordenello v. United States, supra* at 485-86; *Bacon v. United States, supra* at 943." *State v. Klinker*, 85 Wn. 2d 509, 517 (Wash. 1975)

239.    Judge Chess acted as a rubber stamp for Outland's fraud upon the court. "The Fourth Amendment warrant clause requires more than the signature of a judicial officer at the bottom of the arrest order.  It mandates that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp…" *Aguilar v. Texas,* 378 U.S. 108, 111 (1964)

240.    Judge Chess was required to act within the limited jurisdiction of the statutory authority prescribed to Seattle Municipal Court, yet she did not question

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Outland's application for an arrest warrant.  "A complaint under oath alleging that the person to be arrested has committed a crime is not enough to establish probable cause. *See Whiteley v. Warden, supra* at 563; *Giordenello v. United States, supra* at 481.  Even an information sworn out by a prosecutor is an inadequate substitute for independent judicial judgment based on evidence establishing probable cause. *Gerstein v. Pugh*, 420 U.S. 103 43 L.Ed.2d. 54, 95 S.Ct. 854 (1975)" *State v. Klinker*, 85 Wn. 2d 509, 517-18 (Wash. 1975)

241.    Outland and Chess acted in concert to fabricate a false pretense to arrest, imprison, and prosecute Benshoof.  "The warrant requirement is designed to prevent unjustified intrusions on liberty by officers and prosecutors interested and involved in the adversary process of law enforcement (*Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed.2d. 564, 91 S.Ct. 2022 (1971)), and the purpose of the requirement that particular facts be presented to the judicial officer is to retain this safeguard in fact as well as theory. *Gerstein v. Pugh, supra* at 112;" *State v. Klinker*, 85 Wn. 2d 509, 518 (Wash. 1975)  More than a year later, Ellis used the void arrest warrant as the basis for his application for search warrant to raid Benshoof's home.

### 2) *Application for Search Warrant*

242.    The totality of evidence reveals that Ellis obtained a search warrant to allegedly authorize the raid of Benshoof's home church, not to search for evidence, but to arrest and imprison Benshoof as retaliation for the lawsuits Benshoof was litigating which exposed widespread corruption.  The flimsy pretext for these machinations was Outland's malicious prosecutions of Benshoof.  However, Ellis

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

cannot feign ignorance of the fact that—even if the family court proceedings had been valid—Ellis knew that he had never legally served Benshoof the restraining order that Ellis and Outland alleged Benshoof had violated. In other words, a textbook example of the Fruits of the Poisonous Tree Doctrine, perpetrated by the perpetrators themselves.

> "[A]n officer who seeks an a[ ] warrant by submitting a complaint and supporting affidavit to a judge is not entitled to immunity unless the officer has an objectively reasonable basis for believing that the facts alleged in his affidavit are sufficient to establish probable cause."
> _Malley v. Briggs,_ 475 U.S. 335, 339 (1986)

243.    Judge Nicholas Straley rubber stamped Ellis's Application for Search Warrant ("Application") without any inquiry. A magistrate "should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime." _Giordenello v. United States,_ 357 U.S. 480, 486 (1958)

244.    Page 2 of the Application claimed: "Owen obtained a Seattle Municipal No Contact Order, OCA223037 which was served on Benshoof on 11/16/2022 and expires on 11/16/2027. In addition, Owen obtained a Restraining Order, OCA215006806, which was served on 11/15/2022 and expires on 9/28/2027." (Ex. #0293)

245.    It was Ellis himself who allegedly served Restraining Order OCA215006806, including an Order to Surrender Weapons, on November 15, 2022. The Proof of Service (Ex. #0326) filed by Ellis on November 15, 2022, stated the following in boxed text:

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 79 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

*Important!  Do not use electronic service if your case involves the surrender of firearms, transfer of child custody, removing the respondent from the parties shared residence... After two unsuccessful attempts at personal service, you can ask the court to authorize electronic service...*

246.    Page two stated that Ellis served an Order to Surrender and Prohibit Weapons (Ex. #0327). Detective Ellis did not ask for, nor receive, authorization from Judge Keenan to serve Benshoof via electronic service. Detective Ellis did not obtain confirmation that Benshoof had been served final orders in Case No. 21-5-00680-6.

247.    RCW 26.09.300 Restraining Orders – Notice states the following:

(2) A person is deemed to have notice of a restraining order if:
(a) The person to be restrained or the person's attorney signed the order;
(b) The order recites that the person to be restrained or the person's attorney appeared in person before the court;
(c) The order was served upon the person to be restrained; or
(d) The peace officer gives the person oral or written evidence of the order by reading from it or handing to the person a certified copy of the original order, certified to be an accurate copy of the original by a notary public or by the clerk of the court.

248.    No evidence before any court has shown that Ellis or any other person effectuated legal notice of Restraining Order OCA215006806 upon Benshoof pursuant to RCW 26.09.300(2)(a-d).

249.    RCW 7.105.465(1) Knowledge of Order states: "When the court issues a protection order under this chapter, the court shall advise the petitioner that the **respondent may not be subjected to the penalties** set forth in this chapter for a violation of the order **unless the respondent knows of the order."** (emphasis added)

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

250. Benshoof repeatedly informed Ellis and other SPD officers that Benshoof had never been personally served Restraining Order OCA215006806, as required by law. At trial in SMC No. 671384, the prosecution played video of Benshoof on January 23, 2023, telling SPD Ofc. Nicholas Hughes and SPD Ofc. Jordan Wallace that he had never been legally served. RCW 7.105.465(2) Knowledge of Order states:

> (2) When a law enforcement officer investigates a report of an alleged violation of a protection order issued under this chapter, the officer shall attempt to determine whether the respondent knew of the existence of the protection order. If the law enforcement officer determines that the respondent did not, or probably did not, know about the protection order and the officer is provided a current copy of the order, the officer shall serve the order on the respondent if the respondent is present. If the respondent is not present, the officer shall make reasonable efforts to serve a copy of the order on the respondent. If the officer serves the respondent with the petitioner's copy of the order, the officer shall give the petitioner a receipt indicating that the petitioner's copy has been served on the respondent. After the officer has served the order on the respondent, the officer shall enforce prospective compliance with the order.

251. The video showed Benshoof hand Hughes evidence documents proving that Owen fraudulently obtained Restraining Order OCA215006806 through perjury, and that Ellis did not legally serve the order to Benshoof. These exculpatory facts exonerated Benshoof of any wrongdoing related to the allegations in SMC Nos. 669329, 671384, *et al.* Hughes told Benshoof that he wouldn't take Benshoof's evidence, and handed the documents back to Benshoof, despite the requirement of SPD Policy Manual 5.001.12, which states:

**Employees Must Promptly Report Exonerating Information**
Employees must report any information they discover that may exonerate a person who is under investigation or has been charged with or convicted of a crime.

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 81 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

252. Neither Ellis, nor any other person, presented Benshoof with an "unexpired, certified copy of [Protection Order OCA215006806] with proof of service" RCW 7.105.465(3) Knowledge of Order states:

> (3) Presentation of an unexpired, certified copy of a protection order with proof of service is sufficient for a law enforcement officer to enforce the order regardless of the presence of the order in the law enforcement computer-based criminal intelligence information system.

253. Upon the foregoing, Ellis did not legally serve Benshoof the final orders in KCSC No. 21-5-00680-6 on November 15, 2022, including Protection Order OCA215006806. Seattle Municipal Court did not have personal or subject matter jurisdiction to prosecute Benshoof in either SMC Nos. 669329 or 671384. Therefore, the Fruits of the Poisonous Tree Doctrine prohibited Ellis from applying for and obtaining the search warrant to enter Benshoof's home church.

254. In his Application for Search Warrant ("Application"), Ellis repeated the falsehood that Benshoof and Owen had been married, claiming Owen "is the previous wife of suspect Benshoof." (Ex. #0293) a lie intended to substantiate the fraudulent claim of family court jurisdiction under "domestic relations."

255. The Application described the place to be searched by naming the address but did not describe with specificity the evidence petitioner expected to find, the Application failed to identify any of the items that petitioner intended to seize. Verbatim quotation from RCRCW 10.79 0.035(1) (a), (b), (c) squarely falls under *presumptive rule against warrantless searches whose only defect is a lack of particularity in the warrant.*

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

"We have clearly stated that the **presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant**."
*Groh v. Ramirez,* 540 U.S. 551, 559 (2004)

256. The important distinction is that the Search Warrant did not list: electronic communication device(s), computers and cell phones, device(s), computers and cell phones. (Ex. ##0322-0323)

257. Whatever is listed in a search warrant application does not automatically carry over to a search warrant. A search warrant itself must explicitly say what is to be searched for and taken.

"**The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents.** See *Massachusetts* v. *Sheppard,* 468 U. S. 981, 988, n. 5 (1984) ("[A] **warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional**"); see also *United States* v. *Stefonek,* 179 F. 3d 1030, 1033 (CA7 1999) ("**The Fourth Amendment requires that the *warrant* particularly describe the things to be seized, not the papers presented to the judicial officer . . . asked to issue the warrant**" (emphasis in original)). And for good reason: "The presence of a search warrant serves a high function," *McDonald* v. *United States,* 335 U. S. 451, 455 (1948), and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for her inspection. We do not say that the Fourth Amendment forbids a warrant from cross-referencing other documents. See, *e.g., United States* v. *McGrew,* 122 F. 3d 847, 849-850 (CA9 1997); *United States* v. *Williamson,* 1 F. 3d 1134, 1136, n. 1 (CA10 1993); *United States* v. *Blakeney,* 942 F. 2d 1001, 1025-1026 (CA6 1991); *United States* v. *Maxwell,* 920 F. 2d 1028, 1031 (CADC 1990); *United States* v. *Curry,* 911 F. 2d 72, 76-77 (CA8 1990); *United States* v. *Roche,* 614 F. 2d 6, 8 (CA1 1980). **But in this case the warrant did not incorporate other documents by reference, nor did either the affidavit or the application** (which had been placed under seal) **accompany the warrant**. Hence, we need not further explore the matter of incorporation."
*Groh v. Ramirez*, 540 U.S. 551, 557–58 (2004)

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

258.     There was no probable cause to take computers and phone, which contain Benshoof's personal papers and effects, as Detective Ellis already had copies of the supposed text messages, emails from Owen's phone and computer.

> "**The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional.** *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965); United States v. Cardwell, 680 F.2d 75, 77–78 (C.A.9 1982); *United States v. Crozier,* 674 F.2d 1293, 1299 (C.A.9 1982); *United States v. Klein,* 565 F.2d 183, 185 (C.A.1 1977); *United States v. Gardner,* 537 F.2d 861, 862 (C.A.6 1976); *United States v. Marti,* 421 F.2d 1263, 1268–1269 (C.A.2 1970). \*560 **That rule is in keeping with the well-established principle that 'except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.'** *Camara v. Municipal Court,* 387 U.S. 523, 528–529, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). *See Steagald v. United States,* 451 U.S. 204, 211–212, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *Jones v. United States,* 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958)." *Ibid.*
> *Groh v. Ramirez,* 540 U.S. 551, 559–60

### 3)  *Search Warrant – Facially Invalid*

259.     The issuance of a warrant by a magistrate does not necessarily establish the scope of the search.  "The mere fact that the Magistrate issued a warrant does not necessarily establish that he agreed that the scope of the search should be as broad as the affiant's request."  *Groh v. Ramirez*, 540 U.S. 551, 561 (2004)  The four boxes that were checked on the Warrant—**evidence**, **contraband, weapons, a person**—on its face constituted a General Warrant in violation of 4th amendment.

260.     The warrant was invalid because it did not "describe with particularity the place to be searched and the items to be seized, and [any potential] oral statements by [Ellis] during or after the search [would] not cure the omission."  See

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

*Groh v. Ramirez,* 540 U.S. 551, 556, 124 S. Ct. 1284, 1289, 157 L. Ed. 2d 1068 (2004) (Ex. ##0322-0323)

261.   With his years of training and law enforcement experience, including applications for two hundred search warrants, Ellis had a duty to comply with state law and the prohibitions of the Fourth Amendment.  "It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted. Because [Ellis] did not have in his possession a warrant particularly describing the things he intended to seize, proceeding with the search was clearly "unreasonable" under the Fourth Amendment." *Groh* at 563.

262.   The Search Warrant failed to **identify any of the items that petitioner intended to seize.**  The Search Warrant itself was less specific than the Application, failing to **identify any of the items that Ellis intended to seize***, supra* at ¶85. Nor did the Search Warrant meet the particularity requirement of the Fourth Amendment in compliance with RCW 10.79.035(1)(a) to seize Benshoof as "evidence."

