The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KURT A. BENSHOOF,<br>BRIANA D. GAGE,<br>URVE MAGGITTI,<br><br>                                        Plaintiffs,<br><br>                    v.<br><br>CITY OF SHORELINE, *et al*.,<br><br>                                        Defendants. | Case No.  2:24-cv-00343-TL<br><br>PLAINTIFFS' RESPONSE TO T&C<br>DEFENDANTS' MOTION TO DISMISS<br>FIRST AMENDED COMPLAINT |

## I.    INTRODUCTION

Plaintiffs respond to the Motion to Dismiss (Dkt. #93) filed by Defendants Town & Country Markets (T&CM), Evan Fagan ("Fagan"), Jane and John Doe, Adam Asher ("Asher"), and Courtney Olson ("Olson").  Without a hint of irony, their motion utilizes conclusory statements—often citing distinguished advisory case law—to claim that Plaintiffs' sworn statements of fact and Plaintiffs' citations of controlling case law and applicable statutes are merely "theories" and "conclusory statements."

The ongoing ruse employed by defendants is quite simple in its mendacity: (1) pretend that Gov. Inslee's Covid-19 proclamations were laws applicable to the general public; (2) ignore that offering a face shield in lieu of a face mask was arbitrary and capricious; (3) pretend that a civil

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

trespass admonishment could confer criminal jurisdiction to the police; and (4) thereby claim that there was no "joint action" because T&CM employees were simply calling 911 to stop Benshoof from criminally trespassing in Central Markets.

This ruse is obvious to anyone with a high school education, including Benshoof. "Laws" are those voted on, passed, enacted by the state legislature, and signed into law by the Governor, in accordance with Wash. Const. art II §§ 18; 22; 32; art III §12. The Separation of Powers Doctrine prohibits the Executive Branch of legislating. *Duh.* Because the State of Washington informed the public in 2020 that a face shield "does nothing" to prevent the spread of Covid-19, T&CM's face covering policy was prima facie arbitrary and capricious as applied. *Duh.* Because the Fourteenth Amendment prohibits the State from taking sides in a civil dispute, and because Benshoof did not enter or remain unlawfully in Central Markets, no amount of circular logic could transform a civil trespass admonishment into criminal jurisdiction. *Duh.* Simply put, T&CM employees discriminated against Plaintiffs in joint action with Shoreline police. *Duh.*

## II.    SWORN STATEMENT OF FACTS

Benshoof avers the following statements under penalty of perjury upon his information, belief, and firsthand knowledge, to which Benshoof is prepared to testify under oath.

1.    To date, T&CM has failed to provide evidence that its face covering policy was a "lawful condition" of entrance to their public accommodation.

2.    To date, T&CM has failed to provide evidence that its face covering policies were not arbitrary and capricious.

3.    To date, T&CM has failed to provide evidence that its face covering policies were not discriminatory towards Benshoof due to his religious beliefs and disability.

PLAINTIFFS' RESPONSE TO T&CM-FAGAN-
ASHER-OLSON MOTION TO DISMISS (Dkt. #93)
WAWD No. 2:24-cv-00343-TL
Page **2** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

4.      To date, T&CM has failed to provide a rational basis for, or compelling government interest in, denying Benshoof the full enjoyment of its goods and services pursuant to its face covering polices.

5.      Gov. Inslee's Proclamation stated, "the specific prohibitions in this Proclamation are severable and ***do not apply*** to the extent that ***compliance*** with a prohibition ***would violate*** (1) ***any*** U.S. or Washington ***constitutional provision***; (2) ***federal statutes*** or regulations; (4) ***state statutes***;" (Appendix A: Proclamation 21-14, pg. 8) (***emphasis*** added)

## III.  ARGUMENT & AUTHORITY

### A.  Fed.R.Civ.P. 12(b)(1)

6.      Lack of subject matter is not a valid defense regarding Plaintiffs' state law claims: this Court has jurisdiction under 42 U.S.C. §1983, as further evidenced herein.

### B.  Fed.R.Civ.P. 12(b)(6)

7.      "A complaint should not be dismissed "unless it appears ***beyond doubt*** that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d. 80 (1957). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Western Reserve Oil Gas Co. v. New,* 765 F.2d 1428, 1430 (9th Cir. 1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986)." *Moore v. City of Costa Mesa*, 886 F.2d 260, 262 (9th Cir. 1989) (***emphasis*** added)

8.      A common ruse by T&CM throughout their motion is to assert that "Plaintiffs' allegations simply recite the elements of a claim," that Plaintiffs' "conclusory allegations are not sufficient to state a claim for relief" and therefore, "the Court is not bound to accept as true labels,

PLAINTIFFS' RESPONSE TO T&CM-FAGAN-
ASHER-OLSON MOTION TO DISMISS (Dkt. #93)
WAWD No. 2:24-cv-00343-TL
Page **3** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

conclusions, formulaic recitations of the elements of a cause of action, or legal conclusions couched as factual allegations. (Dkt. #93 pg. 11 ¶2) "Plaintiffs make no more than conclusory allegations that fail to state a claim for relief. (Dkt. #93 pg. 9 ¶1)

9.      T&CM's ruse feigns ignorance of the fact that each of Plaintiffs' causes of action stated they "reallege and incorporate by reference the preceding paragraphs with the same force and effect as if fully set forth herein" (Dkt. #88 ¶¶173, 199, 221, 233, 242, 260, 275, 291, 299, 304) and that Plaintiffs' **incorporated** statements of fact were made **under penalty of perjury**. (Dkt. #88 ¶26)"Plaintiffs make no more than conclusory allegations that fail to state a claim for relief. (Dkt. #93 pg. 9 ¶1)

## C.  CONTINUING VIOLATIONS DOCTRINE

10.      The pattern of discriminatory acts by T&CM employees began in September of 2020 and continued through April 2021. (Dkt. #88 ¶¶28-115) Under the 9th Circuit's continuing violation doctrine, "a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period.  The reason is that the continuing system of discrimination operates against the [victim] and violates his or her rights up to a point in time that falls within the applicable limitations period." *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982) (internal citation omitted)

11.      "Because such a claim is composed of a series of separate acts that collectively constitute one "unlawful [discriminatory] practice," it does not matter that some of the component acts fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

12.     Upon the foregoing, all of the discriminatory acts by Defendants between September 2020 and May 2021 constituted one unlawful [discriminatory] practice to violate Plaintiffs' rights.

