The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KURT A. BENSHOOF,<br>BRIANA D. GAGE,<br>URVE MAGGITTI,<br><div align="right">Plaintiffs,</div><br>v.<br><br>CITY OF SHORELINE, *et al.*,<br><div align="right">Defendants.</div> | Case No.  2:24-cv-00343-TL<br><br>PLAINTIFFS' RESPONSE TO KING COUNTY'S AND CITY OF SHORELINE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT |

## I.    INTRODUCTION

Plaintiffs respond to the Motion to Dismiss (Dkt. #94) filed by King County and City of Shoreline ("Defendants").  With ironic hypocrisy, their motion utilizes conclusory statements—often citing distinguished advisory case law—to claim that Plaintiffs' sworn statements of fact and Plaintiffs' citations of controlling case law and applicable statutes are merely "theories" and "conclusory statements."

The ongoing ruse employed by defendants is quite simple in its mendacity: (1) pretend that Gov. Inslee's Covid-19 proclamations were laws applicable to the general public; (2) ignore that offering a face shield in lieu of a face mask was arbitrary and capricious; (3) pretend that the T&CM employees and Shoreline police, by exercising their irrational scientism beliefs, did not

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

discriminate against Benshoof's religious beliefs; 4) pretend that a civil trespass admonishment typed up by a T&CM employee could confer criminal jurisdiction to the police; and (5) thereby claim that there was no "joint action" because T&CM employees were simply calling 911 to stop Benshoof from criminally trespassing in Central Markets and police didn't violate clearly established law despite Benshoof *citing the laws for the police on recorded video*.

This ruse is obvious to anyone with a high school education, including Benshoof.  "Laws" are those voted on, passed, and enacted by the state legislature, then signed into law by the Governor, in accordance with Wash. Const. art II §§ 18; 22; 32; art III §12.  The Separation of Powers Doctrine prohibits legislating by the Executive Branch.  **Duh.**  Because the State of Washington informed the public in 2020 that a face shield "does nothing" to prevent the spread of Covid-19, T&CM's face covering policy was arbitrary and capricious on its face.  **Duh.**  Because the Fourteenth Amendment prohibits police from taking sides in a civil dispute, and because Benshoof did not enter or remain unlawfully in Central Markets, no amount of circular logic could transform a civil trespass admonishment letter into criminal jurisdiction.  **Duh.**  Simply put, T&CM employees discriminated against Plaintiffs in joint action with Shoreline police.

What we witnessed and endured by and through the pandemic was an Abilene paradox: a group dynamic where people agreed on a course of action that no one really wanted, a collective fallacy that led to poor decision-making and predictably negative consequences.  Even with four years' hindsight, King County and City of Shoreline continue to gaslight and threaten Plaintiffs.

## II.    SWORN STATEMENT OF FACTS

Benshoof avers the following statements under penalty of perjury upon his information, belief, and firsthand knowledge, to which Benshoof is prepared to testify under oath.

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **2** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

1. To date, Mr. Villanueva has not provided evidence that he is authorized to represent Akers, Summers, Thompson, or Tsteten in their individual capacities, nor that the "chief civil deputy" for King County "resolve[d] any questions relating to whether [Akers, Summers, Thompson, and Tseten] acted in good faith **with no reasonable cause** to believe the conduct was unlawful, and within the scope" of their employment.  (*See* King County Code 2.21.050(7)(a))

2. To date, T&CM has failed to provide evidence that its face covering policy was: (1) a "lawful condition" of entrance to their public accommodation: (2) not arbitrary and capricious; and (3) not discriminatory towards Benshoof due to his religious beliefs and disability.

3. To date, T&CM has failed to provide a rational basis for, or compelling government interest in, denying Benshoof the full enjoyment of its goods and services pursuant to its face covering policy.

4. Gov. Inslee's Proclamation stated, "the specific prohibitions in this Proclamation are severable and **do not apply** to the extent that **compliance** with a prohibition **would violate** (1) **any** U.S. or Washington constitutional provision; (2) federal statutes or regulations; (4) **state statutes**;" (Appendix A, pg. A8) (**emphasis** added)

5. Beginning in July 2020, numerous news outlets in King County, from the Seattle Times to King 5 News to Shoreline Area News, reported that "Gov. Inslee says businesses in Washington **will not be allowed** to serve customers who are not wearing a face covering as of Tuesday, July 7."[1] According to Governor Inslee, "Businesses that don't comply with the new statewide order, which will take effect July 7, **could face sanctions**, such as fines or **potential**

---

[1] https://www.king5.com/article/news/health/coronavirus/no-mask-no-service-washington-businesses-must-turn-away-customers-without-face-masks-starting-july-7coronavirus-covid-19/281-400eb545-eb5b-4ea2-baa4-4bfea947d701

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **3** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

*closures*" and "People can also contact the state Department of Labor and Industries, which will *lead enforcement* on the requirements, according to Inslee's office."[2] (*emphasis* added)

6.    It was the same Washington Department of Labor and Industries which informed businesses in 2020 that ""the *use of face shields* alone is currently viewed as serving *no purpose* or providing *any protection* from the transmission of COVID-19 in the courtroom work environment." (Ex. #00001, ¶3; #00003, ¶1)" (Dkt. #88 ¶18)

7.    The September 2020 issue of Shoreline Area News reported that at the September 14, 2020, Shoreline Council meeting, according to Shoreline City Manager Debbie Tarry, "Businesses are required to enforce the use of face coverings for all customers and visitors."[3]

## III.  ARGUMENT & AUTHORITY

### A.  COERCED MEDICAL DEVICES

#### 1) PREP Act

8.    In 2005, Congress passed the Public Readiness and Emergency Preparedness Act, hereafter referred to as the PREP Act (42 U.S.C. 247d-6d and 42 U.S.C. 247d-6e), to provide immunities for persons volunteering for "covered" activities. In accordance therewith, the HHS Secretary issued a COVID-19 PREP Act declaration in February 2020.[4]

9.    The first provision of the PREP Act (42 U.S.C. 247d-6d) is entitled "Targeted liability protections for pandemic and epidemic products and security countermeasures."

