1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11   KURT A. BENSHOOF, BRIANA D.
     GAGE, and URVE MAGGITTI,

12                          Plaintiffs,

13          v.

14   CITY OF SHORELINE et al.,

15                          Defendants.

16

CASE NO. 2:24-cv-00343-TL

ORDER ON MOTIONS TO DISMISS
FIRST AMENDED COMPLAINT

17          This is a *pro se* civil rights action for damages stemming from a dispute over a grocery

18   store's masking policy. This matter is before the Court on T&C Defendants' Motion to Dismiss

19   Plaintiff's First Amended Complaint for Damages (Dkt. No. 93) and Defendants' Motion to

20   Dismiss Pursuant to Fed. R. Civ. P. 12(b) (Dkt. No. 94) (the "Motions to Dismiss"). Having

21   reviewed Plaintiff Kurt A. Benshoof's responses (Dkt. Nos. 98, 99), Defendants' replies (Dkt.

22   Nos. 101, 102), and the relevant record, the Court GRANTS the Motions to Dismiss as follows.

23

24

# I.    BACKGROUND

The following facts are recited as alleged in the First Amended Complaint ("FAC"). Dkt. No. 88. Plaintiffs mostly replead the facts contained in the original complaint, which the Court set out at length in its prior Order. *See* Dkt. No. 85 at 2–4. Plaintiffs supplement those original facts here, though largely with legal conclusions. Plaintiffs also add allegations regarding their experiences with Defendant King County.

In this Order, the Court will occasionally refer to Defendants T&C, Fagan, Asher, and Olson as the "Private Defendants"; Defendants Shoreline, King County, Akers, DeMuse, Thompson, Tseten, and Summers as the "Government Defendants" (sometimes further described as "Government Entity Defendants" and "Government Individual Defendants" to separate municipalities and individual human beings); and Defendants Akers, DeMuse, Thompson, and Tseten as the "Officer Defendants."

## A.    Allegations Regarding Defendant T&C

On or around September 6, 2020, Defendant Town & Country Markets ("T&C") (at the time, named "Central Markets") implemented a "No Mask, No Entry" policy, "following CDC and Washington state public health 'guidelines.'" Dkt. No. 88 ¶ 36; *see also id.* ¶¶ 8–20 (allegations about "Government Guidelines & Orders"). When T&C employees requested that Plaintiff Benshoof wear a mask to shop inside the store, he declined, citing religious belief and disability as reasons for exemption from the policy. *Id.* ¶¶ 37–41. The employees, including Defendant Evan B. Fagan, told Plaintiff Benshoof that a face shield was an acceptable alternative, but Plaintiff Benshoof stated that a face shield "is currently viewed as serving *no purpose* or providing any protection from the transmission of COVID-19." *Id.* ¶ 42 (emphasis in original).

Following Defendant T&C's implementation of its masking policy, Plaintiffs allege a series of incidents over a period of years, as outlined below.

1.    **October 7, 2020**

A "female shopper" followed Plaintiff Benshoof around the store, yelling insults because Plaintiff Benshoof was not wearing a face mask. *Id.* ¶ 46. Multiple store employees followed the shopper but did not intervene; they appeared to be "amused." *Id.* ¶ 47.

When Plaintiff Benshoof left the store to return to his vehicle, the shopper followed Plaintiff Benshoof across the parking lot while a store employee stood watching from approximately 40 feet away. *Id.* ¶ 48. Plaintiff Benshoof stopped and turned to face the shopper. *Id.* ¶ 49. The shopper got within 24 inches of him and said, "I want you to die with my hands around your throat." *Id.* ¶ 50. She then swung her right hand at his head, hitting him. *Id.* ¶ 51. Plaintiff Benshoof asked, "Do you feel better now?" *Id.* ¶ 52. The shopper then walked over to the store employee, who "consoled the visibly frustrated shopper" by saying, "I know. He's an asshole." *Id.* ¶ 53.

2.    **January 5, 2021**

Plaintiff Benshoof was given a paper entitled "TRESPASS ADMONISHMENT" from a store employee. *Id.* ¶ 57.

3.    **February 14, 2021**

While shopping inside Defendant T&C's store, Plaintiff Benshoof opened a cooler door to select salad greens from a shelf. *Id.* ¶ 65. Defendant Fagan, a store manager, approached Plaintiff Benshoof unannounced from behind and shoved the door against him, squishing Plaintiff Benshoof between the door and the door frame of the cooler, and causing physical pain in Plaintiff Benshoof's left arm. *Id.* ¶ 66. Plaintiff Benshoof called the Shoreline Police Department and reported the incident. *Id.* ¶ 70. Defendant City of Shoreline did not take action to charge or prosecute Defendant Fagan. *Id.* ¶ 71–72.

### 4.    March 12, 2021

Defendant Fagan followed Plaintiff Benshoof around the store, telling him, "You have to leave." *Id.* ¶ 73. Defendant Fagan or another employee called 911, claiming that Plaintiff Benshoof was "trespassed from" Defendant T&C and subject to arrest. *Id.* ¶ 74. As Plaintiff Benshoof was walking toward the exit, Defendant Fagan approached him from behind and "forcefully shoved" him in the back with both hands. *Id.* ¶ 75. Plaintiff Benshoof called 911 to report the incident. *Id.* ¶ 78. Shoreline Police gave Plaintiff Benshoof a card with a case number. *Id.* ¶ 79. Defendant Nicholas W. DeMuse, a King County Deputy Sheriff, was also one of the officers who responded. *Id.* ¶ 80. Plaintiff Benshoof stated that he wanted Defendant Fagan to be charged with assault. *Id.* ¶ 81. Defendant Shoreline did not take action to charge or prosecute Defendant Fagan. *Id.* ¶¶ 82–83.