> "The warrant [is] plainly invalid. The Fourth Amendment states unambiguously that "**no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and *the persons or things to be seized*.**" (Emphasis added.)"
> *Groh v. Ramirez,* 540 U.S. 551, 557 (2004)

263.   The Search Warrant did not incorporate by reference the itemized list contained in the Application.

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

264.    Detective Ellis refused to give Benshoof a copy of the Search Warrant and Application to Benshoof, even after Benshoof requested they be provided at the house.

> "[t]he leaders of the search team must also make sure that a copy of the warrant is available to give to the person whose property is being searched at the commencement of the search, and that **such copy has no missing pages or other obvious defects**." *Ibid.* (footnote omitted). We granted certiorari. 537 U.S. 1231, 123 S.Ct. 1354, 155 L.Ed.2d 195 (2003)."
> *Groh v. Ramirez,* 540 U.S. 551, 556 (2004)

265.    Handcuffed, denied his reading glasses, and without being provided a copy of the Search Warrant and Application, Benshoof was denied the opportunity to read the Search Warrant and provide exonerating evidence to Ellis and Ladd.

> "***We have long held, moreover, that the purpose of the particularity requirement is not limited to the prevention of general searches****. See Garrison, 480 U.S., at 84, 107 S.Ct. 1013. A particular warrant also* **"assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search."** *United States v. Chadwick,* 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (citing *Camara v. Municipal Court of City and County of San Francisco,* 387 U.S. 523, 532, 87 S.Ct. 1727 (1967)), abrogated on other grounds, *California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). See also *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317 (1983) ("[P]ossession ***562** of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct")."
> *Groh v. Ramirez,* 540 U.S. 551, 561–62 (2004)

266.    The Search Warrant lacked particularity and was therefore facially invalid.  "We have clearly stated that the presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant."  *Groh* at 559.

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

267.    The Search Warrant "did not simply omit a few items from a list of many to be seized, or misdescribe a few of several items. Nor did it make what fairly could be characterized as a mere technical mistake or typographical error. Rather, in the space set aside for a description of the items to be seized, the warrant stated that the items consisted of  **[☒** *Evidence of those crimes; to include Kurt A BENSHOOF* **☒** *Contraband, the fruits of a crime, or things otherwise criminally possessed;* **☒** *Weapons or other things by means of which a crime has been committed or reasonably appears about to be committed* **] In other words, the warrant did not describe the items to be seized** *at all.* In this respect the warrant was so obviously deficient that we must regard the search as "**warrantless" within the meaning of our case law**. See *Leon,* 468 U. S., at 923; cf. *Maryland* v. *Garrison,* 480 U. S. 79, 85 (1987); *Steele* v. *United States,* 267 U. S. 498, 503-504 (1925). "We are not 559*559 dealing with formalities." *McDonald,* 335 U.S., at 455. Because "`**the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion'" stands "'[a]t the very core' of the Fourth Amendment**," *Kyllo* v. *United States,* 533 U. S. 27, 31 (2001) (quoting *Silverman* v. *United States,* 365 U. S. 505, 511 (1961)), our cases have firmly established the "`**basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable,"** *Payton* v. *New York,* 445 U. S. 573, 586 (1980) (footnote omitted). Thus, "**absent exigent circumstances, a warrantless entry to search for weapons or contraband is**

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

unconstitutional **even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within**." *Id.,* at 587-588 (footnote omitted). See *Kyllo,* 533 U. S., at 29; *Illinois* v. *Rodriguez,* 497 U. S. 177, 181 (1990); *Chimel* v. *California,* 395 U. S. 752, 761-763 (1969); *McDonald,* 335 U. S., at 454; *Johnson* v. *United States,* 333 U. S. 10 (1948)." *Groh v. Ramirez,* 540 U.S. 551, 558–59 (2004)

### 4) Excessive Force

268.    While SWAT were shooting out the windows of Benshoof's home church to "get a response," while SWAT were discussing head shots and detonating flashbang grenades with a helicopter hovering overhead, Benshoof had good cause to fear for his life, particularly considering twelve years of ongoing federal litigation regarding ***excessive use of force*** by the Seattle Police Department.  See *United States v. City of Seattle*, WAWD No. 2:12-cv-1282-JLR.  Benshoof reasonably exercised "'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion'" [which] stands "'[a]t the very core' of the Fourth Amendment,"" *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)

269.    Benshoof w[as] sitting peacefully [in his home church], w[as] easily moved by the police, and did not threaten or harm the officers. In sum, it would be clear to a reasonable officer that it was excessive to use pepper spray against [Benshoof] under these circumstances." *Headwaters Forest Defense v. Cty. of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002)

### 5) Trespass

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

270. "The fact that a valid warrant exists is not an automatic bar to a trespass claim." *Brutsche v. City of Kent*, 164 Wn. 2d 664, 675 (Wash. 2008)

271. Despite having a key to Benshoof's front door, and despite Benshoof overing no resistance whatsoever, SWAT decided to cause an estimated $80,000-$100,000 in damage to Benshoof's home church by using dozens of OC cannisters, breaking numerous windows, and destroying the basement door, to "get a response."

"¶23 Under *Restatement (Second) of Torts* § 214(1), and in light of *Goldsby*, Mr. Brutsche's trespass claim is a proper cause of action. *See also* 68 AM. JUR. 2D *Searches and Seizures* § 309 (2008) ("the victim of an unlawful search and seizure has available the remedy of trespass"), *see, e.g., Sovich v. State*, 92 Ind. App. 103, 167 N.E. 145, 146 (1929) (recognizing that officers executing a valid search warrant may be liable in damages for acts constituting a malicious trespass); *Richardson v. Henderson*, 26, 622-CA (La. App. 2 Cir. 03/1/95); 651 So. 2d 501, 504-06 (relying on general principles in 68 AM. JUR. 2D § 229 (1993) that execution of a search warrant must be carried out in an orderly manner and liability in trespass may result if the officers executing the warrant exceed their authority or wantonly destroy property in making their search; here, officers "thoroughly 'trashed'" the plaintiffs' home…"

*Brutsche v. City of Kent*, 164 Wn. 2d 664, 675-76 (Wash. 2008) (en banc)

272. ""At common law, every individual owes a duty of reasonable care to refrain from causing foreseeable harm in interactions with others." *Beltran-Serrano v. City of Tacoma* , 193 Wash.2d 537, 550, 442 P.3d 608 (2019). "This duty applies in the context of law enforcement and encompasses the duty to refrain from directly causing harm to another through affirmative acts of misfeasance." *Id.*" *Mancini v. City of Tacoma*, 196 Wash. 2d 864, 879 (Wash. 2021)

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 89 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

273. Seattle "police executing a search warrant owe the same duty of reasonable care that they owe when discharging other duties." *Mancini v. City of Tacoma*, 196 Wash. 2d 864, 880 (Wash. 2021)

274. Ellis's false and misleading statements in his Application falsely portrayed Benshoof as a dangerous man who possessed weapons. Based upon Ellis's statements, Benshoof was categorized as high-risk pursuant to SPD Policy Manual 6.185.1: "High-Risk Search Warrant – A warrant that is served where there are known armed persons at the location, or the location is barricaded." Ellis's categorization of Benshoof predictably set in motion SWAT's excessive use of force. It is no coincidence that the police report claimed that Benshoof was "barricaded" inside his home. Locking one's own front door and sitting peacefully on the floor in one's own home does not meet the legal definition of "barricaded."

275. "¶ 36 Our holding is compelled by several prior decisions. We have recognized a *trespass* claim for "unnecessary damage to property caused by ... law enforcement officers executing a search warrant." *Brutsche v. City of Kent*, 164 Wash.2d 664, 671, 193 P.3d 110 (2008) ; *see also Goldsby v. Stewart*, 158 Wash. 39, 41, 290 P. 422 (1930) ("In executing a search warrant, officers of the law should do no unnecessary damage to the property to be examined.")." *Mancini v. City of Tacoma*, 196 Wash. 2d 864, 880 (Wash. 2021)

## D. Fifth Amendment Violations

### 1) Double Jeopardy Clause

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 90 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

276.    Benshoof invoked the Double Jeopardy Clause in the Motion to Dismiss he filed in SMC No. 671384 and raised the same issue in King County Superior Court proceedings before Judge Melinda Young and Suzanne Parisien.  Judges Chin, Young and Parisien all refused to hear Benshoof's motions.

277.    Benshoof's defense in Seattel Municipal Court was the same defense he would use if he went to trial in King County Superior Court: family court never had jurisdiction and Owen committed collateral and intrinsic fraud to perpetrate the sham hearings before Judge Keenan in order to kidnap A.R.W.  Outland, by forcing Benshoof to present his defense in municipal court, gave Brennan complete insight into Benshoof's defense against the County's prosecutions.

> "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks, supra,* at 11. This prohibition, lying at the core of the Clause's protections, prevents the State from honing its trial strategies and perfecting its evidence     through     successive     attempts     at conviction.  Repeated prosecutorial sallies would unfairly burden the defendant and create a risk of conviction through sheer governmental perseverance.  See *Green v. United States,* 355 U.S. 184, 187-88 (1957); *United States v. DiFrancesco,* 449, U.S. at 130."
> <u>Tibbs v. Florida,</u> 457 U.S. 31, 41-42 (1982)

278.    Brenna and Outland have been conspiring to keep Benshoof unlawfully imprisoned indefinitely.  Outland dismissed SMC No. 669329 so that Brennan could re-file the allegation in King County Superior Court.  The record of 669329 had to be hidden from prospective jurors because Benshoof established on November 16, 2022, that the City had not obtained personal jurisdiction, nor did it have subject matter jurisdiction.

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

279.    The violations of the Double Jeopardy Clause are also an exception to the repeated attempts by U.S. District judges to claim *Younger* abstention. (Dkt. #13 pg. 2; WAWD No. 2:23-cv-1392-JNW Dkt. #244 pg. 4 ¶1)  "A colorable claim that a state prosecution will violate the Double Jeopardy Clause, however, presents an exception to *Younger*: "Because full vindication of the right necessarily requires intervention before trial, federal courts will entertain pretrial habeas petitions that raise a colorable claim of double jeopardy. *Mannes v. Gillespie,* 967 F.2d 1310, 1312 (9th Cir. 1992)."" *Dominguez v. Kernan*, 906 F.3d 1127, Ft. 5 (9th Cir. 2018)

280.    ""Once the petitioner sustains his burden of demonstrating entitlement to federal habeas relief, the district court has wide discretion in choosing the appropriate remedy." Brian R. Means, Federal Habeas Manual §  13:5 (2018); see also 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require. "); *Hilton v. Braunskill,* 481 U.S. 770, 775, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)" *Dominguez v. Kernan*, 906 F.3d 1127, Ft. 6 (9th Cir. 2018)

281.    While Benshoof would surely win on appeal of the Seattle Municipal Court convictions, that would still violate the Double Jeopardy Clause.  ""Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that '[a] verdict of acquittal ... could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.'" *United States v. Martin Linen Supply Co.*, 430 U.S. 564. 571, 97 S.CT. 1349, 51 L.Ed.2d. 642 (1977) (alterations in original) (quoting *Ball v. United States*, 163 U.S. 662, 671, 16

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

S.Ct. 1192, 41 L.Ed. 300 (1896)).” *Gouveia v. Espinda*, 926 F.3d 1102, 1115 (9th Cir. 2019)

### 2) *Exculpatory Evidence*

282.    City prosecutors, through false and misleading statements, concealed the fact that the restraining orders were obtained through Owen’s collateral and extrinsic fraud and had not been legally served upon Benshoof.  Outland withheld this exculpatory evidence from Judge Faye Chess to obtain a $250,000 warrant for Benshoof’s arrest on March 14, 2024.

283.    By withholding exculpatory evidence among Benshoof’s personal papers and effects contained on his cell phone and computers, and by denying Benshoof his right to call witnesses in his defense who had previously perjured themselves in statements material to the City’s malicious prosecution, the City violated *Brady v. Maryland*.  “In Brady, the Supreme Court held that a state violates a defendant's right to due process when it suppresses evidence favorable to an accused that is material to guilt or punishment. *See Cone v. Bell,* 556 U.S. 449, 451, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009).” “wit” *Dominguez v. Kernan*, 906 F.3d 1127, Ft. 3 (9th Cir. 2018)

284.    Benshoof’s motion to dismiss, filed on September 9, 2024, in Seattle Municipal Court, complained of the fact that the City was withholding exculpatory information contained on Benshoof’s electronic devices.  (Ex. #0629 ¶18)

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 93 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

# E. Sixth Amendment Violations

## 1) Right to Attorney Representation

285.    Judge Chin claimed that Benshoof, by refusing to be represented by a public defender, waived his right to counsel.  In fact, Benshoof explicitly stated that he was exercising his Sixth Amendment right to counsel of his choosing.