## D. NEGLIGENCE

### 1) Valid Claim Standard

13.     "To state a claim for negligence under Washington law, Plaintiffs must allege "(1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996)." (Dkt. #93 pg. 11 ¶3)

14.     "Whether or not [T&CM] will be able to show that it denied [Benshoof the full enjoyment of goods and services] for a legitimate, rather than a discriminatory, reason is immaterial to the issue of whether or not [Benshoof] has stated a valid claim under [Washington Laws Against Discrimination ("WLAD")]." *Kotev v. First Colony Life Ins. Co.*, 927 F. Supp. 1316, 1320 (C.D. Cal. 1996)

> "In 1957, the legislature enacted the WLAD. LAWS OF 1957, ch. 37. Once more protecting against discrimination on the basis of "race, creed, color, or national origin," the WLAD prohibited discrimination in places of public accommodation. *Id.* §§ 1, 3. This section—now RCW 49.60.215—makes it "an unfair practice for any person or [the person's] agent or employee to commit" a discriminatory act "in any place of public ... accommodation." *Id.* § 14."
> <u>*W.H. v. Olympia Sch. Dist.*</u>, 195 Wash. 2d 779, 785 (Wash. 2020)

15.     Without factual support, T&CM tautologically claimed that "Plaintiffs fail to allege more than conclusory allegations to support their claim." (Dkt. #93 pg. 11 ¶1)

16.     Discrimination is considered harm on its face in the 9th Circuit. In *Bay Area Addiction Research* ("*BAART*") *v. City of Antioch*, 179 F.3d 725, 733 (9th Cir. 1999), the Ninth

PLAINTIFFS' RESPONSE TO T&CM-FAGAN-ASHER-OLSON MOTION TO DISMISS (Dkt. #93)
WAWD No. 2:24-cv-00343-TL
Page **5** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

Circuit held that a facially discriminatory law per se violated the Americans with Disabilities Act (ADA). "[F]acial discrimination is sufficient to establish a violation of the ADA…" *Id.,* at 733.

17.    RCW 49.60.030 guarantees "(1) The right to be free from discrimination because of race, *creed*…or *the presence of any sensory, mental, or physical disability*…is recognized as and declared to be a civil right. This right shall include, but not be limited to: (b) The right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement…"

18.    Washington disability laws are even more inclusive than the ADA, protecting even those who subjectively perceive themselves as "disabled."    Under RCW 49.60.040(7)(a) ""disability" means the presence of a sensory, mental, or physical impairment that…(iii) Is perceived to exist *whether or not it exists in fact*." (*emphasis* added) It is *de rigueur* within King County to respect whatever anyone "identifies as" without question: even questioning whether a child is competent to identify as a different gender is labeled "hate speech" by many people. Despite this, T&CM asserts that Benshoof's averments fail to state a claim.

19.    While T&CM argues that Benshoof has not provided them specific details of his disability, RCW 49.60.040(7)(d) states, "Only for the purposes of qualifying for reasonable accommodation *in employment*, an impairment must be known or shown through an interactive process to exist in fact." (*emphasis* added)

*2) Disputed Factual Issues*

20.    "The district court decided that the third question was not "ripe for a legal determination" because "whether Plaintiffs can show [religion or disability] was a substantial factor in the discrimination the [ ] Plaintiffs experienced *remains a factual question* at this point in the proceedings."" *W.H. v. Olympia Sch. Dist.*, 195 Wash. 2d 779, 784 (Wash. 2020) (*emphasis*

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

added).  Disputed factual issues remain the purview of the jury, and trial by jury is guaranteed by

the Seventh Amendment.

> "The advantages of trial before a live jury with live witnesses, and all the possibilities of considering the human factors, should not be eliminated by substituting trial by affidavit and the sterile bareness of summary judgment. "It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'" *Poller v. Columbia Broadcasting,* 368 U.S. 464, 473 (1962)."
> *Adickes v. Kress Co.*, 398 U.S. 144, 176 (1970)

### 3) *Existing Duty*

21.    T&CM claims "Plaintiffs' allegations fail to identify any "duty" that Defendants

breached."(Dkt. #93 pg. 11 ¶3)  *Au contraire*.  Washington case law supports this duty of care

under Washington Laws Against Discrimination ("WLAD").  In *W.H. v. Olympia Sch. Dist.,* 195

Wn.2d 779 (Wash. 2020), the court discussed the historical context and the legislative intent

behind anti-discrimination laws in Washington, which was designed to prevent discrimination in

public accommodations.  Additionally, in *Tenino Aerie v. Grand Aerie,* 148 Wn.2d 224 (Wash.

2002), the court noted that RCW 9.91.010 has historically provided a private cause of action for

damages and remedies for persons suffering discrimination in public accommodations.

22.    Therefore, public accommodations must adhere to the standards set forth in RCW

9.91.010 to avoid discriminatory practices and ensure equal treatment of all individuals, thereby

fulfilling their duty of care to shoppers and other patrons.

23.    Public accommodations in Washington owe a duty of care to shoppers. According

to the Washington Supreme Court in *Messina v. Rhodes Co.*, 67 Wn.2d 19 (Wash. 1965), a store

operator who invites the public to frequent their place of business owes a duty to maintain the

establishment in a reasonably safe condition for patrons. This duty includes taking reasonable care

PLAINTIFFS' RESPONSE TO T&CM-FAGAN-
ASHER-OLSON MOTION TO DISMISS (Dkt. #93)
WAWD No. 2:24-cv-00343-TL
Page **7** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

to protect customers from foreseeable harm, such as ensuring that floors are kept free from hazards like water and mud that could cause slips and falls.

24.    Additionally, in *Passovoy v. Nordstrom, Inc.* 52 Wn. App. 166 (Wash. Ct. App. 1988) the court affirmed that a merchant is not an insurer of the safety of its patrons but does owe a duty to exercise reasonable care and diligence to protect them from reasonably foreseeable injuries caused by other patrons. This principle is consistent with section 344 of the Restatement (Second) of Torts, which states that a possessor of land open to the public for business purposes is liable for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons if the possessor fails to exercise reasonable care to discover such acts or to warn visitors adequately.

25.    Furthermore, the Washington Supreme Court in *McKown v. Simon Prop. Grp., Inc.*, 182 Wn.2d 752 reiterated that the special relationship between a business owner and its invitees triggers a duty on the part of the owner to protect invitees from harm arising from the foreseeable conduct of third parties. This duty is based on the foreseeability of harm and the reasonable care that a prudent business owner would exercise under similar circumstances.

### 4) Breach of Duty

26.    T&CM claims, "Plaintiffs fail to identify any duty that Defendants breached and fail to specify the "harm" they suffered." (Dkt. #93 pg. 12 ¶1)

27.    Fagan repeatedly assaulted Benshoof. (Dkt. #88 ¶¶66, 75) T&CM employees allowed and enabled shoppers to harass, threaten, and assault Benshoof, going so far as to console the shopper who assaulted Benshoof. (Dkt. #88 ¶¶46-56)

28.    Plaintiffs stated "RCW 9.91.010 was enacted to protect shoppers, including Benshoof, and their interest involved in free and equal access to the good and services of public

PLAINTIFFS' RESPONSE TO T&CM-FAGAN-
ASHER-OLSON MOTION TO DISMISS (Dkt. #93)
WAWD No. 2:24-cv-00343-TL
Page **8** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

accommodations, including Town & Country Markets. *See In Estate of Kelly v. Falin,* 127 Wn.2d 31, 896 P.2d 1245 (1995)" (Dkt. #88 ¶183)

29.     In *W.H. v. Olympia Sch. Dist.*, 195 Wash. 2d 779 (Wash. 2020), the Court held "that a school district may be subject to strict liability for discrimination in places of public accommodation by its employees in violation of the WLAD. Second, we hold that under the WLAD, discrimination can encompass intentional…misconduct, including physical abuse and assault." *Id.,* at 783.