---

[2] https://www.seattletimes.com/seattle-news/politics/inslee-will-require-businesses-to-turn-away-customers-who-enter-without-coronavirus-facial-coverings/
[3] https://www.shorelineareanews.com/2020/09/notes-from-shoreline-council-meeting.html
[4] 85 FR 15198 National Vaccine Injury Compensation Program

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **4** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

10.     The second provision of the PREP Act (42 U.S.C. 247d-6e) is entitled "Covered countermeasure process."

11.     Congress expressly crafted language preempting state and local law conflicting with the PREP Act (42 U.S.C. 247d-6d(b)(8)), which provides, in pertinent part:

> **(8) Preemption of State law**
> During the effective period of a declaration under subsection (b)… no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—
>> (A) is different from, or is in conflict with, any requirement applicable under this section; and
>> (B) relates to the…administration…of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure under this section or any other provision of this chapter, or under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. 301 *et seq.*

12.     Congress expressly established that participation in the administration of the covered countermeasure (*i.e.*, any EUA medical device, including face masks) ***shall be voluntary***. Specifically, Congress stated the following at 42 U.S.C. 247d-6e(c), in pertinent part:

> **(c) Voluntary program**
> The Secretary shall ensure that a State, local, or Department of Health and Human Services plan to administer or use a covered countermeasure is consistent with any declaration under 42 U.S.C. 247d–6d of this title…and that potential participants are educated with respect to contraindications, the ***voluntary*** nature of the program, and the availability of potential benefits and compensation under this part. [***emphasis*** added.]

### 2) Face Masks

13.     On April 24, 2020, the U.S. Food & Drug Administration ("FDA") issued an update to its April 18, 2020, Emergency Use Authorization ("EUA") regarding face masks.

14.     The FDA stated that face masks must meet certain requirements, including, "the product must not state or imply that the product is intended for antimicrobial or antiviral protection or related uses or is for use such as infection prevention or reduction." (Appendix B at B4)

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **5** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

15.     The FDA stated that face masks were "intended for use as source control….in accordance with CDC recommendations."  (*Id.* at B3*)*

16.     Defendant and its employees and representatives knew, or should have known, that administrative agencies such as the FDA and CDC were not delegated the authority to enforce the wearing of EUA face mask.  "FDA is not a physician.  It has authority to inform, announce, and apprise---but not to endorse, denounce or advise." (*See Apter, et al., v. Dept. of Health & Human Svcs.*, No. 22-40802 (5th Cir. 2023)



17.     The FDA letter to mask manufacturers stated that "Authorized face masks must meet the following requirements: (4) The product is not labeled in such a manner that would ***misrepresent*** the product's intended use; for example, the labeling ***must not state or imply that***

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **6** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

*the product is intended for* antimicrobial or *antiviral protection* or related uses or is for use such as *infection prevention or reduction*." (Appendix B pg. B4)

18.     The disposable face masks T&CM offered to shoppers, and demanded that Benshoof wear, stated a warning: "THIS PRODUCT IS NOT A RESPIRATOR AND *WILL NOT PROVIDE ANY PROTECTION* AGAINST COVI-19." (*emphasis* added)

### 3) Bodily Autonomy

19.     Many Washingtonians living in King County still refuse to consider—let alone reconcile—their absurdly hypocritical positions on bodily autonomy.  On the one hand, they will scream in the streets to defend a woman's right to kill her unborn child, implicitly claiming that the unborn child has no rights whatsoever because an unborn child is the exclusive *property* of the pregnant mother.  This is particularly troubling, as claiming property rights over another human being is the legal basis of *slavery*.

20.     On the other hand, those same town square criers will fervently claim that Benshoof had no right to bodily autonomy when it came to demanding that Benshoof wear an Emergency Use Authorization ("EUA") medical device on his face to enter public accommodations.  In a final twist of mental contortionism, the same Defenders of Bodily Autonomy will screech that Germany's Nazi Party was filled with monsters who, after outlawing transgender surgeries, then performed illegal medical experiments upon concentration camp prisoners.  Why were those medical experiments illegal?  Because they didn't obtain *informed consent*.  (Nuremberg Military Tribunal No. 1, the Medical Case: *United States of America v. Karl Brandt, et al.*)

> "The constitutionally protected right to refuse lifesaving hydration and nutrition that was discussed in *Cruzan, supra*, at 279, was not simply deduced from abstract concepts of personal autonomy, but was instead grounded in the Nation's history and traditions, given the common-law rule that forced medication was a battery, and the long legal tradition protecting the decision to *refuse unwanted medical treatment*."

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **7** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

*Washington v. Glucksberg*, 521 U.S. 702, 703 (1997) (emphasis added)

21.     Defendants would have this Court overlook the fact that face coverings were "medical devices" which only received EUA approval.  Defendants would have this Court ignore the fact that ***no one can coerce*** the use of an EUA product or medical device.

22.     To recap, not only did T&CM offer Benshoof a face shield in lieu of a face mask—despite Washington state informing businesses in 2020 that ""the ***use of face shields*** alone is currently viewed as serving ***no purpose*** or providing ***any protection*** from the transmission of COVID-19 in the courtroom work environment." (Ex. #00001, ¶3; #00003, ¶1)" (Dkt. #88 ¶18)—but the face masks themselves warned that they will not provide any protection against Covid-19.

23.     This was an example of "virtue signaling."  In other words, Defendants held ridiculously irrational scientism beliefs and deemed Benshoof a heretic to their faith because Benshoof discerned that Defendants' beliefs lacked any rational basis, let alone basic common sense.

24.     Defendants denied Benshoof and Gage the equal protection of the law which led to unlawful retaliation against Benshoof and Gage for Benshoof exercising his right to informed consent (21 USC § 360bbb–3).

## B. ORAL

### 1) Fraud

25.     The Order Restricting Abusive Litigation by Kurt Benshoof ("ORAL") is yet another example of King County officials conspiring with corrupt private attorneys and business owners to shield themselves from liability by acting in concert to violate Benshoof's right to petition for redress. (Dkt. #86-3 ¶¶185-280) by rendering criminal assistance to the perjuring prostitutes who are kidnapping Benshoof's minor son (Dkt. #86-3 ¶¶416-446) by transforming

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **8** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

Benshoof's right to petition for redress into a privilege, effectively suspending habeas corpus under the fraudulent ORAL (Dkt. #86-3 ¶¶516-523). Benshoof also reminded defense counsel of this by email. (Appendix C)

26.    On January 14, 2025, Mr. Villanueva was served sworn testimony and irrefutable evidence of the foregoing and cannot claim ignorance.

### 2) No Standing

27.    Defendants and Mr. Villanueva are not "Covered Parties" under the ORAL; therefore, they are without standing to raise this issue. Even if Defendants were Covered Parties, venue is improper. The proper venue to bring a motion for sanctions—not dismissal—would be King County Superior Court before Judge Marshall Ferguson.

28.    Federal cases (Dkt. #94 pg. 9 ¶1) cited by Defendants are irrelevant: the ORAL is neither valid, nor federal, nor a prohibitive injunction.