### 5.    March 23, 2021

When Plaintiff Benshoof put his groceries on the checkout stand conveyor belt, Defendant John Doe, a male cashier, "absconded" with all of Plaintiff Benshoof's groceries, refusing to provide checkout service and frustrating Plaintiff's ability to pay for his groceries. *Id.* ¶ 85. Plaintiff Benshoof asked, "So, you're taking my stuff?" *Id.* ¶ 86. Defendant John Doe responded, "You know you can't shop here." *Id.* ¶ 87. Plaintiff called 911 to report the incident. *Id.* ¶ 88. Defendant Fagan or another employee also called 911 to report Plaintiff Benshoof as trespassing and subject to arrest. *Id.* ¶ 89. Defendant Shoreline took no action to prosecute any employees of Defendant T&C. *Id.* ¶ 90.

### 6.    April 9, 2021

After a 911 call from an unknown employee of Defendant T&C, Defendants William C. Akers, Paul H. Thompson, and Jampa Tseten, wearing Shoreline Police uniforms, responded to Defendant T&C's store in a marked patrol car. *Id.* ¶¶ 91–92. Plaintiff Benshoof stated to these

Defendants, "In previous encounters at the store [King County Sheriff Deputies] have acknowledged that I'm not breaking any laws, and according to trespass laws, if we read the RCW, I have to be breaking a law for there to be a [criminal] trespass." *Id.* ¶ 93 (alterations in original). Defendant Akers responded, "No. Nope. [Defendant T&C] can trespass you from their property if you're not following their ***store rules***." *Id.* ¶ 94 (boldface and emphasis in original).

Defendant Akers stated that he was "criminally trespassing" Plaintiff Benshoof from Defendant T&C for one year and threatened Plaintiff Benshoof with arrest if he came back to shop at Defendant T&C within the year. *Id.* ¶ 95. Plaintiff Benshoof contested the actions of the officers, claiming false imprisonment and no unlawful presence in the store. *Id.* ¶¶ 96–97. Defendant Akers replied, "You can fight that out in court. I welcome that." *Id.* ¶ 98. He gave Plaintiff a pink piece of paper and said, "If you come back to the store within a year, you're gonna be arrested." *Id.* ¶ 100. The paper, signed by Defendant Tseten, stated that Plaintiff Benshoof would be arrested for criminal trespass if he returned to the store prior to April 9, 2022. *Id.* ¶ 101. Plaintiff left the store "under threat, duress and coercion" from Defendants Akers, Thompson, and Tseten, who were armed. *Id.* ¶ 99. Defendant Shoreline took no action to prosecute any employees of Defendant T&C. *Id.* ¶ 102.

On or around the same day, Plaintiff Benshoof spoke to Shoreline Police Department Captain Ryan Abbott and told Captain Abbott that he, Plaintiff Benshoof, was the "actual victim" of criminal law violations. *Id.* ¶¶ 103–104. Plaintiff Benshoof asked for an order that Shoreline Police "stop threatening [him] with unlawful imprisonment" and that the police instead "ensure the equal protection of the law so that [Defendant] Fagan and other employees would stop threatening, harassing, and assaulting [him]." *Id.* ¶ 105. On April 12, 2021, Captain Abbott called Plaintiff Benshoof and told him that he, Captain Abbott, had told "all Shoreline 911 dispatch personnel" and Defendant T&C management, that further calls about Plaintiff

1 | Benshoof's shopping without a face covering would not receive officers dispatched to the store.

2 | *Id.* ¶ 108. Captain Abbott stated that he told Shoreline police that Plaintiff Benshoof "was not

3 | violating any law" and "assured" Plaintiff Benshoof that "he would not again be threatened with

4 | arrest" for shopping without a face covering. *Id.* ¶ 109.

5 | **7.    911 Calls**

6 | Upon Plaintiff Benshoof's information and belief, between January 5, 2021, and April 15,

7 | 2021, Defendant Fagan and other Defendant T&C employees called 911 "at least one dozen

8 | times," claiming that Plaintiff Benshoof was "***criminally*** trespassing in [Defendant T&C],

9 | pursuant to the ***civil*** trespass admonishment letter." *Id.* ¶ 60 (emphasis and boldface in original).

10 | Between September 6, 2020, and April 15, 2021, Plaintiff Benshoof called 911 approximately

11 | two dozen times from Defendant T&C to report employee behavior. *Id.* ¶ 61. In that period, "911

12 | dispatch repeatedly claimed" that Defendant T&C employees could ask Plaintiff Benshoof to

13 | leave the store if he did not wear a face covering—an assertion that Plaintiff Benshoof contested.

14 | *Id.* ¶¶ 62–63.

15 | **8.    May 9, 2023**

16 | Plaintiff Benshoof drove with Plaintiff Briana D. Gage to Defendant T&C's store to buy

17 | groceries. *Id.* ¶ 110. Plaintiff Gage wore a face mask. *Id.* ¶ 111. When they left the store, they

18 | found their vehicle surrounded by approximately 40 carts "laid on their sides." *Id.* ¶ 112. Plaintiffs

19 | "have reason to believe" that one or more store employees so arranged the carts. *Id.* ¶ 114.

20 | **B.    New Allegations Regarding Defendant King County "Retaliations"**

21 | Plaintiff Maggitti filed documents on behalf of Plaintiff Benshoof while Plaintiff

22 | Benshoof was imprisoned for nearly five months in King County correctional facilities. *Id.*

23 | ¶ 117. On or around September 11, 2024, Plaintiff Benshoof received a letter from King County

24 | Superior Court Chief Criminal Judge Melinda Young, stating that Plaintiff Maggitti may be

perpetrating the "unauthorized practice of law" by filing documents on Plaintiff Benshoof's behalf. *Id.* ¶ 119. On October 16, 2024, Defendant Ann Summers, counsel for the Government Defendants, "also inferred that Maggitti was perpetrating the 'unauthorized practice of law.'" *Id.* ¶ 121; *see also* Dkt. No. 69 at 2. So, too, did Defendants Adam Asher and Courtney Olson, counsel for the Private Defendants in this matter. Dkt. No. 88 ¶ 123; *see also* Dkt. No. 70 at 2. The statements of Defendants Summers, Asher, and Olson were filed "several hours apart," suggesting they were coordinated. Dkt. No. 88 ¶ 130.