> "But a waiver is an intentional relinquishment or abandonment of a known right or privilege… Moreover, courts indulge every reasonable presumption against the waiver of fundamental constitutional rights.    Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461."
> *Griffith v. Rhay*, 282 F.2d 711, 717 (9th Cir. 1960)

286.    Because Benshoof was denied the right to speak privately with Robert Barnes from a jail telephone, Benshoof represented himself *pro se* until Benshoof's friends were able to contact attorney Robert Barnes ("Barnes") on his behalf.

287.    When Benshoof moved for a continuance to allow Barnes time to obtain discovery documents from the City and prepare Benshoof's defense, Judge Chin repeatedly denied Benshoof's motions.  Ironically, Judge Chin had accepted the withdrawal of the court appointed standby counsel several days prior, who properly cited *State v. McDonald,* 143 Wash. 2d. 506 (2001) which held that "Standby counsel must be available to represent the accused on a moment's notice in the event termination of the defendant's self-representation is necessary." *State v. McDonald,* 143 Wn. 2d 506, 511 (Wash. 2001)

288.    Despite acknowledging that standby counsel must withdraw because he could not "be available to represent the accused on a moment's notice," Judge Chin

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 94 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

reversed course and claimed that Benshoof's motion for a continuance could not be

granted to allow Barnes time to obtain discovery and prepare Benshoof's defense.

"[T]he constraint laid by the [Sixth] Amendment upon the national courts expresses

a rule so fundamental and essential to a fair trial, and so, to due process of law, that

it is made obligatory upon the States by the Fourteenth Amendment."" *Gideon v.*

*Wainwright,* 372 U.S. 335, 340 (1963)

> ""We concluded that certain fundamental rights, safeguarded by the first eight
> amendments against federal action, were also safeguarded against state action
> by the due process of law clause of the Fourteenth Amendment, and among
> them the fundamental right of the accused to the aid of counsel in a criminal
> prosecution." Grosjean v. American Press Co., 297 U.S. 233, 243-244 (1936)."
> <u>Gideon v. Wainwright,</u> 372 U.S. 335, 343 (1963)

289. ""[The assistance of counsel] is one of the safeguards of the Sixth

Amendment deemed necessary to insure fundamental human rights of life and

liberty. . . .The Sixth Amendment stands as a constant admonition that if the

constitutional safeguards it provides be lost, justice will not `still be

done.'" *Johnson v. Zerbst,* 304 U.S. 458, 462 (1938). To the same effect,

*see Avery v. Alabama*, 308 U.S. 444 (1940), and *Smith v. O'Grady,* 312 U.S.

329 (1941)." *Gideon v. Wainwright,* 372 U.S. 335, 343 (1963)

290. Judge Parisien repeatedly denied Benshoof's requests for a continuance

to afford attorney Robert Barnes time to obtain discovery, speak with Benshoof, and

prepare Benshoof's defense. "The Sixth Amendment requires not just

that counsel show up on the day of a critical stage but prepare for it too. See

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 95 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

*id.; McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)" *Betschart v. Oregon,* 103 F.4th 607, 620 (9th Cir. 2024)

291.   By denying Benshoof the ability to privately communicate with his counsel for nearly five months, the City and County violated the Sixth Amendment. ""It is of course true that the right conferred by the Sixth Amendment to effective assistance of counsel implicitly embraces adequate opportunity for the accused and his counsel to consult, advise and make such preparation for arraignment and trial as the facts of the case fairly demand." *De Roche v. United States*, 337 F.2d 606, 607 (9th Cir. 1964)" *Betschart v. Oregon,* 103 F.4th 607, 621 (9th Cir. 2024)

### 2)  *Right to Self-Representation*

292.   Along with the right to counsel and the right to be represented by an attorney, the right to represent oneself was enacted in Section 35 of the Judiciary Act of 1789.   By Judge Chin removing Benshoof from court during trial in Seattle Municipal Court, Judge Chin violated the Sixth Amendment by preventing Benshoof from being present during jury selection, the hearing of pre-trial motions, and hours of testimony by the City's primary witness, Jessica Owen.

## F.  Eighth Amendment Violations

### 1)  *Excessive Bail*

293.   Respondents' ongoing punishments inflicted upon Benshoof are cruel, disproportionate, and without just cause.   By ignoring the fact that the City never had personal or subject matter jurisdiction to prosecute Benshoof, the City

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

established the pretext to render criminal assistance to Owen's kidnapping of A.R.W. through the City's malicious prosecutions. The City's issuance of $310,000 in fraudulent warrants to indefinitely imprison Benshoof shocks the conscience.

294. Wash. Const. art I § 20 states, "[a]ll persons charged with crimes shall be bailable by sufficient sureties, except for capital offenses when the proof is evident, or the presumption great." The City and County knew Benshoof was indigent, yet still set the bail prohibitively high to ensure that Benshoof would remain imprisoned indefinitely.

295. Pursuant to CrR 3.2(b)(6), CrRLJ 3.2(b)(6), courts must consider accused's financial resources in setting a bond that will reasonably assure appearance. City and County officials already knew that Benshoof was indigent when he was arrested on July 3, 2024, as he had previously been appointed a public defender due to his indigency.

296. "Relief in this type of case must be speedy if it is to be effective." *Stack v. Boyle*, 342 U.S. 1, 4 (1951) "Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Id*. "Bail set at a figure higher than an amount reasonably calculated to fulfill this purpose is "excessive" under the Eighth Amendment." *Stack* at 5.

297. "To infer from the fact of indictment alone a need for bail in an unusually high amount is an arbitrary act. Such conduct would inject into our own system of government the very principles of totalitarianism…" *Stack* at 6.

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

298.    "If bail in an amount greater than that usually fixed for serious charges of crimes is required in the case of any of the petitioners, that is a matter to which evidence should be directed in a hearing so that the constitutional rights of each petitioner may be preserved. In the absence of such a showing, we are of the opinion that the fixing of bail before trial in these cases cannot be squared with the statutory and constitutional standards for admission to bail." *Stack* at 6.

299.    The City has prevented Benshoof from appealing his conviction, delaying the sentencing hearing for more than three months, denying Benshoof an adequate remedy to challenge the City's $170,000 bail.  "While habeas corpus is an appropriate remedy for one held in custody in violation of the Constitution, 28 U.S.C. (Supp. IV) § 2241(c)(3), the District Court should withhold relief in this collateral habeas corpus action where an adequate remedy available in the criminal proceeding has not been exhausted. *Ex parte Royall*, 117 U.S. 241 (1886); *Johnson* v. *Hoy*, 227 U.S. 245 (1913)." *Stack* at 6-7.

300.    The County has similarly denied Benshoof a constitutionally sufficient bail hearing since he was arraigned on July 8, 2024.  "*Younger* abstention is not appropriate in this case because the [bail] issues raised…are distinct from the underlying criminal prosecution and would not interfere with it. Regardless of how the bail issue is resolved, the prosecution will move forward unimpeded." *Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018)

### 2) *Cruel Punishments*

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

301.     "As state pre-trial detainees, plaintiffs are protected by the Fourteenth Amendment's Due Process Clause, as well as specific substantive guarantees of the federal Constitution, such as the First and Eighth Amendments. Under the Due Process Clause, detainees have a right against jail conditions or restrictions that "amount to punishment." *Bell v. Wolfish*, 441 U.S. 520, 535-37, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). This standard differs significantly from the standard relevant to convicted prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment. *Id.* at 535 n. 16, 99 S.Ct. 1861." *Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008)

302.     The City violated the Duty of Care Doctrine by incarcerating Benshoof in King County Jail, claiming that the City wasn't responsible for the violations of Benshoof's rights inside the County jail.  In *West v. Atkins*, 487 U.S. 42 (1988), "[t]he Court held that the physician's conduct could "fairly be attributed to the State" because the state "bore an affirmative obligation to provide adequate medical care to [the prisoner]; the State delegated that function to respondent [physician]; and respondent voluntarily assumed that obligation by contract."" *Florer v. Congregation Pidyon Shevuyim*, 603 F.3d 1118, 1122 (9th Cir. 2010)

303.     Denying Benshoof access to paper, envelopes, and stamps constituted punishment.  "[U]nder common law, a jailor has a duty to provide a prisoner with necessary supplies…" *Pollard v. Geo Group, Inc.*, 629 F.3d 843, 875 (9th Cir. 2010)  As the Ninth Circuit held in *Pierce v. County of Orange*, 526 F.3d 1190, 1209 (9th Cir. 2008), "because we are dealing with pre-trial detainees, to satisfy

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 99 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

substantive due process requirements the restriction or regulation cannot be intended to serve a punitive interest. *Bell*, 441 U.S. at 535, 99 S.Ct. 1861."

304. Denying Benshoof his reasonable ADA accommodations and denying him reading glasses before, during, and after the City's September trial constituted a failure to render constitutionally adequate medical care. "The State has an obligation, under the Eighth Amendment and state law, to provide adequate medical care to those whom it has incarcerated." *West v. Atkins*, 487 U.S. 42 (1988)

305. Citing *Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004), the Ninth Circuit held that ""to constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement"" *Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008)

### 3) Detention In Communicado

306. DAJD cut off Benshoof's use of the phone on November 22, 2024. Jail personnel ignored Benshoof's repeated demands to restore his phone access. Benshoof had reason to believe County officials intended to hold him *in communicado* for **six weeks** by claiming that the electronic home detention companies were backlogged. (Ex. #0494-0495) That turned out to be yet another lie fabricated to silence Benshoof.

> "But detention *incommunicado* for days on end is so fraught with evil that we should hold it to be inconsistent with the requirements of that free society which is reflected in the Bill of Rights. It is the means whereby the commands of the Fifth Amendment [and Fourteenth Amendment] are circumvented."
> *Reck v. Pate*, 367 U.S. 433, 448 (1961)

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

307. "We also know that detention *incommunicado* was the secret of the inquisition and is the secret of successful interrogation in Communist countries." *Reck v. Pate*, 367 U.S. 433, 446 (1961) Imprisoning Benshoof in solitary confinement without access to a phone constituted a "complete loss of liberty for the time of pretrial detention [which] is 'irretrievable' regardless of the outcome at trial." *Betschart v. Oregon*, 103 F.4th 607, 614 (9th Cir. 2024)

## G. Fourteenth Amendment Due Process Violations

308. "[T]he sanctity of the family unit is a fundamental precept firmly ensconced in the Constitution and shielded by the Due Process Clause of the Fourteenth Amendment." *Hodge v. Jones,* 31 F.3d 157, 163 (4th Cir. 1994) While the Due Process Clause under the Fourteenth Amendment guarantees fair process, it also "includes a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests." *Troxel,* 530 U.S. at 65. More specifically, the Due Process Clause prohibits governmental interference with rights "rooted in the traditions and conscience of our people as to be ranked as fundamental" or "implicit in the concept of ordered liberty." *Washington v. Glucksberg,* 521 U.S. 702, 720-21 (1997) (citations omitted).

309. The U.S. Supreme Court in *Troxel* recognized that "there is a presumption that fit parents act in the best interests of their children." *Troxel,* 530 U.S. at 68.

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

310.     The City had an obligation to conduct a fair trial, yet brazenly violated every element of due process.    "[A] provision of the Bill of Rights which is "fundamental and essential to a fair trial" is made obligatory upon the States by the Fourteenth Amendment." Gideon v. Wainwright, 372 U.S. 335, 342 (1963)

### 1) *Absence of Personal Jurisdiction*

311.     The City's practice and widespread custom of mailing criminal summons violates RCW 35.20.270(1); furthermore, it means that personal jurisdiction over Benshoof was never obtained by Seattle Municipal Court.

### 2) *Absence of Subject Matter Jurisdiction*

312.     City first initiated "domestic violence" prosecutions with SMC No. 669329 upon the assertion that Keenan had exercised jurisdiction in KCSC No. 21-5-00680 involving Benshoof's minor son.  However, that precluded any court but King County Superior Court from adjudicating the alleged restraining order violation, pursuant to RCW 7.105.050(1)(a)(d).  The City, by claiming that Benshoof violated a family court restraining order, was collaterally estopped from claiming the City had jurisdiction to thereupon prosecute Benshoof.