*5) Resultant Injury*

30.     By ignoring all of Plaintiffs' incorporated statements of fact, made under penalty of perjury, T&CM falsely asserts that "Plaintiffs' [cause of action] allegations simply recite the elements of a claim under RCW 9.91.010 and state that Mr. Benshoof suffered some unspecified "harm." (Dkt. #93 pg. 11 ¶2)

31.     "[U]nder the WLAD, discrimination can encompass intentional…physical abuse and assault." *W.H. v. Olympia Sch. Dist.*, 195 Wash. 2d 779, 783 (Wash. 2020) T&CM does not deny that Fagan repeatedly assaulted Benshoof and in so doing Fagan caused Benshoof pain and threatened injury. (Dkt. #88 ¶¶66, 75, 77)

32.     "Beginning in September 2020, Benshoof repeatedly informed Central Markets employees that: (1) Benshoof's Creed proscribed being coerced to wear a face covering; (2) under RCW 9.91.010 it was a crime to deny Benshoof the full enjoyment and services of a public accommodation due to Benshoof's Creed; (3) Benshoof had a disability precluding the wearing of a face covering; (4) RCW 49.60.030 and the Americans with Disabilities Act ("ADA") prohibited store employees from denying Benshoof the full enjoyment and services of a public accommodation due to Plaintiff's disability.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

33.      Violating Benshoof's creed was a violation of his religious beliefs and RCW 9.91.010. "To establish irreparable injury in the First Amendment context, [Plaintiffs] need only "demonstrat[e] the existence of a colorable First Amendment claim." *Sammartano v. First Judicial Court,* 303 F.3d 959, 973 (9th Cir.2002). [Plaintiffs] have not only stated a colorable First Amendment claim, but one that is likely to prevail; they have thus established the potential for irreparable injury. *See Associated Gen. Contractors*, 950 F.2d at 1410." *Brown v. California Dep't of Transp.*, 321 F.3d 1217, 1225 (9th Cir. 2003)

34.      T&CM acknowledged that Benshoof pleaded under penalty of perjury that "Mr. Fagan shoved Mr. Benshoof between a cooler door and door frame because of his disability and "firmly held religious beliefs," ***causing him physical pain*** in his left arm; [and] on March 12, 2021, Mr. Fagan followed Mr. Benshoof around the store, telling him he had to leave and ***shoving him in the back*** with both hands. (Dkt. #93 pg. 8 ¶3) T&CM then claimed "Plaintiffs go on to allege that Mr. Benshoof suffered "irreparable harm and damages," ***without specifying the harm or damage*** he allegedly suffered." (Dkt. #93 pg. 11 ¶2)

35.      Even at the height of pandemic hysteria in 2020, the U.S. Supreme Court held that "[t]here can be no question that the challenged restrictions, if enforced, will cause irreparable harm. "The loss of First Amendment freedoms, for even minimal periods of time, ***unquestionably constitutes irreparable injury.***" *Elrod* v. *Burns*, 427 U. S. 347, 373 (1976) (plurality opinion)." *Roman Catholic Diocese v. Cuomo,* 592 U.S. (2020)  (***emphasis*** added) T&CM refuses to admit that imposing their discriminatory restrictions upon Benshoof's exercise of his religious beliefs— including threatening Benshoof with arrest if Benshoof returned within ***one year*** to their store— did not "unquestionably constitute irreparable injury" far long than "minimal periods of time."

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

"[F]reedoms…of worship may not be infringed on such slender grounds. They are susceptible of restriction *only to prevent grave and immediate danger* to interests which the State may lawfully protect." (***emphasis*** added)
*West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 639 (1943)

36.    In *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802 (9th Cir. 2004), the court clarified that in cases of facial discrimination, the explicit use of a protected trait as a criterion for action establishes discriminatory intent, regardless of the employer's subjective motivations. The court cited the Supreme Court's unanimous decision in *Int'l Union, UAW v. Johnson Controls, Inc.*, which held that the absence of a malevolent motive does not convert a facially discriminatory policy into a neutral one, noting that ***even well-intentioned policies are forbidden*** if they result in discrimination.  Therefore, in the 9th Circuit, facial discrimination is recognized as harm on its face, as it inherently involves intentional discrimination and violates anti-discrimination laws as applied.

"But precedent is clear that in a case of facial discrimination, the explicit use of a protected trait as a criterion for the employer's action establishes discriminatory intent, regardless of the employer's subjective motivations. "Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination." *Int'l Union, UAW v. Johnson Controls, Inc.,* 499 U.S. 187, 199, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991)… There, the Supreme Court noted that "the absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy. . . ." *Id. See also Frank v. United Airlines, Inc.,* 216 F.3d 845, 854 (9th Cir. 2000) (reaffirming that "where a claim of discriminatory treatment is based upon a policy which on its face applies less favorably to one gender . . . a plaintiff need not otherwise establish the presence of discriminatory intent")."
*Enlow v. Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 818 (9th Cir. 2004)

### 6) *Proximate Cause*

37.    T&CM rhetorically states, "the Court is not bound to accept as true legal conclusions couched as factual allegations" (Dkt. #93 pg. 12 ¶1), ignoring that Plaintiffs incorporated by reference their sworn statements of fact. (Dkt. #88 ¶173)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

38.    "The violations of RCW 9.91.010 by J. Does and Fagan were the proximate cause of irreparable harm to Benshoof, as the violations retaliated against Benshoof for freely exercising his religious beliefs and expression. *See Ward v. Zeugner,* 64 Wn.2d 570, 392 P.2d 811 (1964) (Dkt. #88 ¶184)

39.    "As there is a prima facie causal connection between the violations of RCW 9.91.010 and the irreparable harm to Benshoof, and the requirements of Restatement (Second) of torts section 286 (1965) are met, the proximate cause question is for the jury to decide at trial. *See Kness v. Truck Trailer Equip. Co.,* 81 Wn.2d 251, 501 P.2d 285 (1972)" (Dkt. #88 ¶185)

**E.  T&CM 42 U.S.C. §§ 1983; 1985**

40.    "To state a Section 1983 claim, a plaintiff must "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). As for the first element, a defendant acts under the color of state law where they "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of the state.'" *West v. Atkins*, 487 U.S. 42, 49 (1988)

41.    A half century ago, in *Norwood v. Harrison,* 413 U.S. 455, 465 (1973), the Supreme Court reaffirmed what the Justices called an "axiomatic" principle of constitutional law. The Court set forth this principle categorically, without qualification or dissent. The principle was this: government "may not induce, encourage, or promote private persons to accomplish what it is constitutionally forbidden to accomplish." *Id.* (citation omitted).