## C. PROCEDURAL PROPRIETY

### 1) Commonality

29.    Defendants claim that Plaintiffs' FAC contains "unrelated claims against different defendants" and "must be pursued in multiple lawsuits." (Dkt. #93 pg. 9 ¶4) *Au contraire.* Every court action file by, or against, Benshoof since September 2020 has one simple nexus: retaliatory discrimination for not wearing a face covering. Retaliations took many forms: threats, assaults, malicious prosecutions, unlawful imprisonment, kidnapping Benshoof's minor son, gaslighting Benshoof with "vexatious" *ad hominem*, and violating Benshoof's right to petition for redress, *et seq.* Instead of refuting the facts and law, the common tactic over the last two years is for public officials like Mr. Villanueva repeatedly wasting taxpayer dollars trying to violate Benshoof's right to petition for redress under the ORAL rubric. Seattle Public Schools tried this to prevent

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **9** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

adjudication of Benshoof's mandamus (KCSC No. 24-2-06539-3; Document 11) and City of Seattle tried this to prevent Benshoof's appeal, (WAWD No. 2:23-cv-1392-JNW; Dkt. #250).

### 2) *Plaintiff Gage*

30.     The only reason Gage was dismissed was because King County and City of Seattle officials conspired to unlawfully seize Benshoof's computers and phone by falsely arresting and unlawfully imprisoning, and then denying Benshoof paper, envelopes and postage. (*See* 9th Cir. No. 25-552, DktEntry 5)  Because all of Gage's legal documents and passwords were stored on the laptop she shared with Benshoof, and because Benshoof acts as Gage's assistant of counsel pursuant to Section 35 of the Judiciary Act of 1789 (Dkt. #62 pg. 3 no.7), the unlawful acts by King County and City of Seattle officials were the direct and proximate cause of Gage being unable to file responsive briefs after Benshoof was unlawfully imprisoned on July 3, 2024

### 3) *Filing Fees*

31.     This case was initiated with sworn financial statements from Benshoof and Gage. Such matters are the purview of the Court in *ex parte* matters.  Benshoof and Gage agreed to pay for all federal court costs from the judgment awarded them. Defendant Summers previously attempted to have the original complaint dismissed by claiming that Benshoof was not indigent.

32.     If the Clerk of Court requires Maggitti to *also* pay a filing fee, that issue is properly between the Clerk and Maggitti.  Mr. Villanueva does not work for the federal government and is wasting state tax dollars by sticking his nose into federal court operations for the sole purpose of harassing Plaintiffs.

### D.  IFP STATUS

33.     The fact that on page *eleven* Mr. Villaneuva is *still* arguing about Benshoof IFP status reveals how desperate Defendants are to avoid the merits of Plaintiffs' claims.  It's a

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **10** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

sophomoric mixture of common logical fallacies: straw man, *ad hominem*, red herring, hasty generalization, and appeal to ignorance. In other words, the bread and butter of most attorneys.

34.     Mr. Villanueva's *innuendo* attempts to have Benshoof's IFP status revoked may constitute a violation of RCW 9A.76.175 and RCW 9A.72.080, employing false and misleading statements, and statements that he does not know to be true. The $250,000 bond imposed by King County—itself a violation of the Eighth Amendment—was not paid by Benshoof. Objection: relevance. Benshoof merely signed the paperwork while incarcerated. Two Ninth Circuit filing fees were paid by **credit card**. Objection: relevance. It's disturbing to learn that our tax dollars are paying Mr. Villanueva to track payments of Benshoof's appeals to the Ninth Circuit. **@DOGE**

## E. NEGLIGENCE

35.     Finally, at page 12, Mr. Villanueva begins to address Plaintiffs' causes of action.

36.     Mr. Villanueva attempts the same deception as Mr. Asher, claiming "Plaintiffs do not indicate with specificity what actions attributed to each defendant were, nor do they specify even the date of the alleged violation." (Dkt. #94 pg. 12 ¶4) Counsels pretend that Plaintiffs did not "incorporate by reference the preceding paragraphs with the same force and effect as if fully set forth herein." (Dkt. #88 ¶173) Given the fact King County's namesake was a civil rights icon, it's sadly ridiculous to see our tax dollars paying Mr. Villanueva to feign ignorance in his attempt to defend violations of the Civil Rights Act of 1964 and Washington Laws Against Discrimination.

37.     Defendants assert "it remains unclear what allegation Plaintiff Gage is making in this claim." (Dkt. #94 pg. 12 ¶4) Defendants could have asked for clarification during conferral or requested a more definite statement under Rule 12(e). T&CM employees owed a duty of care not to harass Gage simply because she shopped with Benshoof. Shoreline police owed Benshoof's

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **11** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

friends, including Gage, a duty of care not to allow or enable T&CM employees to harass Gage after a "special relationship" commenced between Shoreline Police and Benshoof, *infra* at ¶38.

### 1) *Duty of Care*

38.    Benshoof claimed ***Negligence*** by Shoreline police in the First Cause of Action. because Shoreline police owed Benshoof a duty of care because a "special relationship" existed "between the public officer[s] and the plaintiff."

> "Washington courts have long recognized an exception to the public duty doctrine where a special relationship existed between the officers and the plaintiff. *Cummins v. Lewis Cty.*, 124 Wash.App. 247, 98 P.3d 822, 825 (2004), *aff'd,* 156 Wash.2d 844, 133 P.3d 458 (2006). "An exception to the public duty doctrine provides that if a 'special relationship' exists between the public officer and the plaintiff, a duty owed to the individual may arise." *McGregor*, 2017 WL 6612012, at *2 (quoting *Thomas,* 2017 WL 2289081, at *14 n.7 ). "To create a special relationship between police officer and citizen, Washington law requires direct contact setting the citizen apart from the general public, and 'express assurances' of assistance that give rise to a justifiable reliance on the part of the citizen." *McGregor*, 2017 WL 6612012, at *2 (quoting *Beal*, 954 P.2d at 244–45 )." *Hernandez v. Fed. Way*, 456 F. Supp. 3d 1228, 1247 (W.D. Wash. 2020)

39.    It is true that "[i]n Washington, "a governmental duty cannot arise from ***implied*** assurances." *Honcoop v. State,* 111 Wn.3d 182, 192, 759 P.2d 1188 (1988)." *Torres v. City of Anacortes*, 97 Wn. App. 64, 75 (Wash. Ct. App. 1999) However, on or around September 7, 2020, "Shoreline Police ***assured*** Benshoof that, so long as Benshoof was not violating a criminal law**,** such as loitering or shoplifting, Shoreline Police would not enforce Shoreline businesses' face covering policies." (Dkt. #88 ¶23) (***emphasis*** added)

40.    The facts in controversy are questions for the jury to decide at trial, not by this Court at the preliminary motions stage.  "Because duty arises from the facts presented, it is ordinarily a question for the jury whether the facts "give rise to what a reasonable person under similar circumstances would take as explicit assurances and then reasonably rely on those