On around October 24, 2024, Plaintiff Benshoof left voicemail messages for Defendants Summers, Asher, and Olson, contesting their assertions about Plaintiff Maggitti. Dkt. No. 88 ¶¶ 126–27. These Defendants "refused to strike their threatening inferences." *Id.* ¶ 127.

**C.    New Allegations Regarding Defendant King County "Discrimination"**

From January 5, 2021, to September 2023, the King County Superior Court website stated, "You will ***not*** be required to wear a mask if you need to keep your mouth and nose clear for medical or mental health reasons." *Id.* ¶ 135 (emphasis and boldface in original).

On November 12, 2021, Plaintiff Benshoof went to the courthouse to obtain documents from the clerk's office. *Id.* ¶ 138. A clerk refused to provide the documents because Plaintiff Benshoof was not wearing a face covering. *Id.* ¶ 139. The clerk "summoned" a squad of King County Sheriff Deputies, armed with loaded weapons, to remove Plaintiff Benshoof from the office. *Id.* ¶ 140. Plaintiff Benshoof informed the deputies that "he had obtained a medical exemption in September 2021." *Id.* ¶ 142. He "was given the option of wearing a face shield in lieu of a mask." *Id.* ¶ 144. Plaintiff Benshoof declined and was not given access to the court records. *Id.* ¶ 145.

On November 15, 2021, Plaintiff Benshoof was again denied access to the clerk's office. *Id.* ¶ 147. A second clerk refused to provide the documents because Plaintiff Benshoof was not

1    wearing a face covering. *Id.* ¶ 148. The clerk also summoned deputies, armed with loaded

2    weapons, who removed him from the office. *Id.* ¶ 149.

3    **II.    LEGAL STANDARD**

4    **A.  Rule 12(b)(1)**

5    A motion to dismiss may be brought where subject matter jurisdiction is lacking. *See* Fed.

6    R. Civ. P. 12(b)(1). The Court must dismiss a case if it determines that it lacks subject-matter

7    jurisdiction "at any time." Fed. R. Civ. P. 12(h)(3). A motion to dismiss for lack of subject-

8    matter jurisdiction may be either a facial attack (challenging the sufficiency of the pleadings) or

9    a factual attack (presenting evidence contesting the truth of the allegations in the pleadings). *See*

10   *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "When reviewing a [facial] dismissal

11   pursuant to Rule 12(b)(1) . . . , 'we accept as true all facts alleged in the complaint and construe

12   them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v.*

13   *United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (second alteration in original) (quoting

14   *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

15   **B.    Rule 12(b)(6)**

16   A defendant may also seek dismissal when a plaintiff fails to state a claim upon which

17   relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss,

18   the Court takes all well-pleaded factual allegations as true and considers whether the complaint

19   "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

20   (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare

21   recitals of the elements of a cause of action, supported by mere conclusory statements," are

22   insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content

23   that allows the court to draw the reasonable inference that the defendant is liable for the

24   misconduct alleged." *Iqbal*, 556 U.S. at 672. As under Rule 12(b)(1), "[w]hen reviewing a

1   dismissal pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and

2   construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci*

3   *Aircraft*, 926 F.3d at 1122 (alteration in original) (quoting *Snyder & Assocs.*, 859 F.3d at 1156–

4   57 (9th Cir. 2017)).

**C.    *Pro Se* Filings**

6       A *pro se* complaint must be "liberally construed" and held "to less stringent standards

7   than formal pleadings drafted by lawyers." *E.g.*, *Florer v. Congregation Pidyon Shevuyim, N.A.*,

8   639 F.3d 916, 923 n.4 (9th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

9   curiam)). Even so, a court should "not supply essential elements of the claim that were not

10  initially pled." *E.g.*, *Henderson v. Anderson*, No. C19-789, 2019 WL 3996859, at *1 (W.D.

11  Wash. Aug. 23, 2019) (quotation marks omitted) (quoting *Bruns v. Nat'l Credit Union Admin.*,

12  122 F.3d 1251, 1257 (9th Cir. 1997)); *see also Khalid v. Microsoft Corp.*, 409 F. Supp. 3d 1023,

13  1031 (W.D. Wash. 2019) ("[C]ourts should not have to serve as advocates for pro se litigants."

14  (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987))).

15      "[I]t is axiomatic that pro se litigants, whatever their ability level, are subject to the same

16  procedural requirements as other litigants." *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir.

17  2022) (internal citations omitted). Still, "[a] district court should not dismiss a *pro se* complaint

18  without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could

19  not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting

20  *Schucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988) (per curiam)) (district court

21  erred by failing to explain deficiencies of a *pro se* prisoner civil rights complaint and dismissing

22  without leave to amend).

23  //

24  //

1

### III.    PRELIMINARY MATTERS

2      Before addressing the merits of the motions, the Court will address three procedural

3  issues raised by Defendants in their briefing.

4  **A.    Plaintiff Benshoof's Representation of Co-Plaintiffs**

5      Defendants point out that Plaintiffs Gage and Maggitti did not sign Plaintiff Benshoof's

6  response briefs, or otherwise indicate consent or agreement with their filing or the arguments

7  therein. *See* Dkt. No. 102 at 1; *see also* Dkt. No. 98 at 29; Dkt. No. 99 at 30. In his opposition to

8  their motion, Plaintiff Benshoof argued that he "acts as [Plaintiff] Gage's assistant [*sic*] of

9  counsel pursuant to Section 35 of the Judiciary Act of 1789." Dkt. No. 99 at 10. Plaintiff

10  Benshoof does not address his representation of Plaintiff Maggitti.

11      28 U.S.C. § 1654 sets forth that in federal court, "parties may plead and conduct their own

12  cases *personally* or by counsel as, by the rules of such courts" (emphasis added). And "[u]nder

13  Ninth Circuit precedent, a non-attorney can represent herself or himself *pro se* but cannot represent

14  other people." *Zhang v. United States*, No. C19-1211, 2022 WL 17077286, at *2 (W.D. Wash.