### 3) *Perjury and Fraud – Owen*

313.     While this Court has repeatedly denied that Owen acted in joint action, it is a fact that "nongovernmental witnesses could act "under color of law" by conspiring with the prosecutor or other state officials. See *Dennis* v. *Sparks*, 449 U.S.

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

24, 27-29 (1980); *Adickes* v. *S. H. Kress Co.*, 398 U.S. 144, 152 (1970)." *Briscoe v. LaHue*, 460 U.S. 325, 330 n.7 (1983)

314.    The vast extent of the ongoing criminal conspiracy to render criminal assistance to the kidnapping of Benshoof's son by maliciously prosecuting Benshoof shocks the conscience. The proof of Owen's perjury is now undeniable, *supra* at ¶¶32-33; ¶¶150-175. ""[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have effected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976)." *U.S. v. Young*, 17 F.3d 1201, 1203 (9th Cir. 1994)

315.    It is undeniable that Ellis committed perjury by claiming that he was authorized to serve Benshoof by email, *supra* at ¶¶181-184. And it is also undeniable that Outland knowingly and willfully suborned the perjury of Ellis and Owen in their scheme to maliciously prosecute Benshoof and unlawfully imprison Benshoof under a *de facto* life sentence behind bars, *supra* at ¶218, no. 8.

> "The modern understanding of perjury incorporates the principle that a false statement includes an unqualified statement made without knowledge as to its truth or falsity. A number of states, like California, codified this principle, while others confirmed it through judicial decisions. The federal perjury statute likewise incorporates this principle; it refers to statements of "any material matter which [the declarant] does not believe to be true," 18 U.S.C. § 1621(1), (2), which covers "cases in which the witness makes a false statement without knowing whether the statement is true or not," Sara Sun Beale et al., Grand Jury Law & Practice § 11:6 n.7 (2d ed. 2019)."
> *Ho Sang Yim v. Barr,* 972 F.3d 1069, 1084-85 (9th Cir. 2020)

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

316.    RCW 9A.80.010 Official Misconduct is only a gross misdemeanor.  What Ellis and Outland have perpetrated is the willful rendering of criminal assistance to Owen's and Lerman's kidnapping and child abuse of Benshoof's son for more than three years.  This is far more serious than the appearance of misconduct.

> "The appearance of misconduct in this case is serious. [Benshoof] presented competent evidence that the prosecutor knew [Owen's and Ellis's] testimony was false… [Outland] not only presented Officer [Ellis's] false testimony but referred specifically to it during closing arguments." *U.S. v. Young*, 17 F.3d 1201, 1203 (9th Cir. 1994)

317.    The City will surely argue that Outland acted in good faith: she was hypnotized by Owen's charming lies, and she had good cause to believe Ellis's claim that the courts authorized him to ignore the personal service requirement.  "However, a government's assurances that false evidence was presented in good faith are little comfort to a criminal defendant wrongly convicted on the basis of such evidence. A conviction based in part on false evidence, even false evidence presented in good faith, hardly comports with fundamental fairness. Thus, even if the government unwittingly presents false evidence, a defendant is entitled to a new trial "if there is a reasonable probability that [without the evidence] the result of the proceeding would have been different."*Endicott,*869 F.2d at 455 (citing *United States v. Bagley,*473 U.S. 667, 678-80, 105 S.Ct. 3375, 3381-82, 87 L.Ed.2d 481 (1985))." *U.S. v. Young*, 17 F.3d 1201, 1203-04 (9th Cir. 1994)

### 4) *Denial of Frank's Hearing*

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

318.     Despite the foregoing disregard for Benshoof's rights and our laws, it should still shock the conscience that City and County judges subsequently denied Benshoof's repeated demands a Frank's hearing in either court.

319.     "The touchstone of [the] analysis under the Fourth Amendment is always the reasonableness in all circumstances of the particular governmental invasion of a citizen's personal security."[9]

320.     Benshoof sought to invalidate the search warrant.   The two-prong *Franks* test is satisfied by showing that Ellis "deliberately made a statement that was false or in reckless disregard of the truth," and "the statement was material to the probable cause determination." [10]

321.     Pursuant to *Franks*, the courts would have found that the search warrant, devoid of any reliability, lacked the necessary probable cause and was therefore void.   Thus, the courts simply refused to allow Benshoof a *Franks* hearing.

322.     The requirement for particularity serves to "prohibit law enforcement from engaging in general or exploratory searches." [11] "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications

---

[9] *State v. Bartylla*, 755 N.W.2d 8, 15 (Minn. 2008) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977)).
[10] *State v. Andersen*, 784 N.W.2d 320, 327 (Minn. 2010) (internal citations omitted).
[11] *State v. Fawcett*, 884 N.W.2d 380, 387 (Minn. 2016).

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 105 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."[12]

> "The particularity requirement prevents officers from conducting "a general, exploratory rummaging of a person's belongings." The requirement is one of "practical accuracy rather than a hyper technical one." In assessing whether a warrant is sufficiently particular, we consider the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case."[13]

323.    None of the described behavior prompting the issuance of the search warrant was in any way related to the possession of firearms.

324.    The Applicant, SPD Detective Ryan Ellis, failed to inform the judicial officer of the fact that Benshoof had filed "Declaration of Non-Surrender" on multiple occasions known to Detective Ellis (Ex. #0317), which the State's disclosures have revealed were known to State actors. This omission renders any suggestion of a nexus between the purpose for which the search warrant was issued, and the search found no firearms.  Therefore, inclusion of "handguns" in the search warrant application was devoid of rational basis.

325.    A warrantless search is "*per se* unreasonable."[14] "A search conducted without a warrant is unreasonable unless it satisfies one of the well-delineated exceptions to the warrant requirement." [15] Since none applies here, the seizure of

---

[12] *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

[13] *U.S. v. Ivey*, 91 F.4th 915, 918 (8th Cir. 2024) (internal citations omitted)

[14] *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008).

[15] *State v. Lester*, 874 N.W.2d 768, 771 (Minn. 2016).

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Defendant's private property is unconstitutional and, as such, the fruit of the poisonous tree doctrine requires the underlying charges to be dismissed.

326.     Ellis misled the Court in seeking a warrant. Had Ellis been truthful and relayed accurate information, the warrant would not have been issued. For the foregoing reasons, Seattle Municipal Court and King County Superior Court should have: (1) suppressed all evidence collected and derived from the unlawful search and seizure of Benshoof's home; (2) held that the warrant was not supported by probable cause; (3) determined that Benshoof's arrest was unlawful; and (4) consequently dismiss all charges against Kurt Benshoof.

327.     The County continues to deny Benshoof the right to a *Franks* hearing. Judge Parisien has repeatedly lied in court, falsely claiming on August 15, 2024, that Judge Melinda Young held a *Franks* Hearing on August 6, 2024, and denied Benshoof's motion.

> "As the Supreme Court explained in *Gerstein v. Pugh* , 420 U.S. 103, 107 n.9, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975): The District Court correctly held that respondents' claim for relief was not barred by the equitable restrictions on federal intervention in state prosecutions, *Younger v. Harris* , 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution. The order to hold preliminary hearings could not prejudice the conduct of the trial on the merits."
> *Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018)

### 5) *Motion to Dismiss not Heard*

328.     Despite Benshoof twice noting his Motion to Dismiss (Ex. #0623-#0640), Judge Chin simply refused to allow Benshoof to argue his motion when he appeared

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

the morning of September 17, 2024. The right to be heard in court is the very foundation of due process. Without it, there is no due process. When Benshoof objected to being silenced at his own trial, Judge Chin had marshals remove Benshoof from the courtroom.

### 6) Denied Discovery

329. The City repeatedly refused to provide Benshoof with discovery requests essential to his defense. In a mockery of due process, the documents which the City did provide Benshoof were illegible black-and-white versions (Ex. #0482) of documents which the City possessed legible color copies of. (Ex. #0481) Even if Benshoof had been provided reading glasses, the documents would have been impossible to read.

330. Pretending that they had jurisdiction to hold their kangaroo court trial, Judge Chin granted Outland's motion to deny Benshoof the majority of his discovery requests, denying Benshoof exculpatory evidence. "It is well settled that the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment. *United States* v. *Agurs*, 427 U.S. 97 (1976); *Brady* v. *Maryland, supra*, at 87." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987)

### 7) Voi Dior

331. Benshoof's right to be present and to participate in jury selection is a fundamental requirement of due process. "[T]he Fourteenth Amendment

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 108 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

"embraced" those "'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions,'" *Gideon v. Wainwright*, 372 U.S. 335, 341 (1963)

### 8) Denied Pre-trial Motions

332.    Benshoof's right to be present and to participate in arguing pre-trial motions is a fundamental requirement of due process, *Gideon, supra.*

### 9) Biased Tribunal

333.    The Due Process Clause entitled Benshoof to an impartial and disinterested tribunal.  This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of due process: the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decision-making process.[16]

334.    For nearly two years, City prosecutors violated due process elements of a fair hearing: (1) Benshoof's right to examine opposing evidence; and (2) Benshoof's right to present exculpatory evidence.  An esteemed judge, Henry J. Friendly, wrote, "There can likewise be no fair dispute over the right to know the nature of the evidence on which the administrator relies."[17]

### 10) Denied Witnesses

---

[16] *See Carey v. Piphus*, 435 U.S. 247, 259–262, 266–267 (1978)

[17] *Some Kind of Hearing,* Univ. Penn. Law Review Vol. 123:1267 at 1283, Henry J. Friendly (1975)

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 109 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

335.     Prohibiting Benshoof from calling any witnesses in his defense at trial was so Kafkaesque that it alone should be sufficient to grant Benshoof habeas relief. Benshoof was unable to find any controlling case law to cite regarding this shocking judicial misconduct.  Even more Orwellian, Judge Parisien attempted to convince Benshoof that he would similarly be denied the right to call his own witnesses: Judge Parisien claimed that allowing Benshoof to cross-examine the County's witnesses would suffice.  These weren't abuses of discretion."  These audaciously corrupt incidents are proof of a RICO conspiracy and clear violations of 18 U.S.C. §1512(b).

### 11) Trial in absentia

336.     Repeatedly removing Benshoof from the courtroom to prevent him from participating in jury selection, to prevent him from objecting to the City's pre-trial motions, to prevent him from arguing his own pre-trial motions, and to prevent him from objecting to the prosecution's questioning of Owen, destroyed any pretense of a fair trial.  The ruse was perpetrated by Judge Chin claiming that Benshoof's objections and requests for the City to provide evidence of personal jurisdiction were disruptive.  Benshoof's right to be present and to participate in his own trial was a fundamental requirement of due process, *Gideon, supra.*

337.     Removing Benshoof from the courtroom during jury selection, motions *in limine*, and trail testimony kept Benshoof from adequately defending himself.  In this "case[], and many others which have been examined, relief has been granted, on the ground that, by some fraud practiced directly upon the party seeking relief

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

against the judgment or decree, that party has been prevented from presenting all of his case to the court." *United States v. Throckmorton*, 98 U.S. 61, 66 (1878)

## H. Fourteenth Amendment Equal Protection Violations

338. Police refused to take Benshoof's complaints over the phone or in writing, presenting another Faustian bargain: to obtain equal protection under the law as a reporting victim of felony crimes, Benshoof had to first give up his liberty by subjecting himself to unlawful imprisonment pursuant to the fraudulent arrest warrant obtained by Outland on March 14, 2023.

339. Despite SPD Policy Manual 5.001.12 stating that officers "must report any information they discover that may exonerate a person who is under investigation or has been charged with or convicted of a crime," Ellis and other officers refused to report Benshoof's exonerating information.