42.    "To state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

suppress [First Amendment rights]. See *Bantam Books*, 372 U. S., at 67–68." *Syllabus NRA v. Vullo,* U.S. pg. 3 (2023)

43.     "The takeaway is that the First Amendment prohibits government officials from wielding their power selectively to punish or suppress speech, directly or (as alleged here) through private intermediaries." *Syllabus NRA v. Vullo,* U.S. pg. 4 (2023)

44.     "It follows that, to state a claim based on a violation of a clearly established right, respondent must plead **1949 sufficient factual matter to show that petitioners adopted and implemented the detention policies at issue not for a neutral, investigative reason but for the purpose of discriminating on account of race, religion, or national origin." *Ashcroft v. Iqbal,* 556 U.S. 662, 676–77, 129 S. Ct. 1937, 1948–49, 173 L. Ed. 2d 868 (2009)

45.     "Simply stating that the plaintiff failed to state a claim is insufficient to provide notice of a specific affirmative defense." *Garcia v. Salvation Army,* 918 F.3d 997, 1008 (9th Cir. 2019).

46.     With its false and misleading statements, T&CM aims to prevent discovery and avoid trial.

> "The advantages of trial before a live jury with live witnesses, and all the possibilities of considering the human factors, should not be eliminated by substituting trial by affidavit and the sterile bareness of summary judgment. "It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'" *Poller v. Columbia Broadcasting,* 368 U.S. 464, 473 (1962)."
> *Adickes v. Kress Co.*, 398 U.S. 144, 176 (1970)

*1) Joint Action*

47.     Whether due to corruption or ignorance, a shocking number of judges have acted in concert with law enforcement officers to falsely claim that Governor Inslee's mask

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

proclamations were "law." However, "Washington laws generally applicable to Plaintiff are those voted on, passed, enacted by the state legislature, and signed into law by the Governor, in accordance with Wash. Const. art II §§ 18; 22; 32; art III §12." (WAWD No. 2:23-cv-1392-JNW, Dkt. #1 ¶12)

48.     One would presume that judges understand the Separation of Powers Doctrine: governors *sign* laws, they don't *legislate* them.  Unfortunately, this is what numerous federal judges repeatedly and falsely claimed.  The Ninth Circuit implied that Gov. Brown's mask proclamations were "laws" in stating that ""compliance with generally applicable *laws*" is not "sufficient to convert private conduct into state action." *Heineke v. Santa Clara Univ.,* 965 F.3d 1009, 1013 (9th Cir. 2020)." *Kiss v. Best Buy Stores, Ltd.*, No. 23-35004, at *3 (9th Cir. Dec. 12, 2023)

49.     T&CM claims that "Summoning the police to arrest a store customer is insufficient joint action to make a private party a state actor. *See Kiss*, 2022 WL 17480936, at *5." (Dkt. #93 pg. 21 ¶2) Unlike Plaintiffs FAC, "Kiss d[id] not allege the existence of any "conspiratorial agreement," "official cooperation with the private entity to achieve the private entity's goal," or "enforcement and ratification of the private entity's chosen action." *Id.* at 842." *Kiss v. Best Buy Stores, Ltd.*, No. 23-35004, at *3-4 (9th Cir. Dec. 12, 2023)

50.     T&CM's joint action with Shoreline police did not involve "compliance with generally applicable laws." *Heineke, supra.*  Rather, under the artifice of T&CM's *civil* trespass admonishment, Shoreline police claimed *criminal* jurisdiction, engaging in "official cooperation with the private entity to achieve the private entity's goal" of "enforcement...of the private entity's chosen action" (*Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 842 (9th Cir. 1999)) of

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

denying Benshoof and Gage the full enjoyment of the goods and services of a public accommodation due to Benshoof's religious beliefs.

51.     Plaintiffs could have plausibly pleaded state compulsion.  Beginning in July 2020, numerous news outlets in King County, from the Seattle Times to King 5 News to Shoreline Area News, reported that "Gov. Inslee says businesses in Washington ***will not be allowed*** to serve customers who are not wearing a face covering as of Tuesday, July 7."[1] According to Governor Inslee, "Businesses that don't comply with the new statewide order, which will take effect July 7, ***could face sanctions***, such as fines or ***potential closures***" and "People can also contact the state Department of Labor and Industries, which will ***lead enforcement*** on the requirements, according to Inslee's office."[2] (***emphasis*** added)

52.     The September 2020 issue of Shoreline Area News reported that at the September 14, 2020, Shoreline Council meeting, according to Shoreline City Manager Debbie Tarry, "Businesses are required to enforce the use of face coverings for all customers and visitors."[3]

53.     However, T&CM employees never stated that they were enforcing face covering policies under duress of state coercion.  On the contrary, T&CM employees retaliated against Benshoof and Gage with zealous self-righteousness because T&CM employees held an invidious discriminatory animus toward Benshoof's heterodox religious beliefs.  Whether T&CM denied Benshoof the full enjoyment of the goods and services under threat, duress, and coercion by the State of Washington, or whether T&CM did so because T&CM employees believed that Inslee's

---

[1] https://www.king5.com/article/news/health/coronavirus/no-mask-no-service-washington-businesses-must-turn-away-customers-without-face-masks-starting-july-7coronavirus-covid-19/281-400eb545-eb5b-4ea2-baa4-4bfea947d701
[2] https://www.seattletimes.com/seattle-news/politics/inslee-will-require-businesses-to-turn-away-customers-who-enter-without-coronavirus-facial-coverings/
[3] https://www.shorelineareanews.com/2020/09/notes-from-shoreline-council-meeting.html

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

proclamations authorized them to discriminate against Benshoof is immaterial at the pleading stage. Either way T&CM employees were clothed in state authority by claiming that Gov. Inslee's mask proclamations were "laws" they were following and having Shoreline police enforce.

54.     "Nor can a State enforce such a law requiring discrimination through either convictions of proprietors who refuse to discriminate, or trespass prosecutions of patrons who, after being denied service pursuant to such a law, refuse to honor a request to leave the premises." *Adickes v. Kress Co.*, 398 U.S. 144, 170 (1970)

> "a State is responsible for the discriminatory act of a private party when the State, by its law, has compelled the act. As the Court said in *Peterson* v. *City of Greenville,* 373 U.S. 244, 248 (1963): "When the State has commanded a particular result, it has saved to itself the power to determine that result and thereby 'to a significant extent' has 'become involved' in it."
> *Adickes v. Kress Co.*, 398 U.S. 144, 170 (1970)

55.     T&CM have not denied that its face covering policies were arbitrary and capricious. T&CM have not denied that they did "willfully participate" with Shoreline police to falsely claim that T&CM's civil trespass admonishment letter conferred criminally jurisdiction to Shoreline police. Instead, T&CM tautologically claims that join action did not exist by refusing to admit the foregoing.