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **12** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

assurances in taking or refraining from taking action." *Noakes v. City of Seattle,* 77 Wn. App. at

700." *Torres v. City of Anacortes*, 97 Wn. App. 64, 75 (Wash. Ct. App. 1999)

> There is evidence in the record that Benshoof "relied on…express assurances that he allegedly received from [Shoreline police] officers." *See Torres v. City of Anacortes* , 97 Wash.App. 64, 981 P.2d 891, 897 (1999) (quoting *Honcoop v. State* , 111 Wash.2d 182, 759 P.2d 1188, 1194 (1988) ) ("In Washington, 'a governmental duty cannot arise from implied assurances.' "); *see also McGregor,* 2017 WL 6612012, at *2 (citing *Hamilton v. City of Olympia* , 687 F. Supp. 2d 1231, 1248 (W.D. Wash. 2009) ) ("an actionable duty to provide police services will arise if ... there are explicit assurances of protection that give rise to reliance on the part of the victim.").
> *Hernandez v. Fed. Way*, 456 F. Supp. 3d 1228, 1248 (W.D. Wash. 2020)

41.    ""There are four exceptions to the public duty doctrine in which the governmental

agency acquires a special duty of care owed to a particular plaintiff or a limited class of potential

plaintiffs." *Babcock v. Mason County Fire Dist. No. 6,* 144 Wash.2d 774, 786 (2001). One of these

exceptions, the "special relationship" exception, is at issue here." *Hamilton v. City of Olympia*, 687

F. Supp. 2d 1231, 21 (W.D. Wash. 2009)

> "A special relationship arises where (1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) gives rise to justifiable reliance on the part of the plaintiff."
> *Babcock v. Mason County Fire Dist. No. 6,* 144 Wash.2d 774, 786 (2001).

### 2)  *Notice of Claim*

42.    Benshoof contacted City of Shoreline multiple times by phone and email in 2023

and 2024, prior to filing the instant lawsuit. (*e.g.,* Appendix D) Eight months prior to filing

Plaintiffs' FAC on January 19, 2025, King County and City of Shoreline were again given notice

of claim on March 11, 2024. (Dkt. #13) RCW 4.96.020(5) states, in part, "this section must be

*liberally construed* so that substantial compliance will be deemed satisfactory." (*emphasis* added)

43.    RCW 4.96.050(3) includes an exception, which states, "(c) Local governmental

entities shall make available the standard tort claim form described in this section with instructions

on how the form is to be presented and the name, address, and business hours of the agent of the local governmental entity." Despite this requirement, City of Shoreline failed to even mention, let along provide, their notice of claim form to Benshoof.

### 3) Statute of Limitations

44.    Benshoof's and Gage's claim of negligence has a three-year statute of limitations pursuant to RCW 4.16.080(5).

45.    The pattern of discriminatory acts and failures to act by King County deputies began in September of 2020 and continued through March 2023. (Dkt. #88 ¶¶28-115, 138-159) These **ongoing practices** include the August 2024 incident in which King County jail guard Nicola Burke put Benshoof in the psych ward for making a factual comment about face masks. (Dkt. #86-3 ¶¶370-373) Under the 9th Circuit's continuing violation doctrine, "a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period.  The reason is that the continuing system of discrimination operates against the [victim] and violates his or her rights up to a point in time that falls within the applicable limitations period." *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982) (internal citation omitted)

46.    "Because such a claim is composed of a series of separate acts that collectively constitute one "unlawful [discriminatory] practice," it does not matter that some of the component acts fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

### 4) *Negligence Elements*

47.    The elements of negligence include "(1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996).

48.    Opposing counsel once again asserts Plaintiffs' negligence "claim contains generalization and legal conclusion but failed to identify the duty of each of the defendants, what individual actions breach such duty, the injury, and proximate cause" (Dkt. #94 pg. 16 ¶3), while conveniently ignoring the fac that Plaintiffs "incorporate by reference the preceding paragraphs with the same force and effect as if fully set forth herein." (Dkt. #88 ¶173)

49.    To recap, Shoreline police had a "special relationship" with Benshoof and Gage once "Shoreline Police ***assured*** Benshoof that, so long as Benshoof was not violating a criminal law**,** such as loitering or shoplifting, Shoreline Police would not enforce Shoreline businesses' face covering policies." (Dkt. #88 ¶23) Thereupon, Shoreline police had a duty to not allow, enable, facilitate, or perpetrate: (1) violations of the Civil Rights Act of 1964; violations RCW 9.91.010; violations of the ADA; and unlawful imprisonment of Benshoof.  Despite this, Shoreline police had a months-long practice of allowing T&CM employees and shoppers to repeatedly assault Benshoof, deny Benshoof the full enjoyment of the goods and services of a public accommodation, and to threaten and harass Benshoof and Gage with impunity.

50.    Discrimination is considered harm on its face in the 9th Circuit. In *Bay Area Addiction Research* ("*BAART*") *v. City of Antioch*, 179 F.3d 725, 733 (9th Cir. 1999), the Ninth Circuit held that a facially discriminatory law per se violated the Americans with Disabilities Act (ADA). "[F]acial discrimination is sufficient to establish a violation of the ADA…" *Id.,* at 733.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

51.     In *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802 (9th Cir. 2004), the court clarified that in cases of facial discrimination, the explicit use of a protected trait as a criterion for action establishes discriminatory intent, regardless of the employer's subjective motivations. The court cited the Supreme Court's unanimous decision in *Int'l Union, UAW v. Johnson Controls, Inc.*, which held that the absence of a malevolent motive does not convert a facially discriminatory policy into a neutral one, noting that ***even well-intentioned policies are forbidden*** if they result in discrimination. Therefore, in the 9th Circuit, facial discrimination is recognized as harm on its face, as it inherently involves intentional discrimination and violates anti-discrimination laws as applied.

## F. FEDERAL CLAIMS

### 1) Official v. Individual

52.     "Benshoof's § 1983 claims against Akers, Thompson, DeMuse, and Tseten in their official capacity must be treated as a *Monell* claim, as "the real party in interest in an official-capacity suit is the governmental entity and not the named official[.]" *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

53.     "The same conclusion should be reached on the newly-added claims against Senior Deputy Prosecuting Attorney, Ann Summers, who acted in her official capacity in this matter." (Dkt. #94 pg. 18 ¶1) However, Plaintiffs did not name Akers, Thompson, Tseten, nor Summers in their ***official*** capacity. (Dkt. #88 pgs. 7-8) By allocating taxpayer funds to the legal defense of ***individuals***, King County Code 2.21.050 *as applied* by Mr. Villanueva violates Wash. Const. art. I § 12 Special Privileges and Immunities Prohibited:

> No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations.