15  Mar. 3, 2022) (citing *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997)); *see also*

16  *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 697 (9th Cir. 1987) ("Although a non-

17  attorney may appear *in propria persona* in his own behalf, that privilege is personal to him. He has

18  no authority to appear as an attorney for others than himself." (citations omitted)).

19      Therefore, Plaintiffs Gage and Maggitti's failure to sign Plaintiff Benshoof's response

20  briefs (or to file their own response(s)) is a failure to respond to the motions, which the Court

21  treats as "an admission that the motion[s] [have] merit" as to their claims. LCR 7(b)(2).

22  **B.    Joinder of New Defendants**

23      Defendants argue that the FAC is "procedurally improper" because it improperly joins

24  Plaintiff Maggitti's claims. *See* Dkt. No. 94 at 9–10. In response, Plaintiff Benshoof argues that

1    "[e]very court action file[d] by, or against, Benshoof since September 2020 has one simple

2    nexus: retaliatory discrimination for not wearing a face covering." *See* Dkt. No. 99 at 9–10.

3            Federal Rule of Civil Procedure 20 permits the joinder of defendants in one action when

4    "(A) any right to relief is asserted against them jointly, severally, or in the alternative with

5    respect to or arising out of the same transaction, occurrence, or series of transactions or

6    occurrences; and (B) any question of law or fact common to all defendants will arise in the

7    action." Fed. R. Civ. P. 20(a)(2). Plaintiffs must satisfy both prongs of the test for permissive

8    joinder. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). "Even once these

9    requirements are met, a district court must examine whether permissive joinder would 'comport

10   with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman*

11   *v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (quoting *Desert Empire Bank v. Ins.*

12   *Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)).

13           The Court finds that Defendants Asher, Olson, and Summers are misjoined because

14   Plaintiff Maggitti's claims against them do not arise out of the same transaction or occurrence as

15   the claims of the other Plaintiffs. Plaintiff Maggitti's claims arise out of activities in the course of

16   Plaintiff Benshoof's litigating two cases: (1) an unidentified litigation in Washington state court,

17   during which Plaintiff Benshoof was imprisoned for nearly five months (Dkt. No. 88 ¶¶ 117–

18   120); and (2) this matter (*id.* ¶¶ 121–132). In both cases, Plaintiff Maggitti filed documents for

19   Plaintiff Benshoof while he was imprisoned. *See id.* ¶¶ 116–132. Unlike Plaintiff Maggitti's

20   claims, however, Plaintiff Benshoof's claims do not arise from the litigation itself but, rather,

21   from his interactions with Defendant T&C and its masking policy, which resulted in alleged

22   enforcement actions by Defendants Shoreline and King County. *See id.* ¶¶ 1–115. Plaintiff

23   Benshoof also joined unrelated claims against Defendant King County regarding his access to

24   court records in unidentified litigation. *See id.* ¶¶ 133–159. In short, there is essentially no

overlap between the proof or testimony required for Plaintiff Maggitti's claims and the other claims. *See Kessler v. State Farm Fire & Cas. Co.*, No. C23-5527, 2024 WL 3818504, at *3 (W.D. Wash. Aug. 14, 2024) ("[L]anguage in a number of decisions suggests that the courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court." (quoting *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1187 (C.D. Cal. 2015))).

Therefore, Plaintiff Maggitti's Third and Eighth Causes of Action are DISMISSED WITHOUT PREJUDICE, Plaintiffs' Ninth and Tenth Causes of Action (Section 1985) are DISMISSED WITHOUT PREJUDICE as to Plaintiff Maggitti, and Defendants Asher, Olson, and Summers are DISMISSED from this case.

## C.    Plaintiff Benshoof's Abusive-Litigation Order

Finally, Defendants point out that on March 6, 2023, a state court declared Plaintiff Benshoof to be a vexatious litigant and "enjoined [him] from engaging in abusive litigation."[1] *See* Dkt. No. 94 at 7–9; *see also* Dkt. No. 95 at 5–11 (order). On March 31, 2023, the court extended the order for five years. *See* Dkt. No. 95 at 13–21 (order). Among other provisions, the order requires Plaintiff Benshoof to "submit a copy of this Order with any future lawsuit he files or attempts to file in <u>any</u> court, including (but not limited to) federal court." *Id.* at 18 (underscore in original). On March 1, 2024, the state court held Plaintiff Benshoof in contempt for failing to seek leave to file two new cases in this District, as well as for failing to submit a copy of the

---

[1] Defendants also point out that another court in this District recently declared Plaintiff Benshoof a vexatious litigant, counting this matter among several others he has recently filed. *See* Dkt. No. 102 at 2; *Benshoof v. Admon*, No. C23-1392, 2025 WL 474687 (W.D. Wash. Feb. 11, 2025).

order in one case and burying it in over 2,000 pages of exhibits in the other case. *See id.* at 26–31 (contempt order).

Defendants argue that here, too, Plaintiff Benshoof did not file a copy of the abusive-litigation order, and his failure to comply the order merits dismissal of this matter. *See* Dkt. No. 94 at 7–9. In his response, Plaintiff Benshoof mentions the abusive-litigation order only to condemn it. Dkt. No. 99 at 8–9.

As this case will be dismissed on other grounds, the Court need not dismiss it for this reason as well. However, the Court admonishes Plaintiff Benshoof for his lack of candor with the Court regarding the abusive-litigation order. This deception is particularly flagrant given that Plaintiff Benshoof was held in contempt for disobeying that order *just 10 days* before initiating the instant case. *See* Dkt. No. 1.

## IV.    DISCUSSION

### A.    42 U.S.C. § 1983 (Second, Third, Fifth, Sixth, Seventh, and Eighth Causes of Action)

Plaintiffs appear to assert several violations of Section 1983, each by particular Plaintiffs against particular Defendants:[2]

- Plaintiff Benshoof brings a claim for "Violation of First Amendment / Freedom of Religion Retaliation" against Private Defendants T&C, Fagan, and Does, and Government Defendants Shoreline, King County, Thompson, and Tseten. *See* Dkt. No. 88 ¶¶ 199–220 (second cause of action).