## III. AUTHORITY

340. Pursuant to the Habeas Corpus Act of February 5, 1867, Ch. 28, § 1, 14 Stat. 385 and 28 U.S.C. § 2254, this Court is authorized to grant a writ of habeas corpus to free Petitioner from unlawful imprisonment.[18] Habeas is remedially appropriate: this Court has "an obligation to determine whether subject-matter jurisdiction exists…"[19]

---

[18] RCW 9A.40.040; RCW 9A.40.010(6)
[19] *Hertz Corp v. Friend*, 559 U.S. 77, 94 (2010)

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 111 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

341.    Under 28 U.S.C. § 2243, a court entertaining an application for a writ of habeas corpus shall **forthwith** award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

342.    Opposing counsel, as well as state and federal judges have repeatedly claimed that Benshoof's habeas petitions sought review of the family court proceedings.  Those claims were either ignorant of the law or intentional deceptions. "A habeas court does not review a state court *judgment* . Rather, "[h]abeas lies to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him. Indeed, it has no other power; it cannot revise the state court judgment; it can act only on the body of the petitioner." *Gouveia v. Espinda*, 926 F.3d 1102, 1109 (9th Cir. 2019)

## A.  Prima Facia Case

343.    The court must treat the complaint's factual matter as true and construe Benshoof's petition in the light most favorable to Benshoof "even if doubtful in fact." See *Erickson vs. Pardus,* 551 U.S. 89 (2007); *Scheuer vs. Rhodes,* 416 U.S. 232, 236 (1974)

## B.  Legal Right – Supremacy Clause

344.    "This Constitution, and the laws of the United States which shall be made in pursuance thereof," take precedence over the City's and Keenan's fraudulent

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 112 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

assertions of jurisdiction, and that "the *judges in every state shall be bound thereby.*" United States Constitution, Article VI, Paragraph 2.

345. Respondents cannot prevail, as they cannot disprove that the family court restraining orders were fraudulent and void *ab initio,* nor can Respondents disprove that the restraining order issued by Gregory was issued without jurisdiction, and similarly void *ab initio.* Therefore, Respondents' enforcement, arrest, imprisonment and prosecutions derivative of the void restraining orders under color of law: (1) violated the First Amendment by denying Benshoof's right to associate with A.R.W.; (2) violated the First Amendment by retaliating against Benshoof for his religious beliefs; (3) violated Fourth amendment prohibitions against general warrants and excessive force; (4) violated Sixth Amendment prohibitions against denying Benshoof; (5) violated Eighth Amendment prohibitions against excessive bail and cruel punishments; (6) and violated the Fourteenth Amendment Due Process Clause and Equal Protection Clause.

346. The ongoing imprisonment of Benshoof is not justified by "interests of the highest order"—a so called, "compelling" interest—and the malicious prosecutions of Benshoof were not "narrowly tailored" to achieve those interests. *See Fulton v. City of Phila.*, 141 S. Ct. at 1881; *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429-30 (2006) (government bears the burden to satisfy strict scrutiny even at the preliminary injunction phase) There can never be any government interest in rendering criminal assistance to those who violate the inalienable rights of any citizen.

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 113 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

## C. Res Judicata Proscribed

347.   Federal domestic relations exclusion was improperly cited by the District Court's dismissals for two reasons.   While the *Rooker-Feldman* doctrine rightly prevents lower federal courts from hearing direct appeals of state court decisions, this Court inferred a salient distinction between *habeas* and *certiorari* of paramount importance.   "All the authorities agree that *res judicata* does not apply to applications for habeas corpus.   The courts must be kept open to guard against injustice through judicial error."[20]   This distinction cannot be overstated.   Lower federal courts, by conflating the appellate review of *certiorari* with the direct jurisdictional inquiry of *habeas corpus*, have enervated the Great Writ, weakening our Republic's foundational defense against tyranny, suspending its power of inquiry into modern star chambers: family courts.

348.   Secondly, Benshoof and Owen have never been parties to "domestic relations," a rubric presumptively including all parents and children. *Au contraire:* the term includes parents in contractual privity with the state through marriage licensure[21] or domestic partnership.[22]   Washington family courts are incorporated under Revised Code of Washington Title 26 *Domestic Relations*.

---

[20] *Darr v. Burford*, 339 U.S. 200, 214-215 (1950)
[21] RCW 26.04.140 Marriage license.  Before any persons can be joined in marriage, they shall procure a license from a county auditor, as provided in RCW 26.04.150 through 26.04.190.
[22] RCW 26.60.020(1) "State registered domestic partners" means two adults…who have been issued a certificate of state registered domestic partnership by the secretary.

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 114 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

349.    Despite the foregoing irrefutable facts, federal judges have repeatedly and tautologically employed this deceptive ruse. (WAWD No. 2:23-cv-751- RAJ, Dkt. #22 pg. 2 ¶2); WAWD No. 2:23-cv-1392-JNW, Dkt. #38 pg. 14 ¶1; Dkt. #244 pg. 4 ¶2)

## D.  Federal Questions Mandate

350.    Benshoof comes before this Court as the remedy of last resort because the lower courts' over-broad application of domestic relations exception has evidenced not only both prongs of an abuse of discretion test,[23] but derivative disregard for the concurring opinion of J. Gorsuch in  *Axon v. FTC*,  "Today, §1331 provides that "district courts shall have original jurisdiction of *all* civil actions arising under the Constitution, laws, or treaties of the United States. Not *may* have jurisdiction but *shall*. Not *some* civil actions arising under federal law, but *all*."[24]  Of note, original habeas jurisdiction of district court is not exclusive, but concurrent with this Court under the Habeas Corpus Act.

> "Rooker - Feldman doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to [the Supreme] Court." *Verizon Md. Inc. v. Pub. Serv. Comm'n* , 535 U.S. 635, 644 n.3, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002).

> Because the Rooker - Feldman principle is purely statutory, "Congress, if so minded, may explicitly empower district courts to oversee certain state-court judgments." *Exxon Mobil* , 544 U.S. at 292 n.8, 125 S.Ct. 1517. Put differently, Congress may, via statute, provide federal district courts with jurisdiction to review state court decisions as long as that jurisdiction is conferred in addition

---

[23] *U.S. v. Hinkson,* 585 F. 3d 1247, 1262 (9th Cir. 2009) citing *United States v. U.S. Gypsum Co.,* 333 U.S. at 395, 68 S.Ct. 525 (1948); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. at 405, 110 S.Ct. 2447 L. Ed. 2d 359 (1990)

[24] *Axon v. FTC*, 143 S. Ct. 890 (2023) (J. Gorsuch concurring, at 34-35)

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

to the original jurisdiction established under § 1331. And Congress "has done so, most notably, in authorizing federal habeas review of state prisoners' petitions." *Id.*"

*Gouveia v. Espinda*, 926 F.3d 1102, 1108 (9th Cir. 2019)

351.    Just as the broad application of *Chevron* deference rendered administrative agency actions opaque to federal court oversight, so too has the doctrine of domestic relations exception.  The instant case is unique in that the fundamental threshold issue was, and remains, the glaring absence of family court jurisdiction.  It is ethically and legally impossible to grant deference to a fraudulent family court proceeding without jurisdiction.  "Because our review proceeds under § 2241, the deference owed to a state court under § 2254(d) is not applicable." *Gouveia v. Espinda*, 926 F.3d 1102, 1111 (9th Cir. 2019)

352.    Furthermore, if Respondents were to claim in Return that Benshoof simply seeks injunctive relief to stay state court proceedings,[25] the violations of Petitioner's first amendment rights remain an exception pursuant to 28 U.S.C. § 2283.[26]

## E.  Federal Habeas Authority

353.    Justice Black, speaking for a unanimous Court in *Jones v. Cunningham*, 371 U. S. 236, 243 (1963), observed "The sparse legislative history of the [Habeas Corpus Act] gave "no indication whatever that the bill intended to change

---

[25] e.g., Seattle Municipal Court Case Nos. 669329, 671384, *et al.*
[26] *Mitchum v. Foster,* 407 U.S. 225 (1972)

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 116 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

the general nature of the classical habeas jurisdiction."[27] ….Nor, since that time, has this Court ever held that the congressional purpose originally underlying the statute barred use of the federal writ to free children from unlawful state custody."[28]

354.    In an early test of the Habeas Corpus Act, a 12-year-old child petitioned for a writ of habeas corpus to free herself from her unlawful imprisonment.  Having been unlawfully restrained under indentured servitude by her mother's former slave owner, the young girl's freedom was restored in only a matter of days under habeas corpus.[29]  The similarities with the instant case cannot be overlooked.

355.    "[28 U.S.C.] Section 2243 commands the judge "entertaining" an application to award the writ or issue an order to show cause "unless it appears from the application that the applicant . . . is not entitled thereto."[30]  The district court simply turned a blind eye to the irrefutable evidence of Owen's unclean hands, ignoring proof that Keenan proceeded without a justiciable issue and in absence of jurisdiction.  By theatrical misdirection, the Houdini court deceptively performed a disappearing act.  The foremost issue that **there had never been a "child custody" proceeding** vanished behind the tautological curtain of absolute federal deference to state "child custody" proceedings, *ipse dixit ipso facto*.

### 1) *Pre-trial Detention*

---

[27] Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv.L.Rev. 441, 476-477 (1963) [Footnote 2/3]
[28] *Lehman v. Lycoming Cty. Ch. Svcs. Agcy.,* 458 U.S. 502, 518-19 (1982)
[29] *In re Turner*, 24 Fed. Cas. 337 (No. 14247) C.C.D. Md. (1867)
[30] *Brown v. Allen*, 344 U.S. 443, 506 (1953)

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

356.    The County's pre-trial detention of Benshoof does not bear a presumption of validity.  Benshoof is not "required to proceed under § 2254. Section 2254 limits the general grant of habeas authority under 28 U.S.C. § 2241 by placing additional obstacles in the path of a person seeking habeas relief when he is "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a). Where a petitioner is *not* challenging custody attributable to a state court judgment, his custody does not bear a presumption of validity. Section 2254 therefore does not apply, and he is free to seek habeas relief under § 2241(a) and (c)(3) instead."

*Dominguez v. Kernan*, 906 F.3d 1127, 1129 (9th Cir. 2018)

## 2) *Pre-sentencing Custody*

357.    While Benshoof was finally released on bail on November 27, 2024, he remains "in custody" for purposes of federal habeas relief, unlawfully imprisoned in his friend's home with an ankle monitor: Electronic Home Detention monitored by King County.

> "The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty. Since habeas corpus is an extraordinary remedy whose operation is to a large extent uninhibited by traditional rules of finality and federalism, its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate. Applying that principle, we can only conclude that petitioner is in custody for purposes of the habeas corpus statute. First, he is subject to restraints "not shared by the public generally," *Jones* v. *Cunningham, supra*, at 240: that is, the obligation to appear "at all times and places as ordered" by "[a]ny court or magistrate of competent jurisdiction." Cal. Penal Code §§ 1318.4(a), 1318.4(c). He cannot come and go as he pleases. His freedom of movement rests in the hands of state judicial officers, who may demand his presence at any time and without a moment's notice. Disobedience is itself a criminal offense."

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 118 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

*Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973)

## F. Equitable Right – 42 U.S.C. § 1983

358. An Act of Congress, 42 U.S.C. § 1983, expressly authorizes a "suit in equity" to redress "the deprivation," under color of state law, "of any rights, privileges, or immunities secured by the Constitution…" *Mitchum v. Foster,* 407 U.S. 225, 226 (1972).

359. District court ignored the exceptions to the anti-injunction act under 28 U.S.C. § 2283, claiming that *Younger* abstention precluded district court from granting Benshoof injunctive relief, despite Benshoof's actual innocence.

> "Most telling of all, this Court continuously has recognized that the ultimate equity on the prisoner's side — a sufficient showing of actual innocence — is normally sufficient, standing alone, to outweigh other concerns and justify adjudication of the prisoner's constitutional claim. See *Sawyer v. Whitley*, 505 U.S. 333, 340-347 (1992) (actual innocence of penalty) *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (federal courts may reach procedurally defaulted claims on a showing that a constitutional violation probably resulted in the conviction of an actually innocent person); *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986) (colorable showing of actual innocence suffices to excuse successive claim); see also *Teague v. Lane, supra*, at 313 (where absence of procedure seriously diminishes the likelihood of an accurate conviction, a new rule requiring the procedure may be applied retroactively on habeas)."
> *Withrow v. Williams*, 507 U.S. 680, 700 (1993)

360. "Furthermore, habeas corpus has traditionally been regarded as governed by equitable principles. *United States ex rel. Smith* v. *Baldi*, 344 U.S. 561, 573 (dissenting opinion)." *Fay v. Noia*, 372 U.S. 391, 438 (1963)

361. Applying *Ex parte Young* requires a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 119 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1

2

properly characterized as prospective." *Puerto Rico Aqueduct Sewer Auth. v. Metcalf Eddy,* 506 U.S. 139 (1993)

3

4

5

6

7

> "The various authorities we have referred to furnish ample justification for the assertion that individuals who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." *Ex parte Young,* 209 U.S. at 156

8

9

10

362.    The County and City insisted that Benshoof must submit himself to unlawful imprisonment via electronic home detention in addition to $420,000 in bail yet knew that Benshoof is indigent.