> "Private parties act under color of state law if they willfully participate in joint action with state officials to deprive others of constitutional rights. *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Adickes v. S.H. Kress Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970)"
> *United Steelworkers of Am. v. Phelps Dodge*, 865 F.2d 1539, 1540 (9th Cir. 1989)

56.     "Plaintiffs' Section 1983 claims against T&C, Mr. Fagan, and unnamed T&C employees are, again, premised on the theory that the T&C Defendants summoned the Government Defendants to remove Mr. Benshoof from T&C's Shoreline store and possibly have him arrested and/or prosecuted if he attempted to return." (Dkt. #93 pg. 21 ¶2)  That is precisely what T&CM

PLAINTIFFS' RESPONSE TO T&CM-FAGAN-
ASHER-OLSON MOTION TO DISMISS (Dkt. #93)
WAWD No. 2:24-cv-00343-TL
Page **16** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

employees created a civil "Trespass Admonishment" and repeatedly called 911 to set in motion a series of events, claiming that Benshoof had been "trespassed" from Central Markets. T&CM employees wanted Shoreline police to arrest and imprison Benshoof so that the Shoreline Attorney's Office would prosecute Benshoof for criminal trespass.

57.     T&CM employees, "Akers, Thompson, and Tseten did ""know[ ] about and acquiesce[d] in the constitutionally defective conduct as part of a common plan" to keep Benshoof out of Central Markets and "set in motion a series of acts by others which [the defendants] reasonably should [have] know[n] would cause others to inflict the constitutional injury" by arresting, imprisoning, and prosecuting Benshoof without jurisdiction or probable cause. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)" *Peck v. Montoya*, No. 20-56413, at *21 (9th Cir. Oct. 18, 2022)" (Dkt. #88 ¶249)

> "The Civil Rights Act of 1964 endow[ed] [Benshoof] with a right not to be prosecuted for such conduct. As noted, § 201(a) guarantees to the defendants the equal access they sought. Section 203 then provides that, "No person shall . . . (c) punish or *attempt to punish* any person for exercising or attempting to exercise any right or privilege secured by section 201 or 202." (Emphasis supplied.) 78 Stat. 244. In *Hamm* v. *City of Rock Hill*, 379 U.S. 306, 311."
> *Georgia v. Rachel*, 384 U.S. 780, 793-94 (1966)

58.     If not but for the false claim that T&CM's *civil* admonishment letter conferred *criminal* jurisdiction to Shoreline police, defendants could not have, and would not have, repeatedly threatened Benshoof with arrest for shopping at Central Markets sans face covering.

### 2) *Conspiracy*

59.     This Court cited *Kiss v. Best Buy*: "holding that neither a request to comply with state law, nor a request for police to arrest, are sufficient to establish joint action. (Dkt. #84 pg. 9 ¶2) T&CM employees did not request anyone "to comply with state law." Rather, T&CM employees requested that Shoreline police *violate* federal law by threatening Benshoof for his ""peaceful attempts to obtain

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

1  service at places of public accommodation." *Georgia v. Rachel*, 384 U.S. 780, 793-94 (1966)."

2  (Dkt #88 ¶254)

3

4  > A "well-pleaded, non-conclusory factual allegation of parallel behavior [will] determine whether it gave rise to a "plausible suggestion of conspiracy." *Id*., at 565–566, 127 S.Ct. 1955. Acknowledging that parallel conduct was consistent with an unlawful agreement, the Court nevertheless concluded that it did not plausibly suggest an illicit accord because it was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior."

5

6

7  > *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)

8       60.    T&CM has not denied that their face covering policies were prima facie arbitrary

9  and capricious.  T&CM has not explained how their **civil** trespass admonishment could confer

10  **criminal** jurisdiction to Shoreline police.

11      61.    By their actions over many months, T&CM employees, along with City of

12  Shoreline and King County employees, did "share the common objective of the conspiracy"

13  (*United Steelworkers of Am. v. Phelps Dodge*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) to deny

14  Benshoof the full enjoyment of the goods and services at public accommodations because

15  Benshoof shopped sans face covering.  T&CM fails to show that Defendants' pattern of parallel,

16  discriminatory, and retaliatory acts "was more likely explained by, lawful, unchoreographed free-

17  market behavior." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)

18

19  > "To prove a conspiracy between the state and private parties under section 1983, the Steelworkers must show "an agreement or `meeting of the minds' to violate constitutional rights." *Fonda*, 707 F.2d at 438; *see Adickes*, 398 U.S. at 158, 90 S.Ct. at 1609.  To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy. *Fonda*, 707 F.2d at 438. Evidence that police failed to exercise independent judgment will support an inference of conspiracy with a private party."

20

21

22

23  > *United Steelworkers of Am. v. Phelps Dodge*, 865 F.2d 1539, 1540-41 (9th Cir. 1989)

24      62.    Even when Benshoof cited the laws that police and employees were violating,

25  Shoreline "police failed to exercise independent judgment" regarding the distinctions between civil

26
PLAINTIFFS' RESPONSE TO T&CM-FAGAN-
ASHER-OLSON MOTION TO DISMISS (Dkt. #93)
WAWD No. 2:24-cv-00343-TL
Page **18** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

and criminal trespass jurisdiction: store rules are not laws. *Phelps Dodge*, at 1540-41. When Benshoof stated, "In previous encounters at the store [King County Sheriff Deputies] have acknowledged that I'm not breaking any laws, and according to trespass laws, if we read the RCW, I have to be breaking a law for there to be a [criminal] trespass. Akers asserted, "No. Nope. [Central Markets] can trespass you from their property if you're not following their ***store rules***." (Dkt. #88 ¶¶93-94)

63.    RCW 9A.52.070 specifically states required elements for criminal trespass: "(1) A person is guilty of criminal trespass in the first degree if he or she knowingly enters or remains unlawfully in a building." Benshoof complied with all ***lawful*** conditions of entry to Central Markets. By his own words, Benshoof did not ***knowingly*** enter of remain ***unlawfully*** in Central Markets. Law enforcement officers routinely and falsely claim that any command they utter is a "lawful order." "'When a statute includes an explicit definition, we must follow that definition,' even if it varies from a term's ordinary meaning." *Digital Realty Trust, Inc.* v. *Somers*, 583 U. S. – —, ——, 138 S.Ct. 767, 776, 200 L.Ed.2d 15 (2018)" *Tanzin v. Tanvir*, 141 S. Ct. 486, 490 (2020)

64.    Judges should also be mindful of their own inclinations to subvert our laws to fit their personal beliefs. "Under the Constitution, judges have power to say what the law is, not what it should be. The people who ratified the Constitution authorized courts to exercise "neither force nor will but merely judgment." The Federalist No. 78, p. 465 (C. Rossiter ed. 1961) (A. Hamilton)" *Obergefell v. Hodges*, 576 U.S. 644, 686 (2015)