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **16** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

1

2

### 2) *Monell*

54.    "Benshoof has failed to allege facts that support any *Monell* claims against Shoreline or King County or Akers, Thompson, DeMuse, and Tseten in their official capacity. Although he repeatedly refers to "practices and widespread customs," (Dkts. 88, p 34-36, ¶ 160-172), on each instance, states legal conclusions ***but no facts***." (Dkt. #94 pg. 18 ¶3)

55.    Plaintiffs do not believe that Mr. Villanueva is stupid; therefore, Mr. Villaneuva intentionally made false or misleading statements to the Court, violating RCW 9A.76.175. Plaintiffs' "reallege[d] and incorporate[d] by reference the preceding paragraphs with the same force and effect as if fully set forth herein." (*e.g.,* Dkt. #88 ¶199) Plaintiffs' statement of facts were sworn under penalty of perjury and included one hundred seventy-two statements, including personal knowledge as victim witnesses of the discriminatory and retaliatory practices of King County and Shoreline officials over ***four-year*** span because of Benshoof expressing his religious beliefs about face coverings and exercising his right to petition. (Dkt. #88 ¶¶91-102, ¶¶133-159; Dkt. #86-3 ¶¶370-373)

56.    Defendants have not presented evidence to refute the facts averred.  When Benshoof witnessed defendants engage in the same practice of denying Benshoof's rights over many months or years, it is not a "conclusory statement unsupported by facts" that defendants had a practice of denying Benshoof's rights: it is an averred ***observation of facts*** based upon Plaintiffs' firsthand knowledge.

57.    Mr. Villanueva would have the Court believe that Plaintiffs' causes of action contain no facts by feigning ignorance of Plaintiffs incorporating by reference their sworn statement of facts.  Mr. Villanueva would also have the Court believe that the practices pleaded by

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **17** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

Plaintiffs (Dkt. #88 ¶¶160-172) were isolated statements without the factual support of the previous one hundred fifty-nine sworn statements. (Dkt. #88 ¶¶1-159)

58.    Mr. Villanueva knows better, and his citations inadvertently support Plaintiffs' claims.  "Boilerplate allegations of municipal policy, ***entirely lacking in any factual support*** that a [municipal] policy does exist, are insufficient.... The ***absence of any facts at all*** to support plaintiff's claim renders the allegations mere legal conclusions of section 1983 liability ***devoid of any*** well-pleaded ***facts***.")  Plaintiffs' statements regarding *Monell* practices or widespread customs (Dkt. #88 ¶¶160-172) are not "entirely lacking in any factual support," nor is there an "absence of any facts at all." (*See* Dkt. #88 ¶¶1-159)

### 3) *Threatening Practices*

59.    Mr. Villanueva goes on to claim that Plaintiffs only pleaded an isolated incident of constitutional violations. (Dkt. #94 pg. 19 ¶2) In reality, armed King County Sheriff deputies acted in accordance with a widespread practice, throughout Seattle and Shoreline over many months, of allowing, enabling, facilitating, or perpetrating the denial of Benshoof's right to the full enjoyment of the goods and services of public accommodations.  The acts by Akers, Thompson, and Tseten on or around April 9, 2021, were preceded by seven months of Benshoof's 911 calls where Shoreline police allowed and enabled Central Markets to discriminate against Benshoof with impunity.

60.    Mr. Villanueva attempts the same deceit regarding the threats against Maggitti. Plaintiffs did not ***only*** refer "to a single interaction that took place on October 16, 2024 (*Id.* p. 27 ¶121-123)." (Dkt. #94 pg. 19 ¶3) It is a curious "oversight" for Mr. Villanueva to fail mentioning that the ***preceding two sentences*** stated, "On or around September 11, 2024, Benshoof received a letter signed by Chief Criminal Judge Melinda Young, stating that Maggitti may be perpetrating

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

the "unauthorized practice of law" by filing documents on Benshoof's behalf in KCSC No. 24-1-02680-7 SEA. Benshoof immediately informed Maggitti by telephone. Unauthorized practice of law is a class C felony for every offense after the first, pursuant to RCW 2.48.180(3)(b). Upon the information and belief of Maggitti and Benshoof, Judge Young threateningly and maliciously inferred that Maggitti perpetrated unauthorized practice of law and that Maggitti may be charged, prosecuted, and imprisoned." (Dkt. #88 ¶¶119-120)

> "A municipality has no immunity from liability under § 1983 flowing from its constitutional violations and may not assert *the good faith of its officers as a defense to such liability." Owen* v. City of Independence, 445 U.S. 622 (1980)

61.    Judge Young did not only threaten Maggitti through Benshoof: she also threatened Maggitti **four times** prior to Summers threatening Maggitti. On September 6, 2024, Young denied Maggitti's right to file a habeas petition on Benshoof's behalf, despite Wash. Const. art. IV §6 explicitly stating that the superior courts "shall have to issue writs of…habeas corpus, on petition by **or on behalf of any person** in actual custody in their respective counties." The letter stated, "Someone who files motions on behalf of another person may be committing the crime of Unauthorized Practice of Law…" (Appendix E, pg. E1) This was mailed to Maggitti and filed into KCSC 24-102680-7 SEA. (*Id.,* Document 41) On September 9, 2024, Young again threatened Maggitti by email (Appendix F, pg. F1) and on the record. (Appendix F, pg. F2-3)

### 4) *No Qualified Immunity*

62.    Defendants assert that Plaintiffs' "claims do not allege a violation of any constitutional rights, and even if they did, the right was not clearly established at the time." (Dkt. #94 pg. 19 ¶5)

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **19** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

63.    ""Qualified immunity is a defense that must be **pleaded** by a defendant official." *Sablan v. Dep't of Fin.,* 856 F.2d 1317, 1321 (9th Cir. 1988)." *Hernandez v. Skinner*, 969 F.3d 930, 937 n.1 (9th Cir. 2020) (**emphasis** added)

64.    Defendants cannot explain how Wash. Const. art. IV § 6 was not "clearly established." They cannot deny that the right of Maggitti to act as Benshoof's assistant of counsel has not been "clearly established" since Section 35 of the Judiciary Act of 1789 was enacted. Defendants cannot deny that Benshoof (Dkt. #62 pg. 3 no.7) and Maggitti (Dkt. #67 pg. 8 ¶5) **expressly cited** the Judiciary Act of 1789 in the record **prior** to Summers' threats.