- Plaintiff Benshoof brings a claim for "Violation of Fourth Amendment / Unlawful Seizure" against the Private Doe Defendants and Government Defendants Shoreline, King County, Akers, Thompson, and Tseten. *See id.* ¶¶ 242–259 (fifth cause of action).

- Plaintiff Benshoof brings a claim for "Violation of Fourteenth Amendment / Deprivation of Liberty" against the Private Doe Defendants and Government Defendants Shoreline, King County, Akers, Thompson, and Tseten. *See id.* ¶¶ 260–274 (sixth cause of action).

---

[2] The Court construes the Fifth and Sixth Causes of Actions as bringing claims under Section 1983, as Plaintiffs seek damages for alleged constitutional violations.

- Plaintiffs Benshoof and Gage bring a claim for "Violation of Fourteenth Amendment / Equal Protection Clause" against Government Defendants Shoreline, King County, Akers, DeMuse, Thompson, and Tseten. *See id.* ¶¶ 275–290 (seventh cause of action).

### 1.    Private Defendants

In its prior Order, the Court dismissed the Section 1983 claims against the Private Defendants because Plaintiff Benshoof made only conclusory allegations that the Private Defendants acted in concert with government actors. *See* Dkt. No. 85 at 8–9. Here, the Private Defendants argue again that Plaintiffs fail to sufficiently allege that their actions are "fairly attributable to the government." Dkt. No. 93 at 13 (quoting *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999)); *see id.* at 12–15; Dkt. No. 101 at 4–5. In response, Plaintiffs argue that the Private Defendants engaged in a conspiracy and/or were willful participants in joint action with the government. *See* Dkt. No. 98 at 13–19.

Under Section 1983, "a defendant may be liable for violating a plaintiff's constitutional rights only if the defendant committed the alleged deprivation while acting under color of state law." *Rawson v. Recovery Innovations*, 975 F.3d 742, 747 (9th Cir. 2020). The Ninth Circuit has "recognized at least four different general tests that may aid us in identifying state action: '(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus.'" *Id.* (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)).

Plaintiffs again plainly allege the second test of joint action. *See, e.g.*, Dkt. No. 88 ¶¶ 216–219, 229, 251, 267. "The joint action test asks 'whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (quoting *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002)). "This requirement can be satisfied either 'by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the

State or its agents.'" *Id.* (quoting *Franklin*, 312 F.3d at 445). "Ultimately, joint action exists when the state has "so far insinuated itself into a position of interdependent with [the private entity] that it must be recognized as a joint participant in the challenged activity." *Id.* (quoting *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 507 (9th Cir. 1989)).

The Court finds that Plaintiffs have not cured the deficiencies identified in the Court's prior Order, nor have they sufficiently alleged joint action in their new claims. Plaintiffs continue to assert only bare legal conclusions that the Private Defendants acted in concert with government actors. Allegations that the store maintained a face-covering policy and that employees called police multiple times to report Plaintiff Benshoof's violation of the policy and of a related "Trespass Admonishment" are not enough to establish joint action. *See Benshoof v. Admon*, No. C23-1392, 2024 WL 3227137, at *7–8 (W.D. Wash. June 28, 2024), *aff'd*, No. 24-4223 (9th Cir. Feb. 21, 2025) (dismissing with prejudice Benshoof's Section 1983 claims against store employees where they called police to remove Benshoof from the store and obtained a protective order); *Kiss v. Best Buy Stores*, No. C22-281, 2022 WL 17480936, at *4 (D. Or. Dec. 6, 2022), *aff'd*, No. 23-35004, 2023 WL 8621972 (9th Cir. Dec. 13, 2023) (holding that neither a request to comply with state law, nor a request for police to arrest, is sufficient to establish joint action).

## 2.    Government Official Defendants

In its prior Order, the Court dismissed the Section 1983 claims against the Government Official Defendants (Akers and Thompson in their individual capacities), because Plaintiff Benshoof "[did] not plausibly allege that Defendants Akers or Thompson violated his constitutional rights, thus entitling them to qualified immunity." Dkt. No. 85 at 11–13. In doing so, the Court addressed claims regarding the free exercise of religion, the freedom of speech, and equal protection. *See id.* at 12–13. Here, the Government Official Defendants (Akers, DeMuse, Thompson, Tseten, and Summers in their official capacities) argue again that they are entitled to

1    qualified immunity because Plaintiffs do not plausibly allege any violations of their

2    constitutional rights. *See* Dkt. No. 94 at 19–23, 24–25. In response, Plaintiff Benshoof argues

3    that these Defendants are not entitled to qualified immunity. *See* Dkt. No. 99 at 19–21.

4         "Qualified immunity shields federal and state officials from money damages unless a

5    plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and

6    (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-*

7    *Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The

8    Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the

9    earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting

10   *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

11        As to the claims previously addressed—violations of the freedom of religion and equal

12   protection—the Court finds that Plaintiffs have not cured the deficiencies in their allegations, and

13   the Government Officials are still entitled to qualified immunity.

14            a.    ***First Amendment – Freedom of Religion***

15        Plaintiff Benshoof makes substantially the same allegations regarding his religious

16   beliefs. *Compare* Dkt. No. 14 ¶¶ 18–25, *with* Dkt. No. 88 ¶¶ 1–7. But these allegations again "do

17   not permit the court to infer that the [masking policy] place[s] a substantial burden on the

18   exercise of his religion." *Denis v. Ige*, 538 F. Supp. 3d 1063, 1076 (D. Haw. 2021); *see also*

19   *Jones v. Williams*, 791 F.3d 1023, 1031–32 (9th Cir. 2015) ("A substantial burden . . . place[s]

20   more than an inconvenience on religious exercise; it must have a tendency to coerce individuals

21   into acting contrary to their religious beliefs or exert substantial pressure on an adherent to

22   modify his behavior and to violate his beliefs."). The most significant change from the original

23   complaint to the FAC is that Plaintiff Benshoof now identifies himself as a "reverend of the

24   Church of the Golden Rule" and alleges that his "firmly held spiritual beliefs proscribe him

being coerced to wear a face covering as a condition of entrance to public accommodations including, but not limited to, Central Markets." Dkt. No. 88 ¶ 1. But as the Government Defendants argue, he "does not identify how or why the tenets of his religion proscribe masks and he fails to describe how [Defendant] T&C's mask policy placed a substantial burden on the exercise of that religion." Dkt. No. 94 at 21; *see also Benshoof*, 2024 WL 3227137, at *9 (holding the same). The Court's prior Order explained that this information was missing from his prior complaint. *See* Dkt. No. 85 at 12. Yet Plaintiff Benshoof has failed to provide the information needed to support his claim.