11

12

## G.  Prior District Court Abuses of Discretion

13

### 1)  Domestic Relations Exception Proscribed

14

15

16

17

18

19

20

21

22

363.    District court asserted, "It is well-settled that federal district courts have no jurisdiction over child custody issues, which are exclusively matters of state law. (Ex. #0525 ¶2) *Ankenbrandt* held "the Court of Appeals erred by affirming the District Court's invocation of the domestic relations exception" in an action which "in no way seeks a divorce, alimony, or child custody decree."[31]  Similarly, Benshoof's present habeas petition "in no way seeks a divorce, alimony, or child custody decree." The first line of *Ankenbrandt* reveals domestic relations exceptions apply to ***diversity*** cases.  Benshoof is not bringing a diversity case habeas: the expression of one thing

23

24

25

26

[31] *Ankenbrandt v. Richards,* 504 U.S. 689, 690 (1992)

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

implies the exclusion of others, *expressio unius est exclusio alterius.*[32] Any student of jurisprudence knows that a habeas petition is an inquiry of the trial court's ***jurisdiction***, not a petition for a trial *de novo*, nor a petition for appellate review.

364. A similar straw man stated, "Federal habeas has never been available to challenge parental rights or child custody."[33] *Lehman* cautioned against habeas expanding to include collateral challenges to the custody decision, yet *Lehman* did not proscribe federal habeas inquiry to an consider the complete absence of family court jurisdiction. "Justice Black, speaking for a unanimous Court in *Jones v. Cunningham,* 371 U.S. 236, 243 (1963), observed that the federal writ of habeas corpus "is not now and never has been a static, narrow, formalistic remedy.""*Lehman v. Lycoming County Children's Services,* 458 U.S. 502, 516-17 (1982)

365. *Lehman* expressly acknowledged the appropriateness and need for habeas remedy over cases in which the restraints on liberty are severe and immediate, particularly when no valid state "child custody" proceeding was ever initiated, let alone adjudicated.

### 2) *Younger Abstention Proscribed*

366. Benshoof's Notice of Refusal of Magistrate Sarah Kate Vaughn (Dkt. #8) was filed on August 6, 2024, pursuant to LCR 73. In disregard of LCR 73, Magistrate

---

[32] *Reading Law: The Interpretation of Legal Texts,* Scalia and Garner (published 2012)
[33] App 38a ¶2, citing *Lehman v. Lycoming Cty. Ch. Svcs. Agcy.,* 458 U.S. 502 (1982)

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Vaughn continued to make recommendations (Dkt. #22), as well as sign and propose orders (Dkt. ##13; 22-1; 22-2), which expressly sought the dismissal of Benshoof's habeas petition without with issuance of a writ and without a plenary hearing.

> ""[A] federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'" *Sprint Communic'ns, Inc. v. Jacobs*, 571 U.S. 69, 134 S.Ct. 584, 591, 187 L.Ed.2d 505 (2013) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ). "*Younger* abstention remains an extraordinary and narrow exception to the general rule[.]" *Cook v. Harding*, 879 F.3d 1035, 1038 (9th Cir. 2018) (quoting *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 727 (9th Cir. 2017) (internal quotation marks omitted) )."
> *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018)

367.    The U.S. Supreme Court addressed the application of *Younger* abstention in *Sprint Commc'ns, Inc. v. Jacobs,* 571 U.S. 69 (2013). "Abstention was in order, we explained, under "the basic doctrine of equity jurisprudence that courts of equity should not act ... to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparably injury if denied equitable relief." *Id.*, 77. "Circumstances fitting within the *Younger* doctrine, we have stressed, are "exceptional"; they include, as catalogued in [*New Orleans Public Service, Inc.* v. *Council of City of New Orleans*, 491 U.S. 350, 368 (1989)], "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."" *Id.*, at 73.

368.    The bad faith, harassment and extraordinary circumstances in evidence are unprecedented and shock the conscience.  "[E]ven if *Younger* abstention [were] appropriate, federal courts do not invoke it if there is a "showing of bad faith,

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 435, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). *Arevalo* at 765-66.

369.    *Younger* has repeatedly been misapplied to Benshoof's claims.  Unlike Harris, Appellees Dan, Hirsch, and Broslawsky were not being prosecuted and did not face a situation where the "danger of irreparable loss [wa]s both great and immediate." *Younger v. Harris*, 401 U.S. 37, 45 (1971).  Harris sought injunctive relief, "alleging that the prosecution and even the presence of the [Criminal Syndicalism] Act inhibited him in the exercise of his rights of free speech and press, rights guaranteed him by the First and Fourteenth Amendments." *Id.* At 39.

370.    Unlike Benshoof, Harris did not claim—let alone present proof—that: (1) the prosecuting court was without jurisdiction; (2) the prosecutor suborned the perjury of a prostitute and a corrupt police detective; (3) the prosecutor was conspiring to perpetrate extrinsic fraud with a perjuring prostitute; or (4) the judge prevented him from calling witnesses in his defense; (5) the judge held a trial in absentia.

371.    Municipal judges should heed the fact that "judicial immunity was not designed to insulate the judiciary from all aspects of public accountability. Judges are immune from § 1983 damages actions, but they are subject to criminal prosecutions as are other citizens. *O'Shea* v. *Littleton*, 414 U.S. 488, 503 (1974)." *Dennis v. Sparks*, 449 U.S. 24, 31 (1980)  Unable to deny that the City did not obtain jurisdiction as required by RCW 35.20.270(1), and unable to deny that only King County Superior

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 123 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Court could be granted subject matter jurisdiction pursuant to RCW 7.105.050(1)(a)(d), Judge Andrea Chin, should remember that a judge "**will be subject to liability**…when he has acted in the "clear absence of all jurisdiction."" *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (emphasis added)

372.    The concerted efforts by district court judges to ignore the City's extraordinary corruption, a practice of bad faith and years of ongoing harassment of Benshoof, have repeatedly claimed *Younger* abstention. "Such a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *New Orleans Pub. Serv., Inc. v. New Orleans*, 491 U.S. 350, 368 (1989)

### 3) *State Court Exhaustion*

373.    Benshoof clearly communicated his decision to withhold consent to a magistrate judge adjudicating his habeas petition. On August 8, 2024, the clerk recorded Benshoof's Notice of Refusal of Magistrate Judge Rule 73. (Dkt. #8) U.S.C. §636(c0(2) states, in part, "The decision of the parties shall be communicated to the clerk of court. Thereafter, either the district court judge or the magistrate judge may again advise the parties of the availability of the magistrate judge, but in so doing, shall also advise the parties that they **are free to withhold consent."** U.S. District Court LCR 73(a) states:

> "When authorized by 28 U.S.C. § 636(c), and subject to the consent of the parties, a magistrate judge may conduct a civil action or proceeding, including a trial. In cases that are assigned to a district judge, the clerk may seek consent of the parties, or parties may request at any time that the court reassign the case to a magistrate judge."

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

374. The clerk did not "seek the consent of the parties." Both parties did not "request at any tine that the court reassign the case to a magistrate judge." Upon the foregoing, Magistrate Vaughn's filings were all void *ab initio*. However, because Judge Whitehead is likely to parrot the same meritless and deceptive claims, Benshoof will herein address state exhaustion.

375. While Magistrate Vaughn conceded that "[a]lthough there is no exhaustion requirement mandated by 28 U.S.C. § 2241(c)(3)," she went on to claim that "the Ninth Circuit Court of Appeals has held exhaustion is necessary as a matter of comity unless special circumstances warrant federal intervention prior to a state criminal trial" (Dkt. #13, pg. 3, ¶3), and claimed that Benshoof "must show cause why this case should not be dismissed for failure to exhaust state remedies. (Dkt. #13, pg. 4, ¶1)

> "Thus, we have consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements. The demand for speed, flexibility, and simplicity is clearly evident in our decisions concerning the exhaustion doctrine, *Fay* v. *Noia*, 372 U.S. 391 (1963); *Brown* v. *Allen*, 344 U.S. 443 (1953); the criteria for relitigation of factual questions, *Townsend* v. *Sain*, 372 U.S. 293 (1963); the prematurity doctrine, *Peyton* v. *Rowe*, 391 U.S. 54 (1968); the choice of forum, *Braden* v. *30th Judicial Circuit Court of Ky.*, 410 U.S. 484 (1973); *Strait* v. *Laird*, 406 U.S. 341 (1972); and the procedural requirements of a habeas corpus hearing, *Harris* v. *Nelson, supra*."

*Hensley v. Municipal Court*, 411 U.S. 345, 350 (1973)

376. Benshoof has spent the previous three years exhausting municipal and State court remedy, *supra* at ¶¶197-206. Not only did Magistrate Vaughn concede

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 125 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

exhaustion is not required, Benshoof has exhausted state court remedy. Even if Benshoof had not spent years exhausting state court remedy, Benshoof has thoroughly "demonstrated the type of "special circumstances" which warrant federal intervention." *Carden v. State of Montana*, 626 F.2d 82, 84 (9th Cir. 1980) Shockingly, Benshoof has also exposed the fact that State courts at every level are conspiring to suspend the Great Writ in violation of Wash. Const. art I §13, as well as U.S. Constitution art I §9 Cl. 2.

## H. Unlawful Restraints - Family Court

### 1) No Domestic Relations - No Jurisdiction

377. Family courts are delegated limited authority under RCW Title 26 *Domestic Relations*. As "Domestic relations" between Benshoof and Owen never existed, family court was absent jurisdiction to issue either a parenting plan, *supra,* at ¶40, or a restraining order, *supra,* at ¶42. A court has an "independent <u>obligation</u> to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp v. Friend,* 559 U.S. 77, 94 (2010)

### 2) No Judicial Immunity

378. David Keenan, like his many co-conspirators, believes that wearing a black robe puts him above the law, enabling him to render criminal assistance to the kidnapping of Benshoof's son. Maybe if Keenan spent a few months in jail reading federal case law he would realize he is gravely mistaken. Benshoof has already proven that Keenan acted in the complete absence of the limited jurisdiction of family

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

court. Keenan should understand that—just like a judge—a prosecutor "will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' *Bradley v. Fisher,* 13 Wall 335, 351 (1871)" *Stump v. Sparkman,* 435 U.S. 349 (1978).

379.     A judge's "immunity is dependent on the challenged conduct being an official judicial act within his statutory jurisdiction, broadly construed. *Stump v. Sparkman,* 435 U.S. 349, 356 (1978); *Bradley v. Fisher*, at 352, 357." *Dennis v. Sparks,* 449 U.S. 24, 29 (1980)  The problem for Keenan is that he was never presented with evidence of "domestic relations" by which he could claim authority pursuant to the limited jurisdiction delegated by RCW 26.  The ridiculous extent of Keenan's *ultra vires* acts would be comical if they weren't so pervasively sinister,  *supra* at 218.

### 3) *Perjury*

380.     Owen's inconsistent material statements of fact constituted perjury in violation of RCW 9A.72.020, a class B felony, *supra,* at ¶¶32-33.  Owen's perjury was foundational to her obtaining the TRO on September 28, 2021.  Cliber suborned Owen's perjury (Ex. #0062; #0069) to obtain the TRO and Keenan denied Benshoof's right to confront Owen, *supra,* at ¶34.  Under the exclusionary rule and the Fruits of the Poisonous Tree doctrine, evidence derived from evidence that is illegally obtained is inadmissible.  Owen was not a credible witness, and her perjury was inadmissible evidence.  Owen's perjurious statements were presented by Cliber as evidence and considered by Keenan as true.

### 4) *Collateral and Judicial Estoppel*

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

381.    Owen' inconsistent sworn statements set forth that Benshoof: (1) **is** the biological father of A.R.W. yet was **not** the biological father of A.R.W.; (2) **lived** with A.R.W. since birth, yet had **never** lived with A.R.W., and (3) "had always insisted that A.R.W. was his" yet had **never** held out A.R.W. as his son, *supra,* at ¶32; ¶¶150-175.  Owen was collaterally estopped from making the foregoing inconsistent material statements of fact, and the doctrine of judicial estoppel required Keenan to prohibit Owen from taking inconsistent positions. *Davis v. Wakelee,* 156 U.S. 680, 689 (1895)

### 5) *No Justiciable Issue*

382.    Under RCW 26.26A.435(2), family court could not overcome Benshoof's presumption of fatherhood after A.R.W. turned four-years-old **unless** Benshoof (1) was **not** the genetic father of A.R.W.; (2) had **never** lived with A.R.W.; and (3) had **never** held A.R.W. out as his son.