### 3) *Invidious Discriminatory Animus*

65.    T&CM claims that "Plaintiffs generally refer to Mr. Benshoof being in a "class," but do not identify the class to which he belongs or allege any class-based animus." After

PLAINTIFFS' RESPONSE TO T&CM-FAGAN-
ASHER-OLSON MOTION TO DISMISS (Dkt. #93)
WAWD No. 2:24-cv-00343-TL
Page **19** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

enumerating some of Benshoof's relevant religious beliefs (Dkt. #88 ¶¶1-6) the FAC stated "Benshoof's firmly held spiritual beliefs constitute a class of one for the purposes of Plaintiffs' claims. *See Village of Willowbrook v. Olech*, 528 U.S. 562, at 566 (2000)" (Dkt. #88 ¶7)

66.    Plaintiffs definitely alleged a class-based animus.  "Defendants, because of their *invidious discriminatory animus* towards *Benshoof's class* willfully, maliciously, recklessly, and with callous indifference, conspired for the purpose of depriving, either directly or indirectly, Benshoof's free exercise of his religious beliefs." (Dkt. #88 ¶¶212, 278, 308)

67.    It appears that opposing counsel believe that they are above the law:

**RCW 9A.76.175 Making false or misleading statements to a public servant.**
A person who knowingly makes a false or misleading material statement to a public servant is guilty of a gross misdemeanor. "Material statement" means a written or oral statement reasonably likely to be relied upon by a public servant in the discharge of his or her official powers or duties.

### 4) *Obstruction of Justice – Witness Intimidation*

68.    Upon the foregoing, Plaintiffs have established a prima facie case that T&CM employees engaged in joint action with Shoreline police to obstruct the due course of justice by denying Plaintiffs the equal protection of the law through intimidation and retaliation.  Shoreline police, at the behest of T&CM employees' false claim that the civil trespass admonishment conferred criminal jurisdiction to Shoreline police, threatened Benshoof with immediate arrest and imprisonment.  Shoreline police refused to enforce RCW 9.91.010 against T&CM employees, refused to protect Benshoof as a victim witness from religious discrimination that violated the Civil Rights Act of 1964.  In other words, *witness intimidation*.

69.    Benshoof and Gage clearly alleged ""(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (1993)"

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

(Dkt. #93 pg. 16 ¶2) Defendantss conspiracy obstructed justice in a state court because Defendants' joint action gaslighting prevented Benshoof from even making a criminal complaint.  The police officers Benshoof tried to make complaint to as a victim witness were the same officers conspiring with T&CM employees to violate Benshoof's rights.

70.     Upon the foregoing, it is undeniable that Gage was harassed, intimidated, and put in fear for her safety (Dkt. #88 ¶¶112-115) because of the negligent conduct by T&CM employees and Shoreline police.  Knowing that Shoreline police refused to uphold the law and protect Benshoof's rights, Gage had just cause to fear for her safety without immediate legal recourse. (Dkt. #88 pg. 2 ¶2) The joint action over many months by T&CM employees and Shoreline police to allow, enable, or perpetrate retaliations against Benshoof for the exercise of his religious beliefs constituted prima facie evidence that T&CM employees could retaliate with impunity against Gage for her exercising her right of association with Benshoof in a public accommodation.

## F. DEFENDANTS ASHER/OLSON

71.     Defendants Asher/Olson admit that they "asked the Court to strike the motion on the grounds that it was filed by a third party who was not authorized to practice law" and claimed that their "response included no statements constituting a threat or an attempt to influence Ms. Maggitti relative to her providing testimony of any kind." Dkt. #93 pg. 16 Footnote 5)

72.     While Asher/Olson feign innocence regarding their ***intent***, Section 1983 "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." *OSU Student All. v. Ray*, 699 F.3d 1053, 1071-72 (9th Cir. 2012)

73.     There were no "grounds" to claim that Maggitti was "not authorized to practice law" because Asher/Olson had zero evidence that Maggitti is a "legal provider" or "non lawyer."

PLAINTIFFS' RESPONSE TO T&CM-FAGAN-
ASHER-OLSON MOTION TO DISMISS (Dkt. #93)
WAWD No. 2:24-cv-00343-TL
Page 21 of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

74.     Prior to Asher/Olson's threats, Maggitti had firsthand knowledge of King County's practice of maliciously prosecuting Benshoof, retaliating against Benshoof's petitions for redress, denying Benshoof the right to call witnesses, denying Benshoof access to envelopes and postage, and of Judge Young's threats, *et seq*. (Dkt. #88 ¶119)

> "To demonstrate a credible threat…is likely to be enforced in the future, a history of threatened or actual enforcement of the policy against the plaintiff or other similarly-situated parties will often suffice. *See Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010)"
> *Rock for Life-Umbc v. Hrabowski*, 411 F. App'x 541, 548 (4th Cir. 2010)

75.     In other words, the parallel threats by Young, Summers, and Asher/Olson (Dkt. #88 ¶¶115-132) demonstrated a "credible threat…likely to be enforced" (*Id.*) against Maggitti, which would lead to Maggitti being similarly imprisoned under color of state law without access to envelopes or postage (Dkt. #88 ¶¶117, 132, 170), and thus constituted "a threat or an attempt to influence Ms. Maggitti relative to her providing testimony of any kind" (Dkt. #93 pg. 16 Footnote 5) because Maggitti would be thereby prevented from *providing testimony* by affidavit in *any* state or federal court.

76.     Asher/Olson failed to deny that Benshoof informed them that their claim of "unauthorized practice of law" was a violation of RCW 9A.76.175 (Dkt. #88 ¶¶126-128) and failed to deny that—even after Asher/Olson were so informed—Asher/Olson still refused to strike their threats from their Response. (Dkt. #88 ¶129) Asher/Olson failed to evidence "lawful, unchoreographed…behavior" to challenge Maggitti's evidence of "parallel conduct [that] was consistent with an unlawful agreement." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)

## G.  ADA Title III

77.     T&CM attempts to conflate Plaintiffs' burden of proof *at trial* with the minimum pleading standard of Fed.R.Civ.P. 8(a), which only requires "(2) a short and plain statement of the

PLAINTIFFS' RESPONSE TO T&CM-FAGAN-
ASHER-OLSON MOTION TO DISMISS (Dkt. #93)
WAWD No. 2:24-cv-00343-TL
Page **22** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

claim showing that the pleader is entitled to relief."

78.     To state a valid Title III claim under the ADA, Benshoof must show that "(1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

79.     T&CM does not dispute that Central Markets was a "public accommodation" at all times during the matters in controversy.