65.    "The doctrine exists to protect mistaken but reasonable decisions, not purposeful criminal conduct. As the Supreme Court repeated in *Sheehan*, officials who knowingly violate the law are not entitled to immunity. 135 S.Ct. at 1774 (quoting *Ashcroft*, 131 S.Ct. at 2085)" *Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1119 (9th Cir. 2017) Defendants don't deny that Benshoof repeatedly informed them (Dkt. #88 ¶¶126-127) that Maggitti was authorized to file documents under Section 35 of the Judiciary Act of 1789, and that "Maggitti is neither a "legal provider" nor a "nonlawyer" and therefore not subject to RCW 2.48.180." (Dkt. #88 ¶125)

66.    Defendants cannot deny that the Civil Rights Act of 1964 and the ADA were clearly established law which they allowed and enabled T&CM employees to violate for many months by discriminating against Benshoof with impunity.  The City of Shoreline proudly claims it gives police additional anti-bias training, in addition to the training provided to King County Sheriff Office deputies, "intended to make them aware of how to counter their own implicit biases and not let those biases impact their policing."[5]  Defendants cannot deny that RCW 9.91.010 and RCW

---

[5] https://www.shorelinewa.gov/government/departments/police-department/policies-and-accountability

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

9A.52.070 were clearly established law.  Benshoof forthrightly stated to Akers, Thompson, and Tseten, "I'm going to notify you guys that you just committed a gross misdemeanor. [RCW 9A.36.070  RCW 9A.04.110(28)(c)] The gross misdemeanor is you threatened me with unlawful imprisonment: I have it on video. Your qualified immunity does not work, and you will be held personally accountable. So, if you wanna start violating the law, then that's the way we're gonna go." (Dkt. #88 ¶96) Akers smugly replied, "You can fight that out in court.  I welcome that." (Dkt. #88 ¶97)

### 5) *Religious Discrimination*

67.    "Benshoof does not identify how or why the tenets of his religion proscribe masks and he fails to describe how T&C's mask policy placed a substantial burden on the exercise of that religion. In addition, employees of the store offer[ed] the alternative of wearing a face shield in lieu of a face mask (Dkt. 88 ¶42)." (Dkt. #94 pg. 21 ¶3) Laughably, Defendants then cite a case in which the Plaintiffs did ***not*** "allege that his sincerely held religious beliefs reject the use of face masks." (Dkt. #94 pg. 22 ¶1)

68.    "As a reverend of the Church of the Golden Rule, Benshoof's firmly held spiritual beliefs proscribe him being coerced to wear a face covering as a condition of entrance to public accommodations…" (Dkt. #88 ¶1) Defendants did not require a more definite statement under Rule 12(e) and can request further details during discovery and trial.  'It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.' *Hernandez v. Comm'r of Internal Revenue,* 490 U.S. 680, 699 (1989).

69.    Defendants claim that Plaintiffs' "complaint fails to plausibly identify any First Amendment violation" (Dkt. #94 pg. 21 ¶3) yet fail to refute Plaintiffs' simple corollary (Dkt. #88

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **21** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

pg. 3 ¶4): Muslim grocery store employees could not have Muslim police in *burqas* threaten Christian shoppers with arrest if they refused to wear a *burqa* as a condition of entrance to public accommodations without violating Christian shoppers clearly established religious beliefs. ***Duh.***

70.     Defendants claim "Benshoof's primary grievance is that he was treated the same as everyone else when T&C required him to wear a mask." (Dkt. #94 pg. 22 ¶2) The fact that T&CM employees had a coercive policy requiring everyone entering their stores to wear a face covering, and just because many shoppers willingly wore a face covering without coercion, does not mean that Benshoof and Gage were not denied the equal protection of the law pursuant to T&CM's discriminatory policy and the practice of Shoreline police to allow, enable, facilitate, or perpetrate discrimination against Benshoof and Gage.

71.     "Benshoof has not alleged that he was treated differently due to some protected class membership." (Dkt. #94 pg. 22 ¶2) Benshoof's religious beliefs constitute a protected class (Dkt. #88 ¶¶1-7) and Plaintiffs suffered disparate treatment through Defendants' retaliations (Dkt. #88 ¶¶38, 54-55, 67-68, 115, 154, 178, 180, 189, 211-212, 226-227, 278, 308) pursuant to King County's and Shoreline's practices. (Dkt. #88 ¶¶160-172)

72.     As a simple corollary, entertain two hypotheticals.     *First*, imagine if Mr. Villaneuva's creed holds that anal sex between two adult males is a spiritual embodiment of a sacred masculine union. *Second*, imagine if every grocery store Mr. Villanueva had shopped at for the previous twenty years instituted a policy that every shopper had to wear a face mask that said "I Hate Fags" by claiming that wearing such face masks inside public accommodations would reduce the transmission of HIV.  Would Mr. Villanueva claim that, because "he was treated the same as everyone else when T&C required him to wear a [I Hate Fags] mask" that Mr. Villanueva was not subject to disparate treatment and not denied the equal protection of the law?

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **22** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

73.     Defendants refuse to address fundamental legal questions underpinning Plaintiffs' claims.  *First*, Defendants haven't provided the legal authority by which they could **demand** shoppers wear a face covering as a **lawful** condition of entrance to a public accommodation.

74.     *Second*, Defendants haven't denied that T&CM's arbitrary and capricious face covering policy had no rational basis or compelling government interest.

75.     *Third*, Defendants haven't denied that T&CM's **civil** trespass admonishment letter could not confer **criminal** jurisdiction for Shoreline police to unlawful imprison Benshoof or threaten him with immediate arrest.

76.     *Fourth*, Defendants conveniently ignore that Shoreline police twice stated that "so long as Benshoof was not violating a **criminal law,** such as loitering or shoplifting, Shoreline Police would not enforce Shoreline businesses' face covering policies." (Dkt. #88 ¶23) Are Defendants inferring that Captain Abbott lied to Benshoof? (Dkt. #88 ¶¶107-109) Which co-worker of Mr. Villanueva's at the KCPAO allegedly confirmed to Captain Abbot on or around April 8, 2021, that Benshoof wasn't violating any law by shopping sans face covering?  Why did the months long **practice** of Shoreline police allowing, enabling, facilitating, or enforcing T&CM's discriminatory retaliations against Benshoof and Gage suddenly cease after April 12, 2021?