### b.    *Fourteenth Amendment – Equal Protection*

Plaintiffs again do not allege membership in a protected class for their equal-protection claim. While Plaintiffs Benshoof and Gage allege in the Seventh Cause of Action that "people who wore a face covering" were treated "more favorably" than "people without face coverings" (Dkt. No. 88 ¶ 285), they do not demonstrate that any such groups are recognized or protected classes under the Fourteenth Amendment. The Court's prior Order explained that this information was missing from the prior complaint. *See* Dkt. No. 85 at 13. Yet, Plaintiffs failed to provide the information needed to support their claims.

*    *    *

As to the newly asserted claims—unlawful seizure and deprivation of liberty—the Court finds that Plaintiffs have not sufficiently alleged these claims as well, and the Government Officials are entitled to qualified immunity.

### c.    *Fourth Amendment – Unlawful Seizure*

Plaintiff Benshoof alleges that the Officer Defendants violated his Fourth Amendment right to be free from unlawful seizure "when they restrained Benshoof's liberty through coercion and a show of authority." Dkt. No. 88 ¶ 253.

"The Fourth Amendment to the United States Constitution protects individuals against 'unreasonable searches and seizures.'" *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 937 (9th Cir. 2020) (quoting U.S. Const. amend IV). "There are two categories of police seizures under the Fourth Amendment: *Terry* stops and full-scale arrests." *Id.* (citing *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1995)).

Plaintiff Benshoof alleges that on April 9, 2021, the Officer Defendants threatened him with arrest for exercising his religious beliefs. *See id.* ¶¶ 254–257. But as discussed above, *see supra* Section IV.A.2.a, Plaintiff Benshoof does not plead a First Amendment right to ignore Defendant T&C's mask policy, and it cannot be said that the Officer Defendants unreasonably seized Benshoof—or, indeed, seized him at all—by restating and enforcing Defendant T&C's trespass admonishment requiring Benshoof to stay away.

### d.    *Fourteenth Amendment – Deprivation of Liberty*

In a thinly veiled repackaging of his "unlawful seizure" claim, Plaintiff Benshoof separately alleges that Defendants Akers, Thompson, and Tseten violated his Fourteenth Amendment right to due process by the same actions detailed above; indeed, the allegations are virtually identical. *Compare* Dkt. No. 88 ¶¶ 253–259, *with id.* ¶¶ 268–274. Plaintiff Benshoof does not explain how this claim materially differs from the unlawful-seizure claim. Thus, this claim fails for the same reasons. *See supra* Section IV.A.2.c.

### 3.    Government Entity Defendants

In its prior Order, the Court dismissed the Section 1983 claims against the Government Entity Defendants (Shoreline and King County, as well as Akers and Thompson in their official capacities), because Plaintiff Benshoof made only conclusory allegations that did not "allege any facts that would support the existence of an official policy, or repeated and widespread behavior that could demonstrate a policy or custom." Dkt. No. 85 at 10–11. Here, the Government Entity

1   Defendants (Shoreline and King County, as well as DeMuse in his official capacity[3]) argue again

2   that Plaintiffs have failed to sufficiently allege *Monell* claims. *See* Dkt. No. 94 at 17–19. They

3   argue that Plaintiffs make only conclusory statements regarding the existence of practices or

4   customs, and that a single incident is not sufficient to establish a policy. *See id.* at 18–19. In

5   response, Plaintiff Benshoof argues that Plaintiffs have alleged "discriminatory and retaliatory

6   practices of King County and Shoreline officials over **four-year** span because of Benshoof

7   expressing his religious beliefs about face coverings and exercising his right to petition." Dkt.

8   No. 99 at 17 (emphasis and boldface in original).

9           "In order to sue a municipal entity—including employees acting within their official

10   capacities—a plaintiff must meet the oft-cited *Monell* standard, *i.e.*, the plaintiff must show that

11   the alleged injury was inflicted through the execution or implementation of the entity's 'official

12   policy.'" *Curtis v. City of Gooding*, 844 F. Supp. 2d 1101, 1109 (D. Idaho 2012) (citing *Monell*

13   *v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)). To plausibly assert a claim

14   against a municipality under *Monell*, "a plaintiff must allege (1) that a municipality employee

15   violated a constitutional right; (2) that the municipality has customs or policies that amount to

16   deliberate indifference of that right; and (3) those customs or policies were the 'moving force'

17   behind the constitutional right violation." *Hofschneider v. City of Vancouver*, 182 F. Supp. 3d

18   1145, 1151 (W.D. Wash. 2016) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

19           The Court finds that Plaintiffs have not sufficiently alleged their *Monell* claims because

20   they have not plausibly alleged that a municipality employee violated a constitutional right. As

21

22   ───────────────
   [3] In this argument, Defendants also include Akers, Thompson, and Tseten in their official capacities. *See* Dkt.
23   No. 94 at 18. But these Defendants are named only in their individual capacities. *See* Dkt. No. 88 ¶¶ 16, 23–25; *see
   also* Dkt. No. 99 at 16. Further, Plaintiffs' claim against DeMuse in his official capacity is treated as a *Monell* claim,
   as "the real party in interest in an official-capacity suit is the governmental entity and not the named official[.]"
24   *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

1    an initial matter, Plaintiffs' allegations against the Government Official Defendants are

2    addressed above, and the Court has found that the allegations do not establish a constitutional

3    violation that could serve as the basis for a *Monell* claim. *See supra* Section IV.A.2.