383.    A.R.W. was twelve years old when Owen filed her petition to decide parentage.   Owen's own statements denied family court jurisdiction to overcome Benshoof's presumption of fatherhood.   Cliber and Owen brought a fraudulent parentage action: a false suit at law or in equity violates RCW 9.12.

### 6) *Orders Void ab initio*

384.    Benshoof and Owen were never party to a dissolution of marriage or domestic partnership, legal separation, or declaration of invalidity, *supra*, at ¶40.

385.    "In entering a decree of dissolution of marriage or domestic partnership, legal separation, or declaration of invalidity, the court shall determine the marital or

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

domestic partnership status of the parties, make provision for a parenting plan for any minor child of the marriage or domestic partnership" and "make provision for any necessary continuing restraining orders." RCW 26.09.050(1)

386.    A restraining order issued under RCW 26.09.060(1)(a) is limited to "a proceeding for: [d]issolution of marriage or domestic partnership, legal separation, or a declaration of invalidity." *Expressio unius est exclusio arlterius.* "Affirmative words are often, in their operation, negative of other objects than those affirmed, and, in this case, a negative or exclusive sense must be given to them or they have no operation at all." *Marbury v. Madison,* 5 U.S. 1 Cranch 137, 174 (1803)

387.    Under the doctrine of *stare decisis* and 28 U.S.C. § 1652, Washington statutes "shall be regarded as rules of decision in the courts of the United States."

388.    Judgments must be dismissed, regardless of timeliness, if jurisdiction is deficient. *Mitchell v. Kitsap County*, 59 Wash.App. 177, 180-81, 797 P2d 516 (1990) (collateral challenge to jurisdiction of pro tem judge granting summary judgment properly raised on appeal) (citing *Allied Fidelity Ins. Co. v. Ruth*, 57 Wash.App. 783, 790, 790 P2d 206 (1990)); *Jaffe and Asher v. Van Brunt*, 158 F.R.D. 278 (S.D.N.Y.1994)

389.    Keenan did not have jurisdiction to issue the Final Restraining Order. By acting without statutory authority, Keenan granted *ultra vires* orders.

"[I]t is apparent, that the framers of the constitution contemplated that instrument as a rule for the government of *courts*... Why otherwise does it direct the judges to take an oath to support it? This oath certainly applies in an especial manner, to their conduct in their official character. How immoral to

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

impose it on them, if they were to be used as the instruments, and the knowing instruments, for violating what they swear to support!
*Marbury v. Madison*, 5 U.S. 137, 179-180 (1803)

"[A] law repugnant to the constitution is void; and that courts, as well as other departments, are bound by that instrument." (*Id.,* at 180)

390.    Benshoof had no legal obligation to abide by the terms of Keenan's void orders; therefore, the City had no authority to prosecute Benshoof, and King County is without probable cause.

### 7)  No Dissolution Decree

391.    The record of KCSC No. 21-5-00680-6 is without any evidence that Cliber and Owen even sought a dissolution decree.  There is a simple reason for this: there was never a marriage or legal domestic partnership to ***dissolve.***

392.    What was concealed was the fact that family court was not authorized to issue a restraining order unless there was a dissolution decree.  "RCW 26.09.050 authorizes a trial court to issue restraining orders in dissolution decrees." *State v. Wingard,* No. 2149802-III (Wash. App. 2004).

393.    Outland and Ellis knew that Benshoof was never legally served the void Final Restraining Order in accordance with RCW 26.09.300.  "By its terms, RCW 26.09.300 only applies in dissolution actions." *State v. Thomas,* 668 P.2d 1294, 35 Wn.App. 598, 605-6060 (Wash. App. 1983)

### 8)  Vagueness Doctrine

394.    As a family law specialist, Cliber knew or should have known that RCW 7.105.310(5) states, "the order shall specify ***the date*** the order expires."  As a family

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

law specialist, Cliber knew or should have known that by his petitioning for Owen's Final Restraining Order with **two dates** for expiration, that the order violated RCW 7.105.310(5).

395. The King County Superior Court Clerk knew, or should have known, that the Final Restraining Order violated RCW 7.105.310(5) by containing two expiration dates. RCW 7.105.325 required the Clerk enter the Final Restraining Order into a statewide judicial information system and forward a copy to the Seattle Police Department.

396. RCW 7.105.325(2) required the Seattle Police Department to immediately enter the order into their computer-based criminal intelligence information system. Despite the order stating that it expired on October 21, 2023, **or** September 28, 2027, Seattle Police exercised *ultra vires* discretion by choosing to enter September 28, 2027, as the expiration date.

### 9) Collateral & Extrinsic Fraud

397. Cliber suborned Owen's perjury to create the fraudulent pretense of family court jurisdiction. "There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents, and even judgments." *United States v. Throckmorton*, 98 U.S. 61, 64 (1878) Benshoof was prevented, by the fraudulent contrivances of Cliber, Owen, and Keenan from testifying, *supra,* at ¶44.

398. The extrinsic and collateral fraud included Cliber suborning Owen's perjury to falsely assert that family court was statutorily authorized to adjudicate a

petition to decide parentage, with Owen, Cliber, and Keenan "purposely keeping [Benshoof] in ignorance of the [invalidity]" of the restraining orders. *Burke v. Bladine,* 99 Wash. 383, 394 (1918) "Adopting the language of *Pico v. Cohn*, 91 Cal. 129, 25 Pac. 970, 27 Pac. 537, 13 L.R.A. 336, 25 Am. St. Rep. 159.***In all such instances, the unsuccessful party is really prevented, by the fraudulent contrivances of his adversary, from having a trial[.]" The fraud perpetrated by Cliber and Owen rendered all orders issued by Keenan in case no. 21-5-00680-6 null and void.

# I. Unlawful Imprisonment - Municipal Court

## 1) No Personal Jurisdiction

399. City prosecutors and judges ignored the statutory requirement for obtaining personal jurisdiction under RCW 35.20.270(1), refusing to provide evidence of compliance and legal service when Benshoof objected on the record, *supra* at ¶48. "Execution of process and the performance of duty by constituted officers must not be thwarted. But these agents, servants of a government and a society whose existence and strength comes from these constitutional safeguards, are <u>serving law when they respect, not override, these guarantees</u>." *Miller v. United States*, 230 F.2d 486, 490 (5th Cir. 1956) The City never obtained personal jurisdiction.

> "All criminal and civil process issuing out of courts created under this title shall be directed to the chief of police of the City served by the court and/or to the sheriff of the county in which the court is held and/or the warrant officers and be by them executed according to law in any county of this state."
> RCW 35.20.270(1)

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

400.    A court has an "independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp v. Friend,* 559 U.S. 77, 94 (2010)  On December 27, 2023, Def. Katrina Outland admitted the City's practice and widespread custom of violating 35.20.270(1).  (WAWD No. 2:23-cv-1392-JNW, Dkt. #58-1, pg. 2 #2)

### 2)  No Subject Matter Jurisdiction

401.    Seattle Municipal Court is a court of limited jurisdiction.  An alleged protection order violation "must be transferred" to superior court when a "superior court has exercised jurisdiction over a proceeding involving the parties." RCW 7.105.050(1)(a), *supra,* at ¶49.  "If any tribunal finds absence of proof of jurisdiction over a person and subject matter**, the case must be dismissed**." *Louisville R.R. v. Motley,* 211 US 149 (1908)

402.    Under state law, **only** King County Superior Court would have been authorized to hear allegations that Benshoof violated the allegedly valid family court restraining order issued in KCSC case no. 21-5-00680-6.

403.    Judge Gregory did not have personal or subject matter jurisdiction to issue a restraining order, nor issue a warrant.  A restraining order issued without jurisdiction is a nullity; therefore, Benshoof did not violate a valid restraining order issued by the City by which the City could prosecute Benshoof in SMC Nos. 669329, 671384, 675317, 675405, 676175, 676207, 676216, 676463, nor 676492.

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

## J. Prosecutorial Misconduct

### 1) No Factual Investigation

City prosecutors and judges ignored the statutory requirement for obtaining personal jurisdiction under RCW 35.20.270(1), refusing to provide evidence of compliance

404. RCW 9.94A411(2)(b)(i) states that the "prosecuting attorney shall ensure that a thorough factual investigation has been conducted before a decision to prosecute is made" which should include (A) "interviewing of all material witnesses, including obtaining of written statements." Benshoof was never interviewed by Ellis, nor any other SPD officer, despite repeated requests from Benshoof.

405. Even if Outland and Brennan had sincerely believed that an exception applied under RCW 9.94A411(2)(b)(ii)(C) in believing that "The arrest of the suspect is necessary to complete the investigation of the crime," they were still required to complete a thorough investigation. "In the event that the exception to the standard is applied, the prosecuting attorney shall obtain a commitment from the law enforcement agency involved to complete the investigation in a timely manner. If the subsequent investigation does not produce sufficient evidence to meet the normal charging standard, the complaint should be dismissed." Neither Outland nor Brennan can deny the fact that Owen has repeatedly committed perjury across multiple City and County court proceedings for more than three years, perjury and fraud which is foundational to the prosecutions.

### 2) Perjury and Fraud

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 134 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

406.     Despite irrefutable proof of intrinsic and extrinsic fraud perpetrated by Owen for more than three years across multiple City and County court proceedings, fraud which is foundational to the prosecutions brought by Outland and Brennan, the prosecutors continue to maliciously prosecute Benshoof, directing Owen and Ellis to commit perjury.   "It is most emphatically not within the scope of a prosecuting attorney's duties to withhold exculpatory evidence and to direct witnesses to give misleading and deceptive testimony. *Hilliard v. Williams*, 465 F.2d 1212 (6th Cir.), cert. denied, 409 U.S. 1029, 93 S.Ct. 461, 34 L.Ed.2d 322 (1972); *see* ABA Code of Professional Responsibility, EC 7-13, DR 7-103(B)." *Hilliard v. Williams*, 516 F.2d 1344, 1350 (6th Cir. 1975)

> "As long ago as *Mooney v. Holohan,* 294 U.S. 103, 112 (1935), this Court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with "rudimentary demands of justice." This was reaffirmed in *Pyle v. Kansas,* 317 U.S. 213 (1942).  In *Napue v. Illinois,* 360 U.S. 264 (1959), we said, "[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Id., at 269. Thereafter *Brady v. Maryland*, 373 U.S., at 87, held that suppression of material evidence justifies a new trial "irrespective of the good faith or bad faith of the prosecution.""
> <u>*Giglio v. United States,*</u> 405 U.S. 150, 153 (1972)

## 3)  *Retaliation – Malicious Prosecutions*

407.     Outland has already been sued by Benshoof in federal court, and both she and Ellis have been informed by Benshoof that their violations of his rights the previous five months are grounds for another federal civil rights lawsuit.   "[A] retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision to go forward are

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 135 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

reasonable grounds to suspend the presumption of regularity behind the charging decision, see *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978)" *Hartman v. Moore,* 547 U.S. 250, 265 (2006)

408.    This Court previously said, "Benshoof's Section 1983 claims against MacDonald and Outland are also barred by prosecutorial immunity. Prosecutors are absolutely immune from Section 1983 actions when performing functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976).  (Ex. #0531 ¶2)  While this Court has repeatedly attempted to run cover for Outland's crimes, it should know that—even if prosecutorial immunity is equivalent to absolute judicial immunity—Outland is liable for her fraud upon the court

409.    Benshoof has already proven that Judge Chin acted in the complete absence of the limited jurisdiction of Seattle Municipal Court pursuant to RCW 35.20.270(1) and RCW 7.105.050(1)(a)(d).   This Court should understand that—just like a judge—a prosecutor "will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' *Bradley v. Fisher,* 13 Wall 335, 351 (1871)" *Stump v. Sparkman,* 435 U.S. 349 (1978).

410.    Because of his nearly five months of unlawful imprisonment, Benshoof had time to read *Imbler* and related cases, discovering that—even if the City had jurisdiction—there are  established exceptions to the general rule that prosecutors are absolutely immune when the prosecutor: (1) acts as a complaining witness to obtain a warrant; (2) for actions taken in the investigative phase of the prosecution;

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

and (3) aids in the preparation of a witness affidavit.    Furthermore, the conspiracy by Outland and Chin to deny Benshoof access to exculpatory evidence presents yet another exception to a defense of absolute immunity.