"Title III includes the following specific prohibitions:

For purposes of subsection (a) of this section, discrimination includes —
(i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary . . ."
*Kotev v. First Colony Life Ins. Co.*, 927 F. Supp. 1316, 1322 (C.D. Cal. 1996)

80.     Ironically, T&CM use false and conclusory statements to "support" their conclusory statements that "Plaintiffs fail to identify Mr. Benshoof's alleged disability or how such disability prevented him from wearing a mask. They also fail to allege that Mr. Benshoof's disability prevented him from wearing a face shield, which Plaintiffs admit T&C permitted Mr. Benshoof to wear in lieu of a mask." (Dkt. #93 pg. 5 ¶3)

*1) Invisible Disability*

81.     T&CM employees were given notice of Benshoof's disability protections. "Benshoof clearly informed Fagan and other Central Markets employees that he had a disability precluding discriminatory exclusion from Central Markets." (Dkt. #88 ¶30)

PLAINTIFFS' RESPONSE TO T&CM-FAGAN-
ASHER-OLSON MOTION TO DISMISS (Dkt. #93)
WAWD No. 2:24-cv-00343-TL
Page 23 of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

82.    T&CM asserted Plaintiff's "claim under Title III of the ADA fails because they do not **describe** what Mr. Benshoof's alleged disability is or **how** it prevented him from wearing a mask." (Dkt. #93 pg. 22 ¶2)

> "Ninth Circuit precedent does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity at the summary judgment stage. Rather, our precedent supports the principle that a plaintiff's testimony may suffice to establish a genuine issue of material fact."
> *Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1058 (9th Cir. 2005)

83.    T&CM deceptively claimed that Benshoof did not "allege that Mr. Benshoof's disability prevented him from wearing a face shield." (Dkt. #93 pg. 22 ¶2) Benshoff pleaded that policies regarding "face coverings" included both disposable "face masks" and "face shields." (Dkt. #88 ¶18)

84.    Benshoof clearly stated under penalty of perjury he "has a disability, protected by the Americans with Disabilities Act ("ADA") and Washington state Laws Against Discrimination, which prevents him from wearing a **face covering**." (Dkt. #88 ¶2) "Further details of Mr. Benshoof's private medical information are protected by the Health Insurance Portability and Accountability Act ("HIPPA")…" (WAWD No. 2:23-cv-1392-JNW, Dkt. #13-3 pg. 204)

85.    Benshoof's medical records are private information and disclosure in the publicly accessible FAC would be inappropriate.  T&CM made no effort to move for a more definite statement under Fed.R.Civ.P. 12(e), nor did they request details from Benshoof during conferral. Discovery requests and trial testimony provide appropriate opportunities for T&CM to obtain details regarding Benshoof's disability.  While Benshoof must eventually prove his disability as part of his case, there is no specific requirement that this proof must be provided **prior** to trial. The proof of disability is part of the overall burden of proof that Benshoof carries throughout the

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

litigation process. *See Vogel v. Rite Aid Corp.,* 992 F. Supp. 2d 998, *Hubbard v. Rite Aid Corp.,* 433 F. Supp. 2d 1150, *Moeller v. Taco Bell Corp.,* 816 F. Supp. 2d 831.

### 2) *Regarded As Disabled*

86.    Even if Benshoof did not have a disability, defendants also regarded Benshoof as being disabled.  "Fagan and other Central Markets employees regarded Benshoof as having an impairment and subjected him to denial of service because of his perceived impairment." (Dkt. #88 ¶31)

87.    T&CM employees "regarded Benshoof as having a physical impairment" (Dkt. #88 ¶33) and "a direct and imminent threat because they perceived him as being an "asymptomatic carrier" of the SARS-CoV-2 virus" (Dkt. #88 ¶34) and did not "regard Benshoof's impairment as either "transitory" or "minor"" (Dkt. #88 ¶35) because T&CM employees regarded Benshoof as "having a physical impairment" for more than six months.  By their own actions, T&CM employees regarded Benshoof's perceived impairment as affecting Benshoof's immune system functions, which T&CM employees believed threatened to cause serious illness or death to others.

88.    "The term "disability" is defined in the ADA to include: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(2)." *Bragdon v. Abbott*, 524 U.S. 624, 657 (1998)

89.    Not only did T&CM employees regard Benshoof as having an impairment, and not only does Benshoof have a disability covered by the ADA, but there is also a record of his impairment from when Benshoof consulted with a health professional to obtain a medical exemption in 2021 to enter Seattle Municipal Court under threat, duress and coercion. (WAWD No. 2:23-cv-1392-JNW, Dkt. #1, ¶1006; Exhibit P56 Dkt. #13-3 pg. 204).

PLAINTIFFS' RESPONSE TO T&CM-FAGAN-
ASHER-OLSON MOTION TO DISMISS (Dkt. #93)
WAWD No. 2:24-cv-00343-TL
Page 25 of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

*3) Discriminatory "Accommodation"*

90.    The fact that T&CM offered Benshoof a face shield in lieu of a face mask is irrelevant, as a face shield was an arbitrary and capricious "accommodation" that served no compelling interest.  Offering to exclude Benshoof from Central Markets by allowing Benshoof to use curbside service was discriminatory on its face: it was no less discriminatory than telling negroes they were allowed to pick up their groceries outside the back door of white-owned Birmingham grocery stores in 1960.  "The reasonable modification test does not apply in this case because, here, the ordinance [as applied] discriminate[d] on its face." *Bay Area Addiction Research ("BAART") v. City of Antioch*, 179 F.3d 725, 733 (9th Cir. 1999)

*4) Facial Neutrality*

91.    Any claims by T&CM that their face covering policies were facially neutral are irrelevant, as the subjected Benshoof to disparate treatment.

> "In section 12101(a)(5), Congress declared its intent to address "outright intentional exclusion" as well as "the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, [and] failure to make modifications to existing facilities and practices." It is thus clear that Congress intended the ADA to cover at least some so-called disparate impact cases of discrimination, for the barriers to full participation listed above are almost all facially neutral but may work to effectuate discrimination against disabled persons.
>
> Although [T&CM's face covering policy] applie[d] equally to all persons entering the [store], its enforcement burden[ed] [some disabled] persons in a manner different and greater than it burden[ed] others. Because of the unique" need for Benshoof's class to refrain from covering their face, T&CM's store polices "effectively denie[d] these persons… meaningful access to" the full enjoyment of T&CM "while such services… remain[ed] open and easily accessible by others. The [face covering policy] therefore, discriminates against the plaintiffs by reason of their disability."
> *Crowder v. Kitagawa*, 81 F.3d 1480, 1483-84 (9th Cir. 1996)

*5) Prima Facie Harm*

92.    Discrimination is considered harm on its face in the 9th Circuit. In *BAART* the Ninth

PLAINTIFFS' RESPONSE TO T&CM-FAGAN-
ASHER-OLSON MOTION TO DISMISS (Dkt. #93)
WAWD No. 2:24-cv-00343-TL
Page **26** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

Circuit held that a facially discriminatory law per se violated the Americans with Disabilities Act (ADA). "[F]acial discrimination is sufficient to establish a violation of the ADA…" *Id.,* at 733.