### 6) Conspiracy

77.     "Simply stating that the plaintiff failed to state a claim is insufficient to provide notice of a specific affirmative defense." *Garcia v. Salvation Army,* 918 F.3d 997, 1008 (9th Cir. 2019).  Defendants have not refuted Plaintiffs' direct and circumstantial evidence of a conspiracy with more than conclusory statements.  The "existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide." *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 176 (1970)

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **23** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

78.     Plaintiffs did state "a claim based on a violation of a clearly established right" by pleading "sufficient factual matter to show that" police "implemented the detention policies at issue not for a neutral, investigative reason but for the purpose of discriminating on account of [Benshoof's]…religion." *Ashcroft v. Iqbal,* 556 U.S. 662, 676–77, 129 S. Ct. 1937, 1948–49, 173 L. Ed. 2d 868 (2009)

79.     A "well-pleaded, non-conclusory factual allegation of parallel behavior" gives "rise to a "plausible suggestion of conspiracy." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)) If not but for Benshoof exercising his religious beliefs, police would not have unlawfully restrained Benshoof.

80.     Defendants fail to explain how their "allegedly conspiratorial actions could equally have been prompted by ***lawful***, independent goals which do not constitute a conspiracy" *Twombly*, at 566-67. Defendants fail to provide an alternative narrative that is "not only compatible with, but indeed was ***more likely*** explained by, ***lawful***, unchoreographed…behavior." *Id*. (***emphasis*** added)

81.     Plaintiffs did not plead knowledge of an "unlawful agreement" which would be a ""legal conclusion" not entitled to the assumption of truth." *Iqbal*, at 680. As in *Twombly*, if the "Court simply credit[s] the allegation of a conspiracy," the plaintiffs "have stated a claim for relief" and are "entitled to proceed perforce." *Iqbal*, at 680

## G. ADA

### 1) Continuing Violations Doctrine

82.     King County officials continued to violate the ADA through face covering retaliations against Benshoof for ***years*** after the matters in controversy, and repeatedly between July and November 2024, *supra* at ¶45. (Dkt. #62 pg. 8 ¶2)

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **24** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

### 2) Title II – Public Entity

83.    Defendants correctly noted excusable errors [of ignorance] in Plaintiffs' FAC.  King County and City of Shoreline are each a "public entity" under the Americans with Disabilities Act ("ADA"), Pub. L. 101-336, title II, § 201, July 26, 1990, 104 Stat. 337; 42 U.S.C. § 12131(1)(A); and in accordance with 28 C.F.R. § 35.101, *et seq.*

84.    28 C.F.R. § 35.134(b) prohibits a public entity, including King County and City of Shoreline, from discrimination against someone with a physical or mental impairment that substantially limits one or more of the major life activities of such individual; and (iii) being regarded as having such an impairment as described in paragraph (f) of 28 C.F.R. § 35.105.

85.    Police are liable in their ***official capacity*** for ADA violations.  "A lawsuit seeking damages from employees in their individual capacities…is not really "against a government" because relief "can be executed only against the official's personal assets." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)." *Tanzin v. Tanvir*, 141 S. Ct. 486, 490 (2020) Therefore, the named public entities in Plaintiffs' Fourth Cause of Action should properly include King County and City of Shoreline because of their vicarious liability for ADA violations by employees under ***Title II***.

86.    While it is true "that officers making an arrest are not required "to first determine whether their actions would comply with the ADA before protecting themselves and others"" *City of S.F. v. Sheehan*, 135 S. Ct. 1765, 1771 (2015), Akers, Thompson, and Tseten had ample time to exercise unhurried judgment.  Instead of following the laws which Benshoof cited, Shoreline police immediately forced Benshoof from the store, threatening Benshoof with immediate arrest.

In *Sheehan v. City of S.F.*, 743 F.3d 1211 (9th Cir. 2014) "[t]he Ninth Circuit agreed "that exigent circumstances inform the reasonableness analysis under the ADA," *ibid.*, but concluded that ***it was for a jury to decide*** whether San Francisco should have accommodated Sheehan by, for instance, "respect[ing] her comfort zone, engag[ing] in non-

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **25** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

threatening communications and us[ing] the passage of time to defuse the situation rather than precipitating a deadly confrontation." *Id.,* at 1233." (***emphasis*** added)
*City of S.F. v. Sheehan*, 135 S. Ct. 1765, 1772 (2015)

### 3) *Title III – Public Accommodations*

87.    T&CM stores are "public accommodations" under the Americans with Disabilities Act, Pub. L. 101-336, title III, § 302; and Central Markets was a "private entity" under 42 U.S.C. § 12181(7), and in accordance with 28 C.F.R. 35.101, *et seq.*

88.    28 C.F.R. § 35.134 states, "(b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part."

### 4) *Accommodation*

89.    The burden was not upon Benshoof to request a "reasonable accommodation." The burden is on Defendants to defend the enforcement of arbitrary and capricious face covering policies, something they have not yet addressed. As a corollary, Plaintiffs will illustrate Defendants' absurdities. Imagine Benshoof required a wheelchair as a paraplegic and T&CM suddenly implemented a no-wheelchair policy to protect the toes of other shoppers and T&CM employees from the potential danger posed by ***wheels***. When T&CM offered to let Benshoof crawl around the store, Benshoof declined. T&CM then offered Benshoof a bicycle to ride around the store, despite the obvious fact that a bicycle was arbitrary and capricious: bicycles also have ***wheels***.

90.    Defendants ***imply*** Benshoof was subject to "proclamations" and "orders requiring face coverings, with limited exceptions and exemptions, during the COVID-19 pandemic" and

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **26** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

then claim "[t]o the extent Benshoof demanded that stores take action inconsistent with the prevailing public health orders, his accommodation requests were unreasonable." (Dkt. #94 pg. 28 ¶3) In reality, the face covering policies were unreasonable requests: they were arbitrary and capricious.

91.     Defendants fail to provide the Court evidence that such orders were laws applicable to Plaintiffs.  Washington laws generally applicable to Plaintiffs are those voted on, passed, and enacted by the state legislature, then signed into law by the Governor, in accordance with Wash. Const. art II §§ 18; 22; 32; art III §12.  Nor do Defendants provide the Court with evidence that Governor Inslee or Secretary of Health Shaw were delegated emergency powers because "Covid-19 was a "public disorder, disaster, energy emergency, or riot"" (Dkt. #88 ¶12) pursuant to RCW 43.06.010(12), which "states that a Governor may exercise emergency powers pursuant to the existence of a *"public disorder, disaster, energy emergency, or riot."* (Dkt. #88 ¶12)

92.     Gov. Inslee's Proclamation stated, "the specific prohibitions in this Proclamation are severable and *do not apply* to the extent that *compliance* with a prohibition *would violate* (1) *any* U.S. or Washington *constitutional provision*; (2) *federal statutes* or regulations; (4) *state statutes*;" (Appendix A pg. A8) (*emphasis* added)

93.     Even if the face covering orders and proclamations had been valid laws for the general public, they explicitly exempted people "with a medical condition, mental health condition, developmental or cognitive condition, or disability that prevents wearing a face covering." (Appendix G pg. G3) Similarly, King County Superior Court stated on its website that people "will not be required to wear a mask if you need to keep your mouth or nose clear for medical or mental health reasons" yet the *practice* of deputies, clerks, and judges working in the courthouse was to deny entrance and service to Benshoof despite being exempt.  (Appendix H)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

94.     Defendants have not defeated Benshoof's reasonable accommodation claim by showing ""that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. §35.130(b)(7); *see Zukle v. Regents of Univ. of Cal.,* 166 F.3d 1041, 1047 ((th Cir. 1999)." *Sheehan v. City of S.F.*, 743 F.3d 1211, 1233 (9th Cir. 2014) Defendants cannot defeat Benshoof's ADA claims because T&CM's face covering policy served no legitimate purpose; therefore, they cannot claim their arbitrary policy would have been "fundamentally altered."