4    Plaintiffs also makes allegations about various officials of Defendant King County. For

5    example, Plaintiffs allege that Chief Criminal Judge Melinda Young sent a letter to Plaintiff

6    Maggitti "stating that Maggitti may be perpetrating the 'unauthorized practice of law.'" Dkt.

7    No. 88 ¶ 119. But Judge Young's letter cannot be construed as an improper threat. Plaintiffs also

8    allege that several King County employees at the Superior Courthouse, including clerks and

9    sheriff's deputies, prevented Plaintiff Benshoof from accessing court records and removing him

10   from the clerk's office. *See id.* ¶¶ 138–159. But as discussed elsewhere in this Order, *see supra*

11   Sections IV.A.2, *infra* Section IV.C, Plaintiff Benshoof does not allege any violations of

12   constitutional or statutory rights associated with King County's enforcement of its masking

13   policy. *See also Benshoof*, 2024 WL 3227137, at *14 (dismissing *Monell* claims where Benshoof

14   "ha[d] not established that any state official caused him constitutional injury").

15                                    *    *    *

16   Therefore, as to all Defendants, Plaintiff Benshoof and Gage's Second, Fifth, Sixth, and

17   Seventh Causes of Action (Section 1983) are DISMISSED WITH PREJUDICE.

**B.    Americans with Disabilities Act ("ADA") (Fourth Cause of Action)**

19   Plaintiff Benshoof brings a claim for "Violation of the ADA Title III" against the Private

20   Defendants Does and Fagan, and Government Defendants Shoreline, King County, Akers,

21   Thompson, and Tseten, *See* Dkt. No. 88 ¶¶ 233–241 (fourth cause of action).

22   "To prevail on a discrimination claim under Title III, a plaintiff must show that: (1) he is

23   disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases,

24   or operates a place of public accommodation; and (3) the plaintiff was denied public

accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010) (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007)). A defendant discriminates based on a plaintiff's disability by "(a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability." *Mora v. Burn & Plastic Hand Clinic*, No. C23-1008, 2023 WL 7128855, at *3 (W.D. Wash. Oct. 30, 2023) (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004)).

### 1.    Government Defendants

The named Government Defendants argue that the claim fails against them because Plaintiff Benshoof does not, and cannot, allege that they are private entities that own, lease, or operate places of public accommodation. *See* Dkt. No. 94 at 27. Plaintiff Benshoof concedes in his response that Defendants are correct and instead argues that these Defendants are liable under Title II of the ADA. *See* Dkt. No. 99 at 25–26. But the Court will not construe this claim as raising a Title II claim when Plaintiff Benshoof names the claim "Violations of the ADA Title III," cites only to Title III (*see* Dkt. No. 88 ¶ 235) and concedes in his response that he brought the wrong claim. Moreover, Plaintiff Benshoof should have known how to properly plead this claim, as he was instructed on how to allege both Title II and Title III claims by another court in this District just last year. *See Benshoof*, 2024 WL 3227137, at *16 ("Title III of the ADA runs parallel to Title II, with Title II covering only public entities and Title III covering only private entities.").

### 2.    Private Defendants

The Private Defendants (and Government Defendants) argue that the claim fails against them because Plaintiff Benshoof does not allege that he was denied public accommodations because of his disability. *See* Dkt. No. 93 at 17–18; Dkt. No. 94 at 28. Defendants point out that Plaintiff Benshoof was told "that he could wear a face shield in lieu of a mask" (Dkt. No. 93 at

17 (citing Dkt. No. 88 ¶ 42)) and himself concedes that Defendant T&C permitted this change (*id.* (citing Dkt. No. 88 ¶ 44)). Defendants thus argue that Plaintiff Benshoof does not allege that this accommodation was unreasonable, or that his disability prevented him from utilizing the accommodation. *See* Dkt. No. 93 at 18. In response, Plaintiff Benshoof argues that the face-shield offer is "irrelevant, as a face shield was an arbitrary and capricious 'accommodation' that served no compelling interest." Dkt. No. 98 at 26; *see also* Dkt. No. 99 at 28.

The Court finds that the Title III claim fails against all Defendants for two reasons. First, Plaintiff Benshoof fails to identify what his disability is. Second, as Plaintiff Benshoof was instructed last year by another court in this District, he "neither alleges that his disability prevented him from wearing a face shield nor that wearing a face shield, as proposed by [the Private Defendants], was an inadequate means of accommodating his disability." *Benshoof*, 2024 WL 3227137, at *16 (dismissing Title III claim against various grocery stores); *see also A.L. ex rel. D.L. v. Walt Disney Parks & Resorts U.S., Inc.*, 900 F.3d 1270, 1296 (11th Cir. 2018) ("[F]acilities are not required to make the preferred accommodation of plaintiffs' choice."). Thus, it cannot be said that Plaintiff Benshoof was denied accommodations because of his disability.

\* \* \*

Therefore, as to all Defendants, Plaintiff Benshoof's Fourth Cause of Action (ADA) is DISMISSED WITH PREJUDICE.

### C.    42 U.S.C. § 1985 (Ninth and Tenth Causes of Action)

Plaintiff Benshoof appears to assert two claims under Section 1985 that overlap with Section 1983 claims. First, he brings a claim for "conspiracy to obstruct justice" under Section 1985(2) against all Defendants except for T&C. *See* Dkt. No. 88 ¶¶ 299–303 (ninth cause of action). Second, he brings a claim for "conspiracy to deprive rights" under Section 1985(3) against all Defendants except for Olson. *See id.* ¶¶ 304–310 (tenth cause of action).

1

### 1.      42 U.S.C. § 1985(2)

2        In its prior Order, the Court dismissed the Section 1985(2) claim because "none of

3    Plaintiff's allegations relate[d] to access to any courts or court proceedings." Dkt. No. 85 at 14.

4    Here, all Defendants move again to dismiss the claim. *See* Dkt. No. 93 at 15–17; Dkt. No. 94 at

5    25. Defendants argue that Plaintiffs do not allege a conspiracy or other joint action. *See* Dkt.