411.    **Complaining Witness.**    The    Court    should    know    that    in 1871 "complaining witnesses were not absolutely immune at common law. In 1871, the generally accepted rule was that one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause." *Malley v. Briggs*, 475 U.S. 335, 340-41 (1986)2 (1997)

412.    In Outland's Motion for Determination of Probable Cause; Motion for Arrest Warrant; Motion for Conditions of Release, she stated, "I Katrina Outland, declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct to the best of my knowledge and belief." (Ex. #0570)

413.    Outland can only claim qualified immunity for her fraud upon the court in obtaining the warrant for Benshoof's arrest on March 14, 2023.    "A conscientious prosecutor reading our cases should now conclude that there is absolute immunity for the decision to seek an arrest warrant after filing an information, but only qualified immunity for testimony as a witness in support of that warrant." *Kalina v. Fletcher*, 522 U.S. 118, 132 (1997)

414.    **Investigative Phase.** "The issue of good faith immunity under *Dodd v. Spokane County, Washington,* 393 F.2d 330 (9th Cir. 1968) for actions taken in

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

the investigative phase of the prosecution may be presented for determination by the

trial court." *Cline v. Brusett*, 661 F.2d 108, 112 (9th Cir. 1981)

> "In the years since *Imbler,* we have held that absolute immunity applies when
> a prosecutor prepares to initiate a judicial proceeding, *Burns, supra,* at
> 492, 111 S.Ct. 1934, or appears in court to present evidence in support of a
> search warrant application, [*Kalina v. Fletcher*, 522 U.S. 118, at126 (1997)]. We
> have held that absolute immunity does not apply when a prosecutor gives
> advice to police during a criminal investigation, see *Burns, supra,* at 496, 111
> S.Ct. 1934, when the prosecutor makes statements to the press, *Buckley v.
> Fitzsimmons,* 509 U.S. 259, 277, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), or
> when a prosecutor acts as a complaining witness in support of a warrant
> application, *Kalina, supra,* at 132, 118 S.Ct. 502 (SCALIA, J., concurring). This
> case, unlike these earlier cases, requires us to consider how immunity applies
> where a prosecutor is engaged in certain administrative activities."
> <u>Kamp v. Goldstein,</u> 555 U.S. 335, 343 (2009)

415.     On or around September 25, 2024, Ellis admitted at trial that he had

been listening to Benshoof's telephone calls from jail. At trial, Outland had Ellis read

aloud the transcription of one of Benshoof's telephone calls. Benshoof's telephone

calls repeatedly discussed Owen's perjury, Outland's conspiracy to render criminal

assistance to Owen's kidnapping of A.R.W., and Ellis's facially invalid search

warrant. Outland selectively advised Ellis on which of Benshoof's phone calls to

transcribe for trial to hide evidence from the jury which would expose the City's

conspiracy to maliciously prosecute Benshoof under color of law. "The function of a

criminal trial is to discover the truth, and to that end it is the prosecutor's duty to

reveal pertinent information, not to hide it. *Brady v. Maryland, supra,* 373 U.S. 83,

87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)." *Hilliard v. Williams*, 516 F.2d 1344, 1350

(6th Cir. 1975)

AMENDED PETITION FOR WRIT
OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 138 of 145

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

416. **Affidavit Preparation.** Benshoof has reason to believe and does believe that Outland assisted in the writing of the declaration signed by Owen on March 13, 2023, which was presented as evidence to claim probable cause before Judge Chess on March 14, 2023. Having lived with Owen for many years, and read numerous declarations previously written by Owen, Benshoof is familiar with Owen's writing style and legal acumen and is certain that Outland edited or was a ghost-writer of significant portions of Owen's twenty-six-page declaration. (Ex. #0218-0243)

417. **Exculpatory Evidence.** Outland and Chin, by conspiring to prevent Benshoof from exercising his right to call any witnesses on his behalf, violated the government's obligation to disclose exculpatory evidence. "The Court has in the past, having due regard for the fact that the obligation of the government to disclose exculpatory evidence is an exception to the normal operation of an adversary system of justice, imposed on state prosecutors a constitutional obligation to turn over such evidence." *Imbler v. Pachtman*, 424 U.S. 409, 446-47 (1976)

> "The general rule is that malicious prosecution does not constitute a deprivation of life, liberty or property without due process of law and, therefore, is not cognizable under 42 U.S.C. § 1983. *Paskaly v. Seale,* 506 F.2d 1209 (9th Cir. 1974). However, an exception to this rule exists for malicious prosecutions conducted with the intent of denying a person equal protection or which otherwise subject a person to a denial of constitutional rights. *Norton v. Liddel*, 620 F.2d 1375 (10th Cir. 1980); *Beker Phosphate Corporation v. Muirhead*,581 F.2d 1187 (5th Cir. 1978). In this case an interest in liberty was impaired under circumstances in which appellant's allegations strongly suggest that a post-deprivation hearing."
> <u>Cline v. Brusett,</u> 661 F.2d 108, 112 (9th Cir. 1981)

418. The County is conspiring with Outland to maliciously prosecute Benshoof through the same fraudulent "domestic violence" ruse as the City.

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Similarly, the County, just like the City, has denied Benshoof's right to a *Franks* hearing to prevent Benshoof from exposing Ellis's facially invalid search warrant. Therefore, Benshoof has no recourse in the State courts to seek remedy for Outland's RICO conspiracy.

> "We have held that malicious prosecution generally does not constitute a deprivation of liberty without due process of law and is not a federal constitutional tort if process is available within the state judicial systems to remedy such wrongs. *Cline v. Brusett,* 661 F.2d 108, 112 (9th Cir. 1981). But, we have also held that an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights. *Id.* In *Cline,* we reversed the dismissal of Cline's complaint which had alleged facts in many important respects similar to those in the case at bar.
> <u>Bretz v. Kelman</u>, 773 F.2d 1026, 1031 (9th Cir. 1985)

## K. State and Federal Conspiracy

419.    Benshoof has uncovered a conspiracy between municipal, state, and federal officials to suspend the writ of habeas corpus under color of law, a conspiracy as sinister as it is simple.    Corrupt municipal police, prosecutors, and judges retaliated against Benshoof for exposing the customs and widespread practices by City and County officials of violating state laws.   When Benshoof sought habeas relief, state and federal officials acted in concert to continue the retaliatory persecution of Benshoof.

### 1) King County Actors

420.    King County Judge Marshall Ferguson ("Ferguson") conspired with corrupt attorneys to prohibit Benshoof from even filing a habeas petition under the ruse that Benshoof was a vexatious litigant.   By fraudulently claiming that family

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

court had jurisdiction over Benshoof, Ferguson claimed the authority to transform Wash. Const. art. I §13 from a right into a privilege that Ferguson could deny *sua sponte* by threatening Benshoof with arrest (WAWD No. 2:23-cv-1392-JNW, Dkt. #129-4) if Benshoof didn't first seek leave to file a habeas petition. (Ex. #0001)

421.    When Benshoof's friend, Brett Fountain attempted to file a habeas petition in King County Superior Court, Clerk Catherine Cornwall simply refused to docket the petition.  Wash. Const. art. IV §6 explicitly states, in part:

> The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court;  and said court shall have the power of naturalization and to issue papers therefor.  They shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law.  They shall ***always be open***, except on nonjudicial days, and their process shall extend to all parts of the state.  Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and ***writs of habeas corpus***, on petition by ***or on behalf of any person in actual custody*** in their respective counties.

422.    On August 15, 2024, Judge Parisien had been informed that Benshoof had been denied paper, envelopes and postage for six weeks, and was unable to file a habeas petition by himself.  When Benshoof objected to the Clerk's malfeasance before Judge Suzanne Parisien on August 15, 2024, Judge Parisien claimed that Benshoof's friends do not have the right to file a habeas petition.  On September 6, 2024, Benshoof asked Judge Parisien why she had lied in open court on August 15, 2024.  Judge Parisien, caught in her own lies, refused to answer.

## 2)    Washington Supreme Court Actors

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

423.     On July 22, 2024, the Supreme Court received a habeas petition filed by Benshoof's friend Brett Fountain, No. 103392-3.   Supreme Court Clerk Erin L. Lennon converted the habeas petition to a "Personal Restraint Petition" pursuant to Washington Rules of Appellate Procedure ("RAP") 16.3 through 16.15, *supra* at ¶205. (Ex. #0514)

424.     Benshoof has been unable to find an authorization in the Washington by which a Supreme Court Judge or Clerk may convert an original jurisdiction pre-trial custody habeas petition into a "Personal Restraint Petition" and transfer it to the Washington Court of Appeals.  Wash. Const. art I §4 states, in part:

> "The supreme court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction. Each of the judges shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of any person held in actual custody, and may make such writs returnable before himself, or before the **supreme court**, or before any **superior court** of the state or any judge thereof."

425.     In August 2024, the Supreme Court received a habeas petition filed by Benshoof, No. 103401-6, and the Clerk again converted the habeas petition to a "Personal Restraint Petition" pursuant to Washington Rules of Appellate Procedure ("RAP") 16.3 through 16.15. (Ex. #0516)

426.     This ruse effectively prevents any pre-trial detainee from challenging his unlawful detention prior to trial.  The calendaring procedure for a PRP ensures that it will be several months before the Washington Court of Appeals considers the petition, response, and reply.  In Benshoof's case, the County's response was not due until November 22, 2024, and Benshoof was unable to write or mail a reply from jail.

OF HABEAS CORPUS
WAWD No. 2:24-cv-1110-JNW
Page 142 of 145

22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Even if he had, the Court of Appeals would not adjudicate the petition until 2025, at least six months after Benshoof's unlawful arrest, long after the City's malicious prosecution of Benshoof.

427.    By preventing a detainee from challenging his pre-trial detention in state courts when his imprisonment is presumptively invalid, the petitioner will stand trial before the adjudication of the PRP.  This means that he will then have the burden of overcoming the presumptive validity of his arrest, imprisonment, prosecution, and conviction.  The Washington Court of Appeals adjudicates matters under its **appellate** jurisdiction: it does not have **original** jurisdiction.

428.    Wash. Const. art. I §29 states, "The provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise."  Upon Benshoof's information and belief, the Washington Supreme Court Clerk willfully violated Benshoof's right to challenge his unlawful pre-trial detention through his petition for habeas relief.

### 3) U.S. District Court Actors

429.    Benshoof's case illustrates how federal officials act in concert with state officials to deny challenges to pre-trial detention.  By claiming state exhaustion requirements (Dkt. #13 pg. 3 ¶2), federal judges ensure that it will take many months—or **years**—for an innocent person like Benshoof to obtain federal habeas relief.

430.    Magistrate Sarah Kate Vaughn was prohibited from adjudicating Benshoof's petition. (Dkt. #8)  Despite this, and despite being informed that Benshoof

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

was being denied envelopes and postage in jail, Magistrate Vaughn wrote, "Petitioner fails to show state court remedies were exhausted by presenting federal constitutional or statutory claims to the Washington state trial and appellate courts in the ongoing criminal proceedings against him." (Dkt. #22 pg. ¶3)

431.  The foregoing actions were designed to prevent Benshoof from challenging his pre-trial detention in federal court when his imprisonment by the City was presumptively invalid under 28 U.S.C. §2241. "Because our review proceeds under § 2241, the deference owed to a state court under § 2254(d) is not applicable." *Gouveia v. Espinda*, 926 F.3d 1102, 1111 (9th Cir. 2019)  If Benshoof had not obtained a continuance in the County prosecution, his pre-trial detention by the County would also be presumptively valid by the time his petition for federal habeas relief could be adjudicated.

## V.  The Equities Require Issuance of Writ

The ongoing irreparable harm to Benshoof is undeniable.  Seattle Municipal Court is being "used to harass and injure [Benshoof], either because the state courts [are] powerless to stop deprivations or [are] in league with those who [are] bent upon abrogation of federally protected rights." *Mitchum v. Foster,* 407 U.S. 225, 240 (1972) The perjury, fraud, and ultra vires acts must cease.  For the reasons stated in this petition, Benshoof respectfully requests that this Court issue a writ of habeas corpus without delay to arrest the unlawful imprisonment of the Benshoof.

## VERIFICATION

Kurt Benshoof, Petitioner
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

I, Petitioner Kurt A. Benshoof, do hereby declare that the foregoing facts are true and correct to the best of my knowledge, under penalty of perjury of the laws of the United States. Executed this sixteenth day of December in the year 2024, in the city of Seattle, in the county of King, in the state of Washington.

This petition contains 35,734 words.

By: _____

Kurt Benshoof, Petitioner

22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com