93.       Similarly, in *Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002) the court noted that facial discrimination, is inherently intentional and does not require further proof of discriminatory intent. The fundamental alteration test does not apply to cases of facial discrimination, as such laws are discriminatory by their explicit terms.

94.       Quoting *BAART* at 734-35, the Ninth Circuit held in *Lovell v. Chandler*, 303 F.3d 1039, 1054 (9th Cir. 2002) that "[t]he only possible modification of a facially discriminatory [law as applied] that would avoid discrimination on the basis of disability would be the actual removal of the portion of the law that discriminates on the basis of disability. However, such a modification would fundamentally alter the ordinance." *Id.,* at 1054.

## H.  UNLAWFUL SEIZURE – Fifth Cause of Action

95.       T&CM claims "Plaintiffs fail to even allege that the T&C Defendants conducted a search or seizure. Rather, they allege that an unknown T&C employee called 911 to report that Mr. Benshoof was criminally trespassing at the store." (Dkt. #93 pg. 18 ¶3)

96.       T&CM employees, "Akers, Thompson, and Tseten did ""know[ ] about and acquiesce[d] in the constitutionally defective conduct as part of a common plan" to keep Benshoof out of Central Markets and "set in motion a series of acts by others which [the defendants] reasonably should [have] know[n] would cause others to inflict the constitutional injury" by arresting, imprisoning, and prosecuting Benshoof without jurisdiction or probable cause. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)" *Peck v. Montoya*, No. 20-56413, at *21 (9th Cir. Oct. 18, 2022)" (Dkt. #88 ¶249)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

97.    If not but for the false claim that T&CM's *civil* admonishment letter conferred *criminal* jurisdiction to Shoreline police, Akers, Thompson, and Tseten could not have, and would not have, seized Benshoof by unlawfully imprisoning Benshoof, in violation of RCW 9A.40.040, by knowingly "restraining" Benshoof when they acted in concert "to restrict [Benshoof's] movements without consent and without legal authority in a manner which interferes substantially with [Benshoof's] liberty.  Restraint is "without consent" if it is accomplished by (a) physical force, intimidation, or deception." *See* RCW 9A.40.010(6)

## I. DEPRIVATION OF LIBERTY – Sixth Cause of Action

98.    T&CM repeats its worn prevarications: "[Plaintiffs] do not allege any other specific conduct by the T&C Defendants relative to this claim. (*See* Dkt. No. 88, ¶¶ 260-74.) Again, summoning a police officer to arrest a store customer is insufficient joint action to make a private party a state actor." (Dkt. #93 pg. 19 ¶3)

99.    *Again:* If not but for the false claim that T&CM's *civil* admonishment letter conferred *criminal* jurisdiction to Shoreline police, Akers, Thompson, and Tseten could not have, and would not have, seized Benshoof by unlawfully imprisoning Benshoof, in violation of RCW 9A.40.040, by knowingly "restraining" Benshoof when they acted in concert "to restrict [Benshoof's] movements without consent and without legal authority in a manner which interferes substantially with [Benshoof's] liberty.  Restraint is "without consent" if it is accomplished by (a) physical force, intimidation, or deception." *See* RCW 9A.40.010(6)

# CONCLUSION

For the foregoing reasons, the Court must deny T&CM's Motion to Dismiss (Dkt. #93) in full.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

## VERIFICATION

Plaintiff Kurt Benshoof does hereby declare that the foregoing is true and correct to the best of his knowledge under penalty of perjury under the laws of Washington state and the United States. Executed this 10th day of February in the year 2025, in the city of Mountlake Terrace, in the county of Snohomish, in the state of Washington. This reply contains 8,394 words in compliance with LCR 7(e)(3).

By: _____

Kurt Benshoof, *Pro Se*
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

PLAINTIFFS' RESPONSE TO T&CM-FAGAN-
ASHER-OLSON MOTION TO DISMISS (Dkt. #93)
WAWD No. 2:24-cv-00343-TL
Page 29 of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

1

2

## CERTIFICATE OF SERVICE

Co-plaintiff Kurt Benshoof hereby certifies that on February 10, 2025, he did electronically

3

4

file the foregoing document with the Clerk of Court by using the CM/ECF system, which will send

5

6

a notice of electronic filing to all counsel of record, and by email to the email addresses listed

below.

7

8

9

10

11

12

13

**Attorney For Defendants
KING COUNTY, Dep. Akers,
Dep. DeMuse, Dep. Tseten,
Det. Thompson, Att. Summers:**
Santiago Villanueva, WSBA #
701 Fifth Avenue
Suite 600
Seattle, WA 98104
Email: sviolavillanueva@kingcounty.gov
Phone: (206) 477-1120

**Attorneys for Defendants
TOWN & COUNTRY MARKETS
Evan Fagan, Jane Doe, John Doe:**
Adam R. Asher, WSBA #35517
Email: aasher@sociuslaw.com
Phone: (206) 838-9110
Courtney J. Olson, WSBA #54548
Email: colson@sociuslaw.com
Phone: (206) 838-9153
600 University Street, Suite 2510
Seattle, WA 98101

14

15

16

17

18

19

**Defendant CITY OF SHORELINE**
Shoreline City Attorney
Margaret King, WSBA #34886
17500 Midvale Avenue N
Shoreline, WA 98133
Email: mking@shorelinewa.gov
Phone: (2060 801-2221

**Defendant Paul H. Thompson**
285 SE 10th Circle
North Bend, WA 98045
Email: paul.thompson@kingcounty.gov
Phone: (260 223-6932

20

21

22

23

24

25

**Defendant William C. Akers**
10205 NE Kingston View Ct.
Kingston, WA 98346
Email: william.akers@kingcounty.gov
Phone: (206) 383-9111

**Defendant Ann M. Summers**
Ann M. Summers
732 Covington Avenue
Snohomish, WA 98290
Phone: (206) 477-1120
Email: ann.summers@kingcounty.gov

26

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

**Defendants Adam Asher, Courtney Olson**
Adam R. Asher, WSBA #35517
Email: aasher@sociuslaw.com
Courtney J. Olson, WSBA #54548
Email: colson@sociuslaw.com
Phone: (206) 838-9153
600 University Street, Suite 2510
Seattle, WA 98101

**Defendant Jampa Tseten**
21601 85th Place West
Edmonds, WA 98026
Email: jampa.tseten@kingcounty.gov

**Defendant Nicholas DeMuse**
Email: nicholas.demuse@kingcounty.gov

DATED:  February 10, 2025

Signed:  ___s/ Kurt Benshoof____

Kurt Benshoof, Co-Plaintiff

PLAINTIFFS' RESPONSE TO T&CM-FAGAN-
ASHER-OLSON MOTION TO DISMISS (Dkt. #93)
WAWD No. 2:24-cv-00343-TL
Page **31** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com