95.     Shoreline police should have answered Benshoof's requests to cite the law Benshoof had violated and "should have…engaged in non-threatening communications." "[T]he reasonableness of an accommodation is ordinarily a question of fact" for the jury to decide. *Id.*, at 1233.

## H.  NOTICE

### 1)  *18 U.S.C. § 1512(b)*

96.     Plaintiffs object to the false and slanderous gaslighting by Mr. Villanueva, who claimed that Benshoof "has a history of harassing behavior toward participants of the judicial system, including attorneys and judges." (Dkt. #94 pg. 29 ¶1) Such gaslighting is further evidence that Mr. Villanueva—like so many of his ilk in City and County government—possesses an invidious discriminatory animus towards Benshoof's spiritual beliefs.  In other words, Mr. Villanueva is a liar, intolerant of those who speak truth with moral and intellectual integrity, whose primary defense of widespread corruption is to scandalously attack Benshoof for exposing the violations of law by public officials over the previous four years.

97.     Benshoof is already litigating the fraud perpetrated pursuant to the Order Restricting Abuse Litigation by Kurt Benshoof ("ORAL") (Dkt. #95 pgs. 13-21) and will be

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **28** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

moving for an injunction against the similarly slanderous and fraudulent order granted by Judge Whitehead on February 11, 2025. (WAWD No. 2:24-cv-1392-JNW; Dkt. #264)

98.     Despite Benshoof cautioning against further misconduct, Mr. Villanueva intends to act as an accessory after-the-fact to the ORAL fraud to violate Benshoof's right to petition for redress.  Not only is this practice by County and City officials a multi-year violation of the First Amendment, but it also constitutes a violation of 18 U.S.C. § 1512(b) by threatening Benshoof and engaging in "misleading conduct toward" this Court "with intent to (1) prevent or delay the testimony of any person in an official proceeding."

### 2)  Conferral Requirement

99.     Mr. Villanueva claims "that there is no possibility of meaningfully conferring with Mr. Benshoof" (Dkt. #94 pg. 29 ¶1) and moves the Court to relieve Defendants from being required to confer with Plaintiffs.  In reality, over the last two weeks Benshoof has repeatedly emailed and telephoned Mr. Villanueva to engage in forthright conferrals to avoid wasting the Court's time and resources.  Mr. Villanueva has refused to respond to any of Plaintiffs' emails (*e.g.*, Appendix C) and voicemail messages.

100.    If Mr. Villanueva continues ignoring his duty as a public official and counsel for Defendants by refusing to participate in conferrals, Plaintiffs will move for a show cause order requiring Mr. Villanueva to explain his lack of professionalism to the Court.

## CONCLUSION

For the foregoing reasons, the Court should deny King County's and City of Shoreline's Motion to Dismiss (Dkt. #94) in full and, in the interests of justice and adjudication upon the merits, permit Benshoof leave to specifically amend his Fourth Cause of Action ADA claim to

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page 29 of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

properly plead the separate elements of Title II and Title III as they apply to individuals and entities.

## VERIFICATION

Plaintiff Kurt Benshoof does hereby declare that the foregoing is true and correct to the best of his knowledge under penalty of perjury under the laws of Washington state and the United States.  Executed this 16th day of February in the year 2025, in the city of Mountlake Terrace, in the county of Snohomish, in the state of Washington.   This reply contains 8,368 words in compliance with LCR 7(e)(2).

By:

Kurt Benshoof, *Pro Se*
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

PLAINTIFFS' RESPONSE TO KING COUNTY
SHORELINE MOTION TO DISMISS (Dkt. #94)
WAWD No. 2:24-cv-00343-TL
Page **30** of 31

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

# CERTIFICATE OF SERVICE

Co-plaintiff Kurt Benshoof hereby certifies that on February 16, 2025, he did electronically file the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, and by email to the email addresses listed below.

**Attorney For Defendants**
**KING COUNTY, CITY OF SHORELINE,**
**Dep. Akers, Dep. DeMuse, Dep. Tseten,**
**Det. Thompson:**
Santiago Villanueva, WSBA #54071
701 Fifth Avenue
Suite 600
Seattle, WA 98104
Email: sviolavillanueva@kingcounty.gov
Phone: (206) 477-1120

**Defendant William C. Akers**
10205 NE Kingston View Ct.
Kingston, WA 98346
Email: william.akers@kingcounty.gov
Phone: (206) 383-9111

**Defendants Adam Asher, Courtney Olson**
Adam R. Asher, WSBA #35517
Email: aasher@sociuslaw.com
Courtney J. Olson, WSBA #54548
Email: colson@sociuslaw.com
Phone: (206) 838-9153
600 University Street, Suite 2510
Seattle, WA 98101

**Defendant Nicholas DeMuse**
Email: nicholas.demuse@kingcounty.gov

**Attorneys for Defendants**
**TOWN & COUNTRY MARKETS**
**Evan Fagan, Jane Doe, John Doe:**
Adam R. Asher, WSBA #35517
Email: aasher@sociuslaw.com
Phone: (206) 838-9110
Courtney J. Olson, WSBA #54548
Email: colson@sociuslaw.com
Phone: (206) 838-9153
600 University Street, Suite 2510
Seattle, WA 98101

**Defendant Ann M. Summers**
Ann M. Summers
732 Covington Avenue
Snohomish, WA 98290
Phone: (206) 477-1120
Email: ann.summers@kingcounty.gov

**Defendant Jampa Tseten**
21601 85th Place West
Edmonds, WA 98026
Email: jampa.tseten@kingcounty.gov

**Defendant Paul H. Thompson**
285 SE 10th Circle
North Bend, WA 98045
Email: paul.thompson@kingcounty.gov
Phone: (260) 223-6932

**DATED:** February 16, 2025

**Signed:** _____s/ Kurt A. Benshoof_____
Kurt A. Benshoof, Co-Plaintiff

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com