6    No. 93 at 16; Dkt. No. 94 at 25. Defendants also argue that almost all of Plaintiffs' allegations do

7    not relate to pending court matters. *See* Dkt. No. 93 at 16–17; Dkt. No. 94 at 25. The

8    Government Defendants also note that Plaintiffs' allegations are substantially similar to the

9    allegations in the original complaint, except that Plaintiff Gage was substituted for Plaintiff

10    Maggitti and other Defendants were added. *Compare* Dkt. No. 14 ¶¶ 230–235, *with* Dkt. No. 88

11    ¶¶ 299–303.

12        Section 1985(2) "makes unlawful a conspiracy to deter any party or witness from

13    attending federal court or testifying in federal court *or* a conspiracy to obstruct justice in any

14    state court with the intent of depriving any citizen of the equal protection of the laws." *Est. of*

15    *Esquivel v. Chavez*¸ No. C06-1690, 2008 WL 4821714, at \*24 (E.D. Cal. Nov. 4, 2008)

16    (emphasis in original); *see also Portman v. County of Santa Clara*, 995 F.2d 898, 908–09 (9th

17    Cir. 1993) (parsing the "two clauses that give rise to separate causes of action").

18        The Court finds that Plaintiff Benshoof has not sufficiently pleaded a claim under Section

19    1985(3). He alleges that these Defendants "conspired" and committed "conspiratorial acts" (Dkt.

20    No. 88 ¶¶ 302–303), but he does not plausibly plead the existence of a conspiracy among the

21    Defendants. Further, there are no allegations whatsoever regarding attendance at or testimony in

22    a federal court. Finally, there is no evidence that Defendants acted with the intent to deprive

23    Plaintiff Benshoof of equal protection. *See supra* Section IV.A.2.b. The Court's prior Order

24    explained that this information was missing from the prior complaint. *See* Dkt. No. 85 at 13–15.

1        **2.        42 U.S.C. § 1985(3)**

2        In its prior Order, the Court dismissed the Section 1985(3) claim because Plaintiff

3   Benshoof alleged neither membership in a protected class (or discriminatory animus based

4   thereon), nor a conspiracy to violate rights protected against both private and official

5   encroachment. *See* Dkt. No. 85 at 14–15. Here, all Defendants move again to dismiss the claim.

6   *See* Dkt. No. 93 at 16–17; Dkt. No. 94 at 26. The Government Defendants observe that the

7   allegations "appear to be almost identical to the original complaint," though with a new plaintiff

8   and some new defendants. Dkt. No. 94 at 26. All Defendants argue again that Plaintiff Benshoof

9   still does not allege membership in a protected class or discriminatory animus. *Compare* Dkt.

10  No. 93 at 17, *with* Dkt. No. 94 at 26. The Government Defendants also argue again that he does

11  not allege violation of rights protected against both private and official encroachment. *See* Dkt.

12  No. 94 at 26. And the Private Defendants argue that he does not allege a conspiracy. *See* Dkt.

13  No. 93 at 16. In response, Plaintiff Benshoof argues that he alleges conspiracy, discriminatory

14  animus, and witness intimidation. *See* Dkt. No. 98 at 17–21; Dkt. No. 99 at 23–24.

15       "The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff

16  of equal protection or equal privileges or immunities; (3) an act in furtherance of the conspiracy;

17  and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (9th

18  Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)). Section 1985(3) "does

19  not 'apply to all tortious, conspiratorial interferences with the rights of others,' but rather, only to

20  conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously

21  discriminatory animus.'" *Id.* (quoting *Griffin*, 403 U.S. at 101–02). Moreover, it "covers only

22  conspiracies 'aimed at interfering with rights that are protected against private, as well as

23  official, encroachment.'" *Id.* (quoting *United Bhd. of Carpenters & Joiners of Am., Loc. 610,*

24  *AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983)).

The Court finds that Plaintiff Benshoof has not cured the deficiencies in his allegations. As discussed above, *see supra* Section IV.A.2.b, he does not allege membership in a protected class or discriminatory animus against a racial or other class-based group. And as also discussed above, *see supra* Section IV.A.1, he does not allege a conspiracy. The Court's prior Order explained that this information was missing from the prior complaint. *See* Dkt. No. 85 at 14–15. Yet Plaintiff Benshoof has failed to provide the information needed to support his claims.

\* \* \*

Therefore, Plaintiff Benshoof's Ninth Cause of Action (Section 1985(2)) and Tenth Cause of Action (Section 1985(3)) are DISMISSED WITH PREJUDICE.

**D.     Remaining State Law Claim (First Cause of Action)**

Finally, Plaintiffs Benshoof and Gage also bring a claim for negligence against Private Defendants T&C, Does, and Fagan, and Government Defendants Shoreline, King County, Akers, DeMuse, Thompson, and Tseten. *See* Dkt. No. 88 ¶¶ 173–198.

"When a district court 'has dismissed all claims over which it has original jurisdiction,' it 'may decline to exercise supplemental jurisdiction' over remaining state law claims." *Pell v. Nuñez*, 99 F.4th 1128, 1135 (9th Cir. 2024) (quoting 28 U.S.C. § 1367(c)(3)). Here, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claim.

Therefore, Plaintiffs' First Cause of Action is also DISMISSED WITHOUT PREJUDICE.

**V.     CONCLUSION**

Accordingly, Defendants' Motions to Dismiss (Dkt. Nos. 93, 94) are GRANTED. It is hereby ORDERED:

(1)     Plaintiffs' First, Third, and Eighth Causes of Action are DISMISSED WITHOUT PREJUDICE.

(2)    Plaintiffs' Second, Fourth, Fifth, Sixth and Seventh Causes of Action are DISMISSED WITH PREJUDICE.

(3)    Plaintiffs' Ninth and Tenth Causes of Action are DISMISSED WITH PREJUDICE as to Plaintiffs Benshoof and Gage, and DISMISSED WITHOUT PREJUDICE as to Plaintiff Maggitti.

(4)    Plaintiffs are prohibited from filing a Second Amended Complaint.

Dated this 27th day of March 2025.

Tana Lin
United States District Judge